

**F I L E D**
CLERK, U.S. DISTRICT COURT

8/16/2023

CENTRAL DISTRICT OF CALIFORNIA
BY:          DTA          DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA   PART 3

| | |
|---|---|
| In re:<br>JAMIE LYNN GALLIAN,<br><br>Debtor(s) | **District Court Case No.: 8:23-cv-00961-WLH**<br><br>Bankruptcy Court Case No.<br>8:23-bk-11710-SC<br>Adversary No.:  8:21-ap-01097-SC<br><br>Chapter  7 |
| JAMIE LYNN GALLIAN<br><br>Appellant/Debtor<br><br>vs.<br>HOUSER BROS. CO. dba RANCHO DEL REY<br>MOBILE HOME ESTATES,<br><br>Appellee/Plaintiff | **USBC TRIAL EXHIBIT REGISTER**<br><br>USBC Hearing Date: April 26, 2023<br><br>USBS Hearing Time:   9:30 a.m.<br><br>USBS Hearing Place: 5C<br>411 W. Fourth Street<br>Santa Ana, CA 92701 |

### LIST OF EXHIBITS (*NUMBERED, TAGGED AND A BRIEF DESCRIPTION OF EXHIBIT)

| | |
|---|---|
| 1. | Gables Judgment in the amount of $316,583.59 in favor of the Gables entered 05/06/2019 |
| 2. | Ryan Complaint filed 08/21/2018, OCSC Case No. 30-2018-01013582-CL-UD-CJC |
| 3. | Stipulated Judgment filed 10/18/2018, in the Ryan State Court Action |
| 4. | Ryan Release Form - releasing title of property to J-Sandcastle Co. as of 11/01/2018 |
| 5. | Ryan Notice of Sale or Transfer - transfer date 11/01/2018 |
| 6. | Application for Residency |
| 7. | Denial Letter from Rancho Del Rey to Jamie Gallian |
| 8. | Complaint in the BS Investors Action filed 10/17/2018 , OCSC Case No. 30-2018-01024401 |
| 9. | Docket in BS Investors Action |
| 10. | Security Agreement and Note between Jamie Gallian and J-Sandcastle |

* **EXHIBITS OF PLAINTIFF/MOVANT(S) SHALL BE MARKED WITH NUMBERS.**
**EXHIBITS OF DEFENDANT/RESPONDENT(S) SHALL BE MARKED WITH LETTERS.**

**LIST OF EXHIBITS (\*NUMBERED, TAGGED AND A BRIEF DESCRIPTION OF EXHIBIT)**

## PLAINTIFF'S TRIAL EXHIBITS

| | |
|---|---|
| 11. | Notice to Quit December 2018 |
| 12. | OCSC Complaint filed 01/02/2019, OCSC Case No. 30-2019-01041423-CL-UD-CJC |
| 13. | Docket in OCSC Action |
| 14. | 01/14/2019 UCC Financing Statement - Doc. No. 76027030002 filed against JSC |
| 15. | 01/14/2019 UCC Financing Statement - Doc. No. 76027040002 filed against JSC |
| 16. | A January 14, 2019, UCC Financing Statement that Debtor filed against JSC, Document No. 76027940003 |
| 17. | January 14, 2019, UCC Financing Statement that Debtor filed against Craig Houser and Kathryn Curtiss, Document No. 7602794004. |
| 18. | January 18, 2019, California Department of Housing and Community Development ("HCD") "Title Search" regarding the Property |
| 19. | July 23, 2020, HCD "Title Search" regarding the Property |
| 20. | June 7, 2021, HCD "Title Search" regarding the Property |
| 21. | August 10, 2021, HCD "Title Search" regarding the Property |
| 22. | September 21, 2021, HCD "Title Search" regarding the Property |
| 23. | HCD "Correspondence" with Transaction Date November 20, 2018, regarding the Property |
| 24. | HCD "R/O Transfer – Private Sale" with Transaction Date November 16, 2018, regarding the Property |
| 25. | HCD "L/O Assignment" with Transaction Date February 1, 2021, regarding the Property. |

\*   **EXHIBITS OF PLAINTIFF/MOVANT(S) SHALL BE MARKED WITH NUMBERS.**
**EXHIBITS OF DEFENDANT/RESPONDENT(S) SHALL BE MARKED WITH LETTERS.**
Revised 12/12

000778

| | |
|---|---|
| 26. | HCD "R/O Transfer – No Sale" with Transaction Date July 14, 2021, regarding the Property |
| 27. | HCD "L/O Addition" with Transaction Date August 10, 2021, regarding the Property. |
| 28. | Debtor's Petition and Original Schedules (including Statement of Financial Affairs), filed on July 9, 2021, as BK Docket No. 1 |
| 29. | Debtor's amended schedules filed on September 7, 2021, as BK Docket No. 15 |
| 30. | Debtor's amended schedules filed on September 22, 2021, as BK Docket No. 16 |
| 31. | Debtor's amended schedules filed on September 22, 2021, as BK Docket No. 17 |
| 32. | Debtor's amended schedules filed on October 14, 2021, as BK Docket No. 22 |
| 33. | Debtor's amended schedules filed on November 16, 2021, as BK Docket No. 37 |
| 34. | Debtor's amended schedules filed on November 22, 2021, as BK Docket No. 38 |
| 35. | Debtor's amended schedules filed on November 23, 2021, as BK Docket No. 39 |
| 36. | Debtor's amended schedules filed on December 1, 2021, as BK Docket No. 42 |
| 37. | Debtor's amended schedules filed on March 11, 2022, as BK Docket No. 72 |
| 38. | Debtor's amended schedules filed on March 15, 2022, as BK Docket No. 75 |
| 39. | The Exemption Motion filed May 12, 2022, as BK Docket No. 95 |
| 40. | The Exemption Opposition filed June 1, 2022, as BK Docket 105 |
| 41. | The Exemption Reply filed July 7, 2022, as Bk Docket 130-133 |
| 42. | "Declaration of Greg Buysman Re: Motion Objecting to Debtor's Claimed Homestead Exemption," filed on July 7, 2022, as BK Docket No. 132 |
| 43. | The Employment Application filed July 28, 2022, as BK Docket No. 162 |
| 44. | The Exemption Order filed August 5, 2022, as BK Docket 177 |
| 45. | The Complaint filed October 22, 2021, as AP Docket No. 3 |
| 46. | The Answer filed October 28, 2021, as AP Docket No. 6 |

**\*   EXHIBITS OF PLAINTIFF/MOVANT(S) SHALL BE MARKED WITH NUMBERS.
EXHIBITS OF DEFENDANT/RESPONDENT(S) SHALL BE MARKED WITH LETTERS.**

000779

Case 8:23-cv-00961-WLH  Document 13-2  Filed 08/16/23  Page 4 of 418  Page ID #:3915

Case 8:21-bk-11710-ES  Doc 105-1  Filed 06/01/22  Entered 06/01/22 09:54:17  Desc
Exhibit Part 2 of 2  Page 164 of 326
Branch :ORI,User :DDEL                    Comment:                    Station Id :DMCL



BK 13618PG 1012

of the California Civil Code and any other remedies
contained herein.

ARTICLE IX
GENERAL RESTRICTIONS

Section 9.1. Partition: The Common Area shall remain
undivided; and no Owner shall bring any action for partition,
excepting as otherwise herein provided, it being agreed that this
restriction is necessary in order to preserve the rights of the
Owners with respect to the operation and management of the
Project.

Section 9.2. Interior of Unit: Each Owner shall have
the right to paint, repaint, tile, wax, paper or otherwise
refinish and decorate the inner surfaces of the walls, ceiling
floors, windows and doors bounding his own Unit.

Section 9.3. Nuisance: Neither the Property, nor any
portion thereof, shall be used for any purpose tending to injure
the reputation thereof, or to disturb the neighborhood or
occupants of adjoining property, or to constitute a nuisance, or
in violation of any public law, ordinance, or regulation in any
way applicable thereto.

Section 9.4. Use of Common Area: The Common Area shall
be used for park, recreational, social and other purposes
directly related to the uses authorized under this Declaration.

Section 9.5. Projections: No projections of any type
shall be placed or permitted to remain above the roof of any
residential building with the exception of one or more chimneys
and one or more vent stacks. No outside air conditioning units,
evaporating coolers, television or radio pole or antenna shall be
constructed, erected or maintained on any building or on any Unit
or Common Area or connected in such manner as to be visible from
the outside of any such building, except as may be constructed by
Declarant.

Section 9.6. Recreational Vehicles: No mobile home,
recreational vehicle, motor home, camper, minihome, boat, truck
of size in excess of 3/4 ton, or trailer of any kind shall be
kept, stored, parked, maintained, constructed or repaired on any
part of the Project other than in specific designated parking
areas as approved by the Board of Directors.

Section 9.7. Lavatory Facilities: No privy shall be
erected, maintained or used upon any portion of a Unit or Common
Area, but a temporary privy may be permitted during the course of
construction of a building. Any lavatory, toilet or water closet
which shall be erected, maintained or used upon any portion of a
Unit or Common Area shall be enclosed and located within a

26.

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 5 of 418   Page ID #:3916

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 165 of 326
Branch :ORI,User :DDEL                    Comment:                         Station Id :DMCL



BK 13618 PG 1013

building permitted under this Declaration to be erected on the Unit or Common Area, shall be properly connected with the sewer system and shall be so constructed and operated that no offensive odor shall arise or otherwise escape therefrom.

**Section 9.8.   Signs:**  Except for a sign having a maximum face area of three (3) square feet and advertising the Property for sale or rent, no sign or other advertising device of any character shall be erected, maintained, or displayed upon any part of the Property; provided, however, that Declarant may erect and maintain on the Common Area or on any Unit owned by it such signs and other advertising devices or structures, as it may deem necessary or proper in connection with the conduct of its operations for the development, improvement, subdivision and sale of said property; provided further that residential signs having a maximum face area of seventy-two (72) square inches giving the name of the occupant and/or the address of a Unit may be displayed on such Unit.  The Association or its agents may summarily remove and destroy all signs not conforming to this Section.

**Section 9.9.   Animals:**  No animals, fowl, reptiles or poultry shall be kept on the Property, except that domestic dogs, cats, birds and fish may be kept as household pets upon said property provided that they are not kept, bred or raised thereon for commercial purposes or in unreasonable quantities.  Notwithstanding the foregoing, no animals or fowl may be kept on the Property which result in any annoyance or are obnoxious to residents in the vicinity.

**Section 9.10.   Offensive Activities:**  No noxious or offensive trades or activity shall be carried on upon any portion of the Property, nor shall anything be done or maintained thereon which may be or become an annoyance or nuisance to the neighborhood, or which shall in any way interfere with the quiet enjoyment of each of the Owners of his respective dwelling unit, or which shall in any way increase the rate of insurance.

**Section 9.11.   Right of Inspection:**  During reasonable hours and after reasonable notice, any agent of the Association shall have the right to enter upon and inspect the Property or any portion thereof and the improvements thereon for the purpose of ascertaining whether or not the provisions of this Declaration are being complied with and shall not be deemed guilty of trespass by reason thereof.  Provided, however, that there shall be no entry into any dwelling unit without the express consent of the Owner.

**Section 9.12.   Leases:**  With the exception of a lender in possession of a Unit following a default in a first Mortgage, a foreclosure proceeding or any deed or other arrangement in lieu of foreclosure, no Unit Owner shall be permitted to lease his Unit for transient or hotel purposes.  No Unit Owner may lease

27.



BK 13618PG 1014

less than the entire Unit. Any lease between an Owner and lessee shall provide that the terms of the lease are subject in all respects to the provisions of this Declaration, the Articles of Incorporation and Bylaws of the Association, and that any failure by the lessee to comply with the terms of such documents shall be a default under the lease. All leases shall be in writing.

Section 9.13. Misconduct: Each Owner shall be liable to the Association for any damage to the Common Areas or to any of the equipment or improvements thereon which may be sustained by reason of the negligence or willful misconduct of said Owner or of his family, relatives, guests or invitees, both minor and adult but only to the extent such Owner would be legally responsible under the laws of the State of California.

Section 9.14. Structural Changes: Nothing shall be done in any Unit, or in, on or to the Common Areas, which will impair the structural integrity of any building or which would structurally change any building without the prior written consent of the Board and Lessor.

Section 9.15. Utilities: Each Owner of a Unit shall be obligated to pay any and all assessments for water, sewage, gas, electricity, or other utilities, taxes and other charges assessed individually against such Unit.

Section 9.16. Receptacles: No Owner shall deposit any garbage, refuse or rubbish in or on the Common Area unless such matter is deposited in appropriate containers suitably placed and designated by the Board so as not to detract from the physical appearance of the Common Area or the Project. Trash bins may be placed upon the Common Area by each Owner only in accordance with such rules and regulations as may be promulgated by the Board and may remain upon the Common Areas only on trash pickup days.

Section 9.17. Television; Radio: No alteration to or modification of the radio and/or television antenna system, as developed by the Declarant, shall be permitted and no Owner may be permitted to construct and/or use and operate his own external radio and/or television antenna.

ARTICLE X
MORTGAGE PROTECTION

Section 10.1. Seventy-Five Percent Vote of Mortgagees: Except as provided by statute, in case of condemnation or substantial loss to the Units and/or Common Area, without the prior written approval of at least seventy-five percent (75%) of all first Mortgagees, based one (1) vote for each Mortgagee, neither the Association nor the Members shall be entitled to do any of the following:

28.

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 7 of 418   Page ID #:3918

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 167 of 326
Branch :ORI,User :DDEL                        Comment:                                    Station Id :DMCL



BK 13618 PG 101

(a)  By act or omission, dissolve the Association or abandon or terminate the Project.

(b)  By act or omission, abandon, partition, sell, alienate, subdivide, release, transfer, hypothecate, or otherwise encumber the Common Area.  This provision is not intended to restrict or otherwise prohibit an Owner from selling or encumbering his own Condominium, nor shall it prohibit the granting of easements for public utilities or other public purposes consistent with the intended use of the Common Area.

(c)  Partition or subdivide a Condominium.

(d)  Amend a material provision of this Declaration, the Bylaws or the Articles; for purposes of determining what provisions are material in this Declaration and in the Bylaws or the Articles, such provisions in these documents which are required by the rules, regulations or guidelines of programs administered by Federal National Mortgage Association, Government National Mortgage Association, and Federal Home Loan Mortgage Corporation shall be deemed material, but not by way of limitation, with respect to other provisions in these documents.

(e)  Effectuate any decision to terminate professional management and assume self management of the Association.

(f)  Change the pro rata interest or obligations of any individual Unit for the purpose of:  (i) levying assessments or charges or allocating distributions of hazard insurance proceeds on condemnation awards, or (ii) determining the pro rata share of ownership of each Unit in the Common Area.

(g)  Use hazard insurance proceeds for losses to any Property (whether to Units or to Common Areas) for other than the repair, replacement, or reconstruction of such Property.

Section 10.2.  Other Rights of First Mortgagees.  Any first Mortgagee shall, upon written request to the Association, be entitled to:

(a)  Inspect the books and records of the Association during normal business hours.

(b)  Receive the annual audited financial statements of the Association ninety (90) days following the end of the Association's fiscal year.

29.

ORANGE,CA
Document: DR 13618.982

Page 34 of 49

Printed on 8/29/2018 9:49:44 AM

167

002120                    EXHIBIT 40, PAGE 1300

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 8 of 418   Page ID #:3919

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 168 of 326
Branch :ORI,User :DDEL                    Comment:                         Station Id :DMCL



BK 13618 PG 1016

(c)   Receive written notice on all annual and special meetings of the Members or of the Board, and first Mortgagees shall further be entitled to designate a representative to attend all such meetings in order to, among other things, draw attention to violations of this Declaration which have not been corrected or made the subject of remedial action by the Association; provided, however, nothing contained in this Section shall give a first Mortgagee the right to call a meeting of the Board or of the Members for any purpose or to vote at any such meeting.

Section 10.3.   Mortgagees Furnishing Information: Mortgagees are hereby authorized to furnish information to the Board concerning the status of any loan encumbering a Unit.

Section 10.4.   Notice to First Mortgagees of Owner Default: Any first Mortgagee shall be entitled to written notification from the Association of any default in the performance of the obligations imposed by this Declaration by the Owner whose Unit is encumbered by such Mortgagee's mortgage, which default has not been cured within sixty (60) days of a request therefor by the Association; provided, however, the Association shall only be obligated to provide such notice to first Mortgagees who have previously requested such notice in writing.

Section 10.5.   Right of First Refusal:  The right of an Owner to sell, transfer or otherwise convey his Unit shall not be the subject of any right or right of first refusal or any similar restriction in favor of the Association.  In the event this Declaration is amended to provide for any right of first refusal in the Association, a Mortgagee who comes into possession of a Unit pursuant to a judicial foreclosure or a trustee's sale shall be exempt therefrom.

Section 10.6.   Conflicts:  In the event of any conflict between any of the provisions of this Article and any of the other provisions of this Declaration, the provisions of this Article shall control.

Section 10.7.   Notice of Destruction or Taking:  In the event that the Common Area or any Unit or any portion thereof is substantially damaged or is made the subject of any condemnation proceeding in eminent domain or is otherwise sought to be acquired by a condemning authority, the Board shall promptly notify any first Mortgagee affected by such destruction, taking or threatened taking.  For purposes herein, the term "substantially damaged" shall mean damages exceeding Ten Thousand Dollars ($10,000.00).  If requested in writing by a first Mortgagee, the Association shall evidence its obligations under this Section in a written agreement in favor of such first Mortgagee.

30.

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 169 of 326
Branch :ORI,User :DDEL                     Comment:                              Station Id :DMCL

BK 13618 PG 1013

**Section 10.8.  Breach of Declaration:**  A breach of any of
the covenants, conditions or restrictions of this Declaration
shall not defeat or render invalid the lien of any First Mortgage
made in good faith and for value on any Unit of the Property or
any portion thereof, but said covenants and restrictions shall be
binding upon and effective against any Owner of any of said Units
whose title is acquired by the foreclosure of any lien or
mortgage thereon or sale under any deed of trust given to secure
the payment of money.

### ARTICLE XI
### DESTRUCTION OF IMPROVEMENTS

**Section 11.1.  Destruction; Proceeds Exceed 85% of
Reconstruction Costs:**  If there is a total or partial destruction
of the improvements in the development, and if the available
proceeds of the insurance carried pursuant to Article VIII are
sufficient to cover not less than eighty-five percent (85%) of
the costs of repair and reconstruction, the improvements shall be
promptly rebuilt unless, within ninety (90) days from the date of
destruction, Members then holding at least seventy-five percent
(75%) of the total voting power of each class of Members present
and entitled to vote, in person or by proxy, at a duly
constituted meeting, determine that such repair and
reconstruction shall not take place.  If repair and
reconstruction is to take place, the Board shall be required to
execute, acknowledge and record in the office of the County
Recorder, not later than one hundred twenty (120) days from the
date of such destruction, a certificate declaring the intention
of the Members to rebuild.

**Section 11.2.  Destruction; Proceeds Less Than 85% of
Reconstruction Costs:**  If the proceeds of insurance are less than
eighty-five percent (85%) of the costs of repair and
reconstruction, repair and reconstruction may nevertheless take
place if, within ninety (90) days from the date of destruction,
Members then holding at least fifty-one percent (51%) of the
total voting power of each class of Members present and entitled
to vote, in person or by proxy, at a duly constituted meeting,
determine that such repair and reconstruction shall take place.
If repair and reconstruction is to take place, the Board shall be
required to execute, acknowledge and record in the office of the
Orange County Recorder, not later than one hundred twenty (120)
days from the date of such destruction, a certificate declaring
the intention of the Members to rebuild.

**Section 11.3.  Rebuilding Procedures:**  If the Members
determine to rebuild pursuant to Sections 11.1 or 11.2, above,
the Owner of each Unit located within a structure that has been
totally or partially destroyed shall be obligated to contribute
his proportionate share of the cost of reconstruction or
restoration of the structure containing his Unit, over and above

31.

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 170 of 326
Branch :ORI,User :DDEL                    Comment:                          Station Id :DMCL



BK 1361.826 1018

the available insurance proceeds, which proportionate share shall
be based upon the ratio of the square footage of the floor area
of the Unit to be assessed to the total square footage of the
floor area of all Units to be assessed. All Owners shall
contribute their proportionate share of the cost of
reconstruction or restoration of any portion of the Common Area
not comprising the structure within which a Unit is located, and
the proportionate share of each Owner shall be equal to a
fraction the numerator of which is one (1) and the denominator of
which is the total number of Units then comprising the Project.
If any Owner fails or refuses to pay his proportionate share, the
Board may levy a special assessment against the condominium of
such Owner which may be enforced under the lien provisions
contained in Article V or in any other manner provided in this
Declaration. If any Owner disputes the amount of his
proportionate liability under this Section, such Owner may
contest the amount of his liability by submitting to the Board
within ten (10) days after notice to the Owner of his share of
the liability written objections supported by cost estimates or
other information that the Owner deems to be material and may
request a hearing before the Board at which he may be represented
by counsel. Following such hearing, the Board shall give written
notice of its decision to all Owners, including any
recommendation that adjustments be made with respect to the
liability of any Owners. If such adjustments are recommended,
the notice shall schedule a special meeting of Members for the
purpose of acting on the Board's recommendation, including making
further adjustments, if deemed by the Members to be necessary or
appropriate. All adjustments shall be affirmed or modified by a
majority of the total voting power of each class of Members. If
no adjustments are recommended by the Board, the decision of the
Board shall be final and binding on all Owners, including any
Owner filing objections.

   Section 11.4.   Rebuilding Contract: If the Members
determine to rebuild, the Board or its authorized representative
shall obtain bids from at least two reputable contractors and
shall award the repair and reconstruction work to the lowest
bidder. The Board shall have the authority to enter into a
written contract with the contractor for such repair and
reconstruction, and the insurance proceeds held by the trustee
shall be disbursed to the contractor according to the terms of
the agreement. It shall be the obligation of the Board to take
all steps necessary to assure the commencement and completion of
authorized repair and reconstruction at the earliest possible
date.

   Section 11.5.   Rebuilding Not Authorized: If the Members
determine not to rebuild, then any insurance proceeds then
available for such rebuilding shall be distributed to the Owner
of each Unit or its Mortgagee in the same ratio as the fair
market value of his Unit bears to the fair market value of all of
the Units immediately prior to the destruction, in accordance

                              32.



BK 13618PG 1019

with normal appraisal techniques. The Board shall have the duty, within one hundred and twenty (120) days from the date of such destruction, to execute, acknowledge and record in the office of the County Recorder, a certificate declaring the intention of the Members not to rebuild.

Section 11.6.  Minor Repair and Reconstruction:  In any case, the Board shall have the duty to repair and reconstruct improvements, without the consent of Members and irrespective of the amount of available insurance proceeds, in all cases of partial destruction when the estimated cost of repair and reconstruction does not exceed Twenty Thousand Dollars ($20,000). The Board is expressly empowered to levy a special assessment for the cost of repairing and reconstructing improvements to the extent insurance proceeds are unavailable, such assessment to be levied as described in Section 11.3 (but without the consent or approval of Members despite any contrary provisions) in this Declaration.

ARTICLE XII
CONDEMNATION

Section 12.1.  Sale by Unanimous Consent:  If an action for condemnation of all or a portion of the Project is proposed or threatened by any governmental agency having the right of eminent domain, then, on unanimous written consent of all of the Owners and after written notice to at least seventy-five percent (75%) of all first Mortgagees, the Project, or a portion of it may be sold.

Section 12.2.  Distribution of Proceeds of Sale:  On a sale occurring under Section 12.1 above, the proceeds shall be distributed to the Owner and the Mortgagee of each Unit as their respective interests may appear in the same ratio as that set forth in Section 11.5, above.

Section 12.3.  Distribution of Condemnation Award:  If the Project, or a portion of it, is not sold but is instead taken, the judgment of condemnation shall by its terms apportion the award among the Owners and their respective Mortgagees, and in the same ratio as that set forth in Section 11.5, above.

Section 12.4.  Revival of Right to Partition:  On sale or on taking that renders more than fifty percent (50%) of the Units in the Project uninhabitable, the right of any Owner to partition through legal action shall revive immediately.

33

EXHIBIT 40, PAGE 1304

Branch :ORI,User :DDEL                    Comment:                    Station Id :DMCL



BK 13618 PG 1020

### ARTICLE XIII
### PARTITION

**Section 13.1. Suspension:** Except as specifically set forth to the contrary in this Declaration, the right of partition is suspended pursuant to the California Civil Code as to the Project. Nothing in this Declaration, however, shall prevent partition or division of interest between joint or common Owners of one (1) Unit, provided that the written approval of a first Mortgagee of such Unit is first obtained.

**Section 13.2. Proceeds:** Proceeds or property resulting from a partition shall be distributed to and among the respective Owners and their Mortgagees in the same ratio as that set forth in Section 12.2, above.

**Section 13.3. Power of Attorney:** Pursuant to the California Civil Code, each Owner grants the Association an irrevocable power of attorney to sell the Project for the benefit of the Owners when partition can be had. Exercise of the power is subject to the approval of Members.

### ARTICLE XIV
### GENERAL PROVISIONS

**Section 14.1. Term:** The covenants and restrictions of this Declaration shall run with and bind the Property, Association and any Owner, their legal representatives, heirs, successors and assigns, for a term of twenty (20) years from the date this Declaration is recorded, after which time they shall be automatically extended for successive periods of ten (10) years.

**Section 14.2. Notices:** Any notice to be given to an Owner or a Mortgagee under the provisions of this Declaration shall be in writing and may be delivered as follows:

(a) Notice to an Owner shall be deemed to have been properly delivered when delivered personally prepaid, to the most recent address furnished by such Owner in writing to the Association for the purpose of giving notice, or if no such address shall have been furnished, then to the street address of such Owner's Condominium in the Project. Any notice so deposited in the mail within the County, shall be deemed delivered forty-eight (48) hours after such deposit. In the case of co-Owners, any such notice may be delivered or sent to any one of the co-Owners on behalf of all co-Owners and shall be deemed delivered on all such co-Owners.

(b) Notice to a Mortgagee shall be deemed to have been properly delivered when placed in the first class United States mail, postage prepaid, to the address

34.

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 13 of 418   Page ID #:3924

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 173 of 326
Branch :ORI,User :DDEL                        Comment:                                    Station Id :DMCL



BK 13618PG.102

furnished to the Association by such Mortgagee for purposes of notice or, if no such address is furnished, to any office of the Mortgagee in the county, or, if no such office is located in the county, to any office of such Mortgagee.

Section 14.3.   Enforcement:   The Association, Lessor, Lessee, any Owner, or their successor in interest, shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration or any amendment thereto, including the right to prevent the violation of any such restrictions, conditions, covenants or reservations and the right to recover damages or other dues for such violation; provided, however, that with respect to assessment liens, the Association shall have the exclusive right to the enforcement thereof.  Failure by the Association or by any Owner to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.

Section 14.4.   Severability:   Invalidation of any one of these covenants, conditions or restrictions by judgment or court order shall in no way affect any other provisions, which shall remain in full force and effect.

Section 14.5.   Construction:   The provisions of this Declaration shall be liberally construed to effectuate its purpose of creating a uniform plan for the development of a residential community or tract and for the maintenance of common recreational facilities and Common Area.  Section headings are inserted for convenience only and are not intended to be a part of this document or in any way to define, limit or describe the scope or intent of the particular section to which they refer.

Section 14.6.   Singular Includes Plural:   Whenever the context of this Declaration requires it, the singular shall include the plural and the masculine shall include the feminine.

Section 14.7.   Attorneys' Fees:   In the event action is instituted against an Owner to enforce any of the provisions contained in this Declaration, the party prevailing in such action shall be entitled to recover from the other party thereto as part of the judgment reasonable attorneys' fees and costs of such action, which attorneys' fees and costs shall also be added to such Owner's assessments.

Section 14.8.   Nuisance:   The result of every act or omission whereby any of the covenants contained in this Declaration or if the Bylaws are violated in whole or in part is hereby declared to be and constitutes both a public and private nuisance, and every remedy allowed by law or equity against every such result and may be exercised by any Owner, by the Association.

35.

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 14 of 418   Page ID #:3925

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 174 of 326
Branch :ORI,User :DDEL                    Comment:                          Station Id :DMCL



BK 13618 PG 1022

or its successors in interest, or by the County of Orange or other affected governmental entity. Such remedy shall be deemed cumulative and not exclusive.

Section 14.2. Amendments: Unless otherwise provided for herein, this Declaration of Covenants, Conditions and Restrictions may be amended only by the affirmative assent or vote of not less than seventy-five percent (75%) of the voting power of the Members and Lessor, excluding the Declarant; provided, however, that although Declarant has not obtained the Veterans' Administration ("VA") or Federal Housing Administration ("FHA") approval in connection with the development of this Project, such approval may be bought by Declarant. In the event that the VA or FHA approval is so sought for the purpose of having FHA and/or VA insure or guarantee any mortgage or providing any form of assistance within the purview of such agencies with respect to this Project, the rules and regulations of FHA and/or VA, as the same exist at the date of recording of this Declaration, may require this Declaration to be amended in certain respects and additionally will require that FHA and/or VA participate in certain decisions affecting the Project and management of the Association. Therefore, effective as of the date this Project receives FHA and/or VA approval, this Declaration is hereby amended as follows without the necessity of any vote or written assent of the Owners or Mortgagees:

(a) The following actions will require the prior approval of the FHA and/or VA:

(1) Alteration of any Unit, construction of additional improvements, the establishment of additional licenses, reservations and rights-of-way, or alteration of construction plans and designs by Declarant.

(2) Merger or consolidation or dissolution of the Association.

(3) Any amendment or modification of this Declaration, the Articles or By-Laws.

(b) The Association shall submit to FHA and/or VA, sixty (60) days prior to the beginning of each fiscal year of the Association, for their review and approval, as the case may be, a budget of the expenses for the ensuing fiscal year, on the FHA and/or VA model form of budget, indicating the amount of assessments contemplated for the next fiscal year period.

In the event the FHA, VA, or both, approve the Project as provided herein, if requested to do so by FHA and/or VA, the Board shall be automatically authorized and shall be obligated to execute a Regulatory Agreement on FHA Form No. 3278 (revised

36.

Branch :ORI,User :DDEL                          Comment:                          Station Id :DMCL



BK 13618PG 1073

August, 1969) or such later version thereof then in use or the
analogous VA form or both as modified to reflect any
peculiarities pertaining to the Property as shall be deemed
appropriate by FHA and/or VA.

Section 14.10. Annexation. Additional residential
property and Common Area may be annexed to the Property with the
consent of two-thirds (2/3) of the voting power of the Members,
excluding Declarant.

IN WITNESS WHEREOF, the undersigned being the Declarant
herein, has hereunder set its hand this 21st day of
May , 1980.

THE ROBERT P. WARMINGTON CO.,
a California corporation

By
Its

By Olwa N Gray
Its

The foregoing is hereby approved and agreed to this 21st
day of May , 1980.

Robert P. Warmington, an individual

HOUSER BROS CO., a California
limited partnership

By
General Partner

By
General Partner

37.

ORANGE,CA
Document: DR 13618.982

Page 42 of 49

Printed on 8/29/2018 9:49:55 AM

175

002128

EXHIBIT 40, PAGE 1308

Branch :ORI,User :DDEL                               Comment:                                    Station Id :DMCL



BK 13618 PG 1024

CONSENT OF LIENHOLDER

AND SUBORDINATION OF LIEN

The undersigned beneficiary under that certain Deed of Trust dated October 11, 1979 recorded as Instrument No. 12909, in Book 11114, pages 981 through 1012, inclusive, of Official Records of Orange County, California, consents to all of the provisions contained in the attached Declaration of Covenants, Conditions and Restrictions and agrees that the lien of the deed of trust shall be junior and subordinate and subject to said Declaration.

Dated: May 12, 1980

Lienholder

By CROCKER NATIONAL BANK

By _Leslie S. Crocker_

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF ORANGE             )

On MAY 12, 1980, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, known to me to be the President, and _____, known to me to be the Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its bylaws or a resolution of its board of directors.

WITNESS my hand and official seal.

_____
Notary Public in and for said
County and State

38.

ORANGE,CA
Document: DR 13618.982

Page 43 of 49

176

002129

Printed on 8/29/2018 9:49:57 AM

EXHIBIT 40, PAGE 1309

Branch :ORI,User :DDEL                        Comment:                              Station Id :DMCL



BK 13618PG 1025

## REIMBURSEMENT AGREEMENT

This Reimbursement Agreement is entered into this _____ day of _____, 1980, by and between Houser Bros. Co., a California Limited Partnership ("Houser") and Huntington Beach Gables Homeowners Association, a California non-profit corporation ("Association").

### R E C I T A L S

A.   Houser has leased to Robert P. Warmington, an individual, certain real property in the City of Huntington Beach, more particularly described as Tract 10542, as per map recorded in Book 456, pages 49 and 50 of Miscellaneous Maps, Orange County which has been developed as a condominium project (the "Warmington Property").

B.   Houser is presently the owner of certain real property located adjacent and contiguous to the Warmington Property which property is presently developed as a mobile home park known as Rancho del Rey Mobile Estates (the "Houser Property").

C.   Located on the Houser Property, and adjacent to the Warmington Property, is a certain roadway known as Monterey Lane (the "Roadway").  The Warmington Property and the owners and residents thereof have an easement for ingress and egress over the Roadway.  Houser and the Association agree that it would enhance the values of the Warmington Property and the Houser Property if guardgates (the "Guardgates") are con-

**EXHIBIT A**

1

ORANGE,CA
Document: DR 13618.982

Page 44 of 49

Printed on 8/29/2018 9:49:58 AM

177

002130

EXHIBIT 40, PAGE 1310

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 18 of 418   Page ID #:3929

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 178 of 326
Branch :ORI,User :DDEL                          Comment:                          Station Id :DMCL

BK 13618PG 1027

(b)  Utilities and insurance related to the Guard-gate.  Houser agrees to obtain and maintain in force during the term hereof, a policy or policies of comprehensive public liability insurance of not less than One Million Dollars ($1,000,000.00), insuring Houser, the Association and all owners of the Warmington Property.

(c)  Maintenance and repair of Guardgate.

(d)  Maintenance and repair of the Roadway.

(e)  Street lighting for the Roadway.

Houser agrees to obtain bids for said Costs and to submit same to the Association for its review and approval.  In addition, Houser shall make available, for inspection by the Association during all normal business hours, the books and records of Houser related to the maintenance of the Roadway and Guardgates.

III. REIMBURSEMENT FOR COSTS

During the term hereof, the parties hereto agree that the Association shall pay over to Houser, upon receipt of invoice therefor, the Association's share of the Costs actually incurred, which shall be an amount equal to 80/459 of said Costs, but not to exceed Four Hundred Dollars ($400) per month during the calendar year 1980, and thereafter not to exceed Four Hundred Dollars ($400.00) per month plus an annual percentage increase based on the percentage increase, if any, for each ensuing calendar year period, in the Consumer Price Index, all items, Los Angeles-Long Beach area Standard Metropolitan Statistical area, as published by the United States Department of Labor, Bureau of Labor Statistics.

3

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 19 of 418   Page ID #:3930

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 179 of 326
Branch :ORI,User :DDEL                    Comment:                                    Station Id :DMCL



IV.   TERM

   This Agreement shall commence as of the execution hereof, and shall terminate on October 17, 2059.

V.   INDEMNIFICATION

   The parties hereto acknowledge and agree that the Association's sole responsibility herein is the payment of its share of the costs as set forth above, and that Houser shall bear all responsibilities, obligations and liabilities related to the maintenance of the Roadway and Guardgates.  In furtherance thereof, Houser agrees to indemnify, defend and hold the Association harmless from any and all claims or damages arising out of the maintenance and use of said Roadway and Guardgates.

VI.   MISCELLANEOUS

   The parties further agree as follows:

      (a)  In the event any action is instituted to enforce any provision contained herein, the prevailing party shall be entitled to attorney's fees and costs so incurred.

      (b)  This Agreement shall bind and inure to the benefit of the successors and assigns of the parties hereto.

      (c)  This Agreement may only be amended by written agreement between the parties hereto.

   IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

HOUSER BROS. CO., a California          HUNTINGTON BEACH GABLES
Limited Partnership                     HOMEOWNERS ASSOCIATION, a
                                        California Non-Profit Corporation


By_____             By_____
                                                          President


By_____             By_____
                                                          Secretary

Branch :ORI,User :DDEL                          Comment:                          Station Id :DMCL

BK 13618PG 1026

structed and maintained on the Roadway, and if the Roadway is maintained in a safe and clean manner.

D.  In order to enable the construction of the Guardgates, and to insure the continued maintenance of the Roadway and Guardgates by Houser, and the payment by the Association of its share of the costs incurred thereby, the parties hereto have entered into this Agreement:

T E R M S

For valuable and complete consideration, the parties hereto hereby agree as follows:

I.    CONSTRUCTION OF GUARDGATES

Houser hereby agrees to construct or cause to be constructed, two Guardgates on the Roadway, in accordance with plans and specifications approved and agreed upon by Houser and the Association.  Except as specifically set forth below, all costs incurred in the construction of the Guardgates shall be borne solely by Houser.

II.  MAINTENANCE OF ROADWAY AND GUARDGATE

Houser hereby agrees to keep, maintain, repair and replace, when necessary, the Roadway and Guardgates in a safe, decent and proper condition, and subject to rights of reimbursement below, to pay the costs related thereto, which shall include, but shall not necessarily be limited to the following (the "Costs"):

(a). Compensation, plus any necessary withholding taxes, social security and related payments, for one guard to operate the Guardgate daily.

ORANGE,CA
Document: DR 13618.982

Page 47 of 49

Printed on 8/29/2018 9:50:01 AM

180

002133

EXHIBIT 40, PAGE 1313



Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 22 of 418   Page ID #:3933

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 182 of 326
Branch :ORI,User :DDEL                    Comment:                              Station Id :DMCL



BK 13618PG 1030

STATE OF CALIFORNIA )
) ss.
COUNTY OF ORANGE )

On *May 12*, 19__, before me, the undersigned, a Notary
Public in and for said State, personally appeared *JARULED S. CEDAR*
and _____, known to me to be the *VICE*
*PRESIDENT* and _____, respectively, of CROCKER NA-
TIONAL BANK, the national banking association that executed the within instrument,
and also known to me to be the person(s) that executed the within instrument on
behalf of CROCKER NATIONAL BANK, the national banking association therein named,
and acknowledged to me that such national banking association executed the same
pursuant to its bylaws or a resolution of its board of directors.

WITNESS my hand and official seal.

PALMIRA OESTERREICH

OFFICIAL SEAL
PALMIRA OESTERREICH
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Sep. 17, 1982

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 23 of 418   Page ID #:3934

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
                          Exhibit Part 2 of 2    Page 183 of 326
Branch :ORI,User :DDEL                        Comment:                                Station Id :DMCL



WHEN RECORDED RETURN TO:

MESERVE, MUMPER & HUGHES
5190 Campus Drive
Newport Beach, CA 92660

Attn: Frank D. Stiefel

5002

$6.00
C1

BK 13690 PG 1091

RECORDED IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA

-3 00 P.M.   AUG 5 '80

LEE A. BRANCH, County Recorder

FIRST AMENDMENT TO
DECLARATION OF COVENANTS, CONDITIONS & RESTRICTIONS
FOR THE HUNTINGTON BEACH GABLES

Tract 10542
City of Huntington Beach
Orange County, California

This First Amendment to Declaration of Covenants, Conditions and Restrictions is made this 30 day of JULY , 1980, by THE ROBERT P. WARMINGTON CO., a California corporation ("RPW Co."), HOUSER BROS. CO., a California limited partnership ("Houser") and ROBERT P. WARMINGTON, an individual ("Warmington").

WHEREAS, Houser is the owner of the fee interest in the following described property (the "Property"):

Lots 1 and 2 of Tract No. 10542 as per map recorded in Book 456, Pages 49 and 50, inclusive, of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California; and

WHEREAS, Warmington is the lessee of the Property; and

WHEREAS, RPW Co. is the sublessee and the developer of the improvements constructed on the Property, and is also the Declarant as that term is defined in that certain Declaration of Covenants, Conditions and Restrictions recorded May 28, 1980, in Book 13618, pages 982 through 1030, inclusive, Official Records of Orange County, California (the "Declaration"); and

WHEREAS, Warmington and RPW Co. intend to assign, convey and set over to ultimate consumers, various leasehold and fee interests in the Condominium Units, as defined in the Declaration, which collectively shall constitute the Condominium to be acquired by said consumer; and

WHEREAS, Warmington, Houser and RPW Co. desire to clarify the Declaration to insure that the interests so conveyed are inseparable and constitute the entire interest to be conveyed, which clarification requires an amendment to the Declaration.

1

ORANGE,CA
Document: DR 13690.1091

Page 1 of 4

Printed on 8/29/2018 9:50:04 AM

183

002136

EXHIBIT 40, PAGE 1316

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 24 of 418   Page ID #:3935

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 184 of 326
Branch :ORI,User :DDEL                    Comment:                         Station Id :DMCL

BK 13690PG 1092

**NOW THEREFORE**, Warmington, Houser and RPW Co., do hereby declare as follows:

1.  That collectively they are the sole owners of the Property as their interests may appear.

2.  That they retain the exclusive and sole right to amend the Declaration.

3.  That, in furtherance of the foregoing, the following amendments are hereby made to the Declaration:

    (a)  Section 1.13 of the Declaration is hereby amended to read as follows:

"**Section 1.13.** **Owner/Ownership:** "Owner" shall mean and refer to the record assignee of the rights of Declarant and/or a lessee or sublessee to a Unit, but excluding those having such interest merely as security for the performance of an obligation. Such term shall also mean and refer to the Lessee or Lessor if either succeeds to the rights of said assignee through termination of any lease or sublease or by any other means. All references herein to "ownership" shall mean and refer to the ownership of a leasehold or subleasehold interest."

    (b)  Section 2.2 of the Declaration is hereby amended to read as follows:

"**Section 2.2.** **Elements of Condominium:** Each Condominium shall be comprised of the following elements:

    (a)  A leasehold or sub-leasehold estate in a Unit as shown and defined on the Condominium Plan, excepting that portion of a Unit consisting of buildings and other improvements;

    (b)  An undivided one-eightieth (1/80) interest in a leasehold or subleasehold interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion of the Common Area consisting of building and other improvements;

    (c)  An exclusive easement on the leasehold or sub-leasehold estate referred to in item (b) above, which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit, excepting that portion consisting of buildings and other improvements;

2

ORANGE,CA
Document: DR 13690.1091
Page 2 of 4
Printed on 8/29/2018 9:50:05 AM
184
002137
EXHIBIT 40, PAGE 1317

Branch :ORI,User :DDEL                           Comment:                                    Station Id :DMCL

BK 13690PG 1093

(d)  A non-exclusive easement and right to use the leasehold or sub-leasehold estate referred to in item (b) above except the Restricted Common Area, excepting that portion consisting of buildings and other improvements;

(e)  A fee interest in that portion of a Unit, as shown and defined on the Condominium Plan, which consists of buildings and other improvements;

(f)  An undivided one eightieth (1/80) fee interest in and to those portions of the Common Area, as shown and defined on the Condominium Plan which consist of buildings and other improvements;

(g)  An exclusive easement on the fee estate referred to in item (f) above which easement is defined as Restricted Common Area as described on the Condominium Plan for entry, staircases and attic space relating to each Unit which consist of buildings and other improvements;

(h)  A non-exclusive easement and right to use the fee estate referred to in item (f) above except the Restricted Common Area, which consist of buildings and improvements; and

(i)  A membership in the Association."

4.   All other terms and conditions of the Declaration shall reamin in full force and effect.

     IN WITNESS WHEREOF, the parties hereto have executed this First Amendment as of the day first above written, its effective date.

                              THE ROBERT P. WARMINGTON CO.,
                              a California corporation

                              By _____

                              HOUSER BROS., CO., a California
                              Limited Partnership
                              By _____
                              By _____

                              _____
                              Robert P. Warmington

                              3

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 26 of 418   Page ID #:3937

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 186 of 326
Branch :ORI,User :DDEL                          Comment:                          Station Id :DMCL

.845 CA (8-74)

**(Corporation)**

STATE OF CALIFORNIA
COUNTY OF *Orange* } SS.

On *July 31, 1980* before me, the undersigned, a Notary Public in and for said State, personally appeared *Roger L. Carrell* known to me to be the *Vice* President, and ~~known to me to be the~~ Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature *Pearl L. Hunt*

TITLE INSURANCE AND TRUST
A TICOR COMPANY

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

BK 13690PG 1094

---

TO 1946 CA (8-74)

**(Partnership)**

STATE OF CALIFORNIA
COUNTY OF *ORANGE* } SS.

On *AUGUST 4 1980* before me, the undersigned, a Notary Public in and for said State, personally appeared *CLIFFORD C. HOUSER AND VERNON F. HOUSER* known to me to be *BOTH* of the partners of the partnership that executed the within instrument, and acknowledged to me that such partnership executed the same.

WITNESS my hand and official seal.

Signature *G. McDonald*

TITLE INSURANCE AND TRUST
A TICOR COMPANY

OFFICIAL SEAL
G. McDONALD
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires June 15 1984

(This area for official notarial seal)

---

TO 1944 CA (8-74)

**(Individual)**

STATE OF CALIFORNIA
COUNTY OF *Orange* } SS.

On *July 31, 1980* before me, the undersigned, a Notary Public in and for said State, personally appeared *Robert P. Warmington* , known to me to be the person_ whose name *is* subscribed to the within instrument and acknowledged that *he* executed the same.

WITNESS my hand and official seal.

Signature *Pearl L. Hunt*

TITLE INSURANCE AND TRUST
A TICOR COMPANY

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

(This area for official notarial seal)

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 27 of 418   Page ID #:3938

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 187 of 326
Branch :ORI,User :DDEL                         Comment:                                    Station Id :DMCL



28814

SHEET 1 OF 5 SHEETS

CONDOMIN
LOT 4...
TRACT
IN THE CITY OF
COUNTY
STATE OF

BK 13358 PG 1193

WHEN RECORDED MAIL TO:
FIRST AMERICAN TITLE COMPANY
114 EAST FIFTH STREET
SANTA ANA, CALIFORNIA 92701
ATTN: CHUCK BURRELL

IN OFFICIAL RECORDS
OF ORANGE COUNTY, CALIFORNIA
12:40 PM OCT 18 1979
LEE A. BRANCH, County Recorder

CERTIFICATE UNDER CALIFORNIA CIVIL CODE SECTION 1351

WE THE UNDERSIGNED, BEING ALL OF THE RECORD OWNERS OF AND RECORD
HOLDERS OF SECURITY INTERESTS IN THE REAL PROPERTY, DESCRIBED IN
THE DOCUMENTS HEREINAFTER MENTIONED, DO HEREBY CERTIFY THAT:

WE HEREBY CONSENT TO THE RECORDATION OF THE PLAN OF CONDOMINIUM,
PURSUANT TO CHAPTER I, TITLE 6, PART 4, DIVISION SECOND, CALIFORNIA
CIVIL CODE, CONSISTING OF (I) THE DESCRIPTION OF SURVEY MAPS OF THE
SURFACE OF THE LAND INCLUDED WITHIN THE PROJECT, AS SUCH DESCRIPTION
OF SURVEY MAPS ARE SET FORTH UPON OR CONSTITUTED BY THE SUBDIVISION
MAP SHOWING LOT 1 & 2 OF TRACT NO. 10542 IN THE CITY OF HUNTINGTON
BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN
BOOK 446, PAGES 47 TO 50 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY, AND WHICH SUBDIVISION MAP IS HEREBY BY REFERENCE IN-
CORPORATED HEREIN; (II) THE DIAGRAMATIC FLOOR PLANS ATTACHED HERETO
AND MADE A PART HEREOF; AND (III) THIS CERTIFICATE.

DATE: Oct 4 1979

HOUSER BROS., CO., A LIMITED PARTNERSHIP

VERNON F. HOUSER                                    CLIFFORD C. HOUSER
GENERAL PARTNER                                     GENERAL PARTNER

ROBERT P. WARRINGTON, OPTIONEE UNDER AN OPTION AGREEMENT RECORDED
IN BOOK 12912, PAGE 1053 OF OFFICIAL RECORDS.

ROBERT P. WARRINGTON
OPTIONEE

STATE OF CALIFORNIA)
COUNTY OF ORANGE    ) SS

ON THIS 4TH DAY OF OCTOBER, 1979 BEFORE ME,
_____ , A NOTARY PUBLIC IN AND FOR
SAID STATE, PERSONALLY APPEARED VERNON F. HOUSER
AND CLIFFORD C. HOUSER KNOWN TO ME TO BE THE PART-
NERS OF HOUSER BROS. CO., A LIMITED PARTNERSHIP
THE PARTNERSHIP THAT EXECUTED THE WITHIN INSTRU-
MENT AND ACKNOWLEDGED TO ME THAT SUCH PARTNERSHIP
EXECUTED THE SAME.

MY COMMISSION EXPIRES _____ AND

002140                    EXHIBIT 40, PAGE 1320

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 188 of 326
Branch :ORI,User :DDEL                    Comment:                                    Station Id :DMCL



# MINIUM PLAN

### LOT NUMBER 1&2

# CT NO. 10542

### IN THE CITY OF HUNTINGTON BEACH
### COUNTY OF ORANGE
### STATE OF CALIFORNIA

BK 13358 PG

1351

AND RECORD
IN
THAT:

INIUM,
CALIFORNIA
MAPS OF THE
DESCRIPTION
SUBDIVISION
HUNTINGTON
RECORDED IN
RECORDER
REFERENCE IN-
HERETO

HOODER

RECORDED

This Project consists of all of the land and real
included within the boundary lines of Lot 1 and 2 of Tract 10542
the City of Huntington Beach, County of Orange, State of Calif...
as shown on a map recorded in Book , pages , inclusive ...
Miscellaneous Maps, in the office of the County Recorder of said
County.

**DEFINITIONS**

1.   Common Area:  The term "Common Area" shall mean
to all of the property described above, except the Units, as
below.

2.   Unit:  The term "Unit" shall mean and refer to all
the elements of a Condominium, as defined below, not owned in
with the other owners of Condominiums in the Project.

3.   Restricted Common Area:  The term "Restricted
Area" shall mean and refer to those portions of the Common Area
are reserved for the exclusive use of owners of particular units
described herein.

4.   Condominium:  The term "Condominium" shall mean
to an interest in the Project consisting of (a) a Unit, (b) an
1/80 interest in the Common Area, (c) certain designated exclusive
to-use easements over Restricted Common Areas, (d) non-exclusive
ment rights over the Common Area, and (e) a membership in the
Beach Gables, Homeowners Association.

**GENERAL NOTES**

1.   This Project is composed of Common Area and eighty
Units, which have been numbered from 1 to 80.

2.   Each Unit shall contain and be composed of the fo
air parcels as defined below:

(a)   A dwelling area air space parcel

(1)   Designated herein by the letter "D".

(2)   Lateral boundaries for each dwelling ar
space parcel are as shown on the typical
grammatic plans attached hereto as Sheet
and 5.

(3)   Elevations for dwelling area air parcels
as shown in the elevation tabulation att
hereto as Sheet 2.

(4)   The boundaries of a dwelling area air
parcel are the inner

NERS OF MEMBER SHIP, CO., A LIMITED PARTNERSHIP,
THE PARTNERSHIP THAT EXECUTED THE WITHIN INSTRU-
MENT AND ACKNOWLEDGED TO ME THAT SUCH PARTNERSHIP
EXECUTED THE SAME.

MY COMMISSION EXPIRES    12/12/80

WITNESS MY HAND AND
OFFICIAL SEAL.

OFFICIAL SEAL
MARY LOU C. HYVIE
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My Commission Expires Dec 12, 1980

NOTARY PUBLIC IN AND FOR SAID STATE

STATE OF CALIFORNIA)
COUNTY OF ORANGE   ) SS

ON THIS  4TH  DAY OF October , 1979, BEFORE ME
_____ A NOTARY PUBLIC IN AND
FOR SAID STATE, PERSONALLY APPEARED _____ P. Williams
KNOWN TO ME TO BE THE PERSON DESCRIBED IN, AND WHOSE
NAME IS SUBSCRIBED TO THE WITHIN INSTRUMENT AND HE
ACKNOWLEDGED TO ME THAT HE EXECUTED THE SAME.

MY COMMISSION EXPIRES 6/26/81    WITNESS MY HAND
AND OFFICIAL SEAL.

OFFICIAL SEAL
YVONNE S. COOK
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires June 26, 1981

NOTARY PUBLIC IN AND FOR SAID STATE

I HEREBY CERTIFY THAT I AM A REGISTERED CIVIL ENGINEER OF THE STATE OF
CALIFORNIA; THAT THIS PLAN, CONSISTING OF 6 SHEETS, CORRECTLY REP-
A TRUE AND COMPLETE SURVEY OF THIS CONDOMINIUM PROJECT AND THE DELINEA-
TION OF THE UNITS TO BE CONTAINED IN THE BUILDING AS BUILT THEREON.

DATED: 10-3-79              M. MADOLE, R.C.E. NO. 14814

BK 13358 PG 1195



(3)  Elevations for dwelling area air parcels are
as shown in the elevation tabulation attached
hereto as Sheet 2.

(4)  The boundaries of a dwelling area air space
parcel are the interior surfaces of the per-
imeter walls, floors, ceilings, windows and
doors thereof, and said air space parcel in-
cludes both the surfaces so described and the
air space so encompassed.

(b)  A Patio air space parcel

(1)  Designated herein by the letter "P".

(2)  Shall only exist on lower levels.

(3)  Shall be owned by and be a part of the Unit
to which it adjoins.

(4)  Lateral boundaries for each patio air space
parcel shall be the exterior finished surfaces
of the perimeter wall, windows and doors of
the adjoining Unit and partition walls, fences
and rails where they exist; otherwise, they
are the vertical plane at the limits of the
horizontal dimensions set forth on the typical
diagrammatic plans attached hereto Sheets 4
and 5.

(5)  Elevations for patio air space parcels are as
indicated in note no. under Elevation Tabulation as shown
on Sheet no. 2.

(c)  A Garage air space parcel

(1)  Designated herein by the letter "G".

(2)  Shall only exist on lower levels.

(3)  Shall be owned by and be a part of the Unit
for which it is designated on the typical
diagrammatic plans attached hereto as Sheets
4 and 5.

(4)  Lateral boundaries for each garage air space
parcel are as shown on the typical diagrammatic
plans attached hereto as Sheets 4 and 5.

(5)  Elevations for garage air space parcels are as
shown in the elevation tabulation attached here-
to as Sheet 2.

(6)  The boundaries of a garage air space parcel are
the interior surfaces of the perimeter walls,
floors, ceilings and doors thereof, and said
air space parcel includes both the surfaces so
described and the air space so encompassed.

ORANGE,CA
Document: CO 13358.1193

Page 4 of 20

Printed on 8/29/2018 9:50:10 AM

190

002143

EXHIBIT 40, PAGE 1323

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 191 of 326

Branch :ORI,User :DDEL                    Comment:                              Station Id :DMCL



SHEET 1 OF 5 SHEETS

BK 13358 PG 1197

# CONDOMIN

LOT

# TRACT 1

IN THE CITY OF
COUNTY C
STATE OF C

3.  The Units do not contain bearing walls, columns, vertical supports, floors, roofs, foundation, railings, fences, gates, garage doors, central heating, central refrigeration and central air-conditioning equipment, reservoir tanks; pumps and other central services, pipes, ducts, flues, conduits, wires and other utility installations, wherever located except the outlets thereof when located within the Unit.

In interpreting deeds, declarations, and plans, the existing physical boundaries of the Unit or of a Unit reconstructed in substantial accordance with the original plans thereof shall be conclusively presumed to be its boundaries rather than the metes and bounds (or other description) expressed in the deed, plan or declaration, regardless of minor lateral movement of the building and regardless of minor variance between boundaries shown on the condominium plan or in the deed and declaration and those of the building.

4.  In addition to the air space parcels referred to above, certain Units include rights to certain Restricted Common Areas, as defined below:

(a)  Entry Courts and Staircases.

(1)  Designated herein by the letter "E".

(2)  Lateral boundaries for entry courts are as shown on the typical diagrammatic plans attached hereto as Sheets 4 and 5.

(3)  Shall be for the exclusive use and enjoyment of the owners of the Unit which adjoins said entry court, and shall be designated as Restricted Common Area.

(4)  Entry courts on those buildings which have upper levels shall also include staircases to said upper levels. Such staircases shall be for exclusive use of the owners of the upper level Units to which they adjoin.

(b)  Attic Space.

(1)  Designated herein by the letter "A".

(2)  Shall be for the exclusive use and enjoyment of the owners of the Unit which adjoins said attic space.

(3)  Lateral boundaries of attic space shall be the same as that shown for the dwelling prescribed on the diagrammatic plans attached hereto as Sheets

ORANGE,CA
Document: CO 13358.1193

Page 5 of 20

Printed on 8/29/2018 9:50:10 AM

191

002144

EXHIBIT 40, PAGE 1324

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 32 of 418   Page ID #:3943

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 192 of 326
Branch :ORI,User :DDEL                    Comment:                              Station Id :DMCL



ORANGE,CA
Document: CO 13358.1193

Page 6 of 20

Printed on 8/29/2018 9:50:11 AM

192

002145                    EXHIBIT 40, PAGE 1325



(5)   [illegible] of area [illegible] be the same as that shown for the Dwelling area Unit on diagrammatic plans attached hereto as sheets 4 and 5.

5.   All boundary lines intersect at right angles unless otherwise indicated.

6.   All elevations and dimensions are in feet.

7.   All wall thicknesses are as shown on diagrammatic plans Sheets 4 and 5.

8.   Bench Mark:  HB-E29-72      1972 ADJUSTED ELEV. 11.1, IN THE SOUTHWEST PART OF THE INTERSECTION OF BOLSA CHICA STREET AND EDINGER AVE., 190 FT. SOUTH OF THE CENTERLINE OF EDINGER, 58.5 FT. WEST OF CENTERLINE OF BOLSA CHICA, 10.5 FT. WEST OF THE CURB FACE, 1 FT. SOUTH OF A 36 FT. CONC. DRIVEWAY DEPRESSION, 4' SOUTHEAST OF THE CENTER OF A 5 INCH DIAMETER STEEL LAMP POST, SET IN THE TOP OF A CONCRETE POST, 0.2 FOOT HIGHER THAN THE CURB.

**ELEVATION TABULATION**

| UNIT NO. | TYPICAL FOR ALL FIRST FLOOR DWELLING FINISHED FLOOR ELEVATIONS | TYPICAL FOR ALL GARAGE FINISHED FLOOR ELEVATIONS AT ENTRANCE |
|---|---|---|
| 1-4 | 10.53 | 9.53 |
| 5-8 | 10.76 | 9.76 |
| 9-12 | 10.76 | 9.76 |
| 13-16 | 10.40 | 9.40 |
| 17-20 | 10.70 | 9.70 |
| 21-24 | 10.90 | 9.90 |
| 25-28 | 11.50 | 10.50 |
| 29-32 | 11.50 | 10.50 |
| 33-36 | 11.40 | 10.40 |
| 37-40 | 11.90 | 10.90 |
| 41-44 | 11.90 | 10.90 |
| 45-48 | 11.90 | 10.90 |
| 49-52 | 11.70 | 10.70 |
| 53-56 | 11.70 | 10.70 |
| 57-60 | 11.70 | 10.70 |
| 61-64 | 10.80 | 9.80 |
| 65-68 | 10.80 | 9.80 |
| 69-72 | 10.63 | 9.63 |
| 73-76 | 10.76 | 9.76 |
| 77-80 | 10.52 | 9.52 |

NOTES:

1.   ALL FINISHED CEILINGS FOR FIRST FLOOR DWELLING AREAS ARE TYPICALLY 8.1' ABOVE THEIR RESPECTIVE FIRST FLOOR DWELLING AREA FINISHED FLOOR AS TABULATED ABOVE, UNLESS SHOWN OTHERWISE.

2.   ALL SECOND FLOOR FINISHED FLOOR ELEVATIONS ARE TYPICALLY 9.1' ABOVE THE FINISHED FLOOR FOR THEIR RESPECTIVE FIRST FLOOR DWELLING AREA AS TABULATED ABOVE, UNLESS SHOWN OTHERWISE.

3.   ALL SECOND FLOOR FINISHED CEILING ELEVATIONS ARE TYPICALLY 8.1' ABOVE THEIR RESPECTIVE SECOND FLOOR DWELLING AREA FINISHED FLOOR ELEVATION AS INDICATED IN NOTE 2.

4.   IN THE CASE OF UNITS 4, 8, 12, 16, 20, 24, 28, 32, 36, 40, 44, 48, 52, 56, 60, 64, 68, 72, 76 & 80 (SECOND FLOOR UNITS ONLY) THE FINISHED FLOOR ELEVATIONS ARE THE SAME AS THE ADJACENT SECOND FLOOR UNITS WITHIN THE SAME BUILDING.

5.   ALL PATIOS ARE AT FIRST FLOOR LEVEL AND THEIR FINISH SURFACE IS 0.98' BELOW THE FIRST FLOOR DWELLING FINISHED FLOOR ELEVATIONS TO WHICH THEY ARE ASSIGNED AND ATTACHED. THE VERTICAL ELEMENT OF THE PATIO AIR SPACE IS TYPICALLY 8.49' ABOVE THEIR FINISH SURFACE.

BK 13358 P6 1199

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 34 of 418   Page ID #:3945

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 194 of 326
Branch :ORI,User :DDEL                          Comment:                                      Station Id :DMCL



ORANGE,CA
Document: CO 13358.1193

Page 8 of 20

194
002147

Printed on 8/29/2018 9:50:12 AM

EXHIBIT 40, PAGE 1327

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 195 of 326
Branch :ORI,User :DDEL                     Comment:                                              Station Id :DMCL



Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 196 of 326
Branch :ORI,User :DDEL                          Comment:                                     Station Id :DMCL



Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 197 of 326
Branch :ORI,User :DDEL                    Comment:                                    Station Id :DMCL



ORANGE,CA
Document: CO 13358.1193

Page 11 of 20

197

002150

Printed on 8/29/2018 9:50:14 AM

EXHIBIT 40, PAGE 1330

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 198 of 326
Branch :ORI,User :DDEL                    Comment:                              Station Id :DMCL



ORANGE,CA
Document: CO 13358.1193

Page 12 of 20

Printed on 8/29/2018 9:50:15 AM

198
002151                          EXHIBIT 40, PAGE 1331

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 199 of 326
Branch :ORI,User :DDEL                    Comment:                              Station Id :DMCL



ORANGE,CA
Document: CO 13358.1193

Page 13 of 20

Printed on 8/29/2018 9:50:15 AM

199

002152                        EXHIBIT 40, PAGE 1332

Branch :ORI,User :DDEL                          Comment:                                    Station Id :DMCL



Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 201 of 326
Branch :ORI,User :DDEL                   Comment:                                    Station Id :DMCL



ORANGE,CA
Document: CO 13358.1193

Page 15 of 20

Printed on 8/29/2018 9:50:17 AM

201

002154

EXHIBIT 40, PAGE 1334

FIRST FLOOR

BUILDING TYPE A

ORANGE,CA
Document: CO 13358.1193

Page 16 of 20

Printed on 8/29/2018 9:50:18 AM

202
002155

EXHIBIT 40, PAGE 1335

Branch :ORI,User :DDEL                          Comment:                                              Station Id :DMCL



002156                          EXHIBIT 40, PAGE 1336

Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 204 of 326
Branch :ORI,User :DDEL                    Comment:                                    Station Id :DMCL



Case 8:21-bk-11710-ES    Doc 105-1    Filed 06/01/22    Entered 06/01/22 09:54:17    Desc
Exhibit Part 2 of 2    Page 205 of 326
Branch :ORI,User :DDEL                          Comment:                                      Station Id :DMCL



ORANGE,CA
Document: CO 13358.1193
Page 19 of 20
Printed on 8/29/2018 9:50:20 AM
205
002158
EXHIBIT 40, PAGE 1338

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 206 of 326
Branch :ORI,User :DDEL                          Comment:                                      Station Id :DMCL



FIRST FLOOR

BUILDING TYPE B



Tax Map - myFirstAm                                                                                                      https://www.myfirstam.com/Polygon/MapSearch





Tax Map                          16222 Monterey Ln #376, Huntington Beach, CA 92649

This report is only for the myFirstAm user who applied for it. No one else can rely on it. As a myFirstAm user, you already agreed to our disclaimer regarding third party property information accuracy. You can view it here: www.myfirstam.com/Security/ShowEULA. ©2005-2019 First American Financial Corporation and/or its affiliates. All rights reserved.

002161                      EXHIBIT 40, PAGE 1341



Units 1, 2, 3 and 4 of Lot 2 of the following:

All that certain land situated in the State of California, County of Orange, City of Huntington Beach, described as follows:

Proposed Tract No. 10542, being a subdivision of the following:

A portion of the northeast one quarter (1/4) of the northwest one quarter (1/4) of Section 20, Township 5 south, Range 11 west, in the Rancho Las Bolsa Chica, as shown on a map recorded in book 51, page 13 of Miscellaneous Maps, records of said Orange County, being described as follows:

Parcel 1 of a map filed in book 108, page 48 of Parcel Maps.

NOTICE OF COMPLIANCE WITH CONDITIONS ON TRACT

AUTHORIZATION FOR RELEASE FOR RECORDING

TO:        City Clerk                              Date _____

FROM:      PLANNING DEPARTMENT
           James W. Palin

TRACT NO. _____

RECREATION & PARKS FEES PAID _____

Other: _____

                                    _____
                                         (Signature)

209

002162                    EXHIBIT 40, PAGE 1342



210

EXHIBIT 40, PAGE 1343



002164          EXHIBIT 40, PAGE 1344



EXHIBIT 40, PAGE 1345



EXHIBIT 40, PAGE 1346

SHEET 1 OF 2 SHEETS

# TRACT NO. 10542

IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA

BEING A SUBDIVISION OF PARCEL 1 AS SHOWN ON A MAP RECORDED

IN BOOK 116, PAGES 47, 48 OF PARCEL MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA

MADOLE & ASSOCIATES, INC.

J.M. MADOLE R.C.E. 14614

NOVEMBER, 1976



RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

ROBERT P. WARMINGTON
16592 Hale Avenue
Irvine, California 92714

$5.00

BK 13383 PG 1868

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8.01 A.M.   NOV 6 1979

LEE A. BRANCH, County Recorder

---

(Space above line for Recorder's use only)

## COVENANT RUNNING WITH THE LAND

THIS INSTRUMENT is made this 19th day of October, 1979, by HOUSER BROS. CO., a California limited partnership ("Houser") whose sole general partners are Clifford C. Houser and Vernon F. Houser.

### RECITALS

A.   Houser is the owner of certain real property in the City of Huntington Beach, County of Orange, State of California, described as Parcels 1 and 2 as shown on a Parcel Map recorded in Book 108, Pages 47 and 48, inclusive, of Parcel Maps in the Office of the County Recorder of said County (hereinafter "Parcel 1" and "Parcel 2" respectively).

B.   Concurrently herewith, Houser is leasing Parcel 1 to ROBERT P. WARMINGTON, a married man ("Warmington") by a Ground Lease of even date herewith (the "Ground Lease"), a memorandum of which is being recorded concurrently or substantially concurrently with this instrument.

C.   Pursuant to the Ground Lease, Warmington may use Parcel 1 to develop thereon single-family residences or condominiums.  The Ground Lease further provides that access to Parcel 1 from Edinger Avenue (the abutting public street) is to be had over a portion of Monterey Lane, a private street located on right-of-way easements on either side of the southerly boundary of Parcel 1 with Parcel 2.  The maintenance of the portion of Monterey Lane as to which Warmington (and the residents of homes or condominiums to be built by Warmington on Parcel 1) has easement rights is the responsibility of Houser as Landlord under the Ground Lease as provided therein.

D.   It is the intention of Houser and Warmington that Houser's obligations under the Ground Lease also run with and bind a portion of Parcel 2 and the successive owners thereof as described in this instrument.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt of which is hereby acknowledged, including without limitation, Warmington's execution of the Ground Lease, Houser hereby covenants, declares and agrees that Houser's obligations as

-1-

ORANGE,CA
Document: CA 13383.1868

Page 1 of 3

Printed on 5/8/2020 11:37:33 AM

216
002169

EXHIBIT 40, PAGE 1349

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 57 of 418   Page ID #:3968

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Branch :AH,User:2004                    Comment:                         Station Id :M3Y7
                        Exhibit Part 2 of 2   Page 217 of 326

BK 13383 PG 1869

Landlord concerning Monterey Lane as set forth in Section 7.9 of the unrecorded Option Agreement between Landlord and Tenant, as optionor and optionee respectively, which preceded the execution of the Ground Lease, hereby incorporated herein by reference, are also covenants running with the portion of Parcel 2 described by extending the southerly boundary of Parcel 1 parallel to Edinger Avenue to the westerly boundary of Parcel 2, and every portion of the area so described (the "Covenant Area"), and shall bind the Covenant Area, Houser and Houser's heirs, assigns, representatives and successors in interest for the benefit of Warmington and the leasehold estate in Parcel 1 under the Ground Lease and any portions into which it may be divided, by Residential Leases (as defined in the Ground Lease) or otherwise. In the event of a breach of the foregoing covenants, or any of them, Warmington may seek any remedy available at law or in equity, including without limitation an action seeking damages, to seek specific enforcement thereof, or to enjoin the breach or continued breach thereof. It is specifically understood that any of the foregoing remedies may be employed at the option of Warmington, and the failure to do so upon any one or more of any such breach shall not be a waiver of the right to employ any of such remedies upon the continuance of such breach or any subsequent breach. As used in the foregoing, "Warmington" shall include any of Warmington's heirs, successors or representatives as well as any assignee or sublessee of Warmington's leasehold estate under the Ground Lease in Parcel 1 or any portion into which it may be divided and any leasee under a Residential Lease, Consumer Sublease or Affiliate Sublease (as defined in the Ground Lease); provided, however, lessees under such Residential Leases and sublessees under such Consumer Subleases shall not have the right to enforce such covenant except on the majority vote of the association of such lessees or sublessees formed by Warmington to manage Parcel 1. If Warmington or such lessees under such Residential Leases acquire the fee interest in all or a portion of Parcel 1, the benefit of the covenant described above shall run in favor of such fee interests and their successors therein, but subject to the same restriction concerning enforceability by residents of Parcel 1 set forth above. Nothing herein shall relieve Warmington or lessees under such Residential Leases or sublessees under such Consumer Subleases from their obligations to pay for a share in the maintenance of the portion of Monterey Lane used to gain access to Parcel 1.

IN WITNESS WHEREOF, Houser has executed this instrument on the day and year first above written.

HOUSER BROS. CO., a California
limited partnership by its
general partners

By _____
   Clifford C. Houser

By _____
   Vernon F. Houser

Branch :AFH,User :2004                    Comment:                              Station Id :M3Y7

BK 13383 PG 1870

STATE OF CALIFORNIA   )
                      )  ss.
COUNTY OF ORANGE      )

On this *14th* day of *October*, 1979, before me, a Notary Public, personally appeared Clifford C. Houser and Vernon F. Houser, known to me to be the general partners of the partnership that executed the within instrument, and acknowledged to me that such partnership executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
CHRISTINE A. BELMONTE
Notary Public-California
ORANGE COUNTY
My Commission Expires March 14, 1981

*Christine A. Belmonte*
Notary Public in and for said
County and State

- 3 -

218
002171

EXHIBIT 40, PAGE 1351

# Title Chain & Lien Report

### 4476 Alderport Dr #53, Huntington Beach, CA 92649-2288
APN: 937-630-53

Orange County Data as of: 07/14/2020

| Search Start Date: | 01/01/1967 | Start Date: | 01/01/1967 |
| Search End Date: | 08/03/2020 | End Date: | 08/03/2020 |

| Date | Type | Grantor | Grantee | Document # | Doc Ref. |
|------|------|---------|---------|-----------|----------|
| 11/07/1980 | Plat, County Miscellaneous Plat | Houser Bros | Warmington Robert | 13824.1253 | |
| 11/07/1980 | Plat, County Miscellaneous Plat | Warmington Robert | Robert P Warmington | 13824.1256 | |
| 11/07/1980 | Lease | Houser Bros | Warmington Robert | 13824.1259 | 121726 |
| 03/22/1983 | Assignment Of Lease Or Sublease | Turner John F | Cal State | 1983.121726 | |
| 11/07/1980 | Lease | Warmington Robert | Turner John F | 13824.1274 | 331538 |
| 05/22/2007 | Assignment Of Lease Or Sublease | Walther Virginia | Rider Larry W | 2007.331538 | |
| 11/07/1980 | Deed | Robert P Warmington | Warmington Robert | 13824.1291 | |
| 11/07/1980 | Deed | Robert P Warmington | Turner John F | 13824.1294 | |
| 11/07/1980 | Deed Of Trust | Turner John F | 4476 Alderport | 13824.1299 | 160268 |
| 04/18/1983 | Assignment | | | 1983.160268 | |
| 11/07/1980 | Plat, County Miscellaneous Plat | Houser Bros | Warmington Robert | 13824.1306 | |
| 11/07/1980 | Plat, County Miscellaneous Plat | Warmington Robert | Robert P Warmington | 13824.1309 | |
| 01/25/1982 | Lien | Turner John F | | 1982.28038 | 229508 |
| 04/27/1987 | Release | Turner John F | | 1987.229508 | |
| 03/22/1983 | Deed Of Trust | Turner John F | Cal State | 1983.121725 | 158849 |
| 04/15/1983 | Request For Notice | | | 1983.158849 | |
| 09/15/1986 | Assignment | | | 1986.422792 | |
| 02/03/1987 | Office Information, (Additional Document Information) | Ticor | | N/A | |
| 04/23/1987 | Deed Of Trust | Turner John F | Mercury Sav | 1987.223072 | 452800 |
| 08/22/1991 | Assignment | | | 1991.452800 | |
| 04/27/1987 | Substitution Of Trustee | | | 1987.229509 | |
| 04/27/1987 | Reconveyance | | | 1987.229510 | |
| 04/27/1987 | Assignment | Cal State | Turner John F | 1987.229511 | |
| 08/20/1987 | Reconveyance | | | 1987.473448 | |
| 09/24/1998 | Assignment Of Lease Or Sublease | G HB Investors | Wertin Trust | 1998.644009 | |
| 09/24/1998 | Assignment Of Lease Or Sublease | Wertin Trust | Brief Trust | 1998.644010 | |
| 07/23/1999 | Assignment Of Lease Or Sublease | Ghb Investors & | BS Investors LLC | 1999.542301 | |



© 2020 FIRST AMERICAN DATA TREE AND/OR ITS AFFILIATES. ALL RIGHTS RESERVED.

PAGE 1 OF 4

002172

EXHIBIT 40, PAGE 1352





Recorded in Official Records, County of Orange, California
Gary L. Granville, Clerk/Recorder

30.00

19980644010 4:03pm 09/24/98

005 11009904 11 28
A34 9 6.00 24.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

BARRY BRIEF, Trustee
c/o Laguna Monarch Group, Inc.
10 Monarch Bay Plaza, Suite B
Monarch Beach, CA 92629

9820299 - AS

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN #_____

Documentary Transfer Tax:___$0___    NO TRANSFER TAX DUE
                                      Term of Lease less than
                                      99 years

### MEMORANDUM OF ASSIGNMENT OF GROUND LEASE AND SUBLEASES

1.     This Memorandum of Assignment of Ground Lease
("Memorandum") is made and entered into by and between BARBARA D.
WERTIN SEPARATE PROPERTY TRUST DATED APRIL 21, 1995 ("Assignor"),
and the BARRY BRIEF FAMILY TRUST DATED MAY 11, 1993 ("Assignee").

2.     Assignor has assigned to Assignee all of its
right, title and interest in and to an undivided 78.34% interest
in a certain ground lease and subleases covering real property
located in the City of Huntington Beach, County of Orange, State
of California, as more particularly described on attached
Exhibit "A", which is incorporated herein by this reference, [unrecorded]
pursuant to the terms and conditions of that certain Assignment
and Assumption of Interest in Ground Lease and Subleases dated
effective September 24, 1998, by and between Assignor and
Assignee (the "Assignment").  The terms and conditions of the
Assignment are incorporated herein by this reference.

Executed on _September 9_, 1998 at _Irvine_____,
California.

"ASSIGNOR"                      "ASSIGNEE"

BARBARA D. WERTIN SEPARATE       BARRY BRIEF FAMILY TRUST
PROPERTY TRUST DATED APRIL       DATED MAY 11, 1992
21, 1995
                                 By: _Barry Brief_
By: _Barbara D Wertin_               Barry Brief
    Barbara D. Wertin             Its:  Trustee
Its:  Trustee

002173                    EXHIBIT 40, PAGE 1353

STATE OF CALIFORNIA )
              ) ss.
COUNTY OF ORANGE )

On _September 9, 1998_, before me,
_____, Notary Public, personally
appeared BARBARA D. WERTIN, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
authorized signature(s) on the instrument the person(s), or the
entity on behalf of which the person(s) acted, executed the
instrument.

_____
NOTARY PUBLIC

(seal)

CHRISTINE JAMESON
Comm. # 1189752
NOTARY PUBLIC - CALIFORNIA
Orange County
My Comm. Expires Aug. 7, 2002

CHRISTINE JAMESON
Comm. # 1189752
NOTARY PUBLIC - CALIFORNIA
Orange County
My Comm. Expires Aug. 7, 2002


STATE OF CALIFORNIA )
              ) ss.
COUNTY OF ORANGE )

On _9-10-98_, before me,
_W.S. BETTINI_, Notary Public, personally
appeared BARRY BRIEF, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person whose name
is subscribed to the within instrument and acknowledged to me
that he executed the same in his authorized capacity, and that by
his authorized signature on the instrument the person, or the
entity on behalf of which the person acted, executed the
instrument.

_____
NOTARY PUBLIC

(seal)

W. S. BETTINI
Commission # 1127124
Notary Public — California
Orange County
My Comm. Expires Feb 15, 2001

2

221

EXHIBIT 40, PAGE 1354

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON
THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS
AS FOLLOWS:

NAME OF NOTARY:                **CHRISTINE JAMESON**

COUNTY WHERE BOND IS FILED:    **ORANGE**

DATE COMMISSION EXPIRES:       **AUG 7, 2002**

COMMISSION NO.:                **1189752**

MANUFACTURERS/VENDOR NO.       **VSI1**

PLACE OF EXECUTION:   SANTA ANA, CALIFORNIA
DATE:     September 24, 1998

BY: _____

FIRST AMERICAN TITLE INSURANCE COMPANY

222

002175          EXHIBIT 40, PAGE 1355

Alta Plain
Language Commitment

**OR-9820299**

TITLE OFFICER - SWIERCZEWSKI

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, **COUNTY OF ORANGE, CITY OF HUNTINGTON BEACH,** DESCRIBED AS FOLLOWS:

PARCEL 1:

UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON A CONDOMINIUM PLAN (THE "CONDOMINIUM PLAN") RECORDED IN BOOK 13358, PAGES 1193 AND FOLLOWING OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 2:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN THE COMMON AREA OF LOTS 1 AND 2 OF TRACT NO. 10542, AS SHOWN ON A MAP RECORDED IN BOOK 456, PAGES 49 AND 50 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, EXCEPTING THAT PORTION CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 3:

THOSE PORTIONS OF UNITS 1 THROUGH 80 INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 4:

AN UNDIVIDED EIGHTY/EIGHTIETHS (80/80) INTEREST IN AND TO THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

PARCEL 5:

AN EASEMENT FOR THE EXCLUSIVE USE AND OCCUPANCY OF THOSE PORTIONS OF THE RESTRICTED COMMON AREA, AS DEFINED ON SAID CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNITS.

PARCEL 6:

A NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THE COMMON AREA AS DEFINED ON SAID CONDOMINIUM PLAN, EXCEPT THE RESTRICTED COMMON AREA.

PAGE 4

002176          EXHIBIT 40, PAGE 1356

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

THE ESTATE OR INTEREST IN THE LAND DESCRIBED IN THIS COMMITMENT IS:

GROUND LEASEHOLD AND SUBLEASEHOLD ESTATES AS TO PARCELS 1 AND 2, SAID ESTATES BEING MORE PARTICULARLY DESCRIBED AS THE LESSEES' INTERESTS UNDER THOSE CERTAIN GROUND LEASES SET FORTH IN SUBPARAGRAPH (A) HEREIN BELOW, AND SUBLESSORS' INTERESTS UNDER THOSE CERTAIN SUBLEASES SET FORTH IN SUB-PARAGRAPH (B) BELOW;

A REMAINDER INTEREST IN A DETERMINABLE FEE ESTATE AS TO PARCELS 3 AND 4;

AN EASEMENT AS TO PARCELS 5 AND 6;

(A)     THOSE CERTAIN GROUND LEASES, DATED AUGUST 1, 1980, EXECUTED BY HOUSER BROS. CO., A LIMITED PARTNERSHIP ORGANIZED UNDER THE LAWS OF THE STATE OF CALIFORNIA, IN WHICH CLIFFORD C. HOUSER AND VERNON F. HOUSER CONSTITUTE THE SOLE GENERAL PARTNERS, AS LANDLORD, AND BY ROBERT P. WARMINGTON, AS TENANT, FOR THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT |
|------|------|------|------------|
| 1 | 13754 | 263 | |
| 2 | 14091 | 1031 | |
| 3 | 14045 | 118 | |
| 4 | 13733 | 198 | |
| 5 | 13760 | 942 | |
| 6 | 13982 | 417 | |
| 7 | 13754 | 297 | |
| 8 | 13726 | 1238 | |
| 9 | 13822 | 1546 | |
| 10 | 13773 | 10 | |
| 11 | | | 82-128057 |
| 12 | 13807 | 1569 | |
| 13 | 13780 | 354 | |
| 14 | 13797 | 1088 | |
| 15 | 13780 | 462 | |
| 16 | 13726 | 1310 | |
| 17 | 13763 | 259 | |
| 18 | 13915 | 190 | |
| 19 | 13997 | 346 | |
| 20 | 13807 | 1669 | |
| 21 | 13733 | 278 | |
| 22 | 13775 | 235 | |
| 23 | 13803 | 587 | |
| 24 | 14038 | 692 | |
| 25 | 13793 | 955 | |
| 26 | 13814 | 607 | |

PAGE 6

002177          EXHIBIT 40, PAGE 1357

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 27 | 13789 | 1600 |
| 28 | 13787 | 1834 |
| 29 | 13778 | 173 |
| 30 | 13896 | 1090 |
| 31 | 14091 | 1139 |
| 32 | 13726 | 1346 |
| 33 | 14005 | 1903 |
| 34 | 14048 | 1460 |
| 35 | 13861 | 723 |
| 36 | 13814 | 666 |
| 37 | 13768 | 1032 |
| 38 | 13793 | 1179 |
| 39 | 13818 | 1665 |
| 40 | 13783 | 1875 |
| 41 | 13824 | 1312 |
| 42 | 13867 | 798 |
| 43 | 13726 | 1102 |
| 44 | 14072 | 1910 |
| 45 | 13789 | 1547 |
| 46 | 14066 | 756 |
| 47 | 14038 | 637 |
| 48 | 13933 | 1529 |
| 49 | 13825 | 1973 |
| 50 | 13783 | 1732 |
| 51 | 13916 | 1672 |
| 52 | 14094 | 1929 |
| 53 | 13824 | 1259 |
| 54 | 13780 | 407 |
| 55 | 13780 | 514 |
| 56 | 14094 | 1874 |
| 57 | 13726 | 1208 |
| 58 | 14091 | 1084 |
| 59 | 13787 | 1781 |
| 60 | 13795 | 966 |
| 61 | 13803 | 335 |
| 62 | 13831 | 117 |
| 63 | 14250 | 1197 |
| 64 | 14191 | 1652 |
| 65 | 13726 | 1136 |
| 66 | 13765 | 1665 |
| 67 | 13803 | 640 |
| 68 | 14031 | 1108 |
| 69 | 13797 | 1038 |
| 70 | 14091 | 977 |
| 71 | 14034 | 1806 |
| 72 | 14130 | 1508 |
| 73 | 13785 | 1959 |
| 74 | 13977 | 569 |
| 75 | 14091 | 923 |
| 76 | 14064 | 1068 |
| 77 | 13726 | 1274 |

PAGE 7

002178            EXHIBIT 40, PAGE 1358

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 78 | 13726 | 1172 |
| 79 | 14091 | 869 |
| 80 | 13780 | 599 |

(B)  THOSE CERTAIN SUBLEASES DATED AUGUST 1, 1980, EXECUTED BY ROBERT
P. WARMINGTON, AS SUBLESSOR, AND BY VARIOUS PARTIES, AS SUBLESSEES, FOR
THE TERM ENDING DECEMBER 31, 2059, UPON THE TERMS, COVENANTS AND
CONDITIONS THEREIN CONTAINED, RECORDED AS FOLLOWS IN OFFICIAL
RECORDS OF SAID ORANGE COUNTY:

| UNIT | BOOK | PAGE | INSTRUMENT ORIGINAL |
|---|---|---|---|
| SUBLESSEE | | | |
| 1 | 13754 | 243 | |
| 2 | 14091 | 1066 | |
| 3 | 14045 | 133 | |
| 4 | 13733 | 216 | AND |
| | 13754 | 52 | |
| 5 | 13760 | 917 | |
| 6 | 13982 | 432 | |
| 7 | 13754 | 312 | |
| 8 | 13726 | 1256 | AND |
| | 13754 | 69 | |
| 9 | 13822 | 1561 | |
| 10 | 13773 | 25 | |
| 11 | | | 82-128058 |
| 12 | 13807 | 1584 | |
| 13 | 13780 | 369 | |
| 14 | 13797 | 1103 | |
| 15 | 13780 | 477 | |
| 16 | 13726 | 1328 | AND |
| | 13754 | 86 | |
| 17 | 13763 | 234 | |
| 18 | 13915 | 205 | |
| 19 | 13997 | 361 | |
| 20 | 13807 | 1684 | |
| 21 | 13733 | 296 | |
| 22 | 13775 | 250 | |
| 23 | 13803 | 602 | |
| 24 | 14038 | 707 | |
| 25 | 13793 | 970 | |
| 26 | 13814 | 622 | |
| 27 | 13789 | 1615 | |
| 28 | 13787 | 1849 | |
| 29 | 13778 | 188 | |
| 30 | 13896 | 1125 | |
| 31 | 14091 | 1154 | |
| 32 | 13726 | 1364 | AND |
| | 13754 | 120 | |
| 33 | 14005 | 1919 | |

PAGE 8

002179
EXHIBIT 40, PAGE 1359

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

| | | |
|---|---|---|
| 34 | 14048 | 1475 |
| 35 | 13861 | 738 |
| 36 | 13814 | 681 |
| 37 | 13768 | 1047 |
| 38 | 13793 | 1194 |
| 39 | 13818 | 1680 |
| 40 | 13783 | 1800 |
| 41 | 13824 | 1327 |
| 42 | 13867 | 813 |
| 43 | 13726 | 1120 |
| 44 | 14072 | 1925 |
| 45 | 13789 | 1562 |
| 46 | 14066 | 771 |
| 47 | 14038 | 652 |
| 48 | 13933 | 1544 |
| 49 | 13826 | 1 |
| 50 | 13783 | 1747 |
| 51 | 13916 | 1687 |
| 52 | 14094 | 1944 |
| 53 | 13824 | 1274 |
| 54 | 13780 | 422 |
| 55 | 13780 | 529 |
| 56 | 14094 | 1889 |
| 57 | 13726 | 1226 |
| 58 | 14091 | 1099 |
| 59 | 13787 | 1796 |
| 60 | 13795 | 981 |
| 61 | 13803 | 350 |
| 62 | 13831 | 132 |
| 63 | 14250 | 1212 |
| 64 | 14191 | 1667 |
| 65 | 13726 | 1154 |
| 66 | 13765 | 1660 |
| 67 | 13803 | 655 |
| 68 | 14031 | 1123 |
| 69 | 13797 | 1053 |
| 70 | 14091 | 992 |
| 71 | 14034 | 1821 |
| 72 | 14180 | 1523 |
| 73 | 13785 | 1974 |
| 74 | 13977 | 584 |
| 75 | 14091 | 938 |
| 76 | 14064 | 1083 |
| 77 | 13726 | 1292 |
| 78 | 13726 | 1190 |
| 79 | 14091 | 884 |
| 80 | 13780 | 614 |

PAGE 9

002180   EXHIBIT 40, PAGE 1360

Alta Plain
Language Commitment

**OR-9820299**
TITLE OFFICER - SWIERCZEWSKI

NOTE:  THE LESSEE'S INTEREST UNDER SAID LEASES AND THE SUB-LESSOR'S INTEREST
UNDER SAID SUBLEASE HAS BEEN ASSIGNED TO G/HB INVESTORS, A CALIFORNIA LIMITED
PARTNERSHIP BY ASSIGNMENT WHICH RECORDED SEPTEMBER 30, 1986 AS INSTRUMENT
NO. 86-456266 OF OFFICIAL RECORDS, REFERENCE BEING HEREBY MADE TO THE RECORD
THEREOF FOR FULL PARTICULARS.

PAGE 10

002181                        EXHIBIT 40, PAGE 1361

8691                    BK 13824 PG 1253

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

Houser Bros. Co.
17610 Beach Boulevard
Suite 32
Huntington Beach, California

> RECORDED AT REQUEST ON
> FIRST AMER. TITLE INS. CO.
> IN OFFICIAL RECORDS OF
> ORANGE COUNTY, CALIFORNIA
> 8:00 A.M. NOV 7 1980
> LEE A. BRANCH, County Recorder

## PARTIAL CANCELLATION OF MASTER LEASE

HOUSER BROS. CO., a limited partnership, as Landlord, and ROBERT P. WARMINGTON, as Tenant, hereby cancel, effective when this instrument is recorded in the Office of the County Recorder of Orange County, California, that certain Ground Lease dated October 19, 1979, a Short Form-Memorandum of which was recorded in Book 13424, Page 499, Official Records of Orange County, California, with respect to those portions of Lots 1 and 2 of Tract 10542 in the City of Huntington Beach, County of Orange, State of California, as shown on a Map recorded in Book 456, Pages 49 and 50 of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California, described on Exhibit A attached hereto.

IN WITNESS WHEREOF, HOUSER BROS. CO. and ROBERT P. WARMINGTON have executed this instrument as of August 1, 1980.

HOUSER BROS. CO.

By _____

By _____

_____
ROBERT P. WARMINGTON

EXHIBIT 40, PAGE 1362

BK 13824 PG 1254

STATE OF CALIFORNIA   )
                      ) ss.
COUNTY OF ORANGE      )

On _____ *Aug 19* , 1980, before me, the undersigned,
a Notary Public in and for said County and State, personally
appeared _____ VERNON F. HOUSER _____ and
_____ CLIFFORD C. HOUSER _____ , known to me to be
_____ two _____ of the partners of the limited
partnership that executed the within instrument, and
acknowledged to me that such limited partnership executed
the same.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

*Pearl L. Hunt*
Notary Public in and for
said County

[SEAL]


STATE OF CALIFONRIA   )
                      ) ss.
COUNTY OF ORANGE      )

On _____ August 1 _____ , 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

*Pearl L. Hunt*
Notary Public in and for
said County

[SEAL]

2



002183



EXHIBIT 40, PAGE 1363

BK 13824 PG 1255

## EXHIBIT A

### Parcel 1

Unit 53, as shown and defined on a Condominium Plan ('the "Condominium Plan") recorded in Book 13358, Pages 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

### Parcel 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

### Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

RECORDED D

002184                    EXHIBIT 40, PAGE 1364

8692

BK 13824 PG 1256

$5.00

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California  92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

PARTIAL CANCELLATION OF SUBLEASE

ROBERT P. WARMINGTON, as Landlord, and THE ROBERT P.
WARMINGTON CO., a California corporation, as Tenant, hereby
cancel, effective when this instrument is recorded in the
Office of the County Recorder of Orange County, California,
that certain Sublease dated October 19, 1979, a Short Form
Memorandum of which was recorded in Book 13424, Page 504,
Official Records of Orange County, California, with respect
to those portions of Lots 1 and 2 of Tract 10542, in the City
of Huntington Beach, County of Orange, State of California,
as shown on a map recorded in Book 456, Pages 49 and 50 of
Miscellaneous Maps, in the Office of the County Recorder of
Orange County, California, described on Exhibit A attached
hereto.

IN WITNESS WHEREOF, ROBERT P. WARMINGTON and THE
ROBERT P. WARMINGTON CO. have executed this instrument as
of August 1, 1980.

Robert P. Warmington

THE ROBERT P. WARMINGTON CO.

By

By

232

002185

EXHIBIT 40, PAGE 1365

BK 13824 PG 1257

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE       )

On _August 1_ , 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.

OFFICIAL SEAL
YVONNE S. COOK
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires June 26, 1981

[SEAL]

Notary Public in and for
said County

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF ORANGE       )

On _August 1_ , 1960, before me, the undersigned, a
Notary Public in and for said State, personally appeared
_____OLIVER N. CRARY_____ , known to me to be
the _Vice President_ , and _WILLIAM J. PITTMAN_ ,
known to me to be the _Secretary_ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

OFFICIAL SEAL
YVONNE S. COOK
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires June 26, 1981

[SEAL]

Notary Public in and for said
County

2

EXHIBIT 40, PAGE 1366

BK 13824PG 1258

## EXHIBIT A

### Parcel 1

Unit 43, as shown and defined on a Condominium Plan (the "Condominium Plan") recorded in Book 13358, Pages 1193, et seq., Official Records of Orange County, California, excepting that portion consisting of buildings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

### Parcel 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

### Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements.

RECORDED

002187

EXHIBIT 40, PAGE 1367



_my_ **FirstAm**®    **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

| | |
|---|---|
| State: | CA |
| County: | Orange |
| Document Type: | Record of Survey - Book.Page |
| Book: | 30 |
| Page: | 40 |

Limitation of Liability for Informational Report

**IMPORTANT – READ CAREFULLY:** THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION  OF THE CONDITION OF TITLE TO REAL PROPERTY.   IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY  REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY.  THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT  THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON.  THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S  PRIOR WRITTEN CONSENT.  FIRST AMERICAN DOES NOT REPRESENT  OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS.  AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S  SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT.  RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN  WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION  OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.

©2005-2022 First American Financial Corporation and/or its affiliates. All rights reserved.

235

002188                    EXHIBIT 40, PAGE 1368

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 236 of 326



EXHIBIT 40, PAGE 1369

8693
$ 17.⁰⁰

BK 13824 PG 1259

Recorded at the Request of and
When Recorded Mail To:

Robert P. Warmington
16592 Hale Avenue
Irvine, CA 92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recorder

No Consideration
Lease Is For a Definite Term

AP 178-011-01

## GROUND LEASE

THIS GROUND LEASE is made this 1st day of August, 1980, by
and between HOUSER BROS. CO., a limited partnership
organized and existing under the laws of the State of
California in which Clifford C. Houser and Vernon F.
Houser constitute the sole general partners whose address
is Suite 204, 610 East Seventeenth Street, Santa Ana,
California 92701 (herein termed the "Landlord"), and
Robert P. Warmington whose address is 16592 Hale Avenue,
Irvine, CA 92714.

W I T N E S S E T H:

1.  PROPERTY LEASED.  For and in consideration of the
payment of the rents and taxes and other charges and for
the performance of all of the covenants and conditions of
this Lease by Tenant, Landlord hereby leases to Tenant
those portions of Lots 1 and 2 of Tract 10542 in the City
of Huntington Beach, County of Orange, State of
Californ , as shown on a map recorded in Book 456, Pages
49 and 50 of Miscellaneous Maps, in the Office of the
County Recorder of Orange County, California, described as
follows:

Parcel 1

    Unit 23 , as shown and defined on a Condominium
Plan (the "Condominium Plan") recorded in Book 13358,
Pages 1193, et seq., Official Records of Orange
County, California, excepting that portion consisting
of buildings and other improvements.

Parcel 2

    An undivided one-eightieth (1/80) interest in the
Common Area as shown and defined on the Condominium
Plan, excepting that portion consisting of buildings
and other improvements.

Parcel 3

    An easement for the exclusive use and occupancy
of those portions of the Restricted Common Area as
defined on said Condominium Plan for entry and
staircases and attic space relating to said Unit,
excepting that portion consisting of buildings and
other improvements.

WPN:4077A

002190

EXHIBIT 40, PAGE 1370

BK 13824 PG 1260

Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements,

(hereinafter referred to as the "leased land").

SUBJECT TO:

(a) Current taxes and assessments.

(b) Covenants, conditions, restrictions, reservations, rights, rights-of-way and easements of record.

2. TERM OF LEASE. The leased land is leased for a basic term commencing on the date this Ground Lease is recorded in the Office of the County Recorder of Orange County, California and ending on December 31, 2059, subject, however, to earlier termination as hereinafter provided.

3. RENTAL. Tenant agrees to pay to Landlord, as rental for the use and occupancy of said leased land during the term of this lease, the annual sum of Nine Hundred DOLLARS ($900) in monthly installments of $75.00 each, in advance, on the first day of said calendar month of said term; provided, however, if said term commences on other than the first day of a calendar month the first installment shall be paid on such commencement date in an appropriately reduced amount. Said rent is subject to adjustment at the time and in the manner as herein provided for in Article 21 entitled "Rental Adjustment". All rentals hereunder and charges with respect thereto shall be paid in lawful money of the United States of America.

4. TAXES AND ASSESSMENTS. In addition to the rents above provided, Tenant shall pay, prior to the delinquency date thereof, all taxes and general and special assessments of every description which, during the term of this Lease, may be levied upon or assessed against the leased land and all interest therein and improvements and other property thereon, whether belonging to Landlord or Tenant, and Tenant agrees to protect and hold harmless the Landlord and the leased land and all interest therein and improvements thereon from any and all such taxes and assessments, including any interest, penalties and other expenses which may be thereby imposed and from any lien therefor or sale or other proceedings to enforce payment thereof.

5. USE OF LEASED LAND. Tenant shall use the leased land for any purposes permitted under the zoning and other land use laws and regulations applicable thereto. Tenant shall not use or permit any person to so use the leased land and the improvements thereon, or any portion thereof, as to disturb the neighborhood or occupants of adjoining property, or to constitute a nuisance, or to violate any public law, ordinance or regulation from time to time applicable thereto.

WPN: 4077A                                2

238
002191                    EXHIBIT 40, PAGE 1371

BK 13824 P9 1261

6. **IMPROVEMENTS**. When any construction is commenced on the leased land, the same shall be prosecuted with reasonable diligence until completed and shall conform to all public laws, ordinances and regulations applicable thereto and shall be constructed and completed at the sole cost and expense of Tenant and without any cost, expense or liability of landlord whatsoever.

7. **MAINTENANCE OF LEASED LAND**. Landlord shall not be obligated to make any repairs, alterations, additions or improvements in or to or upon or adjoining the leased land or any structure of other improvement that may be constructed or installed thereon, but Tenant shall, at all times during the full term of this Lease and at its sole cost and expense, keep and maintain all buildings, structures and other improvements on the leased land, if any, in good order and repair, and the whole of the leased land and all improvements thereto free of weeds and rubbish and in a clean, sanitary and neat condition, and Tenant shall construct, maintain and repair all facilities and other improvements which may be required at any time by law upon or adjoining or in connection with or for the use of the leased land or any part thereof, and Tenant shall make any and all additions to or alterations in any buildings and structures on said premises which may be required and shall otherwise observe and comply with any and all public laws, ordinances and regulations for the time being, applicable to the leased land, and Tenant agrees to indemnify and save harmless the Landlord against all actions, claims and damages by reason of Tenant's failure to keep and maintain said premises and any buildings and improvements thereon as hereinabove provided, or by reason of its nonobservance or nonperformance of any law, ordinance and regulation applicable thereto.

8. **RESTORATION OF IMPROVEMENTS**. If, during the term hereof, the dwelling, structures or other improvements, if any, constructed by or for Tenant on the leased land, or any part thereof, shall be damaged or destroyed by fire or other casualty, Tenant may, at its cost and expense, either (a) repair or restore said dwelling and improvements; or (b) subject to the consent of any encumbrancer, if any, tear down and remove the same from the leased land.

9. **LIENS AND CLAIMS**. Tenant shall not suffer or permit to be enforced against Landlord's title to the leased land, or any part thereof, any lien, claim or demand arising from any work of construction, repair, restoration, maintenance or removal as herein provided or otherwise arising, except liens, claims or demands suffered by or arising from the actions of Landlord, and Tenant shall pay all such liens, claims and demands before any action is brought to enforce the same against said land. Tenant agrees to hold Landlord and the leased land free and harmless from all liability for any and all such liens, claims or demands, together with all costs and expenses, including, but not limited to, reasonable attorneys' fees and court costs incurred by Landlord in connection therewith. Landlord shall have the right at

WPN: 4077A                    3

EXHIBIT 40, PAGE 1372

BK 13824 PG 1262

any time to post and maintain on the leased land such
notices as may be necessary to protect landlord against
liability for all such liens or otherwise.
Notwithstanding anything to the contrary contained in this
Article, if Tenant shall, in good faith, contest the
validity of any such lien, claim or demand, the Tenant
shall, at its expense, defend itself and landlord against
the same and shall pay and satisfy any adverse judgment
that may be rendered thereon before the enforcement
thereof against Landlord or the leased land, and if
Landlord shall require, Tenant shall furnish to Landlord a
surety bond satisfactory to Landlord in an amount equal to
such contested lien, claim or demand, indemnifying
Landlord against liability for same, or if Landlord shall
request, Tenant shall procure and record the bond provided
for in Section 3143 of the California Code of Civil
Procedure, or any comparable statute hereafter enacted
providing for a bond freeing the leased land from the
effect of such lien or claim or action thereon.

10.   LIABILITIES.  Landlord shall not be liable for any
loss, damage or injury of any kind whatsoever to the
person or property of Tenant, or any of Tenant's
employees, guests or invitees or of any other person
whomsoever, caused by any use of the leased land or by any
defect in any building, structure or other improvement
constructed thereon, or arising from any accident on the
leased land or any fire or other casualty thereon, or
occasioned by the failure on the part of Tenant to
maintain said premises in safe condition, or by any
nuisance made or suffered on the leased land, or any
improvements thereto, or by any act or omission of Tenant,
or of any member of Tenant's family or of Tenant's
employees, guests or invitees, or arising from any other
cause whatsoever, and Tenant hereby waives on its behalf
all claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby agrees to indemnify
and save Landlord free and harmless from liability for any
such loss, damage or injury of other persons, and from all
costs, expenses and other charges arising therefrom and in
connection therewith.

11.   LANDLORD PAYING CLAIMS.  Should Tenant fail or refuse
to pay any tax, assessment or other charge upon the leased
land when due and payable as provided herein, or any lien
or claim arising out of the construction, repair,
restoration, maintenance and use of the leased land and
the buildings and improvements thereon, or any other
claim, charge or demand which Tenant has agreed to pay
under the covenants of this Lease, and if after thirty
(30) days written notice from landlord to Tenant and to
its authorized encumbrancer, if any, Tenant or its said
encumbrancer shall fail or refuse to pay such tax,
assessment, lien, claim, charge or demand, or settle or
discharge any action therefor or judgment thereon, and all
costs, expenses and other sums incurred or paid by
Landlord in connection therewith shall be repaid to
Landlord by Tenant upon written demand, together with
interest thereon at the rate of ten (10%) percent per
annum from the date of payment until repaid, and any

WFN: 4077A                        4

EXHIBIT 40, PAGE 1373

BK 13824 PG 1263

default in such repayment shall constitute a breach of the
covenants and conditions of this Lease. Notwithstanding
the forgoing, if Tenant shall in good faith contest the
validity of any tax or assessment levied against the
leased land, then Tenant may withhold payment thereof
pending settlement of its claim or pay the same under
protest; and, in either case, at Tenant's expense, shall
defend itself and landlord against the same and shall pay
and satisfy any adverse judgment that may be rendered
thereon before the enforcement thereof against Landlord or
the leased land.

12.  ASSIGNMENT.  Tenant shall have the right to assign,
sublet or otherwise transfer its interest under this Lease
without the prior written consent of Landlord.
Notwithstanding the foregoing, this Lease or any right
hereunder shall in no case be assigned separate and apart
from the Tenants interest in the improvements located on
the leased land.  Also notwithstanding the foregoing,
Landlord shall accept Tenant's assignee in writing
following a request therefor.

13.  ENCUMBRANCES.  Tenant shall have the right to assign
Tenant's interest in this Lease and the leased land to a
trustee under a deed of trust (herein called "trust
deed"), for the benefit of a lender (herein called
"encumbrancer") upon and subject to the following
covenants and conditions.  Landlord's consent shall not be
required for such assignment, but Landlord shall execute
its written consent to such assignment by trust deed
following a request therefor from Tenant:

A.  Said trust deed and said assignment and all rights
acquired thereunder shall be subject to each and all of
the covenants, conditions and restrictions set forth in
this Lease and to all rights and interests of the Landlord
hereunder; and, in the event of any conflict between the
provisions of this Lease and the provisions of any such
trust deed or assignment, the provisions of this Lease
shall control.

B.  Any encumbrancer as a transferee under the
provisions of this Article shall be liable to perform the
obligations of the Tenant under this Lease only so long as
such encumbrancer holds title to the leasehold.

C.  Upon and immediately after the recording of the
trust deed covering the leased land, Tenant, at Tenant's
expense, shall cause to be recorded in the office of the
Recorder of Orange County, California, a written request
for a copy, to the Landlord, of any notice of default and
of any notice of sale under the trust deed as provided by
the statutes of the State of California relating thereto.
Tenant shall furnish to landlord a complete copy of the
trust deed and note secured thereby, together with the
name and address of the holder thereof.

D.  Landlord agrees that it will not terminate this
Lease because of any default or breach hereunder on the
part of the Tenant if the encumbrancer or the trustee
under such deed of trust, within ninety (90) days after
service of written notice on the encumbrancer by Landlord

WPN: 4077A                    5

EXHIBIT 40, PAGE 1374

BK 13824PG 1264

of its intention to terminate this Lease for such default or breach, shall:

    (a)  Cure such default or breach if the same can be cured by the payment or expenditure of money provided to be paid under the terms of this Lease, or if such default or breach is not so curable, cause the trustee under the trust deed to commence and thereafter to diligently pursue to completion steps and proceedings for the foreclosure by sale or by exercise of a power of sale under and pursuant to the trust deed in the manner provided by law; and

    (b)  Keep and perform all of the covenants and conditions of this Lease requiring the payment or expenditure of money by Tenant until such time as said leasehold shall be sold upon foreclosure, or by exercise of a power of sale, pursuant to the trust ... or shall be released or reconveyed thereunder; provided, however, that if the beneficiary under such trust deed shall fail or refuse to comply with any and all of the conditions of this Article with respect to a breach or default as to which notice of intention to terminate this Lease has been given to the encumbrancer, then and thereupon Landlord shall be released from the covenants of forebearance herein contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this Article may be given concurrently with or after Landlord's notice of default to Tenant as herein provided for in the Article entitled "Termination".

14.  TERMINATION.  Should Tenant fail to pay any installment of rent or any other sum provided in this Lease to be paid by Tenant at the times herein specified and should such default continue uncured for a period of thirty (30) days after written notice from Landlord, or should Tenant default in the performance of or breach any other covenant, condition or restriction of this Lease herein provided to be kept or performed by Tenant, and should such default or breach continue uncured for a period of sixty (60) days from and after written notice thereof by Landlord to Tenant, then and in any such event, Landlord may declare this Lease to be in default and Landlord shall have all of the remedies available at law or stated in the Article entitled "Remedies" or elsewhere provided in this Lease.

15.  REMOVAL.  Upon the expiration of the term of this Lease, and on condition that Tenant shall not then be in default under any of the covenants and conditions hereof, and not otherwise, Tenant shall have the right during the last ninety (90) days of said term, at its sole expense, to remove from the leased land all buildings and other improvements thereon, and Tenant shall fill all excavations and remove all parts of said buildings remaining after the same are removed and surrender possession of the leased land to Landlord in a clean and orderly condition.  In the event any of said buildings and other improvements shall not be removed from the leased

WPN: 4077A                    6

EXHIBIT 40, PAGE 1375

BK 1       6 1265

land within the time hereinabove provided, the same shall become and thereafter remain a part of the leased land and shall belong to Landlord without the payment of any consideration therefor.  Upon the expiration of the term hereof, or any sooner termination of this Lease, Tenant shall execute, acknowledge and deliver to Landlord a proper instrument in writing releasing and quitclaiming to Landlord all right, title and interest of Tenant in and to the leased land and any and all improvements thereon, if not removed by virtue of this Lease or otherwise.

16.   PLACE OF PAYMENTS AND NOTICES.  All rents and other sums payable by Tenant to Landlord hereunder shall be paid to the Landlord at the address set forth after Landlord's name above.  Whenever either party hereto desires to give written notice to the other respecting this Lease, such notice, if not personally delivered to Landlord or to Tenant, shall be sent by certified or registered mail, with postage prepaid, and directed to either party at the address hereinabove specified, or at such other address as either party may hereafter designate in writing.  The service of any such written notice shall be deemed complete at the time of such personal delivery or within two (2) days after the mailing thereof in Orange County, California, as herein provided.  Should Landlord or Tenant consist of more than one person, the personal delivery or mailing of such notice to any one of such persons shall constitute complete service upon all such persons.  Any notice provided in the Article hereof entitled "Encumbrances" to be given by Landlord to any encumbrancer of Tenant shall be served in the same manner as herein provided in this Article and shall be delivered to the encumbrancer or directed to its address as last shown on the records of Landlord.

17.   REMEDIES.  Should Tenant at any time be in default hereunder pursuant to the provisions of the Article hereof entitled "Termination", then notwithstanding Tenant's breach of this Lease and abandonment of the leased land, this Lease shall continue in effect so long as Landlord does not terminate Tenant's right to possession and Landlord may enforce all of its rights and remedies hereunder, including, at the option of Landlord:

     A.  The right to declare the term hereof ended and with process of law to reenter the leased land and take possession thereof and remove all persons therefrom, and Tenant shall have no further claim thereon or hereunder; or

     B.  The right to collect rent and other charges as the same may from time to time become due and to bring actions for such collections without terminating this Lease, and to thereafter at any time elect to terminate this Lease and all of the rights of Tenant in or to the leased land.

Should Landlord elect to terminate the Lease, Landlord shall be entitled to recover the worth at the time of the award of the amount by which the unpaid rent for the balance of the term, after the time of the award, exceeds the amount of the rental loss for the same period that Tenant proves could be reasonably avoided, together with

WP: 4077A                    7

EXHIBIT 40, PAGE 1376

BK 13824 PG 1268

the rent then unpaid, if any, together with any other
remedy permitted under California Civil Code Section 1951.2
or any other similar statute hereafter enacted.

If Landlord shall elect to reenter the leased land under
the provisions of A or B above, Landlord shall not be
liable for damages by reason of such reentry.

Notwithstanding any other provision of this Lease,
Landlord agrees that if the default complained of, other
than for the payment of monies, is of such nature that the
same cannot be cured within the period specified above,
then such default shall be deemed to be cured if Tenant,
within such period, shall have commenced the curing
thereof and shall continue thereafter with all due
diligence to cause such curing and does so complete the
same with the use of such diligence.

Each of the terms, covenants, conditions and provisions of
Tenant under this Lease is a material consideration for
this Lease, the breach of which shall be deemed a default
hereunder. All rights, options and remedies of Landlord
contained in this Lease shall be construed and held to be
cumulative, and no one of them shall be exclusive of the
other, and Landlord shall have the right to pursue any one
or all of such remedies or any other remedy or relief
which may be provided by law, whether or not stated in
this Lease. No waiver by Landlord of a breach of any of
the terms, covenants or conditions of this Lease by Tenant
shall be construed or held to be a waiver of any
succeeding or preceding breach of the same or any other
term, covenant or condition herein contained. No waiver
of any default of Tenant hereunder shall be implied from
any omission by Landlord to take any action on account of
such default if such default persists or is repeated, and
no express waiver shall affect default other than as
specified in said waiver. The consent or approval by
Landlord to or of any act by Tenant requiring Landlord's
consent or approval shall not be deemed to waive or render
unnecessary Landlord's consent or approval to or of any
subsequent similar acts by Tenant.

In the event any action shall be instituted between
Landlord and Tenant in connection with this Lease, the
party prevailing in such action shall be entitled to
recover from the other party all of its costs, including
reasonable attorneys' fees, as fixed by the court therein.

18. REPRESENTATIONS. Tenant covenants and agrees that it
has examined the leased land and that the same is
delivered to it in good order and condition and that no
representations as to said land have been made by Landlord
or by any person or agent acting for Landlord, and it is
agreed that this document contains the entire agreement
between the parties hereto and that there are no verbal
agreements, representations, warranties or other
understandings affecting the same.

19. HOLDING OVER. This Lease shall terminate and become
null and void without further notice upon the expiration
of said term. Any holding over shall not constitute a

WPN: 4077A                8

244
002197                              EXHIBIT 40, PAGE 1377

BK 13824 PG 1267

renewal hereof, but the tenancy shall thereafter be on a
month-to-month basis and otherwise on the same terms and
conditions as herein set forth.

20.  **EMINENT DOMAIN.**

A.  **Definition of Terms.**  The term "total taking", as
used in this Article, means the taking of the entire
leased land under the power of eminent domain or the
taking of so much of said land as to prevent or
substantially impair the use thereof by Tenant for the
uses and purposes herein above provided.

The term "partial taking" means the taking of a
portion only of the leased land which does not constitute
a total taking as defined above.

The term "taking" shall include a voluntary conveyance
by Landlord to an agency, authority or public utility
under threat of a taking under the power of eminent domain
in lieu of formal proceedings.

The term "date of taking" shall be the date upon which
title to the leased land or portion thereof passes to and
vests in the condemnor.

The term "leased land" means the real property
belonging to Landlord, together with any and all
improvements placed thereon by Landlord or to which
Landlord has gained title.

B.  **Effect of Taking.**  If, during the term hereof,
there shall be a total taking or partial taking under the
power of eminent domain, then the leasehold estate of
Tenant in and to the leased land or the portion thereof
taken shall cease and terminate as of the date of taking
of the said land.  If this Lease is so terminated, in
whole or in part, all rentals and other charges payable by
Tenant to Landlord hereunder and attributable to the
leased land or portion thereof taken shall be paid by
Tenant up to the date of taking by the condemnor and the
parties shall thereupon be released from all further
liaility in relation thereto.

C.  **Allocation of Award - Total Taking.**  All
compensation and damages awarded for the total taking of
the leased land and Tenant's leasehold interest therein
shall be allocated a follows:

(a)  Tenant shall be entitled to an amount equal
to the sum of the following:

(i)  The then fair market value of all of
the improvements located on the leased land; and

(ii)  The then fair market value of the
Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

WPN: 4077A                    9

002198                        EXHIBIT 40, PAGE 1378

BK 13824 PG 1268

D.  Allocation of Award - Partial Taking.  All compensation and damages awarded for the taking of a portion of the leased land shall be allocated and divided as follows:

(a)  Tenant shall be entitled to an amount equal to the sum of the following:

(i)  The proportionate reduction of the fair market value of the improvements located on the leased land; and

(ii)  The proportionate reduction of the fair market value of Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount remaining of the total award after deducting therefrom the sums to be paid to Tenant as hereinabove provided.

E.  Reduction of Rent on Partial Taking.  In the event of a partial taking, the rent payable by Tenant hereunder shall be adjusted from the date of taking to the next rental adjustment date or to the date of the expiration of the term of this Lease, whichever date is sooner.  Such rental adjustment will be made by reducing the basic rental payable by the Tenant in the ratio that the fair market value of the leased land at the date of taking bears to the fair market value of the leased and immediately thereafter.

F.  Determination of Fair Market Value.  Whenever fair market value must be determined for the purposes of this Article, and the parties fail to agree in writing on such fair market value within ten (10) days of a request for such agreement from either party, then fair market value shall be determined by the arbitration procedure set forth in the Article entitled "Rental Adjustment".

21.  RENTAL ADJUSTMENT.  Effective January 1, 2000, January 1, 2020 and January 1, 2040, the annual rental payer hereunder shall be adjusted to a sum equal to 8% of the unimproved fair market value of the Leased Land. After any such adjustment of rent, Tenant shall pay to Landlord such rental as so adjusted during the period applicable thereto at the times and in the manner herein provided for in the Article entitled "Rental"; provided, however, in no event shall the rental, as so adjusted, be less than the initial rental in the Article of this Lease entitled "Rental".

If, by January 1, 2000, January 1, 2020 or January 1, 2040 (as the case may be), the parties hereto shall have failed to agree upon such adjusted rental, then and thereupon the fair market value of the leased land and the amount of rental to be adjusted in relation thereto, as hereinafter provided, shall be determined by arbitration as follows: within ten (10) days after the date set for determining fair market value, each of the parties hereto shall appoint in writing an arbitrator and give written

WPN: 4077A                    10

002199

EXHIBIT 40, PAGE 1379

BK 13824 PG 1269

notice thereof to the other party; or, in case of the failure of either party so to do, the other party may apply to the Superior Court of Orange County, California, to appoint an arbitrator to represent the defaulting party in the manner prescribed in the then existing statutes of the State of California applicable to arbitration, the provisions of which statutes shall apply to and govern the arbitration herein provided for with the same effect as though incorporated herein. Within ten (10) days after the appointment of said two (2) arbitrators (in either manner) they shall appoint in writing a third arbitrator and give written notice thereof to Landlord and Tenant, and if they shall fail to do so, then either party hereto may make application to said Superior Court to appoint such third arbitrator in the manner prescribed in said arbitration statutes. The three (3) arbitrators so appointed (in either manner) shall promptly fix a convenient time and place in the County of Orange for hearing the matter to be arbitrated and shall give reasonable written notice thereof to each of the parties hereto and with reasonable diligence shall hear and determine the matter in accordance with the provisions hereof and of said arbitration statutes, and shall execute and acknowledge their award thereon in writing and cause a copy thereof to be delivered to each of the parties hereto and the award of a majority of said arbitrators shall determine the questions arbitrated, and a judgment may be rendered by said Superior Court confirming said award or the same may be vacated, modified or corrected by said Court at the instance of either of the parties hereto in accordance with said arbitration statutes, and said judgment shall have the force and effect as provided in said statutes.

Each of the parties hereto shall pay for the services of its appointee, attorneys and witnesses and one-half (1/2) of all other proper costs of arbitration. Pending the final decision of such adjusted rental, Tenant shall pay to Landlord the amount of rent previously payable under the Article of this Lease entitled "Rental". If such adjusted rental, as finally determined, shall exceed the amount of the previous rental, the excess amount accruing during the interim period shall be paid by Tenant to Landlord within thirty (30) days after the final determination of said adjusted rental. If such adjusted rental, as finally determined, shall be less than such previous rental, the amount of any excess paid by Tenant during said interim period shall be credited against the first rentals thereafter payable hereunder.

22. DRAINAGE AND FILL. Tenant shall cause all drainage of water from the leased land and improvements thereon to drain or flow into adjacent streets and not upon adjoining property, and Tenant shall so maintain all slopes or terraces on the leased land as to prevent any erosion thereof upon such streets or adjoining property.

23. ENCROACHMENTS. If a dwelling house is constructed on the leased land, the wall or walls of which adjoin the wall or walls of a dwelling constructed on a contiguous lot, any such wall shall be considered to adjoin and abut the wall of the contiguous lot against the surface from the bottom of the foundation over the full length and

WPN: 4077A                    11

EXHIBIT 40, PAGE 1380

BK 13824 PG 1270

height of any building so erected for residential purposes. Both Tenant and lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots fo. the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so erected. Such rights of use shall be as not to interfere with the use and enjoyment of the lessees of adjoining lots; and, in the event that any such party wall or fence is damaged or injured from any cause other than the act or negligence of one of the lessees, the same shall be repaired or rebuilt at their joint expense.

24.   CONSTRUCTION AND EFFECT.  Time is of the essence of this Lease.  The article headings herein are used only for the purpose of convenience and shall not be deemed to limit the subject to the articles hereof or to be considered in the construction thereof.  Each and all of the obligations, covenants, conditions and restrictions of this Lease shall be deemed as running with the land and shall inure to the benefit of and be binding upon and enforceable against, as the case may require, the successors and assigns of Landlord and the heirs, executors, legal representatives, encumbrancers, assignees, successors and subtenants of Tenant.  If Tenant consists of more than one person, the covenants and obligations of Tenant hereunder shall be the joint and several covenants and obligations of such persons.  In this Lease, the masculine gender includes the feminine and the neuter, and the singular number includes the plural, whenever the context so requires.

25.   NON-DISTURBANCE.  No mortgage or deed of trust placed on the leased land by Landlord shall be superior to the interest of Tenant herein, unless Landlord and Tenant execute an agreement in recordable form satisfactory to the Tenant that in the event of judicial or private foreclosure, or deed in lieu of foreclosure, or any other action taken by such mortgagee or beneficiary, this Lease and the rights of Tenant hereunder shall not be disturbed by reaso. of any such foreclosure or other action but shall continue in full force and effect so long as this Lease shall remain in full force and effect and that in the event of any conflict between the terms of this Lease and any such mortgage or deed of trust with regard to insurance or condemnation proceeds or any other provisions of the Lease or the mortgage or the deed of trust, the terms and provisions of this Lease shall prevail.

WPN: 4077A                    12

EXHIBIT 40, PAGE 1381

BK 13824 PG 1271

26.  ESTOPPEL CERTIFICATES.  Landlord and Tenant shall at
any time and from time to time, upon not less than ten
(10) days prior written request by the other party or
parties to this Lease, execute, acknowledge and deliver to
such party or parties a statement in writing certifying
that this Lease is unmodified and in full force and effect
(or if there has been any modification thereof that the
same is in full force and effect as modified and stating
the modification or modifications) and that there are no
defaults existing (or if there is any claimed default
stating the nature and extent thereof); and stating the
dates to which the rent and other charges have been paid
in advance.  It is expressly understood and agreed that
any such statement delivered pursuant to this section may
be relied upon by any prospective assignee or sublessee of
the leasehold estate, or estates of Tenant, or any
prospective purchaser of the estate of Landlord, or any
lender or prospective assignee of any lender on the
security of the leased land or the fee estate or any part
thereof, or upon the leasehold estate of Tenant or any
part thereof, and any third person.

27.  CONDOMINIUM SUBLEASE.

     (a)  Landlord hereby agrees with Tenant for the
          benefit of the Condominium Owner/Subtenant under
          any Condominium Subleases that:

          (i)  So long as such Condominium
          Owner/Subtenant is not in default in the payment
          of rental or other charges due under the
          Condominium Sublease or in the performance of any
          of the other terms, covenants or conditions of
          the Condominium Sublease on such Condominium
          Owner/Subtenant's part to be performed, such
          Condominium Owner/Subtenant's possession of the
          lot subject to such Condominium Sublease and
          Condominium Owner/Subtenant's other rights and
          privileges under the Condominium Sublease shall
          not be interfered with by the Landlord, its
          successors or assigns.

          (ii)  Should this Lease be terminated prior
          to the expiration of the term hereof or any
          extensions of said term for any reason
          whatsoever, including without limitation, as a
          result of Tenant's breach thereof or default
          thereunder, the Condominium Sublease shall
          continue in full force and effect as a direct
          lease between Landlord and the Condominium
          Owner/Subtenant under the Condominium Sublease,
          upon and subject to all of the terms, covenants
          and conditions of the Condominium Sublease for
          the balance of the term thereof remaining,
          provided that such Condominium Owner/Subtenant
          attorns to Landlord in writing.  Notwithstanding
          the foregoing, Landlord shall not be bound by any
          act or omission of Tenant as the prior sublessor
          under the Condominium Sublease.  Landlord shall
          not be bound by any prepayment of rent (other
          than through the Payment Agreement referred to in
          subparagraph 27(c) hereof or other charges which
          such Condominium Owner/Subtenant might have paid

WPN: 4077A                    11

EXHIBIT 40, PAGE 1382

BK 13824 PG 1272

for more than three (3) months in advance to
Tenant as the prior sublessor, and Landlord shall
not be bound by any amendment to or modification
of any Condominium Sublease or by any waiver or
forbearance on the part of Tenant as the prior
sublessor thereunder made or given without the
written consent of Landlord.

(b)   If, the provisions of the foregoing
notwithstanding, a Condominium Sublease is
terminated by reason of any termination of this
Lease, it is hereby agreed that the Condominium
Owner/Subtenant under such Condominium Sublease
and Landlord shall enter into a new lease upon
the terms and conditions of the Condominium
Sublease for the then remaining balance of the
term of the Condominium Sublease.

(c)   In the event that such Condominium Subleases
shall call for the payment of rent less
frequently than quarterly annually, the provisions
of subparagraph 27(a) shall only be applicable if
Landlord and Tenant enter into a Payment
Agreement under the terms of which all rental to
be paid by Condominium Owner/Subtenant under the
terms of the Condominium Sublease will be paid to
a neutral depository, such as a bank, savings and
loan, trust company or escrow company.  Such
neutral depository shall be instructed to remit
to lessor from such sum collected the amount due
under this Lease.

IN WITNESS WHEREOF, the parties hereto have executed this
Lease as of the day and year first above written.

HOUSER BROS. CO., a limited
partnership

By _____
      General Partner

By _____
      General Partner

                    "Landlord"

_____
Robert P. Warmington

                    "Tenant"

WPN: 4077A                    14

EXHIBIT 40, PAGE 1383

BK 13824 PG 1273

STATE OF ____CALIFORNIA____  )
                                       ) ss.
COUNTY OF ____ORANGE____  )

On ____Aug 13____, 19 80 before me the
undersigned, a Notary Public in and for said State,
personally appeared Vernon F. & Clifford C. Houser, known
to me to be ____two____ of the partners
of the partnership that executed the within instrument,
and acknowledged to me that such partnership executed the
same.

WITNESS my hand and official seal.

*OFFICIAL SEAL*
*PEARL L HUNT*
*NOTARY PUBLIC·CALIFORNIA*
*ORANGE COUNTY*
*My Commission Expires Mar 25, 1983*

[Seal]                          _Pearl L. Hunt_
                                Notary Public


STATE OF ____CALIFORNIA____  )
                                       ) ss.
COUNTY OF ____ORANGE____  )

On ____August 1____, 19 80, before me the
undersigned, a Notary Public in and for said State,
personally appeared ____ROBERT P. WARMINGTON____,
known to me to be the person whose name is subscribed to
the within instrument, and acknowledged to me that ____HE____
executed the same.

WITNESS my hand and official seal.

*OFFICIAL SEAL*
*PEARL L HUNT*
*NOTARY PUBLIC·CALIFORNIA*
*ORANGE COUNTY*
*My Commission Expires Mar 25, 1983*

[Seal]                          _Pearl L. Hunt_
                                Notary Public


WPN: 4077A                 15


RECORDED

EXHIBIT 40, PAGE 1384

8694                    BK 13824 PG 1274

$ 19 00

Recorded at the Request of
and When Recorded Return To:

Robert P. Warmington
16592 Hale Avenue
Irvine, California   92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA

8:00 A.M. NOV 7 1980

LEE A. BRANCH, County Recorder

AP 178-00-01

## CONDOMINIUM SUBLEASE

THIS SUBLEASE (hereinafter "lease") is made
this 1st day of ___August___ , 1980, by and between
ROBERT F. WARMINGTON, an individual whose address is 16592
Hale Avenue, Irvine, California 92714 (herein termed the
"Landlord"), and

JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants

whose address is
4476 Airport, Huntington Beach, Ca. 92647
(herein termed the "Tenant").

### W I T N E S S E T H :

That whereas Tenant is concurrently acquiring
certain interest in Condominium Unit 53 on Lots 1 and 2
of Tract 10542 as shown on a map recorded in Book 456
Pages 49 and 50 Official Records of Orange County
California consisting of buildings and other improvements
located on Lots 1 and 2 of Tract 10542, which buildings
and other improvements are and shall remain real property.

1.  PROPERTY LEASED.  For and in consideration
of the payment of the rents and taxes and other charges
and for the performance of all of the covenants and
conditions of this lease by Tenant, Landlord hereby
subleases to Tenant

(i)  Unit 53 , (the "Unit") as shown and
defined on that certain Condominium Plan
recorded in Book 13358 Pages 1193 et seq.,
Official Records of Orange County,
California (the "Condominium Plan"),
excepting therefrom all buildings and other
improvements;

(ii)  An undivided one-eightieth (1/80)
interest in the Common Areas (as defined in
the Condominium Plan, excepting therefrom
all buildings and other improvements;

(iii)  An easement for the exclusive use and
occupancy of those portions of the
Restricted Common Area (as defined on said
Condominium Plan) for entry and staircases
and attic space relating to said Unit,
excepting therefrom all buildings and other
improvements;

WPN:2004A

EXHIBIT 40, PAGE 1385

BK 13824 PG 1275

(iv) A non-exclusive easement and right to use the Common Area (as defined on said Condominium Plan), except the Restricted Common Area, excepting therefrom all buildings and other improvements.

It is understood that "Houser Bros. Co., a California limited partnership (hereinafter the "Master Lessor") and Landlord have entered into a Ground Lease dated as of August 1, 1980 which is being recorded concurrently herewith (the "Master Lease") as lessor and lessee, respectively. This lease shall be subject and subordinate to the Master Lease, provided that, pursuant to the Master Lease, Master Lessor has agreed not to disturb the subleasehold estate of Tenant in the event of a default under the Master Lease. Tenant acknowledges receipt of a copy of the Master Lease prior to Tenant's execution of this lease. The Unit is one unit in a Condominium Project (the "Project") constructed on the leased land and governed by a Declaration of Covenants, Conditions and Restrictions (the "Declaration") recorded in Book 13618, Page 982, Official Records of Orange County, California as amended.

SUBJECT TO:

(a) Current taxes and assessments.

(b) Covenants, conditions, restrictions, reservations, rights, rights-of-way and easements of record.

2. TERM OF LEASE. The leased land is leased for a basic term commencing on the date this Condominium Sublease is recorded in the Office of the County Recorder of Orange County, California and ending on December 31, 2059, subject, however, to earlier termination as hereinafter provided.

3. RENTAL. Tenant agrees to pay to Landlord, as rental for the use and occupancy of said leased land during the term of this lease, the sum of One Thousand Five Hundred DOLLARS ($1,500) per year, in quarterly installments of $375 each in advance, on the first day of the quarter of each calendar year of said term (Provided, however, if the term of this lease commences on a date other than the first day of a calendar quarter, Tenant shall pay an appropriately pro rated amount of such quarterly installments upon the commencement of such term); subject, however, to adjustment at the time and in the manner as herein provided for in Article 21 entitled "Rental Adjustment". All rentals hereunder and charges with respect thereto shall be paid in lawful money of the United States of America.

4. TAXES AND ASSESSMENTS. In addition to the rents above provided, Tenant shall pay and discharge all taxes and general and special assessments of every description which may be levied upon or assessed against the leased land and all interest therein and improvements and other property thereon, (including its Unit) and upon all rentals payable with respect to the leased land, whether belonging to Landlord, Tenant or the Master

WPN:2004A                    2

EXHIBIT 40, PAGE 1386

BK 13524 0 1276

Lessor, as such taxes and assessments become due and payable during the term of this lease. Tenant agrees to protect and hold harmless the Landlord, the Master Lessor and the leased land and all interest therein and improvements thereon from any and all such taxes and assessments, including any interest, penalties and other charges which may be thereby imposed and from any lien therefor or sale or other proceedings to enforce payment thereof.

5.   USE OF LEASED LAND.   Tenant shall use the leased land and its Unit for single family residential use and purpos s incidental thereto.   Tenant shall not use or permit any person to so use the leased land and the improvements thereon, or any portion thereof, or its Unit as to disturb the neighborhood or occupants of adjoining property, or to constitute a nuisance, or to violate any public law, ordinance or regulation from time to time applicable thereto.

6.   IMPROVEMENTS.   When any construction is commenced on the leased land, the same shall be prosecuted with reasonable diligence until completed and shall conform to all public laws, ordinances and regulations applicable thereto and shall be constructed and completed at the sole cost and expense of Tenant and without any cost, expense or liability of Landlord whatsoever. Further, Tenant shall comply with all of the terms, covenants and conditions of the Master Lease pertaining to such construction, including, without limitation, the obligation to obtain the approval of the Master Lessor when, and to the extent required by the Master Lease.

7.   MAINTENANCE.   Landlord shall not be obligated to make any repairs, alterations, additions or improvements in, to, upon, or adjoining the leased land or any improvements that may be constructed or installed on the leased land.   As part of the consideration for Landlord entering this Lease, Tenant shall, at all times during the full term of this Lease and at his sole cost and expense, keep, repair and maintain its Unit and those other portions of the leased land and buildings and improvements therein which are the responsibility of Tenant to maintain and repair under the provisions of the Declaration, in clean and sanitary condition and in good order and repair.   Tenant shall pay for all water, gas, heat, light, power, telephone and all other utilities and services furnished to its Unit.   Tenant shall make payment directly to the utility involved for all separately metered services and shall pay to the management body for the Project the proportionate share of all centrally metered utilities, such proportion to be determined by said management body.

Tenant shall at all times fully comply with and abide by the terms, covenants, restrictions, provisions and conditions of the Declaration and any amendments thereof, and any rules, regulations, agreements, decisions and determinations duly made by the management body for the Project established pursuant to the Declaration respecting the maintenance, use and occupation of its Unit

WPN:2004A                    3

EXHIBIT 40, PAGE 1387

BK 13824 PG 1277

and the leased land and any building or improvements
constructed thereon and the payment of all assessments and
charges of every type levied by the management body of the
Project in connection therewith.  In addition to the
foregoing, Tenant hereby covenants and agrees to promptly
pay at all times during the term hereof, before the same
shall become delinquent, Tenant's share of the common
expenses of the Project and any and all assessments,
charges, and duties of every description, levied under the
provisions of the Declaration, without cost, expense or
liability to Landlord.  Tenant shall further, during the
whole term of this Lease, by paying his proportionate
share of the common expenses of the Project make, build,
maintain and repair all fences, sewers, drains, curbs,
roads, sidewalks, parking areas, and other improvements
which may be required by law to be made, built, maintained
and repaired upon or adjoining or in connection with or
for the use of the leased land.

     8.   RESTORATION OF IMPROVEMENTS.  If, during the
term hereof, the dwelling, structures or other
*improvements*, if any, constructed by or for Tenant on the
leased land, or any part thereof, shall be damaged or
destroyed by fire or other casualty, Tenant may, at its
cost and expense, either (a) repair or restore said
dwelling and *improvements*; or (b) subject to the consent
of any encumbrancer, if any, tear down and remove the same
from the leased land.

     9.   LIENS AND CLAIMS.  Tenant shall not suffer
or permit to be enforced against the leased land or its
Unit, or any part thereof, any mechanics', laborers',
materialmen's, contractors', subcontractors', or any other
liens arising from or any claim for damages growing out of
any work of construction or improvement, or any other
claim or demand howsoever the same may arise, but Tenant
shall pay or cause to be paid all of said liens, claims
and demands before any action is brought to enforce the
same against the leased land and its Unit, and Tenant
hereby indemnifies and agrees to hold Landlord, and its
Unit free and harmless from all liability for any and all
such liens, claims and demands, together with all costs
and expenses, including, but not limited to, attorneys'
fees and court costs incurred by Landlord or Master Lessor
in connection therewith, and Landlord and Master Lessor
shall have the right, at any time and from time to time,
to post and maintain on the leased land, or any part
thereof, such notices of nonresponsibility as desired by
Landlord or as may be provided by law.  Notwithstanding
anything to the contrary contained in this paragraph, if
Tenant shall, in good faith, contest the validity of any
such lien, claim or demand, then Tenant shall, at its
expense, defend itself, Landlord and Master Lessor against
the same and shall pay and satisfy any adverse judgment
that may be rendered thereon before the enforcement
thereof against Landlord the leased land or its Unit, and
if Landlord shall require, Tenant shall furnish to
Landlord a surety bond satisfactory to Landlord in an
amount equal to such contested lien, claim or demand
indemnifying Landlord and Master Lessor against liability
for same; or, if Landlord shall request, Tenant shall

WPN:2004A                          4

EXHIBIT 40, PAGE 1388

BK 13824 PG 1278

procure and record the bond provided for in the Civil Code
of the State of California, or any comparable statute
hereafter enacted providing for a bond freeing the leased
land and the Unit from the effect of such lien or claim or
action thereon.

10.  LIABILITIES.  Landlord shall not be liable
for any loss, damage, injury or claim of any kind
whatsoever to any person or property of Tenant, or any of
Tenant's employees, guests or invitees or of any other
person whomsoever, caused by any use of the leased land or
by any defect in any building, structure or other
improvement constructed thereon, or arising from any
accident on the leased land or any fire or other casualty
thereon, or occasioned by the failure on the part of
Tenant to maintain said premises in safe condition, or by
any nuisance made or suffered on the leased land, or any
improvements thereto, or by any act or omission of Tenant,
or of any member of Tenant's family or of Tenant's
employees, guests or invitees, or arising from any other
cause whatsoever, and Tenant hereby waives on its behalf
all claims and demands against Landlord for any such loss,
damage or injury of Tenant, and hereby agrees to indemnify
and save Landlord free and harmless from liability for any
such loss, damage or injury of other persons, and from all
costs, expenses and other charges arising therefrom and in
connection therewith.

11.  LANDLORD PAYING CLAIMS.  Neither Landlord
nor the Master Lessor shall be liable for any loss,
damage, injury or claim of any kind or character to any
person or property arising from or caused by the use or
development of the leased land and the construction of
improvements thereon, including, without limitation, any
such loss, damage, injury or claim arising from or caused
by (i) any use of the leased land, or any part thereof;
(ii) any defect in the design, construction of or material
in any structure          improvement upon the leased land
or in any other         ein; (iii) any defect in
soils or in the          or soils or in the design and
accompli          (iv) any act or omission of
Tenant                nts, employees, licensees,
invitees    cont       ns; (v) any accident on the leased
land or other casualty thereon; (vi) any representations
by Tenant or any of its agents or employees; (vii) a
violation or alleged violation by Tenant, its employees or
agent, of any law now or hereafter enacted; (viii) any
other cause whatsoever in connection with Tenant's use of
the leased land; or (ix) the application of the principles
of strict liability with respect to any act or omission
during the term of this Lease of Tenant or its agents,
employees, licensees, invitees or contractors in
connection with the leased land; and Tenant, as a material
part of the consideration of this Lease, hereby waives on
its behalf all claims and demands against Landlord or the
Master Lessor for any such loss, damage or injury of
Tenant, and hereby indemnifies and agrees to hold Landlord
and the Master Lessor entirely free and harmless from all
liability for any such loss, damage, injury or claim with
respect to any person or property made by other persons,
and with respect to any such violations or charges arising

WPN:2004A                    5

002209

EXHIBIT 40, PAGE 1389

BK 13824 PG 1279

therefrom, including, without limitation, attorneys' fees and court costs incurred by Landlord and the Master Lessor in connection therewith.

Tenant either individually, or in conjunction with the Tenants of the remaining undivided interests in the leased land or through the management body for Project shall maintain at all times during the term of the Lease, at its expense and in companies acceptable to Landlord:

(a)  Worker's compensation insurance and employer's liability insurance.

(b)  Comprehensive liability insurance, with limits of not less than FIVE HUNDRED THOUSAND ($500,000) DOLLARS for any one person; ONE MILLION ($1,000,000) DOLLARS for any one occurrence as to bodily injury or death; and ONE HUNDRED THOUSAND ($100,000) DOLLARS per occurrence as to property damage.

Each policy of insurance shall be issued by insurers of recognized responsibility, qualified to do business in California, acceptable to Landlord and the Master Lessor and which has, at the execution hereof, a rating at least equal to AXV by Best's Insurance Guide (or other equivalent rating if such Guide be discontinued) and shall name Landlord and the Master Lessor as an additional insured.  Prior to the time of commencement of this Lease, Tenant shall deliver certificates of insurance carriers of each policy of insurance as evidence of compliance with the above requirements and stating that not less than ten (10) days' written notice will be given to Landlord and the Master Lessor prior to cancellation or reduction in coverage or amount.

12.  ASSIGNMENT.  Tenant shall have the right to assign, sublet or otherwise transfer its interest under this lease without the prior written consent of Landlord. Notwithstanding the foregoing, this lease or any right hereunder shall in no case be assigned separate and apart from Tenant's Unit located on the leased land.  Also notwithstnding the foregoing, Landlord shall accept Tenant's assignee in writing following a request therefor.

13.  ENCUMBRANCES.  Tenant shall have the right to assign Tenant's interest in this Lease and the leased land to a trustee under a deed of trust (herein called "trust deed"), for the benefit of a lender (herein called "encumbrancer") upon and subject to the following covenants and conditions.  Landlord's consent shall not be required for such assignment, but Landlord shall execute its written consent to such assignment by trust deed following a request therefor from Tenant:

A.  Said trust deed and said assignment and all rights acquired thereunder shall be subject to each and all of the covenants, conditions and restrictions set forth in this Lease and to all rights and interests of the Landlord hereunder; and, in the event of any conflict between the provisions of this Lease and the provisions of

WPN:2004A

EXHIBIT 40, PAGE 1390

BK 13824 PG 1280

any such trust deed or assignment, the provisions of this Lease shall control.

B.   Any encumbrancer as a transferee under the provisions of this Article shall be liable to perform the obligations of the Tenant under this Lease only so long as such encumbrancer holds title to the leasehold.

C'.   Upon and immediately after the recording of the trust deed covering the leased land, Tenant, at Tenant's expense, shall cause to be recorded in the office of the Recorder of Orange County, California, a written request for a copy, to the Landlord, of any notice of default and of any notice of sale under the trust deed as provided by the statutes of the State of California relating thereto.   Tenant shall furnish to landlord a complete copy of the trust deed and note secured thereby, together with the name and address of the holder thereof.

D.   Landlord agrees that it will not terminate this Lease because of any default or breach hereunder on the part of the Tenant if the encumbrancer or the trustee under such deed of trust, within sixty (60) days after service of written notice on the encumbrancer by Landlord of its intention to terminate this Lease for such default or breach, shall:

(a)   Cure such default or breach if the same can be cured by the payment or expenditure of money provided to be paid under the terms of this Lease, or if such default or breach is not so curable, cause the trustee under the trust    to commence and thereafter to diligently pursue to completion steps and proceedings for the foreclosure by sale or by exercise of a power of sale under and pursuant to the trust deed in the manner provided by law; and

(b)   Keep and perform all of the covenants and conditions of this Lease requiring the payment or expenditure of money by Tenant until such time as said leasehold shall be sold upon foreclosure, or by exercise of a power of sale, pursuant to the trust deed or shall be released or reconveyed thereunder; provided, however, that if the beneficiary under such trust deed shall fail or refuse to comply with any and all of the conditions of this Article with respect to a breach or default as to which notice of intention to terminate this Lease has been given to the encumbrancer, then and thereupon Landlord shall be released from the covenants of forebearance herein contained with respect to such breach or default.

Any notice to the encumbrancer provided for in this Article may be given concurrently with or after Landlord's notice of default to Tenant as herein provided for in the Article entitled "Default."

Any mortgagee shall have the right at any time during the term hereof while this lease is in full force and effect:

WPN:2004A                    7

002211                    EXHIBIT 40, PAGE 1391

BK 13824 PG 1281

(a)  To do any act required of Tenant hereunder, and all such acts done or performed shall be effective to prevent a forfeiture of Tenant's rights hereunder as if the same had been done or performed by Tenant; and

(b)  To rely on the security afforded by the leasehold estate and to acquire and to succeed to the interest of Tenant hereunder by foreclosure, whether by judicial sale, by power of sale contained in any security instrument, or by assignment given in lieu of foreclosure, and thereafter convey or assign title to the leasehold estate so acquired to any other person firm or corporation without the consent of Landlord as to such initial transfer, and such obligations shall not commence as to any obligation which cannot be satisfied by the payment of money prior to mortgagee's acquisition of the leasehold estate hereunder by reason of the exercise of its rights as aforesaid.

Until such time as the indebtedness of Tenant to mortgagee shall have been fully paid, Landlord shall not, without the prior written consent of mortgagee first had and obtained, accept any surrender of this lease, consent to any modification hereof or consent to the assignment hereof, or of any part or portion, of the term created thereby or of any interest therein.

14.  DEFAULT.  Should Tenant fail to pay any installment of rent or any other sum provided in this lease to be paid by Tenant at the times herein specified and should such default continue uncured for a period of ten (10) days after written notice from Landlord, or should Tenant default in the performance of or breach any other covenant, condition or restriction of this lease herein provided to be kept or performed by Tenant, and should such default or breach continue uncured for a period of thirty (30) days from and after written notice thereof by Landlord to Tenant, then and in any such event, Landlord may declare this lease to be in default and Landlord shall have all of the remedies available at law or stated in the Article entitled "Remedies" or elsewhere provided in this lease.

15.  REMOVAL.  Upon the expiration of the term of this Lease, and on condition that Tenant shall not then be in default under any of the covenants and conditions hereof, and not otherwise, Tenant shall have the right during the last ninety (90) days of said term, at its sole expense, to remove from the leased land all buildings and other improvements thereon, and Tenant shall fill all excavations and remove all parts of said buildings remaining after the same are removed and surrender possession of the leased land to Landlord in a clean and orderly condition.  In the event any of said buildings and other improvements shall not be removed from the leased land within the time hereinabove provided, the same shall become and thereafter remain a part of the leased land and shall belong to Landlord without the payment of any consideration therefor.  Upon the expiration of the term hereof, or any sooner termination of this Lease, Tenant

WPN:2004A                    8

EXHIBIT 40, PAGE 1392

BK 13824 PG 1282

shall execute, acknowledge and deliver to Landlord a
proper instrument in writing releasing and quitclaiming to
Landlord all right, title and interest of Tenant in and to
the leased land and any and all improvements thereon, if
not removed by virtue of this Lease or otherwise.

16.  PLACE OF PAYMENTS AND NOTICES.  All rents
and other sums payable by Tenant to Landlord hereunder
shall be paid to the Landlord at the address set forth
after Landlord's name above.  Whenever either party hereto
desires to give written notice to the other respecting
this Lease, such notice, if not personally delivered to
Landlord or to Tenant, shall be sent by certified or
registered mail, with postage prepaid, and directed to
either party at the address hereinabove specified, or at
such other address as either party may hereafter designate
in writing.  The service of any such written notice shall
be deemed complete at the time of such personal delivery
or within two (2) days after the mailing thereof in Orange
County, California, as herein provided.  Should Landlord
or Tenant consist of more than one person, the personal
delivery or mailing of such notice to any one of such
persons shall constitute complete service upon all such
persons.  Any notice provided in the Article hereof
entitled "Encumbrances" to be given by Landlord to any
encumbrancer of Tenant shall be served in the same manner
as herein provided in this Article and shall be delivered
to the encumbrancer or directed to its address as last
shown on the records of Landlord.

17.  REMEDIES.  Should Tenant at any time be in
default hereunder pursuant to the provisions of the
Article hereof entitled "Default", then notwithstanding
Tenant's breach of this lease and abandonment of the
leased land, this lease shall continue in effect so long
as Landlord does not terminate Tenant's right to
possession and Landlord may enforce all of its rights and
remedies hereunder, including, at the option of Landlord:

A.  Continue this Lease in effect without
terminating Tenant's right to possession, even though
Tenant has breached this Lease and abandoned the leased
land; and to enforce all of Landlord's rights and remedies
under this Lease, including the right to recover, by suit
or otherwise, all sums and installments required to be
paid in accordance with the provisions of Article 3 above,
or other monetary performance as it becomes due hereunder,
or to enforce, by suit or otherwise, any other term or
provision hereof on the part of Tenant required to be
performed, it being specifically agreed that the aggregate
unpaid installment indebtedness shall bear simple interest
at the rate of ten percent (10%) per annum from the date
thereof until paid, provided, however, that Landlord may,
at any time thereafter, elect to terminate this Lease for
such previous breach by notifying Tenant in writing that
Tenant's right to possession of the leased land has been
terminated; or

B.  By written notice to Tenant, Landlord may
declare this Lease at an end, re-enter the leased land by
process of the law, eject all parties in possession

WPN:2004A

9

BK 13824 PG 1283

thereof therefrom and repossess said leased land, in which event, Landlord shall have the right to recover from Tenant:

(i) The worth at the time of award of the unpaid rent which has been earned at the time of termination;

(ii) The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the Tenant proves could have been reasonably avoided;

(iii) The worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss for the same period that the Tenant proves could be reasonably avoided;

(iv) All other amounts necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations hereunder or which in the ordinary course of things are likely to result therefrom; and

(v) In computing "worth at the time of award" Landlord shall be allowed interest at the rate of ten percent (10%) per annum.

Each of the terms, covenants, conditions and provisions of Tenant under this lease is a material consideration for this lease, the breach of which shall be deemed a default hereunder. All rights, options and remedies of Landlord contained in this lease shall be construed and held to be cumulative, and no one of them shall be exclusive of the other, and Landlord shall have the right to pursue any one or all of such remedies or any other remedy or relief which may be provided by law, whether or not stated in this lease. No waiver by Landlord of a breach of any of the terms, covenants or conditions of this lease by Tenant shall be construed or held to be a waiver of any succeeding or preceding breach of the same or any other term, covenant or condition herein contained. No waiver of any default of Tenant hereunder shall be implied from any omission by Landlord to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect default other than as specified in said waiver. The consent or approval by Landlord to or of any act by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent or approval to or of any subsequent similar acts by Tenant.

In the event any action shall be instituted between Landlord and Tenant in connection with this lease, the party prevailing in such action shall be entitled to recover from the other party all of its costs, including reasonable attorneys' fees, as fixed by the court therein.

WPN:2004A                          10

002214                              EXHIBIT 40, PAGE 1394

BK 13824 PG 1284

18.   REPRESENTATIONS.   Tenant covenants and agrees that it has examined the leased land and that the same is delivered to it in good order and condition and that no representations as to said land have been made by Landlord or by any person or agent acting for Landlord, and it is agreed that this document contains the entire agreement between the parties hereto and that there are no verbal agreements, representations, warranties or other understandings affecting the same.

19.   HOLDING OVER.   This lease shall terminate and become null and void without further notice upon the expiration of said term.   Any holding over shall not constitute a renewal hereof, but the tenancy shall thereafter be on a month-to-month basis and otherwise on the same terms and conditions as herein set forth.

20.   EMINENT DOMAIN.

A.   Definition of Terms.   The term "total taking", as used in this Article, means the taking of the entire leased land under the power of eminent domain or the taking of so much of said land as to prevent or substantially impair the use thereof by Tenant for the uses and purposes hereinabove provided.

The term "partial taking" means the taking of a portion only of the leased land which does not constitute a total taking as defined above.

The term "taking" shall include a voluntary conveyance by Landlord to an agency, authority or public utility under threat of a taking under the power of eminent domain in lieu of formal proceedings.

The term "date of taking" shall be the date upon which title to the leased land or portion thereof passes to and vests in the condemnor.

The term "leased land" means the real property belonging to Landlord, together with any and all improvements placed thereon by Landlord or to which Landlord has gained title.

1.   Effect of Taking.   If, during the term hereof, there shall be a total taking or partial taking under the power of eminent domain, then the leasehold estate of Tenant in and to the leased land or the portion thereof taken shall cease and terminate as of the date of taking of the said land.   If this lease is so terminated, in whole or in part, all rentals and other charges payable by Tenant to Landlord hereunder and attributable to the leased land or portion thereof taken shall be paid by Tenant up to the date of taking by the condemnor and the parties shall thereupon be released from all further liability in relation thereto.

C.   Allocation of Award - Total Taking.   All compensation and damages awarded for the total taking of

WPN:2004A                    11



002215                    EXHIBIT 40, PAGE 1395

BK 13824 PG 1285

the leased land allocated to Landlord under the terms of
the Master Lease shall be allocated as follows:

(a)  Tenant shall be entitled to an amount equal
to the sum of the following:

(i)  The fair market value of all of the
improvements located on the leased land; and

(ii)  The then fair market value of the
Tenant's leasehold interest in the leased land.

(b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

D.    Allocation of Award – Partial Taking.  All
compensation and damages awarded for the taking of a
portion of the leased land allocated to Landlord under the
terms of the Master Lease shall be allocated and divided
as follows:

(a)  Tenant shall be entitled to an amount equal
to the sum of the following:

(i)  The proportionate reduction of the
fair market value of the improvements located on
the leased land; and

(ii)  The proportionate reduction of the
fair market value of Tenant's leasehold interest
in the leased land.

(b)  Landlord shall be entitled to the amount
remaining of the total award after deducting therefrom
the sums to be paid to Tenant as hereinabove provided.

E.    Reduction of Rent on Partial Taking.  In the
event of a partial taking, the rent payable by Tenant
hereunder shall be adjusted from the date of taking to the
next rental adjustment date or to the date of the
expiration of the term of this lease, whichever date is
sooner.  Such rental adjustment will be made by reducing
the basic rental payable by the Tenant in the ratio that
the fair market value of the leased land at the date of
taking bears to the fair market value of the leased land
immediately thereafter.

F.    Determination of Fair Market Value.
Whenever fair market value must be determined for the
purposes of this Article, and the parties fail to agree in
writing on such fair market value within ten (10) days of
a request for such agreement from either party, then fair
market value shall be determined by appraisers appointed
pursuant to the Article in the Master Lease entitled
"Condemnation" or if no such appraiser have been or are to
be appointed, by agreement of Landlord and Tenant or, in
the absence of such an agreement by appraisers appointed
by Landlord and Tenant in the same manner as set forth in
such Article.

WPN:2004A                        12

263

002216                    EXHIBIT 40, PAGE 1396

BK 13824 PG 1286

21.  RENTAL ADJUSTMENT.

A.   Effective January 1, 2000, January 1, 2020, and January 1, 2010, the annual rental payable hereunder shall be adjusted to a sum equal to ten percent (10%) of the unimproved fair market value of the leased land, or any portion then remaining subject to this Lease, as of such dates.  The said "unimproved fair market value" of the leased land shall be such value as determined by the Master Lessor and the Landlord in accordance with the terms and provisions of Article 21 of the Master Lease. After any such adjustment of rent, Tenant shall pay to Landlord such rental as so adjusted during the period applicable thereto at the times and in the manner herein provided for in the Article entitled "Rental"; provided, however, in no event shall the annual rental, as so adjusted, be less than the annual rental in the immediately preceding period.

Pending the final determination of such adjusted rental, Tenant shall pay to Landlord the amount of rent previously payable under the Article of this lease entitled "Rental".  If such adjusted rental, as finally determined, shall exceed the amount of the previous rental, the excess amount accruing during the interim period shall be paid by Tenant to Landlord within thirty (30) days after the final determination of said adjusted rental.

B.   Effective January 1, 1990, January 1, 2010, January 1, 2030, and January 1, 2050, the annual rental shall be adjusted upwards as follows:  As promptly as practical after such dates, Landlord shall compute the increase, if any, in the cost of living during the period just ended, based upon the Consumers Price Index - Los Angeles/Long Beach/Anaheim Metropolitan Area (1967=100), "All items of goods and services purchased by urban wage and clerical worker families" (hereinafter called the "Index"), published by the Bureau of Labor Statistics of the United States Department of Labor.  The Index Number for the latest month prior to commencement of the term of this Lease, with respect to which such a Number is published, shall be the "Base Index Number" and the corresponding Index Number for the month which immediately preceeds the effective date of the Adjustment shall be the "Current Index Number".

The annual rent shall be adjusted by multiplying the rental payable during the immediately preceding year of the term of this lease by a fraction, the numerator of which is the Current Index Number and the denominator of which is the Base Index Number; provided, however, that the annual rent shall never be reduced below the rental payable in the immediately preceding twelve-month period.

Tenant shall continue payment of rent installments in effect for the expiring rental period until notified by Landlord of the new rent.  Such notification shall include a memorandum showing the calculations used by Landlord in determining the new rent.  Immediately upon receipt of such notice, Tenant

WPN:2004A                13

002217

EXHIBIT 40, PAGE 1397

BK 13824 PG 1287

shall commence payment of the adjusted rent, and shall also pay to Landlord with respect to any period already expired within thirty (30) days after receipt of such notice, the excess of the new annual rent over the rent actually paid by Tenant.

If publication of the Index shall be discontinued, the most comparable Index when published by any branch or department of the United States Government shall be substituted, or if there is none, the parties shall agree on another source of information, and such adjustments in the method of computation shall be made as may be necessary to carry out the intent of this cost-of-living provision. Appropriate adjustments shall also be made in the event that the base period, or other aspects of the Index are changed. If the parties are unable to agree on a source of information, such source of information shall be determined by arbitration, pursuant to the provisions of the California Code of Civil Procedure.

Notwithstanding the foregoing, the annual rental shall not be adjusted pursuant to the above higher than a sum equal to one hundred seventy percent (170%) of the rent payable in the immediately preceding twelve-month period.

22.  DRAINAGE AND FILL.  Tenant shall cause all drainage of water from the leased land and improvements thereon to drain or flow into adjacent streets and not upon adjoining property, and Tenant shall so maintain all slopes or terraces on the leased land .. to prevent any erosion thereof upon such streets or adjoining property.

23.  ENCROACHMENTS.  If a dwelling house is constructed on the leased land, the wall or walls of which adjoin the wall or walls of a dwelling constructed on a contiguous lot, any such wall shall be considered to adjoin and abut the wall of the contiguous lot against the surface from the bottom of the foundation over the full length and height of any building so erected for residential purposes.  Both Tenant and lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any encroachment of any wall of any dwelling house.

Tenant and the lessees of contiguous lots shall have a reciprocal easement appurtenant to each of said lots over said contiguous lots for the purpose of accommodating any natural settlement of any structures located on any of said lots.

Should there be found to exist any party wall or party fence, the agreement between Tenant and the lessee of a contiguous lot or lots shall be that the lessees of the contiguous lots who have a party wall or party fence shall equally have the right to the use of such wall or fence, and such wall shall be considered to adjoin and abut against the surface from the bottom of the foundation over the full length and height of any building so

WPN:2004A                    14

002218                    EXHIBIT 40, PAGE 1398

BK 13824 PG 1288

erected.  Such rights of use shall be as not to interfere
with the use and enjoyment of the lessees of adjoining
lots; and, in the event that any such party wall or fence
is damaged or injured from any cause other than the act or
negligence of one of the lessees, the same shall be
repaired or rebuilt at their joint expense.

24.  **COMPLIANCE WITH LAWS.**  Tenant covenants that
during the lease term, Tenant will comply, at no cost or
expense to Landlord, with all laws, ordinances, orders,
rules, regulations and requirements of all federal, state
and municipal governments and appropriate departments,
commissions, boards and officers thereof, which may be
applicable to the leased land or its Unit, buildings and
other improvements constructed thereon, or the use or
manner of use of the leased land or its Unit.  Tenant
accepts the leased land and its Unit in the actual
condition of the same as of the date of this lease.

25.  **ACCEPTANCE OF PERFORMANCE BY OTHERS.**
Landlord agrees to accept performance of any of the
covenants or agreements of Tenant contained herein from
(a) any group of ten or more tenants holding subleases of
individual interests in the leased land or (b) the
management body for the Project.

26.  **CONSTRUCTION AND EFFECT.**  Time is of the
essence of this lease.  The article headings herein are
used only for the purpose of convenience and shall not be
deemed to limit the subject to the articles hereof or to
be considered in the construction thereof.  Each and all
of the obligations, covenants, conditions and restrictions
of this lease shall be deemed as running with the land and
shall inure to the benefit of and be binding upon and
enforceable against, as the case may require, the
successors and assigns of Landlord and the heirs,
executors, legal representatives, encumbrancers,
assignees, successors and subtenants of Tenant.  If Tenant
consists of more than one person, the covenants and
obligations of Tenant hereunder shall be the joint and
several covenants and obligations of such persons.  In
this lease, the masculine gender includes the feminine and
the neuter, and the singular number includes the plural,
whenever the context so requires.

27.  **NON-DISTURBANCE.**  No mortgage or deed of
trust placed on the leased land .  Landlord shall be
superior to the interest of Tenant herein unless the
mortgagee or beneficiary thereunder executes an agreement
in recordable form covenanting in a form satisfactory to
the Tenant that in the event of judicial or private
foreclosure, or deed in lieu of foreclosure, or any other
action taken by such mortgagee or beneficiary this Lease
and the rights of Tenant hereunder shall not be disturbed
by reason of any such foreclosure or other action but
shall continue in full force and effect so long as this
Lease shall remain in full force and effect.

28.  **ESTOPPEL CERTIFICATES.**  Landlord and Tenant
shall at any time and from time to time, upon not less
than ten (10) days prior written request by the other

WPN:2004A                    15

EXHIBIT 40, PAGE 1399

BK 13824 PG 1289

party or parties to this lease, execute, acknowledge and deliver to such party or parties a statement in writing certifying that this lease is unmodified and in full force and effect (or if there has been any modification thereof that the same is in full force and effect as modified and stating the modification or modifications) and that there are no defaults existing (or if there is any claimed default stating the nature and extent thereof); and stating the dates to which the rent and other charges have been paid in advance.  It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by any prospective assignee or sublessee of the leasehold estate, or estates of Tenant, or any prospective purchaser of the estate of Landlord, or any lender or prospective assignee of any lender on the security of the leased land or the fee estate or any part thereof, or upon the leasehold estate of Tenant or any part thereof, and any third person.

IN WITNESS WHEREOF, the parties hereto have executed this Sublease as of the day and year first above written.

By _____
Robert P. Warmington
"Landlord"

By _____
"Tenant"

By _____
"Tenant"

WPN:2004A                    16

EXHIBIT 40, PAGE 1400

BK 13824 PG 1290

STATE OF ___CALIFORNIA___ )
                          ) ss.
COUNTY OF ___ORANGE___    )

On ___August 1___ , 19 80, before me the
undersigned, a Notary Public in and for said State,
personally appeared Robert P. Warmington, known to me to
be the person whose name is subscribed to the within
Instrument, and acknowledged to me that he executed the
same.

WITNESS my hand and official seal.

_____
Notary Public

[Seal]    OFFICIAL SEAL
          GAIL K. KING
          NOTARY PUBLIC - CALIFORNIA
          PRINCIPAL OFFICE IN
          ORANGE COUNTY
          My Commission Expires Nov. 5, 1982

[Attach acknowledgment form for Tenant]

STATE OF CALIFORNIA
                              )
COUNTY OF ___Orange___        ) ss.
On ___November 5, 1980___ , before me, the undersigned, a Notary Public in and for
said State, personally appeared ___John F. Turner and Virginia H. Turner___

known to me to be the person S whose name are
subscribed to the within instrument and acknowledged to me
that ___they___ executed the same.
WITNESS my hand and official seal.

Signature _____

Bonnie Quenneville
_____
Name (Typed or Printed)

OFFICIAL SEAL
BONNIE QUENNEVILLE
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Commission Expires: Jan. 13, 1984

(This area for official notarial seal)

WPN:2004A                    17

RECORDED D

002221

EXHIBIT 40, PAGE 1401

8695          BK 13824 PG 1291

**$5.00**

RECORDED AT THE REQUEST OF
AND WHEN RECORDED RETURN TO:

The Robert P. Warmington Co.
16592 Hale Avenue
Irvine, California   92714

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1988
LEE A. BRANCH, County Recorder

Conveyance connected with leaseholder
interest not to exceed 99 years.

AP 178-011-01

## CONVEYANCE OF REMAINDER INTEREST

13/4

FOR VALUABLE CONSIDERATION, receipt of which is hereby
acknowledged, THE ROBERT P. WARMINGTON CO., a California
corporation, hereby grants to ROBERT P. WARMINGTON, an
individual, the remainder interest in that portion of Lots 1
and 2 of Tract 10542 in the City of Huntington Beach, County
of Orange, State of California, as shown on a Map recorded in
Book 456, Pages 49 and 50 of Miscellaenous Maps, in the
Office of the County Recorder of Orange County, California,
described on Exhibit I attached hereto, after the term of
years expiring upon expiration or early termination of that
certain Condominium Sublease of even date herewith, made
by Robert P. Warmington, an individual, to _____

_____ John F. Turner and Virginia H. Turner, husband and wife, as Joint Tenants

_____

_____

_____ ,

a short form of which is being recorded concurrently herewith,
subject, however, to all matters whether or not of record.

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By _____

By _____

EXHIBIT 40, PAGE 1402

BK 13824 PG 1292

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF ORANGE    )

On ___August 1___, 1980, before me, the undersigned,
a Notary Public in and for said State, personally appeared
____OLIVER N. CRARY____, known to me to be the
____Vice President____, and ____WILLIAM J. PITTMAN____,
known to me to be the ____Secretary____ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

OFFICIAL SEAL
GAIL L KING
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires Nov 5, 1982

Notary Public in and for
said County

[SEAL]

2

EXHIBIT 40, PAGE 1403

BK 13824 PG 1293

EXHIBIT I

**Parcel 1**

Those portions of Unit _53_, as shown and
defined on a Condominium Plan ("The Condominium
Plan"), recorded in Book 13358, Page 1193, et seq.,
consisting of buildings and other improvements.

**Parcel 2**

An undivided one-eightieth (1/80) interest
in and to those portions of the Common Area as
shown and defined on the Condominium Plan, con-
sisting of buildings and other improvements.

**Parcel 3**

An exclusive easement for the use and
occupancy of those portions of Restricted
Common Area as defined on the Condominium Plan
for entry and staircases and attic space relating
to said Unit, consisting of buildings and other
improvements.

**Parcel 4**

Non-exclusive easement and right to use
those portions of the Common Area as defined on
the Condominium Plan, except Restricted Common
Area, consisting of buildings and other improve-
ments.

SUBJECT TO:

(a)   general and special taxes and assessments
      for the current fiscal year;

(b)   the Declaration of Restrictions recorded
      in Book 13618, Page 982, Official Records
      of Orange County, California, as amended,
      (the "Declaration");

(c)   all other covenants, conditions, restric-
      tions, rights, reservation of rights of way
      and easements whether or not of record.

RECORDED

EXHIBIT 40, PAGE 1404

8696     BK 13824 PG 1294

RECORDING AT THE REQUEST OF:

$10.00
C3

WHEN RECORDED MAIL TO:
Mr. and Mrs. John F. Turner
4476 Alderport
Huntington Beach, Ca. 92647

PAID
DOC TRANSFER TAX
LEE A. BRANCH
ORANGE CO. RECORDER

RECORDED AT REQUEST OF
FIRST AMER. TITLE INS. CO.
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA
8:00 A.M. NOV 7 1980
LEE A. BRANCH, County Recording

Mail Tax Statements to
Address Shown Above

The undersigned Grantor Declares The
Documentary Transfer Tax is $ 126.50
Computed On Full Value of Property
Conveyed in Huntington Beach, Ca.

CONDOMINIUM SUBLEASE
(SHORT FORM-MEMORANDUM)
AND GRANT DEED

For the purpose of establishing and vesting in

JOHN F. TURNER and VIRGINIA H. TURNER, husband and wife as Joint Tenants

(the "Condominium Owner"), a Condominium as defined in the
Condominium Plan (the "Condominium Plan"), recorded in Book
13358, Pages 1193, et seq., Official Records of Orange County,
California, located on Lots 1 and 2 of Tract 10542 in the
City of Huntington Beach, County of Orange, State of
California, as shown on a Map recorded in Book 456, Pages 49
and 50 of Miscellaneous Maps, in the Office of the County
Recorded or Orange County, California:

I.   DEMISING CLAUSE:

ROBERT P. WARMINGTON, an individual, ("Sublessor"), who
is the lessee under that certain Ground Lease dated as of
August 1, 1980, from HOUSER BROS. CO., a limited partnership,
as lessor, which Ground Lease is being recorded concurrently
herewith, hereby subleases to Condominium Owner, the follow-
ing real property:

Parcel 1

Unit 53 , as shown and defined on the
Condominium Plan, excepting that portion con-
sisting of buildings and other improvements.

MAIL TAX STATEMENTS AS DIRECTED ABOVE

EXHIBIT 40, PAGE 1405

BK 13824 PG 1295

Parcel 2

An undivided one-eightieth (1/80) interest in the Common Area as shown and defined on the Condominium Plan, excepting that portion consisting of buildings and other improvements.

Parcel 3

An easement for the exclusive use and occupancy of those portions of the Restricted Common Area as defined on said Condominium Plan for entry and staircases and attic space relating to said Unit, excepting that portion consisting of buildings and other improvements.

Parcel 4

A non-exclusive easement and right to use the Common Area as defined on said Condominium Plan, except the Restricted Common Area, excepting that portion consisting of buildings and other improvements,

for a term commencing on the date this instrument is recorded in the Office of the County Recorder of Orange County, California, and ending December 31, 2059, and for the rental and upon all the terms and conditions contained in that certain Condominium Sublease (the "Sublease") of even date herewith and recorded concurrently herewith, between Robert P. Warmington and the Condominium Owner.

II.  GRANTING CLAUSE:

THE ROBERT P. WARMINGTON CO., a California corporation ("Grantor"), hereby grants to the Condominium Owner for a term expiring upon expiration or an earlier termination of the Sublease the following real property:

2

EXHIBIT 40, PAGE 1406

BK 13824 PG 1296

### Parcel 1

Those portions of Unit 53 , as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

### Parcel 2

An undivided one-eightieth (1/80) interest in and to those portions of the Common Area as shown and defined on the Condominium Plan, consisting of buildings and other improvements.

### Parcel 3

An exclusive easement for the use and occupancy of those portions of Restricted Common Area as defined on the Condominium Plan for entry and staircases and attic space relating to said Unit, consisting of buildings and other improvements.

### Parcel 4

Non-exclusive easement and right to use those portions of the Common Area as defined on the Condominium Plan, except Restricted Common Area, consisting of buildings and other improvements.

SUBJECT TO:

(a)  general and special taxes and assessments for the current fiscal year;

(b)  the Declaration of Restrictions recorded in Book 13618, Page 982, Official Records of Orange County, California, as amended, (the "Declaration");

3

EXHIBIT 40, PAGE 1407

BK 13824 PG 1237

(c)  all other covenants, conditions, restric-
tions, rights, reservation of rights of way
and easements whether or not of record.

The buildings and other improvements referred to above
are the buildings and other improvements located on Lots 1
and 2 of Tract 10542, which are and shall remain real property,
as more specifically set forth in the Declaration.  The real
property demised and granted hereby which together constitute
a condominium must at all times be held by the same person
and may not be separately conveyed, assigned, transfered,
encumbered or otherwise alienated, voluntarily, involuntarily
or by operation of Law.

Dated:    August 1,     , 1980.


SUBLESSOR:


Robert P. Warmington

GRANTOR:

THE ROBERT P. WARMINGTON CO.

By

By


4

275

002228                    EXHIBIT 40, PAGE 1408

BK 13824 PG 1298

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF ORANGE         )

On __August 1__, 1980, before me, the undersigned, a
Notary Public in and for said County and State, personally
appeared ROBERT P. WARMINGTON, known to me to be the person
whose name is subscribed to the within instrument and
acknowledged that he executed the same.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public in and for
said County

[SEAL]

STATE OF CALIFORNIA      )
                         ) ss.
COUNTY OF ORANGE         )

On __August 1__, 1980, before me, the undersigned, a
Notary Public in and for said State, personally appeared
____OLIVER N. CRARY____, known to me to be
the ___Vice President___, and ____WILLIAM J. PITTMAN____,
known to me to be the ____Secretary____ of the corporation
that executed the within Instrument, known to me to be the
persons who executed the within Instrument on behalf of the
corporation therein named, and acknowledged to me that such
corporation executed the within Instrument pursuant to its
by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

OFFICIAL SEAL
PEARL L. HUNT
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires Mar 25, 1983

_Pearl L. Hunt_
Notary Public in and for said
County

[SEAL]

5

RECORDED

276
002229

EXHIBIT 40, PAGE 1409

**EXHIBIT A**

277

EXHIBIT 40, PAGE 1410

RECORDING REQUESTED BY
CHICAGO   TITLE   COMPANY
AND WHEN RECORDED MAIL TO

SANDRA BRADLEY
18 MEADOW BROOK DR
COTO DE CAZA, CA  92679

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||||   **30.00**

**2009000633802 04:05pm 11/23/09**

401 59 A34 A04 A12 5

0.00 0.00 0.00 0.00 12.00 0.00 0.00 0.00

Escrow No.   -
Order No.   985040290 - S32

SPACE ABOVE THIS LINE FOR RECORDER'S USE

ASSIGNMENT OF CONDOMINIUM SUBLEASE

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
( Additional recording fee applies )

CPFR4 --11/13/06bk

Document Number: 2009000633802 Page: 1 of 4

002231                    EXHIBIT 40, PAGE 1411

**WHEN RECORDED MAIL TO:**
(Assignee's Name & Address)
SANDRA BRADLEY
18 MEADOW BROOK DR
COTA DE CAZA CA 92679

*NO CONSIDERATION*
*TERM OF*
*LEASE LESS*          (Space Above this Line for Recorder's use)
*THAN 99 YEARS.*   **ASSIGNMENT OF CONDOMINIUM SUBLEASE**

For valuable consideration, receipt of which is hereby acknowledged, the undersigned
__LARRY W. RIDER AND TERRI A. RIDER HUSBAND AND WIFE AS JOINT TENANTS__, hereby
transfers and assigns to __SANDRA L. BRADLEY A WIDOW_____,
all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium
Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as
Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments
of record, and __JOHN F. TURNER AND VIRGINIA H TURNER HUSBAND AND WIFE AS JOINT__
__TENANTS__
as Tenant, recorded on __NOVEMBER 7, 1980__ in Book __13824__, Page __1274__ inclusive, as
Instrument No. __8694__ of Official Records of Orange County, California, as amended by the First
Amendment to Condominium Sublease recorded on __AUG 28, 2003__ as Instrument No.
__2003 001044770__. The property that is the subject of the Sublease is described as follows:

Unit __53__ of Tract 10542. Legal Description contained on Exhibit "A" attached hereto and made
a part hereof. TOGETHER WITH all buildings and other improvements on said land.

DATED: __11/19/2009_____

_____
Assignor (s)

**STATE OF CALIFORNIA** )
) ss.
**COUNTY OF ORANGE** )

On __11/19/2009__, before me, __ANTHONY H. DUONG__, personally appeared
__LARRY W. RIDER & TERRI A. RIDER__, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

(This space for notarial seal)

Page 1 of 2

J:\UC PERM\Masters-BSI\MASTER-OHB-Assignment of Condominium Sublease with Notary.doc

11/17/2008 14:28 FAX                                                        @009

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

### ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder.  Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date.  Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease.  The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED: _11/17/09_____          _Sandra Bradley_____
                                        Assignee (s)

                                        _____

STATE OF ~~CALIFORNIA~~ Missouri   )
COUNTY OF ~~ORANGE~~ StLouis City  ) SS.

On _November 17, 20_ before me, _Kenneth V. Ball_, personally appeared _Sandra L. Bradley_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Kenneth J. Ball_____          (This space for notarial seal)
Signature of Notary Public

KENNETH J. BALL
Notary Public-Notary Seal
State of Missouri, Saint Louis City
Commission # 09703489
My Commission Expires Aug 10, 2013

Page 2 of 2

J:\UC PERM\Masters-BSI\MASTER-GHB-Assignment of Condominium Sublease with Notary.doc

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: 3/31/2017

CERTIFICATION FEE: 4.00

COUNTY CLERK-RECORDER

Hugh Nguyen

ORANGE COUNTY
STATE OF CALIFORNIA

Document Number: 2009000633802 Page: 4 of 4

281

002234                   EXHIBIT 40, PAGE 1414

Order No.

Escrow No.

Loan No.

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

24.00

2010000219518 1:00 pm 05/10/10
153 420 A34 A04 A12    3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**NO CONSIDERATION**
**TERM OF LEASE**
**LESS THAN 99 YEARS**

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, SANDRA L. BRADLEY, A WIDOW, hereby transfers and assigns to, SANDRA L. BRADLEY as trustee of the SANDRA L. BRADLEY TRUST dated October 17, 2001 as amended, all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments of record, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANTS as Tenant, recorded on NOVEMBER 7, 1980 in Book 13824, Page 1274 inclusive, as Instrument No. 8694 of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on Aug 28, 2003 as Instrument No. 2003 001044770. The property that is the subject of the Sublease is described as follows:

Unit 55 of Tract 10542.  Legal Description contained on Exhibit "A" attached hereto and made a part hereof.
TOGETHER WITH all buildings and other improvements on said land.

DATED: 3/10/2010

_Assignor, SANDRA L. BRADLEY_

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

On _March 10, 2010_, before me, _____, a Notary Public
*in and for said State personally appeared* SANDRA L. BRADLEY *who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.*

*I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

Signature _____

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift to public*

Document Number: 2010000219518 Page: 1 of 4

002235                    EXHIBIT 40, PAGE 1415

Page   1
Order No. 985040290                    DESCRIPTION

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA,
AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"),
RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING
BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE
SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF
RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE
CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A
MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED
COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND
ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS
DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

Document Number: 2010000219518 Page: 2 of 4

002236                    EXHIBIT 40, PAGE 1416

Order No.

Escrow No.

Loan No.

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date.  Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease.  The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED:  3/10/2010

Assignee, SANDRA L. BRADLEY

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

On 3/10/2010 , before me, Henry J Coopersmith , a Notary Public in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be the person whose name is  subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person  acted, executed the instrument.

*I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

WITNESS my hand and official seal.

Signature

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift tax oblig*

Document Number: 2010000219518 Page: 3 of 4

002237                    EXHIBIT 40, PAGE 1417

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: 3/31/2017

CERTIFICATION FEE: 4.00

COUNTY CLERK-RECORDER

Hugh Nguyen

ORANGE COUNTY
STATE OF CALIFORNIA

Certified Copy of document number 2010000219518

Document Number: 2010000219518 Page: 4 of 4

285

002238                    EXHIBIT 40, PAGE 1418

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
30.00
2010000309926 2:10 pm 06/30/10
276 421 A34 A04 A12   5
0.00 0.00 0.00 0.00 12.00 0.00 0.00 0.00

RECORDING REQUESTED BY:

Mrs. Sandra L. Bradley
18 Meadow Wood Drive
Coto de Caza, CA 92679

WHEN RECORDED RETURN TO:
same as above

MAIL TAX STATEMENTS TO:
same as above

_____
(space above this line for recorder's use)

CORRECTING ASSIGNMENT OF CONDOMINIUM SUBLEASE

The original **ASSIGNMENT OF CONDOMINIUM SUBLEASE** recorded as
document #2010000219518 on 05/10/10 inadvertently referred to
Unit 53 as Unit 55.  It is now corrected to UNIT 53 as stated in
the attached Exhibit "A".

Document Number: 2010000309926 Page: 1 of 6

002239                    EXHIBIT 40, PAGE 1419

Order No.

Escrow No.

Loan No.

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||   24.00
2010000219518 1:00 pm 05/10/10
153 420 A34 A04 A12   3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

_____
SPACE ABOVE THIS LINE FOR RECORDER'S USE

**NO CONSIDERATION**

**TERM OF LEASE**

**LESS THAN 99 YEARS**          CORRECTING ____, OF

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned, SANDRA L. BRADLEY, A WIDOW, hereby transfers and assigns to, SANDRA L. BRADLEY as trustee of the SANDRA L. BRADLEY TRUST dated October 17, 2001 as amended, all right, title and interest of the undersigned, as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, an individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC by mesne assignments of record, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANTS as Tenant, recorded on NOVEMBER 7, 1980 in Book 13824, Page 1274 inclusive, as Instrument No. 8694 of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on Aug 28, 2003 as Instrument No. 2003 001044770. The property that is the subject of the Sublease is described as follows:

Unit 53 of Tract 10542.  Legal Description contained on Exhibit "A" attached hereto and made a part hereof. TOGETHER WITH all buildings and other improvements on said land.

DATED: 3/10/2010                          _Sandra L Bradley_
                                          Assignor, SANDRA L. BRADLEY

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

On _March 10, 2010_ before me _____, _a Notary Public in and for said State personally appeared_ SANDRA L. BRADLEY _who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument._

*I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

*Signature* _____

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift tax oblig*

Document Number: 2010000309926 Page: 2 of 6

002240          EXHIBIT 40, PAGE 1420

Page   1
Order No. 985040290

# DESCRIPTION

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA,
AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"),
RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING
BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE
SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF
RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE
CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A
MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED
COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND
ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS
DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

Document Number: 2010000309926 Page: 3 of 6

002241            EXHIBIT 40, PAGE 1421

Order No.

Escrow No.

Loan No.

WHEN RECORDED MAIL TO:

Sandra Bradley
18 Meadow Brook Drive
Cota de Caza, CA 92679

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment (if more than one, then jointly and severally) hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date.  Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease.  The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

DATED: 3/10/2010                 _Sandra L Bradley_
                                 Assignee, SANDRA L. BRADLEY

*STATE OF CALIFORNIA*
*COUNTY OF ORANGE*

*On 3/10/2010                 , before me, Henry J Coopersmith                 , a Notary Public
in and for said State personally appeared SANDRA L. BRADLEY who proved to me on the basis of satisfactory evidence to be
the person whose name  is  subscribed to the within instrument and acknowledged to me that she executed the same in her
authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person  acted,
executed the instrument.*

*I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

*Signature*

HENRY J. COOPERSMITH
COMM. #1879512
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 6, 2014

*D/As deed tr mcD gift tax oblig*

Document Number: 2010000309926 Page: 4 of 6

002242        EXHIBIT 40, PAGE 1422

Page   1
Order No.  985040290

### DESCRIPTION

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"), RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

Document Number: 2010000309926 Page: 5 of 6

002243                     EXHIBIT 40, PAGE 1423

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: 3/31/2017

CERTIFICATION FEE: 6.00

COUNTY CLERK-RECORDER

*Hugh Nguyen*

ORANGE COUNTY
STATE OF CALIFORNIA

Certified Copy of document number 2010000309926

Document Number: 2010000309926 Page: 6 of 6

002244        EXHIBIT 40, PAGE 1424

# THE HUNTINGTON BEACH GABLES
## HOMEOWNERS' ASSOCIATION
c/o Elite Community Management   38760 Sky Canyon Drive Murrieta, Ca 92563
Phone: 888.354.8322   Fax: 951.699.1661

April 12, 2016

*I agree to the items below*
*Sandra Bradley*

Sandra L Bradley
18 Meadowbrook Drive
Coto De Caza, CA 92679

RE:    ACC Application to approve Sun (patio) cover

Dear Homeowner:

Attached is a copy of the application submitted to install a patio cover. It has been approved by the board with the following conditions:

1) Size no larger than ~~12'X12'~~  10 X 15
2) Permit must be pulled from city
3) Notarized statement from Sandra Bradley agreeing to maintain patio cover including: cosmetic appearance, and termite treatment.
4) Cover must be removed at time of sale of property and patio brought back to its original condition or seller obtains and submits to Board notarized statement and signature of new owner agreeing to maintenance conditions stated in #3.
5) Patio cover must be painted same color as trim of unit.

Sincerely,

*Linn Joslyn*
Linn Joslyn CMCA®
Community Association Manager
**Huntington Beach Gables Homeowners' Association**
cc: Board
    Jamie Gallian

EXHIBIT 40, PAGE 1425

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Orange_                        )
                                          )
On _04/19/2016_ before me, _Bonnie Coelho, notary public_
       Date                               Here Insert Name and Title of the Officer
personally appeared _Sandra L. Bradley_
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**BONNIE COELHO**
Commission No. 1975866
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Expires APRIL 21, 2016

Signature _Bonnie Coelho_
              Signature of Notary Public

Place Notary Seal Above

―――――――――――――― **OPTIONAL** ――――――――――――――
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: _Letter 4/12/16_____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____          Signer's Name: _____
☐ Corporate Officer — Title(s): _____    ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General            ☐ Partner — ☐ Limited  ☐ General
☐ Individual       ☐ Attorney in Fact        ☐ Individual       ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator  ☐ Trustee          ☐ Guardian or Conservator
☐ Other: _____                   ☐ Other: _____
Signer Is Representing: _____          Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

EXHIBIT 40, PAGE 1426

276

RECORDING REQUESTED BY:

Jamie Gallian
4476 Alderport Dr.
Huntington Beach, CA
92649

AND WHEN RECORDED MAIL TO:

Jamie Gallian
4476 Alderport Dr.
Huntington Beach, CA
92649

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

33.00
* $ R 0 0 0 9 1 4 7 5 4 1 $ *
2017000116815 8:25 am 03/23/17
276 415 A34 A04 F14   6
0.00 0.00 0.00 0.00 15.00 0.00 0.00 0.00

TITLE OF DOCUMENT:   Assignment of Condominium
SubLease
Lease from present to 2059

Transfer Tax exempt. This Lease is a
Gift between family Members.

2T
6P
2FF
CC
2CF

002247            EXHIBIT 40, PAGE 1427

RECORDING REQUESTED BY:

~~Sandra Bradley~~
~~19 Meadow Wood Dr.~~
~~Coto de Caza, CA 92679~~

*Jamie Gallian*
*4476 Alderport D*
*Huntington Beach*
*Ca 92649*

WHEN RECORDED RETURN TO:

~~same as above~~ *Jamie Gallian*
*4476 Alderport Dr*
*Huntington Beach CA 92649*

(space above this line for Recorder's use)

## ASSIGNMENT OF CONDOMINIUM SUBLEASE

For no consideration, receipt of which is hereby acknowledged, the undersigned, SANDRA L. BRADLEY, as Trustee of the Sandra L. Bradley Trust, hereby transfers and assigns to JAMIE L. GALLIAN, a single woman, all right, title and interest of the undersigned as Tenant, in and under that certain Condominium Sublease dated August 1, 1980, by and between ROBERT P. WARMINGTON, and individual, as Landlord, which interest was subsequently assigned to BS INVESTORS, LLC, by mesne assignments of record, and JOHN F. TURNER AND VIRGINIA H. TURNER, HUSBAND AND WIFE AS JOINT TENANTS as Tenant, recorded on November 7, 1980 in Book 13824, Page 1274 inclusive, as Instrument No. 8694 of Official Records of Orange County, California, as amended by the First Amendment to Condominium Sublease recorded on August, 2003 as Instrument No. 2003 001044770. The property that is the subject of the Sublease is described as follows:

Unit 53 of Tract 10542. Legal Description contained on Exhibit "A" attached hereto and made a part hereof.
TOGETHER WITH all buildings and other improvements on said land.

NO CONSIDERATION – TERM OF LEASE LESS THAN 99 YEARS

Dated: 3/22/2017

Assignor, SANDRA L. BRADLEY
Trustee of the Sandra L. Bradley Trust

1

002248          EXHIBIT 40, PAGE 1428

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ORANGE

On _3/22/2017_____, before me, HENRY J. COOPERSMITH, *a Notary Public in and for said State personally appeared* SANDRA L. BRADLEY, *who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.*

*I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

Signature _____

HENRY J. COOPERSMITH
COMM. # 2054619
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES FEB. 6, 2018

2

002249          EXHIBIT 40, PAGE 1429

# EXHIBIT "A"

## DESCRIPTION

der No: 985040290

PARCEL 1:

UNIT 53, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA,
AS SHOWN AND DEFINED ON THAT CERTAIN CONDOMINIUM PLAN ("THE CONDOMINIUM PLAN"),
RECORDED OCTOBER 18, 1979 IN BOOK 13358 PAGE 1193, ET SEQ., OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHE HYDROCARBON SUBSTANCES LYING
BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE
SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN INSTRUMENTS OF
RECORD.

PARCEL 2:

AN UNDIVIDED 1/80TH INTEREST IN AND TO LOTS 1 AND 2 OF TRACT NO. 10542, IN THE
CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A
MAP RECORDED IN BOOK 456 PAGES 49 AND 50 OF MISCELLANEOUS MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY TOGETHER WITH THOSE PORTIONS OF THE COMMON
AREA AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN, CONSISTING OF BUILDINGS AND
OTHER IMPROVEMENTS.

EXCEPTING THEREFROM CONDOMINIUM UNITS 1 THROUGH 80 INCLUSIVE, LOCATED THEREON.

PARCEL 3:

AN EXCLUSIVE EASEMENT FOR THE USE AND OCCUPANCY OF THOSE PORTIONS OF RESTRICTED
COMMON AREA AS DEFINED ON THE CONDOMINIUM PLAN FOR ENTRY AND STAIRCASES AND
ATTIC SPACE RELATING TO SAID UNIT.

PARCEL 4:

NON-EXCLUSIVE EASEMENT AND RIGHT TO USE THOSE PORTIONS OF THE COMMON AREA AS
DEFINED ON THE CONDOMINIUM PLAN, EXCEPT RESTRICTED COMMON AREA.

002250                     EXHIBIT 40, PAGE 1430

RECORDING REQUESTED BY:

~~Sandra Bradley~~ *Jamie Gallian*
~~19 Meadow Wood Dr.~~ *4476 Alderport*
~~Coto de Caza, CA 92679~~ *Huntington Bach*
*CA 92649*

WHEN RECORDED RETURN TO:

~~same as above~~ *Jamie Gallian*
*4476 Alderport*
*Huntington Beach, CA*
*92649*

_____

(space above this line for Recorder's use)

### ACCEPTANCE AND AGREEMENT

The undersigned Assignee named in the foregoing Assignment hereby accepts said Assignment and hereby agrees with and for the benefit of the Landlord, under the Sublease described in said Assignment, to keep, perform and be bound by all of the terms, covenants and conditions contained in said Sublease as amended by the First Amendment to the Condominium Sublease on the part of the Tenant therein to be kept and performed, to all intents and purposes as though the undersigned Assignee was the original Tenant thereunder. Assignee agrees to pay Landlord a late fee equal to 6% of any rent or other payment due under the Sublease which is not received by Landlord within ten (10) days of its due date. Said late fee is in addition to the interest due on unpaid installment indebtedness of 10% as provided in Article 17(A) of the Condominium Sublease. The undersigned Assignee agrees to pay attorneys fees and cost incurred by Landlord to collect rent or other payment under the Sublease or to otherwise enforce Landlord's rights under the Sublease.

Dated: *3/22/17*

Assignee, JAMIE L. GALLIAN

1

298

002251          EXHIBIT 40, PAGE 1431

> A notary public or other officer completing this certificate
> verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not the
> truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
*COUNTY OF ORANGE*

On _3/22/2017_, *before me,* Henry J Coopersmith

*a Notary Public in and for said State personally appeared* JAMIE L. GALLIAN, *who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.*

*I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

*WITNESS my hand and official seal.*

Signature

HENRY J. COOPERSMITH
COMM. # 2054619
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES FEB. 6, 2018

2

002252          EXHIBIT 40, PAGE 1432

THIS IS A TRUE CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE:___MAR 2 3 2017___
CERTIFICATION FEE:_7.00_

COUNTY CLERK-RECORDER

ORANGE COUNTY
STATE OF CALIFORNIA

002253          EXHIBIT 40, PAGE 1433

### DECLARATION OF SANDRA L. BRADLEY

I, Sandra L. Bradley, declare as follows:

1. I am over the age of eighteen, a resident of Orange County, and the former owner of the condominium located at 4476 Alderport Drive, #53, in Huntington Beach, California ("subject condominium"). I am a named defendant in a civil lawsuit brought by The Huntington Beach Gables Homeowners' Association ("HOA") regarding changes to condominium #53 that allegedly violate the architectural requirements of the HOA. Jamie Gallian is a co-defendant.

2. I provide this declaration to the HOA about my best recollection of events regarding the allegations contained in the HOA's pending lawsuit. I have personal knowledge of the facts set forth in my declaration unless stated otherwise. If called to testify, I could, and would, provide competent and admissible testimony about the facts set forth in my declaration.

3. On November 19, 2009, I purchased the subject condominium. The subject condominium was purchased with the intention of having co-defendant Jamie Gallian live there as my tenant.

4. I do not recall the history of how I came to have the HOA's governing documents for the subject condominium. I do remember that Jamie Gallian provided me with parts of the HOA's governing documents towards the beginning of the dispute with the HOA. During that time, Ms. Gallian was my tenant.

5. For various reasons including the pending lawsuit by the HOA and a very strained relationship with Jamie Gallian, I decided to transfer full ownership of the subject condominium to Jamie Gallian effective March 23, 2017. I have not held an ownership in the subject condominium since that time or otherwise been a member of the HOA.

1

EXHIBIT 40, PAGE 1434

6.     During my ownership of the subject condominium, the only tenant that I had was Jamie Gallian. I never lived at the subject condominium.

7.     For all practical purposes during my ownership, Jamie Gallian had day-to-day control over the subject condominium by virtue of her tenancy and residency. At times, Ms. Gallian would attend HOA meetings for me and was a contact person for me relative to the HOA.

8.     At no time did I ever give Jamie Gallian authority to engage in any activity that violated the governing documents for the HOA. Any authority that I gave to Ms. Gallian to perform repair work and/or maintenance to the subject condominium was contingent upon the work being in compliance with the governing documents.

9.     For any repair work and/or maintenance to the subject condominium, Jamie Gallian was given the authority to select the appropriate vendor, schedule the vendor(s) to perform the work, and supervise the work including compliance with the HOA's governing documents. Ms. Gallian was also authorized to obtain the necessary approvals from the HOA and/or any governmental entity such as the City of Huntington Beach. Ms. Gallian understood the authority that I granted to her to handle the repairs and/or maintenance required her to obtain all necessary permits and/or approvals. I later learned the air-conditioning unit was installed by Ms. Gallian outside of the unit's rear yard fence, and in the Association's common areas.

10.     I never authorized Jamie Gallian to make any modifications and/or improvements to the HOA's common area. I had no knowledge that Ms. Gallian wanted to make any modifications and/or improvements to the HOA's common area. To the extent that Ms. Gallian has installed, altered and/or modified the HOA's common area, it was done without my knowledge and/or consent.

2

EXHIBIT 40, PAGE 1435

11.     At some point, I think in 2015, Ms. Gallian asked me to replace the heater in the subject condominium. I agreed to replace the heater. The extent of my personal involvement, as I understood it, was simply paying for the replacement of the heater including the installation costs. Ms. Gallian would handle all the other details. At the last minute, and without my permission, Ms. Gallian added a new air-conditioning unit to the project. After some discussion, I finally agreed to pay for the labor to complete the project. Ms. Gallian continued to be responsible for making sure the work was performed in a professional and workmanlike manner consistent with the requirements of the HOA's governing documents. I was not involved in the placement of the new air-conditioning unit.

12.     At another time during my ownership, which I think was in 2016, Ms. Gallian installed an open-lattice patio cover without my knowledge or approval. She informed me about it after the fact. Even then, it was my understanding (perhaps presumption) the work was done with the appropriate approval and/or permits. Ms. Gallian paid all of the costs associated with the open-lattice patio cover.

13.     After the open-lattice patio cover was installed, I did go see it because the HOA was concerned the open-lattice patio cover was not painted. Sometime later, again without my knowledge or consent, Ms. Gallian installed a roof, awning and gutters on the open-lattice patio cover.

14.     After receiving a request from the HOA to remove the roof, awning and gutters from the open-lattice patio cover, I asked Ms. Gallian to remove these items. Ms. Gallian refused. I then offered to pay for the roof, awning and gutters to be removed by my handyman at no expense to Ms. Gallian. That offer was likewise refused with Ms. Gallian telling me she was "handling the issue." Ms. Gallian specifically warned me that she would refuse to allow my handyman to enter

3

EXHIBIT 40, PAGE 1436

the subject condominium to address any issue raised by the HOA.  To avoid further conflict, I decided not to send my handyman.

15.    Until the time I transferred the subject condominium to Jamie Gallian, on March 23, 2017, I was not aware that Ms. Gallian had a disability that required a variance from the HOA's governing documents.

16.    Based mostly on the overall nature of my deteriorated relationship with Jamie Gallian and the HOA's violation enforcement efforts, I decided to transfer/gift 100% ownership of the subject condominium from my revocable Trust to Jamie Gallian effective March 22, 2017.

17.    I agree to cooperate in good faith with the HOA as it pursues its claims against Ms. Gallian.  I authorize my attorney Michael R. Halvorsen, Esq. to receive service of any subpoena from the HOA relative to the lawsuit against Jamie Gallian to obtain her compliance with the HOA's governing documents.


I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.  Executed this _30_ day of October 2017 in Coto de Caza, California.

_Sandra L Bradley_
SANDRA L. BRADLEY

EXHIBIT 40, PAGE 1437

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 03/02/2018                TIME: 08:30:00 AM          DEPT:  C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK:  Nga Quach
REPORTER/ERM: Amber N. Hogate CSR# 13525
BAILIFF/COURT ATTENDANT:  None/Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC**  CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72743477

**EVENT TYPE**: Mandatory Settlement Conference

---

**APPEARANCES**
Pejman D. Kharrazian, from Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Lee Gragano and Janine Jasso from The Huntington Beach Gables Homeowners Association, Plaintiff, present.
Brenda K. Radmacher, from Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
 Raquel Flyer, from Flyer & Flyer, present for Defendant/Cross-Complainant Jamie L. Gallian.
Jamie L. Gallian, Defendant/Cross-Complainant is present.

The parties waive any objections to the trial judge conducting a settlement conference.

Settlement conference is held. Case is settled.

The terms of the settlement are recited in open court. Each party indicates on the record that they understand and agree to the terms as stated.

This court retains jurisdiction to enforce the settlement.

The Order to Show Cause re: Dismissal on Settled Case is scheduled for 06/04/2018 at 08:30 AM in Department C33.

No appearance is necessary if the full dismissal is filed by 06/04/2018.

All other future hearing dates are ordered vacated.

---

DATE: 03/02/2018                        MINUTE ORDER                              Page 1
DEPT:  C33                                                              Calendar No.

002258        **EXHIBIT 40, PAGE 1438**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana, CA 92701<br>BRANCH NAME: Central Justice Center | |
| SHORT TITLE: The Huntington Beach Gables Homeowners Association vs. Bradley | |

| NOTICE OF REJECTION OF ELECTRONIC FILING | CASE NUMBER:<br>30-2017-00913985-CU-CO-CJC |
|---|---|

The electronic filing described by the summary data below was reviewed and rejected by the Superior Court of California, County of Orange

### E-Filing Summary Data

Electronically Submitted By: Jamie Gallian
On Behalf of:

Transaction Number:    3662908
Court received Date:    05/01/2018
Court received Time:    05:00:02 PM
Amount not to Exceed:

### Documents Electronically Filed

JAMIE_FRANKFILED3.2.18MSCHOATranscript 2

This electronic filing was rejected based on the following reason(s):

**Reject Reason 1:**  other
Clerk's Comments to Submitter:
Must contain date of Conditional or unconditional settlement or approximate date for which the Request for Dismissal will be filed.

### E-Filing Service Provider Information
Name:              DDSLegal
Email:             efilingstatus@ddslegal.com
Contact Person:  DDSLegal OCEFiling Support
Phone:             7146625555

---

EXHIBIT 40, PAGE 1439

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 06/04/2018          TIME: 08:30:00 AM          DEPT:  C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK:  P. Rief
REPORTER/ERM: Darci Mullarky CSR# 5569
BAILIFF/COURT ATTENDANT:  Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Contract - Other

EVENT ID/DOCUMENT ID: 72768738

**EVENT TYPE**: Order to Show Cause re: Dismissal on Settled Case

EVENT ID/DOCUMENT ID: 72793807

**EVENT TYPE**: Motion to Strike or Tax Costs
MOVING PARTY: Ted Phillips, Lindy Beck, Jennifer Paulin, Lee Gragnano, Janine Jasso, Lori Burrett
CAUSAL DOCUMENT/DATE FILED: Motion to Strike or Tax Costs, 02/28/2018

**APPEARANCES**
Pejman D. Kharrazian, Esq., from Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Brenda K. Radmacher, Esq., from Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present.

Order to Show Cause re: Dismissal held. Extensive discussion held in open court as to the status of the settlement. Upon the order of the court, the parties meet and confer. The case is not settled.

The motion by cross-defendants Lee Gragnano, Ted Phillips, Lindy Buck, Jennifer Paulin, Janine Jasso, and Lori Burrett to strike the Memorandum of Costs filed by cross-complainant Jamie Gallian is continued to 07/19/2018 at 08:30 AM in this department.

Jury Trial scheduled for 08/06/2018 at 08:30 AM in Department C33, if the matter is not resolved at the hearing set for 07/19/2018.

DATE: 06/04/2018                    MINUTE ORDER                    Page 1
DEPT:  C33                                                          Calendar No.

EXHIBIT 40, PAGE 1440

34

```
1              MS. GALLIAN:   ABSOLUTELY.

2              THE COURT:   SO YOU'VE ALL SAVED A LOT OF MONEY

3    BY GETTING THIS CASE RESOLVED TODAY, SO THANK YOU ALL.

4

5                    (PROCEEDINGS CONCLUDED)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
```



Epsten Grinnell & Howell, APC
Attorneys at Law

Respond to:  San Diego office          www.epsten.com
800.300.1704

June 14, 2018

**SENT VIA FIRST CLASS MAIL AND E-MAIL**

Jamie L. Gallian
4476 Alderport Drive
Huntington Beach, CA 92649

      **Re:**    **Signed Transcript of Settlement Agreement**
             *Huntington Beach Gables Homeowners Association v. Gallian*
             OCSC Case No. 30-2017-00913985-CU-CO-CJC
             Our File No.:  5786.06

Dear Ms. Gallian:

      Attached is the Reporter's Transcript of Proceedings dated March 2, 2018 from the Mandatory Settlement Conference ("Transcript") the parties attended.  The Transcript reflects the parties' agreement to a stipulated settlement of the above-referenced matter pursuant to Code of Civil Procedure Section 664.6.

      The parties agreed to sign the Transcript on the record at the June 4, 2018 hearing on the OSC re Dismissal.  (See June 4, 2018 RT at p. 34, lines 4-20.)  You also signed a copy of the Transcript in the jury room of Department 33 in the presence of the Hon. James T. Crandall, but a copy of your signature was not provided to the Association.  For the record of the parties, a signature page has been added to the end of the Transcript, and *the Association has signed the Transcript.*  Please countersign the Transcript at your earliest convenience and return a copy to me.

      We look forward to resolving this lawsuit with you in good faith pursuant to the terms of the stipulated settlement reached on March 2, 2018.

          Sincerely,

          EPSTEN GRINNELL & HOWELL, APC

          Pejman D. Kharrazian

PDK/jac
Enclosure:    MSC Transcript from March 2, 2018 signed by the Association
cc:      Brenda K. Radmacher, Esq. (via email)

3530622v1

**San Diego**
10200 Willow Creek Rd., Suite 100
San Diego, California 92131
858.527.0111 • fax 858.527.1531

**Coachella Valley**
74830 Highway 111, Suite 100
Indian Wells, California 92210
760.836.1036 • fax 760.836.1040

**Inland Empire**
43460 Ridge Park Dr., Suite 200
Temecula, California 92590
800.300.1704 • fax 858.527.1531

002262                              EXHIBIT 40, PAGE 1442

**SETTLEMENT AND RELEASE AGREEMENT PURSUANT TO THE REPORTER'S
TRANSCRIPT OF PROCEEDINGS DATED MARCH 2, 2018**

The parties to the lawsuit, captioned: *The Huntington Beach Gables Homeowners Association v. Bradley et al.*, Orange County Superior Court Case No. 30-2017-00913985-CU-CO-CJC agree to a settlement and mutual release of this lawsuit, including any related cross-actions, pursuant to the terms put on the record before the Court as reflected in the preceding Reporter's Transcript of Proceedings dated March 2, 2018.

IN WITNESS WHEREOF, the Parties hereto have executed this settlement agreement to be effective as of the date of last execution.

**THE HUNTINGTON BEACH GABLES
HOMEOWNERS ASSOCIATION**

DATED: _____6/13_____, 2018     By: _____
                                    Lee Gragnano, President

DATED: _____6-13_____, 2018      By: _____
                                    Janine Jasso, Vice President

**JAMIE L. GALLIAN**

DATED: _____, 2018   By: _____
                                    JAMIE L. GALLIAN

-37-

3573265v1

310

002263                          EXHIBIT 40, PAGE 1443

1   Rian W. Jones, Bar No. 118830
rjones@epsten.com
2   Pejman D. Kharrazian, Bar No. 279260
pkharrazian@epsten.com
3   EPSTEN GRINNELL & HOWELL APC
10200 Willow Creek Road, Suite 100
4   San Diego, California 92131
(858) 527-0111/ Fax (858) 527-1531
5

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**08/10/2018** at 11:58:00 AM

Clerk of the Superior Court
By e Clerk,Deputy Clerk

6   Attorneys for Plaintiff
THE HUNTINGTON BEACH GABLES
7   HOMEOWNERS ASSOCIATION

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11   THE HUNTINGTON BEACH GABLES          CASE NO. 30-2017-00913985-CU-CO-CJC
     HOMEOWNERS ASSOCIATION, a
12   California Nonprofit Mutual Benefit     Judge:  James L. Crandall
     Corporation,                           Dept.: C33
13
                Plaintiff,                   **NOTICE OF RULING ON PLAINTIFF'S
14                                           MOTION TO ENFORCE SETTLEMENT
          v.                                 AND ENTER JUDGMENT PURSUANT TO
15                                           THE TERMS OF STIPULATED
     SANDRA L. BRADLEY, individually and     SETTLEMENT (CODE OF CIVIL
16   as Trustee of the Sandra L. Bradley Trust;  PROCEDURE § 664.6)**
     JAMIE L. GALLIAN, an individual; and
17   DOES 1 through 25, inclusive,           Motion Hearing
                                             Date: July 19 , 2018
18                Defendants.                Time:  1:30 p.m.
                                             Dept:  C33
19
20                                           First Amended Complaint Filed: May 16, 2017
                                             Trial Date: December 10, 2018
21   AND ALL RELATED CROSS-ACTIONS

22

23      **TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR**

24   **ATTORNEYS OF RECORD HEREIN:**

25      **PLEASE TAKE NOTICE** that on July 19, 2018 at 1:30 p.m. in Department 33 of the

26   above-entitled court, located at 700 Civic Center Drive West, Santa Ana, CA 92701, this Court

27   held a hearing on Plaintiff's Motion to Enforce Settlement and Enter Judgment pursuant to the

28   terms of Stipulated Settlement (Code of Civil Procedure § 664.6). After hearing argument

- 1 -

3614243v1

1   from Defendant JAMIE L. GALLIAN and counsel for Plaintiff, the Court denied Plaintiff's

2   Motion to enforce settlement.

3         The Jury Trial set for August 6, 2018 is ordered continued to December 10, 2018 at

4   9:00 AM. All discovery cutoff dates and deadlines are continued and shall track the December

5   10, 2018 trial date.

6         Attached hereto as Exhibit A is a true and correct copy of the Court's July 19, 2018

7   Minute Order.

8

9   Dated:  July 30, 2018             EPSTEN GRINNELL & HOWELL, APC

10

11                         By: _____

12                           Rian W. Jones

13                           Pejman D. Kharrazian
                              Attorneys for Plaintiff

14                           THE HUNTINGTON BEACH GABLES
                              HOMEOWNERS ASSOCIATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3614243v1

NOTICE OF RULING ON PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AND ENTER
JUDGEMENT PURSUANT TO THE TERMS OF STIPULATED SETTLEMENT (CCP §664.6)

002265       EXHIBIT 40, PAGE 1445

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 07/19/2018                    TIME: 01:30:00 PM          DEPT:  C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK:  P. Rief
REPORTER/ERM: Candace Khorouzan
BAILIFF/COURT ATTENDANT:  Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited       CASE TYPE: Contract - Other

EVENT ID/DOCUMENT ID: 72819785

**EVENT TYPE**: Motion to Enforce Settlement
MOVING PARTY: The Huntington Beach Gables Homeowners Association
CAUSAL DOCUMENT/DATE FILED: Motion - Other Enforce Settlement, 06/22/2018

EVENT ID/DOCUMENT ID: 72852524

**EVENT TYPE**: Motion - Other
MOVING PARTY: Jamie L. Gallian
CAUSAL DOCUMENT/DATE FILED: Motion - Other to Withdraw Memorandum of Cost, 07/17/2018

EVENT ID/DOCUMENT ID: 72842898

**EVENT TYPE**: Motion to Strike or Tax Costs
MOVING PARTY: Ted Phillips, Lindy Beck, Jennifer Paulin, Lee Gragnano, Janine Jasso, Lori Burrett
CAUSAL DOCUMENT/DATE FILED: Motion to Strike or Tax Costs, 02/28/2018

**APPEARANCES**
Pejman D. Kharrazian, Esq. and Joyce J. Kapsal, Esq., from Epsten Grinnell & Howell, APC, present for
Cross - Defendant,Plaintiff(s).
Brenda K. Radmacher, Esq., from Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
Jamie Gallian, present.

1.   MOTION   BY   PLAINTIFF/CROSS-DEFENDANT   THE   HUNTINGTON   BEACH   GABLES
HOMEOWNERS ASSOCIATION TO ENFORCE SETTLEMENT AND ENTER JUDGMENT PURSUANT
TO THE TERMS OF STIPULATED SETTLEMENT

Tentative Ruling posted on the Internet.

The court hears oral argument. The court, having fully considered the arguments of all parties, both
written and oral, as well as the evidence presented, rules as follows: The Tentative Ruling will become
the final ruling of the court.

Motion by Plaintiff/Cross-defendant The Huntington Beach Gables Homeowners Association to Enforce
Settlement and Enter Judgment Pursuant to the Terms of Stipulated Settlement:

DATE: 07/19/2018                    MINUTE ORDER                            Page 1
DEPT: C33                                                        Calendar No.

EXHIBIT 40, PAGE 1446

| CASE TITLE: The Huntington Beach Gables Homeowners Association vs. Bradley | CASE NO: **30-2017-00913985-CU-CO-CJC** |
|---|---|

Moving Party's Request for Judicial Notice [RJN]:

In support of the original moving papers, moving party filed a Notice of Lodgment [NOL] with all of its supporting exhibits, which also requests judicial notice of all of Moving Party's supporting exhibits.

The court grants grant judicial notice as to Ex. A [certified reporter's transcript of the 3-2-18 MSC hearing], Ex. E [certified reporter's transcript of the 6-4-18 OSC hearing], and Ex. J [a criminal complaint filed against responding party Gallian for allegedly violating the restraining order issued in OCSC Case No. 2017-00962999.

All of these documents are properly subject to judicial notice as court records. (Ev. 452(d)(1).) However, as to Ex. J, the court will take judicial notice of the fact that the complaint was filed, but not of the truth of its contents. A court may take judicial notice of the existence of documents in court files, but can only take judicial notice of the truth of facts asserted in such documents as orders, findings of fact and conclusions of law, and judgments. (6 Witkin, Cal. Proc. 5th (2008), Chapter VII, "Proceedings Without Trial," Section 232, p. 674, citing *In re David C.* (1984) 152 Cal.App.3d 1189, 1205.)

The court denies the remainder of the RJN. The remaining documents consists of letters and emails between Moving Party and Responding Party [or their counsel] (MP Exs. C, D, F-H, N], photos of RP allegedly re-installing a corrugated roof (MP Ex. I), copies of numerous police reports allegedly filed against RP by various other residents (MP Exs. L, M, O-S), and an email allegedly from a police detective to MP HOA (MP Ex. S). There is no basis under Evidence Code sec. 452 to take judicial notice of emails, letters, or police reports.

However, these exhibits are otherwise properly authenticated by the various declarations submitted with the moving papers, and there are no evidentiary objections by RP defendant; thus, the court will consider them, despite the fact that many are not properly subject to judicial notice.

Moving Party Reply RJN:

With the Reply, MP submitted a supplemental notice of lodging and request for judicial notice, requesting judicial notice of 14 letters from association residents. The Reply indicates these letters are "from Association residents complaining about Ms. Gallian's bad acts, bullying, harassment, and intimidation." (Reply at 6:16-18.) There are no letters attached to the Reply NOL.

The court denies MP's Reply RJN, because (1) MP does not provide copies of the documents requested (CRC 3.1306(c)); (2) for the same reason, MP has not provided the court with sufficient information to enable it to take judicial notice (Ev. 453(b)); and (3) for the same reason, as well as the fact that the request was not made until the Reply, MP has not provided Responding Party with sufficient notice of the request (Ev. 453(a)).

**Merits:**

In comparing the terms Moving Party contends are part of the settlement agreement, with the transcript of the MSC hearing (MP Ex. A), there are too many discrepancies and inconsistencies to find an enforceable settlement, or a "meeting of the minds" as to several key terms, which are disputed.

CCP 664.6 states:
If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the

---

| DATE: 07/19/2018 | MINUTE ORDER | Page 2 |
|---|---|---|
| DEPT: C33 | | Calendar No. |

002267          EXHIBIT 40, PAGE 1447

CASE TITLE: The Huntington Beach Gables          CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

A motion to enforce settlement may be decided on declarations. (*Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 994.) Moreover, CCP 664.6 provides the court authority to interpret settlement terms and determine disputed factual matters regarding the settlement agreement, based on contract principles, but not to add material terms which were not agreed to by the parties. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.) "[N]othing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Id.* at 810)

Moving Party has shown that at the MSC on 3-2-18, plaintiff HOA and defendant Gallian reached a settlement agreement, the terms of which were placed on the record. (MP Ex. A [Certified Reporter's Transcript of the March 2, 2018 MSC ("MSC RT").] The parties also stipulated, and the court agreed on the record, to retain jurisdiction to enforce the settlement pursuant to Code of Civil Procedure section 664.6, and to enter judgment pursuant to the terms of the settlement if necessary. (MP Ex. A at 31:9-21.)

However, MP's summary of the terms of the settlement [moving papers at 9:25-10:23] is inaccurate in numerous respects. More importantly, as to several of the key terms, the MSC transcript shows that the terms were unclear, or that there was no agreement at all. Moreover, Responding Party has a point that the proposed written settlement agreements proposed by Moving Party attorney (MP Exs. D, F, G) include terms which do not appear to be part of the settlement.

First, according to MP, the terms of the stipulated settlement were as set forth at 9:25-10:23 of the moving papers. However, the transcript of the MSC is inconsistent with settlement agreement.

There are also disputes as to the terms of key provisions of the settlement, and thus disputes as to whether the parties in fact reached an agreement as to these terms at all.

First, MP contends the settlement included an agreement that Association would withdraw the preliminary injunction issued by the court on January 11, 2018, but that the terms of the preliminary injunction were incorporated into the settlement agreement. (Moving papers at 10:9-11, citing MSC RT at p. 9, 12-13.) However, review of the MSC transcript in fact shows that RP objected to incorporating all of the terms of the preliminary injunction. (*Id.* at 10:11-14:6.) Defendant Gallian in fact only agreed to the following:

1. RP will not make any other modifications, additions, or improvements without prior approval by the board, requested through counsel. (MSC RT at 10:6-9, 12:13-23.)
2. RP agreed to abide by the CC&Rs, and HOA rules and regulations. (*Id.* at 12:20-24.)
3. If RP believed there was an area not being watered or that something is not being done [in common areas], she would contact her counsel and have counsel contact the HOA attorney so it could be addressed. (*Id.* at 14:2-13.)

Second, MP also contends that "the parties agreed to a stipulation to the terms of the … WVTRO … [o]nce the stipulation is executed, the Association will dismiss the WVTRO without prejudice and vacate the hearing set for August 15, 2018 … [but] [i]f Ms. Gallian violates the stipulation, the Association may go back to Court to reinstate the WVTRO." (Moving papers at 10:12-15, citing MSC RT at p. 15, 32-33.)

---

DATE: 07/19/2018                    MINUTE ORDER                              Page 3
DEPT: C33                                                          Calendar No.

EXHIBIT 40, PAGE 1448

| CASE TITLE: The Huntington Beach Gables Homeowners Association vs. Bradley | CASE NO: **30-2017-00913985-CU-CO-CJC** |
|---|---|

This is not accurate either. The transcript at first indicates that Association will dismiss WVTRO action as of the date of the MSC (MSC RT at 14:17-19, 15:5-13); that Gallian will not talk to, photograph, make gestures to, or approach any of the board members (*Id*. at 14:19-22); that Gallian will not come onto board members' property; (*Id*. at 14:22) and that if Gallian violates these terms, HOA may refile the WVTRO action (*Id*. at 14:23-24). However, the transcript goes on to state:

MR. KHARRAZIAN: RIGHT. SO THE TERMS -- BASICALLY THEY'LL BE A STIPULATION TO THE TERMS OF THE CURRENT ORDER BUT THE ORDER WILL BE DISMISSED AND DISSOLVED AT THE - -

MS. GALLIAN: TODAY.

MR. KHARRAZIAN: AS OF TODAY.

THE COURT: ALL RIGHT. I - -

MR. KHARRAZIAN: OR AS SOON AS WE CAN GET BEFORE JUDGE STAFFORD AND - -

THE COURT: I THINK THAT'S A REASONABLE COMPROMISE BY THE BOARD. AND I THANK YOU FOR THAT.

MS. GALLIAN: RIGHT.

(*Id*. at 15:5-16.)
…
MS. GALLIAN: I WANT TO MAKE SURE THE LAST THING IS THE TWO REPRESENTATIVES WHO CAN SIGN ON BEHALF OF THE BOARD ARE HERE TO TAKE THE W.V. OFF. THEY CAN DISMISS IT.

THE COURT: YEAH.

MS. GALLIAN: TODAY.

THE COURT: EVERYTHING STOPS.

MR. KHARRAZIAN: HANG ON. ACTUALLY I THINK THE AGREEMENT WAS THAT COUNSEL, MS. FLYER, WILL FILE - -

MS. FLYER: STIPULATION.

MR. KHARRAZIAN: - - THE REQUEST WITH THE WORKPLACE VIOLENCE TRO DEPARTMENT TO ENTER INTO THE STIPULATION, SO I'M NOT SURE THAT THAT CAN HAPPEN TODAY. BUT IT'S - - IT'S - -

MS. FLYER: IT WILL HAPPEN AS SOON AS I CAN - -

MR. KHARRAZIAN: MS. GALLIAN'S COUNSEL'S CONTROL.

---

DATE: 07/19/2018
DEPT: C33

MINUTE ORDER

Page 4
Calendar No.

    EXHIBIT 40, PAGE 1449

CASE TITLE: The Huntington Beach Gables          CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

MS. FLYER: AS SOON AS I CAN FEASIBLY DO IT, I WILL DO IT.

THE COURT: THANKS.

MS RADMACHER: AND THE BOARD WILL - - AND MEMBERS AS NEEDED WILL COOPERATE WITH COUNSEL TO EXECUTE ANY DOCUMENTS NEEDED TO ALLOW THAT TO HAPPEN.

MS. FLYER: THANK YOU.

MS. GALLIAN: BUT AS OF RIGHT NOW, THERE'S NOTHING -- THERE'S NO - -

THE COURT: AND ONE FINAL WORD - -

MS. GALLIAN: THERE'S NO WORKPLACE VIOLENCE, AT ALL.

(*Id*. at 32:3-33:5.)

The foregoing shows that the alleged terms of that portion of the stipulated settlement regarding incorporating the WVTRO terms are entirely unclear. "A settlement agreement that incorporates other documents can be enforced pursuant to § 664.6 <u>if there was a "meeting of the minds" regarding the terms of the incorporated documents</u>." (Weil & Brown, Rutter Group, Civil Procedure Before Trial, Chapter 12(II)-F, Section 12:955.6, citing *Weddington Productions, Inc. v. Flick*, *supra* at 813; emphasis added.)

Here, however, it does not appear that there was any "meeting of the minds" as to what terms of the stipulation to resolve the WVTRO were in fact to include; whether the stipulation to resolve the WVTRO was to be entered in that action, or incorporated into the settlement in the current action; or when the HOA would dismiss the WVTRO action [either as of the date of the MSC, or upon entry of the settlement].

As this is a key term of the purported settlement, and as there does not appear to be a "meeting of the minds" as to the terms of resolution of the WVTRO action, it is unclear how the court could enter judgment of this disputed terms.

Thus, the motion is denied on this basis, as the court cannot grant a CCP 664.6 motion to enforce only a portion of the settlement: "[W]hile the court may, under certain circumstances, reject a settlement agreement as a whole, it may *not* approve only *part* of it for § 664.6 enforcement without the parties' mutual consent." (Weil & Brown, Rutter Group, *Civil Procedure Before Trial*, Chapter 12(II)-F, Section 12:979.2, citing *Leeman v. Adams Extract & Spice, LLC* (2015) 236 Cal.App.4th 1367, 1375; emphasis in original.)

"Moreover, to be binding, the agreement must be *sufficiently definite* to enable courts to give it an exact meaning. If an essential element is reserved for future agreement, it is not definite enough. [Citations.]" (*Id*. at Section 12:955.5.) Here, at least as to the terms of resolution of the WVTRO action, the settlement does not appear to be sufficiently definite to be enforceable.

The court notes that the MSC transcript indicates that the settlement also included additional terms, which MP does not address or discuss:
1. Association was to dismiss this action upon payment of the $15K by Gallian. (MSC RT at 16:6-8.)

---

DATE: 07/19/2018                    MINUTE ORDER                         Page 5
DEPT: C33                                                          Calendar No.

EXHIBIT 40, PAGE 1450

CASE TITLE: The Huntington Beach Gables
Homeowners Association vs. Bradley

CASE NO: **30-2017-00913985-CU-CO-CJC**

2. Association would place no further assessments on Gallian's account related to this litigation, including the "tree removal," although Association was not waiving any future claims regarding the "tree removal." (*Id*. at 16:16-25.)

3. Gallian acknowledged HOA's claim of authority to work exclusively in the common area, and agreed not to do any further work in the common area. (*Id*. at 18:2-19:8.)

4. Both the Board and Gallian would comply with the HOA governing documents. (*Id*. at 25:2-11.)

5. Other than any disclosures that the Board is obligated by law to make to its members, the parties are not to make any disclosures about this lawsuit. (*Id*. at 25:14-26:7.)

6. Gallian's five storage bins could remain in place for 90 days or until she moved, whichever came first, and after which time they would be moved "to the parallel parking spots that are across the street from where they are." (*Id*. at 27:5-28:18.)

MP fails to explain why the court should enter a judgment which do not include the above terms.

The motion by plaintiff The Huntington Beach Gables Association to enforce settlement is **denied**. (CCP § 664.6.)

The court finds that the parties did not reach a "meeting of the minds" as to several key terms of the settlement, including allegedly incorporating the terms of the preliminary injunction previously entered in this action, and resolution of the separate Workplace Violence Temporary Restraining Order action.

The request for judicial notice by plaintiff The Huntington Beach Gables Association in support of the moving papers is granted as to Exs. A, E and J. (Ev. 452(d).) As to Ex. J, the court takes judicial notice of the fact that the document was filed, but not of the truth of its contents. (*In re David C*. (1984) 152 Cal.App.3d 1189, 1205.)

Moving party to give notice.

2. MOTION BY CROSS-DEFENDANTS LEE GRAGNANO, TED PHILLIPS, LINDY BECK, JENNIFER PAULIN, JANINE JASSO AND LORI BURRETT TO STRIKE MEMORANDUM OF COSTS

Tentative Ruling posted on the Internet.

The court hears oral argument. The court, having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, rules as follows: The Tentative Ruling will become the final ruling of the court.

Motion by Cross-defendants Lee Gragnano, Ted Phillips, Lindy Beck, Jennifer Paulin, Janine Jasso and Lori Burrett to Strike Memorandum of Costs:

The motion by cross-defendants Lee Gragnano, Ted Phillips, Lindy Buck, Jennifer Paulin, Janine Jasso, and Lori Burrett to strike the Memorandum of Costs filed by cross-complainant Jamie Gallian is **granted**.

Cross-complainant Gallian dismissed these moving parties; thus, moving parties are the prevailing parties entitled to costs, not Gallian. (CCP 1032(a)(2), (a)(4); CRC 3.1700(b).)

Prevailing parties to give notice.

3. FURTHER RULINGS

---

DATE: 07/19/2018
DEPT: C33

MINUTE ORDER

Page 6

Calendar No.

002271

EXHIBIT 40, PAGE 1451

CASE TITLE: The Huntington Beach Gables          CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

The Jury Trial set for 08/06/2018 is ordered continued to 12/10/2018 at 9:00 AM.

All discovery cutoff dates and deadlines are continued and shall track the 12/10/2018 trial date.

Discovery issues to be addressed by formal motion.

DATE: 07/19/2018                    MINUTE ORDER                         Page 7
DEPT: C33                                                              Calendar No.

002272                    EXHIBIT 40, PAGE 1452

## BS INVESTORS - HB GABLES

c/o Triage Management Inc | 949.250.0700
1340 Reynolds Ave, Ste 116
Irvine, CA 92614

**Statement**

| | |
|---|---|
| Account: | ghb - 053 - 053gal |
| Date: | 09/15/18 |
| Payment: | _____ |

Jamie Gallian
4476 Alderport Drive
Huntington Beach, CA  92649

Oct-Dec 2018 Quarterly Ground Rent
Delinquent if not received by Oct 10, 2018

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 0.00 |
| 10/01/18 | Ground Rent (10/2018) | 2,211.22 | | 2,211.22 |

The terms of your Condominium Sublease require that your quarterly ground rent payments be kept current to avoid default on your Sublease.

Your account becomes delinquent after the 10th day of the first month of the quarter. Delinquent accounts will be subject to a late fee, interest, and if applicable, collection costs and legal fees.

Delinquent accounts will be handled as follows: A SIXTY DAY NOTICE TO PAY OR QUIT will be served at your property and copies sent to all lenders of record. If you are served and fail to pay the amount demanded in the Notice (plus interest, fees and costs) or to vacate and deliver the premises to the person or entity identified in the Notice within sixty (60) days of service of the Notice upon you, our attorney will commence legal proceedings against you to (1) declare a forfeiture of the Sublease; (2) recover possession of the Premises; (3) recover the rent/costs demanded therein, (4) recover damages for each day that you occupy the Premises after the Notice, plus any additional costs or legal fees.

We have included a remittance invoice and return envelope for your convenience. Please make your check payable to:        **BS INVESTORS-GABLES HB**

Thank you
Triage Management

| Current | 30 Days | | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|---|
| 0.00 | 0.00 | | | 0.00 | 0.00 | 2,211.22 |

002273                    EXHIBIT 40, PAGE 1453

Case 8:21-bk-11710-ES   Doc 105-1   Filed 06/01/22   Entered 06/01/22 09:54:17   Desc
Exhibit Part 2 of 2   Page 321 of 326



002274          EXHIBIT 40, PAGE 1454

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 11/09/2018                TIME: 08:30:00 AM        DEPT: C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: Eric Yu
REPORTER/ERM: Janet (ACRPT) Taylor CSR# 9463
BAILIFF/COURT ATTENDANT: Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited       CASE TYPE: Contract - Other

EVENT ID/DOCUMENT ID: 72926149
**EVENT TYPE**: Ex Parte
MOVING PARTY: The Huntington Beach Gables Homeowners Association
CAUSAL DOCUMENT/DATE FILED: Ex Parte Application - Other, 11/07/2018

**APPEARANCES**
BRENDA K. RADMACHER, specially appearing for Gordon & Rees LLP, present for Cross -
Defendant,Plaintiff(s).
PEJMAN D. KHARRAZIAN, specially appearing for Epsten Grinnell & Howell, APC, present for Cross -
Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present.

Ex-Parte application for TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR
PRELIMINARY INUNCTION TO ENJOIN DISBURSEMENTS FROM PROCEEDS OF SALE OF REAL
PROPERTY, OR ALTERNATIVELY, FOR AN ORDER REQUIRING GALLIAN TO DEPOSIT AT LEAST
$52,145.27 WITH THE COURT is requested by the Huntington Beach Gables Homeowners Association
and Board members'.

Ex parte application is read and considered.

The Court having fully considered the arguments of all parties, both written and oral, as well as the
evidence presented, now rules as follows:

Ex Parte application for Temporary restraining order and order to show cause for preliminary inunction to
enjoin disbursements from proceeds of sale of real property, or alternatively, for an order requiring
gallian to deposit at least $52,145.27 with the court is denied without prejudice.

Ex-Parte application TO CONTINUE TRIAL is requested by Plaintiff.

Ex parte application is read and considered.

The Court having fully considered the arguments of all parties, both written and oral, as well as the
evidence presented, now rules as follows:

---

DATE: 11/09/2018                                                            Page 1
DEPT: C33                        MINUTE ORDER                    Calendar No.

EXHIBIT 40, PAGE 1455

CASE TITLE: The Huntington Beach Gables          CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

EX PARTE APPLICATION TO CONTINUE TRIAL is denied.

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 11/16/2018                    TIME: 08:30:00 AM          DEPT:  C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK:  P. Rief
REPORTER/ERM: Darci Mullarky CSR# 5569
BAILIFF/COURT ATTENDANT:  Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Contract - Other

EVENT ID/DOCUMENT ID: 72930711

**EVENT TYPE**: Ex Parte
MOVING PARTY: The Huntington Beach Gables Homeowners Association
CAUSAL DOCUMENT/DATE FILED: Ex Parte Application - Other, 11/15/2018

**APPEARANCES**
Pejman D. Kharrazian, Esq., from Epsten Grinnell & Howell, APC, present for Cross -
Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present.
 Steven A. Fink, Esq. in a limited scope representation.

EX PARTE APPLICATION BY PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS
ASSOCIATION FOR ORDER SHORTENING TIME RE (1) MOTION TO BE DEEMED PREVAILING
PARTY AND (2) MOTION TO COMPEL AND FOR TERMINATING SANCTIONS AGAINST JAMIE L.
GALLIAN; AND FOR A STAY OF THE ACTION

Hearing held in open court. A discussion is held regarding the status of this matter and the court rules as
follows:

The Application by Plaintiff for an Order Shortening Time is granted.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to be Deemed the
Prevailing Party, For an Award of Its Attorney's Fees and Costs and For Judgment on Its Complaint, set
for 01/17/2018 is ordered advanced to the date of trial, 12/10/2018 at 9:00 a.m. in Department C33.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to Compel and for
Terminating Sanctions or Issue/Evidence Sanctions Against Defendant, and for Monetary Sanctions, set
for 01/17/2018 is ordered advanced to the date of trial, 12/10/2018 at 9:00 a.m. in Department C33.

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 12/06/2018                 TIME: 01:30:00 PM         DEPT: C33
JUDICIAL OFFICER PRESIDING: James Crandall
CLERK: P. Rief
REPORTER/ERM: (ACRPT) Candace Khorouzan CSR# 11579
BAILIFF/COURT ATTENDANT: Nicole Guerrero

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72902420
**EVENT TYPE**: Motion for Judgment on the Pleadings
MOVING PARTY: Jamie L. Gallian
CAUSAL DOCUMENT/DATE FILED: Motion for Judgment on the Pleadings, 09/26/2018

---

**APPEARANCES**
Pejman D. Kharrazian, Esq., from Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present telephonically.

MOTION BY JAMIE L. GALLIAN FOR JUDGMENT ON THE PLEADINGS

Tentative Ruling posted on the Internet.

The court hears oral argument. The court, having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, rules as follows: The Tentative Ruling will become the final ruling of the court.

The request for judicial notice by defendant Jamie L. Gallian is granted as to the original complaint (Ex. 1), the First Amended Complaint (Ex. 2), and the "Certificate Re Compliance with Civil Code Section 5950" (Ex. 4). (Ev. 452(d)(1).)

Defendant's request for judicial notice is denied as to the letter attached as Ex. 3.

The motion for judgment on the pleadings by defendant Jamie L. Gallian is denied.

Moving party has not shown that the court has no jurisdiction of the subject of any cause of action alleged by plaintiff, nor has she shown that the First Amended Complaint fails to state facts sufficient to constitute a cause of action against this moving defendant. (CCP 438(c)(1)(B); *Leko v. Cornerstone Building Inspection Service* (2001) 86 Cal.App.4th 1109, 1114 [like a demurrer, motion for judgment on the pleadings lies only for defects apparent on the face of the pleading or which are subject to judicial notice, and the facts alleged in the pleading are presumed true; extraneous evidence not properly subject to judicial notice is not permitted].)

---

CASE TITLE: The Huntington Beach Gables   CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

Moving party fails to show that the prelitigation alternative dispute resolution [ADR] requirements of Civil Code 5930 et seq. apply (see Civil Code 5930(b)); fails to show that any prelitigation ADR demand was untimely; and fails to cite evidence or authority that moving party's time to respond to any prelitigation ADR demand (Civil Code 5935(c)) only commences once she became a member.

Moving party's other arguments go to the merits of plaintiff's claims, and/or rely on extrinsic evidence not properly subject to judicial notice, and thus are not appropriate for a motion for judgment on the pleadings.

The court also notes that moving party failed to submit the declaration required by CCP 439.

Plaintiff The Huntington Beach Gables Homeowners Association to give notice.

Housekeeping matters are addressed. Department C33 is presently engaged in trial on an unrelated matter. The court issues the following orders:

The Jury Trial set for 12/10/2018 in Department C33 is vacated.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to be Deemed the Prevailing Party, For an Award of Its Attorney's Fees and Costs and For Judgment on Its Complaint, set for 12/10/2018, is ordered continued to 01/31/2019 at 01:30 PM in this department.

The Motion by Plaintiff The Huntington Beach Gables Homeowners Association to Compel and for Terminating Sanctions or Issue/Evidence Sanctions Against Defendant, and for Monetary Sanctions, set for 12/10/2018 is ordered continued to 01/31/2019 at 01:30 PM in this department.

EXHIBIT 41

1   D. EDWARD HAYS, #162507
    ehays@marshackhays.com
2   LAILA MASUD, #311731
    lmasud@marshackhays.com
3   BRADFORD N. BARNHARDT, #328705
    bbarnhardt@marshackhays.com
4   MARSHACK HAYS LLP
    870 Roosevelt
5   Irvine, CA 92620
    Telephone: (949) 333-7777
6   Facsimile: (949) 333-7778
7

8   Attorneys for Movant and Creditor,
    HOUSER BROS. CO. dba RANCHO DEL
9   REY MOBILE HOME ESTATES

10                    UNITED STATES BANKRUPTCY COURT

11           CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

12

13  | In re | Case No. 8:21-bk-11710-ES |
    | --- | --- |
14  | JAMIE LYNN GALLIAN, | Chapter 7 |
15  | Debtor. | REPLY TO DEBTOR'S OPPOSITION TO MOTION OBJECTING TO CLAIMED HOMESTEAD EXEMPTION; DECLARATION OF D. EDWARD HAYS IN SUPPORT |
16
17  |  | Date:   July 21, 2022 |
    |  | Time:   10:30 a.m. |
18  |  | Ctrm:   5A[1] |
    |  | Location: 411 W. Fourth Street, Santa Ana, CA 92701 |
19

20  / / /

21  / / /

22

23

24

25

26  _____

27  [1] To continue to aid in the mitigation of the spread of the COVID-19 virus and in light of the response of the Bar to
    continue virtual appearances, Judge Smith will continue to hold the majority of her hearings remotely using ZoomGov
    audio and video. However, beginning September 1, 2021, Judge Smith will allow the option for in-person hearings
28  and/or hybrid proceedings for trial and evidentiary hearings only.

                                                  1
    REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
    4880-1284-8131,v.1

**TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES**...............................................................2

1.   SUMMARY OF ARGUMENT ...................................................................................2

2.   FACTUAL BACKGROUND .......................................................................................3

     A.   Homestead Exemption Objection ....................................................................3

3.   LEGAL ARGUMENT ..................................................................................................4

     A.   Debtor bears the burden of proof to show entitlement to the ..................................4

          homestead exemption.......................................................................................4

     B.   Houser Bros. has standing to bring the Motion. ........................................................6

     C.   The date of recordation is the relevant date for determining a debtor's
          entitlement to a homestead exemption................................................................7

     D.   Even if the transfer date were the relevant date for determining entitlement to
          a homestead exemption, Debtor provides no credible evidence that she
          acquired an interest from the LLC on February 25, 2021, or any other date
          prior to bankruptcy.........................................................................................10

     E.   Debtor's filing of a declaration of homestead is irrelevant to this case because
          declared homesteads do not help debtors in bankruptcy cases. ...........................13

     F.   Debtor provides no evidence in support of her equitable estoppel argument,
          which appears to be entirely irrelevant to the arguments raised in the Motion. .....14

     G.   Debtor's Opposition does not address the argument that 11 U.S.C. § 522(p)
          imposes a $170,350 cap on any exemption. .........................................................14

     H.   Debtor did not have any legal or equitable interest in the Property to support a
          homestead. ...................................................................................................15

4.   CONCLUSION...........................................................................................................15

DECLARATION OF D. EDWARD HAYS.....................................................................17

REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
4880-1284-8131,v.1

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Banayan v. Mesbahi (In re Mesbahi)*, Nos. LA 03-39268 TD, LA 05-01139 TD, 2005
4      Bankr. LEXIS 2510, at *7 (Bankr. C.D. Cal. Dec. 13, 2005)..................................... 12

5    *Diaz v. Kosmala (In re Diaz)*,
        547 B.R. 329, 336-37 (B.A.P. 9th Cir. 2016) ........................................................... 5
6

7    *Eleiwa v. Whitmore (In re Eleiwa)*,
        2013 Bankr.LEXIS 5746, at *7-8 (B.A.P. 9th Cir. June 5, 2013) ............................. 2

8    *Hayden v. Chalfant Press, Inc.*,
9        281 F.2d 543, 546 (9th Cir. 1960)] ......................................................................... 12

10   *Heintz v. Carey (In re Heintz)*,
        198 B.R. 581, 586 (B.A.P. 9th Cir. 1996)............................................................ 2, 9
11

12   *In re Archuletta*,
        614 B.R. 892, 895-96 (Bankr. D.N.M. 2020) .......................................................... 7

13   *In re Farokhirad*,
14       8:21-bk-10026-MW, ECF No. 98 (Bankr. C.D. Cal. Apr. 29, 2021), ...................... 8

15   *In re Sain*,
        584 B.R. 325, 329 (Bankr. S.D. Cal. 2018) ....................................................... 5, 13
16

17   *In re Tallerico*,
        532 B.R. 774, 780 (Bankr. E.D. Cal. 2015) ............................................................. 5

18   *In re Tallerico*,
19       532 B.R. 774, 780 (Bankr. E.D. Cal. 2015). CCP § 704.780(a)(1) .......................... 4

20   *Kashkashian v. Lerner (In re Kashkashian)*,
        544 B.R. 824, 832 n.8 (Bankr. E.D. Pa. 2016) ............................................... 2, 9, 12
21

22   *Kelly v. Locke (In re Kelley)*,
        300 B.R. 11, 21 (B.A.P. 9th Cir. 2003) .............................................................. 5, 13
23

24   *Matter of Southmark Corp.*,
        62 F.3d 104, 106 (5th Cir. 1995) ............................................................................ 7
25

26   *Owen v. Owen*,
        500 U.S. 305 (1991).................................................................................................. 9

27   *Raleigh v. Ill. Dep't of Revenue*,
        530 U.S. 15 (2000)..................................................................................................... 5
28

ii

REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
4880-1284-8131,v.1

          EXHIBIT 41, PAGE 1462

*Salven v. Galli (In re Pass),*
    553 B.R. 749, 757 (B.A.P. 9th Cir. 2016)......................................................................9

*Schaefers v. Blizzard Energy, Inc. (In re Schaefers),*
    623 B.R. 777, 783, 785 (B.A.P. 9th Cir. 2020) ..............................................2, 9, 12

*Star Fabrics, Inc. v. Ross Stores, Inc.,*
    2017 U.S.Dist.LEXIS 225597, at *6-7 (C.D. Cal. Nov. 20, 2017)............................14

*Thorp v. Gugino (In re Thorp)*, 2009 U.S.Dist.LEXIS 71435, at *5-6 (D. Idaho Aug.
    12, 2009) .................................................................................................................6

**STATUTES**

11 U.S.C. § 522(l) ..........................................................................................................6

11 U.S.C. § 522(p) ........................................................................................................14

11 U.S.C. § 541(a) ..............................................................................................2, 9, 12

Cal. Civ. Proc. Code § 704.780(a) .................................................................................5

Cal. Code Civ. P. § 704.780(a)(1) .................................................................................5

CCP § 703.740 .............................................................................................................14

CCP § 704.730 ...............................................................................................................8

CCP § 704.780(a) ...........................................................................................................5

CCP § 704.780(a)(1) ......................................................................................................5

CCP §§ 704.910-704.995 .............................................................................................13

**OTHER AUTHORITIES**

4 Collier on Bankruptcy P 522.05 n.11 .........................................................................6

4 Collier on Bankruptcy P 522.13[1] (2022)................................................................14

**RULES**

Fed. R. Bankr. P. 4003(b) ..............................................................................................6

Loc. Bankr. R. 9013-1(f)(2)..........................................................................................14

Rule 4003(c).....................................................................................................................5

1   TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE

2   DEBTOR, AND ALL INTERESTED PARTIES:

3        Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") files this

4   reply ("Reply") in support of the Motion objecting to Debtor's claimed homestead exemption

5   ("Motion"), filed on May 12, 2022, as Dk. No. 95.

**Memorandum of Points and Authorities**

6   **1.    Summary of Argument**

7        Exemptions only apply to property of the estate, which is limited to property owned by the

8   debtor as of the commencement of the case. *Kashkashian v. Lerner (In re Kashkashian)*, 544 B.R.

9   824, 832 n.8 (Bankr. E.D. Pa. 2016) (citing 11 U.S.C. § 541(a)); *see also Eleiwa v. Whitmore (In re

10  Eleiwa)*, 2013 Bankr.LEXIS 5746, at *7-8 (B.A.P. 9th Cir. June 5, 2013) (indicating, in ruling on a

11  homestead exemption objection under California law, that property cannot be exempted unless it is

12  first property of the estate) (citing *Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 586 (B.A.P. 9th Cir.

13  1996)). As shown in the Motion, the record owner of the subject Property on the petition date was

14  Debtor's single-member LLC, J-Sandcastle LLC.[2] But, assets of an LLC are not assets of Debtor

15  personally, and Debtor therefore cannot claim the Property as exempt. *Schaefers v. Blizzard Energy,

16  Inc. (In re Schaefers)*, 623 B.R. 777, 783, 785 (B.A.P. 9th Cir. 2020) (holding that a debtor could not

17  claim a homestead exemption in the property where he resided because he admitted that the property

18  was owned by his LLC).

19        Debtor, who bears the burden of proof, provides no evidence to show that she was the owner

20  of record on the Petition Date. Debtor instead insists that J-Sandcastle LLC released title to her

21  personally on February 25, 2021, as evidenced by a notary public's acknowledgment attached to the

22  purported release. Houser Bros., however, obtained a declaration from the notary whose book shows

23  no record of notarizing any HCD documents for Debtor. Instead, the notary's book shows that he

24  notarized two unrelated documents for Debtor on February 25, 2021, with the notary pages on those

25

26  _____

27  [2] Capitalized terms not otherwise defined in this Reply brief shall have the meaning ascribed to them
        in the Motion.

28

2

REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
4880-1284-8131,v.1

   EXHIBIT 41, PAGE 1464

1   documents perfectly matching Debtor's alleged proof as to when the transfer occurred. In other

2   words, ***Debtor has perjured herself and forged the subject document in an attempt to defraud the***

3   ***Court***. Because there is no credible evidence establishing that Debtor held a sufficient interest in the

4   Property on the petition date, there are no grounds upon which an exemption can be allowed.

5         Because all evidence shows that J-Sandcastle LLC rather than Debtor owned the Property,

6   she is not entitled to the claimed exemption. When Debtor purchased the Property with her

7   individual funds, she chose to place title in the name of an LLC as part of an effort to hinder, delay,

8   and defraud creditors. She then admitted to paying rent to the LLC. Sustaining the objection to

9   exemption based on the facts of this case is the consequence of Debtor's gamesmanship and fraud on

10  creditors.[3]

## 2.      Factual Background

### A.      Homestead Exemption Objection

11

12         On May 12, 2022, Houser Bros. filed a "Notice of Motion and Motion Objecting to Debtor's

13  Claimed Homestead Exemption" (defined above as the "Motion"). Docket No. 95. A true and

14  correct copy of the CM/ECF Docket in this case is attached to the Declaration of D. Edward Hays

15  ("Hays Declaration") as **Exhibit 1**. The Motion was set for hearing on June 2, 2022. Docket No. 99.

16         On May 13, 2022, The Huntington Beach Gables Homeowners Association ("HOA") filed a

17  "Joinder to Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates' Motion Objecting to

18  Debtor's Claimed Homestead Exemption." Docket No. 98.

19         On May 16, 2022, Janine Jasso ("Ms. Jasso") filed a "Joinder to Houser Bros. Co. dba

20  Rancho Del Rey Mobile Home Estates' Motion Objecting to Debtor's Claimed Homestead

21  Exemption." Docket No. 100.

22         On June 30, 2022, Chapter 7 Trustee Jeffrey I. Golden ("Trustee," and together with the

23  HOA and Ms. Jasso, the "Joining Parties") filed "Trustee's Joinder in Houser Bros. Co. dba Rancho

24  Del Rey Mobile Home Estates' Motion Objecting to Debtor's Claimed Homestead Exemption."

25  Docket No. 128.

26

27         [3] This result in consistent with Section 522(g) which prohibits exemptions after avoidance of
28  fraudulent transfers.

3

1        On June 1, 2022—the day before the scheduled hearing on the Motion—Debtor filed a

2   "Reply Opposition, Memorandum of Points and Authorities to Houser Bros. Co. dba Rancho Del

3   Rey Mobile Home Estates' Motion Objecting to Debtor's Claimed Homestead Exemption and

4   Joinder Parties Huntington Beach Gables HOA; Janine Jasso" ("Opposition"). Docket No. 105. In

5   support of the Opposition, Debtor filed a "Declaration of Jamie Lynn Gallian" ("Gallian

6   Declaration"). *Id.*

7        Before the June 2, 2022, hearing, the Court posted a tentative ruling to continue the hearing

8   on the Motion to July 21, 2022 ("TR"). And, on June 23, 2022, as Docket No. 124, the Court entered

9   an "Order Continuing Hearing on Motion Objecting to Debtor's Claimed Homestead Exemption"

10   ("Scheduling Order"). A true and correct copy of the Court's Scheduling Order, which attaches as an

11   exhibit a copy of the TR, is attached to the Hays Declaration as **Exhibit 2**. The Scheduling Order

12   provided as follows:

13     1) The hearing on the Motion is continued to July 21, 2022, at 10:30 a.m., to allow Houser

14        Bros. and/or the Joining Parties to file a reply/replies to Debtor's late opposition filed on June

15        1, 2022;

16     2) Any replies by Houser Bros. or the Joining Parties must be filed by July 7, 2022; and

17     3) No other pleadings may be filed regarding the Motion.

18   Hays Decl. Ex. 2 at 35.

19   **3.   Legal Argument**

20       **A.   Debtor bears the burden of proof to show entitlement to the**

21          **homestead exemption.**

22        As discussed in the Motion, California, by statute, regulates the burden of proof regarding its

23   exemptions. *In re Tallerico*, 532 B.R. 774, 780 (Bankr. E.D. Cal. 2015). CCP § 704.780(a)(1)

24   provides:

25       The burden of proof at the hearing is determined in the following manner: (1) If the
    records of the county tax assessor indicate that there is a current homeowner's
    exemption or disabled veteran's exemption for the dwelling claimed by the judgment

26       debtor or the judgment debtor's spouse, the judgment creditor has the burden of proof
    that the dwelling is not a homestead. If the records of the county tax assessor indicate

27       that there is not a current homeowner's exemption or disabled veteran's exemption
    for the dwelling claimed by the judgment debtor or the judgment debtor's spouse, the

28

REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
4880-1284-8131,v.1

1

burden of proof that the dwelling is a homestead is on the person who claims that the dwelling is a homestead.

2

California law allocates the burden of proof on a homestead based on the records of the county tax

3

assessor. CCP § 704.780(a); *see also In re Tallerico*, 532 B.R. 774, 780 (Bankr. E.D. Cal. 2015);

4

*Diaz v. Kosmala (In re Diaz)*, 547 B.R. 329, 336-37 (B.A.P. 9th Cir. 2016) (holding that where a

5

state law exemption statute specifically allocates the burden of proof to the debtor, Rule 4003(c)

6

does not change that allocation) (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000)).

7

In this case, the records of the Orange County Treasurer-Tax Collector do not show that there

8

is a "current homeowner's exemption or disabled veteran's exemption" for the Property. *See* Motion

9

Ex. 24 at 223 (copy of the 2021-22 tax bill for the Property).[4] Ms. Gallian provides no evidence to

10

the contrary, and she misstates the law, quoted above, when she argues that "[p]ursuant to Cal. Civ.

11

Proc. Code § 704.780(a), the burden to show a debtor's entitlement to a homestead exemption rests

12

with the debtor, **[unless]** a declared homestead has been recorded." Opposition at 14 (emphasis in

13

original). Further, as explained in the Motion, the Homestead Declaration that Debtor claims to have

14

filed was done with the Orange County Clerk-Recorder, not the Orange County Treasurer-Tax

15

Collector, and a declaration of homestead does not pertain to the automatic homestead exemption.

16

*See Kelly v. Locke (In re Kelley)*, 300 B.R. 11, 21 (B.A.P. 9th Cir. 2003) (noting that in the

17

bankruptcy context, a debtor's declaration of homestead "helps him not at all, as the additional

18

benefits conferred in Article 5 [Sections 704.910-704.995] would benefit him only in the situation of

19

a voluntary sale") (emphasis in original); *In re Sain*, 584 B.R. 325, 329 (Bankr. S.D. Cal. 2018)

20

(indicating that only the automatic homestead was available to a debtor who held a recorded

21

declaration of homestead, because the debtor had not elected a declared homestead exemption in his

22

23

24

_____

25

[4] Debtor highlights that she sold "unencumbered real property with a Homestead Exemption noted on the 2018-2019 Secured Tax Assessors Bill of the debtors [sic] previous residence A.P.N. 937-

26

630-53, commonly described as 4476 Alderport Drive, Unit 53, Huntington Beach, CA 92649, sold on October 31, 2018 . . . ." Opposition at 6. CCP § 704.780(a)(1), however, looks to whether the

27

records of the county tax assessor indicate that there is "a current homeowner's exemption . . . for *the dwelling claimed by the judgment debtor* . . . ." Cal. Code Civ. P. § 704.780(a)(1) (emphasis

28

added).

5

1    schedules, and declared homesteads are not applicable to sales by bankruptcy trustees); *see also*

2    Motion at 12-13 n.6 & 15 n.7 (discussing homestead declarations and the burden of proof). [5]

3    ### B.    Houser Bros. has standing to bring the Motion.

4            To claim property as exempt, a debtor must file a list of property claimed as exempt and,

5    "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." *Thorp v.*

6    *Gugino (In re Thorp)*, 2009 U.S.Dist.LEXIS 71435, at *5-6 (D. Idaho Aug. 12, 2009) (quoting 11

7    U.S.C. § 522(l)); *see also* Fed. R. Bankr. P. 4003(b) (providing that a "party in interest" may file an

8    objection to the list of property claimed by debtor as exempt); 4 COLLIER ON BANKRUPTCY P 522.05

9    n.11 (indicating that Rule 4003(b) was amended in 2000, replacing the words "trustee or creditor"

10   with "party in interest" to conform to § 522(l), which permits a party in interest to object to claimed

11   exemptions).

12           Houser Bros., which owns and operates a mobilehome park at which the Property is located,

13   has an interest in Debtor's removal from the premises and is a creditor for the damages caused by

14   Debtor's trespass. Further, in her Ninth Amended Schedules, Debtor listed Houser Bros. as a

15   creditor, with a contingent, unliquidated, disputed claim against the Property of unknown amount.

16   Motion at 111 (Ninth Amended Schedules).

17           On January 2, 2019, Houser Bros. filed a "Complaint for Forcible Entry/Detainer

18   (Mobilehome Park)" ("OCSC Complaint") against Debtor in Orange County Superior Court, Case

19   No. 30-2019-01041423-CL-UD-CJC ("OCSC Action"). A true and correct copy of the OCSC

20   Complaint is attached to the Hays Declaration as **Exhibit 3**. The OCSC Complaint seeks, among

21   other relief, damages at a rate of $36.20 per day as a reasonable rental value of the Property from

22   and after the date of possession until judgment and for so long as Debtor's occupation of the

23   Property continues.[6] Hays Decl. Ex. 3 at 41.

24   _____

25   [5] Although Debtor contends that her "declared homestead declaration does not prevent [her] from
     the benefit or use of the automatic homestead exemption . . . ," Opposition at 16, this argument

26   misses the point, that in the bankruptcy context, a homestead declaration does not help a debtor.

27   [6] The OCSC Complaint alleges that the reasonable rental value of the premises is at least $36.20 per
           day, and damages caused by Defendants' forcible detention will accrue at said rate so long as

28         the mobilehome remains in possession of said premises. Hays Decl. Ex. 3 at 41.

REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
4880-1284-8131,v.1

1    Debtor's claimed homestead exemption, if allowed, will bind Houser Bros., and potentially

2    removes a valuable asset from Trustee's administration upon which it could receive ratable

3    distributions. Houser Bros. is therefore a creditor or other party in interest in this case, with standing

4    to object to the claimed homestead exemption. *See In re Archuletta*, 614 B.R. 892, 895-96 (Bankr.

5    D.N.M. 2020) (finding that a neighborhood association had standing to object to a debtor's claimed

6    homestead exemption because it had sued the debtor to collect on unpaid assessments against the

7    property, and the debtor could seek to avoid any judgment lien the association might obtain to the

8    extent it impaired the homestead exemption).

9    Houser Bros. is likewise the plaintiff in *Houser Bros. Co. dba Rancho Del Rey Mobile Home*

10   *Estates v. Gallian (In re Gallian)*, Adversary Proceeding No. 8:21-ap-01097-ES ("AP"). A true and

11   correct copy of the "First Amended Complaint to (1) Determine Dischargeability of Debt Pursuant to

12   11 U.S.C. §§ 523(a)(2)(A) and (a)(6); (2) Deny Discharge Pursuant to 11 U.S.C. §§ 727(a)(2)(A),

13   (a)(4), and (a)(5)," filed as Docket No. 3 in the AP ("AP Complaint"), is attached to the Hays

14   Declaration as **Exhibit 4**.

15   In challenging Houser Bros.'s standing to bring the Motion, Debtor cites *Matter of*

16   *Southmark Corp.*, 62 F.3d 104, 106 (5th Cir. 1995), for the proposition that "a party to an executory

17   contract has a claim against the debtor [only] when the [debtor has rejected] the contract."

18   Opposition at 8. But, there is no suggestion of an executory contract here. In fact, Debtor

19   acknowledges moving onto the premises knowing that Houser Bros. rejected her application to

20   become a tenant in the park. Debtor's citation to *Matter of Southmark* is unavailing.

21   Lastly, another creditor with prepetition judgments against Debtor and the Chapter 7 trustee

22   have filed joinders in the Motion. See, Dk. Nos. 98 and 100. There is no doubt that creditors and

23   parties-in-interest have standing to challenge the claimed exemption.

24   ## C.   The date of recordation is the relevant date for determining a

25   ## debtor's entitlement to a homestead exemption.

26   Although Debtor summarily argues that "[r]ecord title to the homestead is not required to

27   claim a homestead exemption in the property," Opposition at 3, she cites no authority in support,

28   and, in fact, *In re Farokhirad*, cited in the Motion, shows otherwise. In *In re Farokhirad*, 8:21-bk-

7

1   10026-MW, ECF No. 98 (Bankr. C.D. Cal. Apr. 29, 2021), the court sustained a Chapter 7 trustee's

2   objection to individual debtors' claimed homestead exemption where an LLC held title to the

3   property, and an attempt to transfer title was not recorded. Ardeshir and Fariba Farokhirad filed a

4   voluntary Chapter 7 petition on January 7, 2021, and they claimed a homestead exemption in real

5   property under CCP § 704.730. *Id.* at 2. Both debtors resided at the property, but Bolzano LLC,

6   which was Ardeshir Farokhirad's single-member LLC, held title to it. *Id.* The operating agreement

7   for Bolzano LLC, dated February 25, 2019, purported to give Ardeshir Farokhirad "an interest in

8   real property." *Id.* at 2-3. It further provided that "such real property shall be deemed held and

9   owned in the name of the Undersigned even though 'record' ownership or title, in some instances,

10  may, presently or in the future, be registered the Company's name, in which event such record

11  ownership shall hereafter be deemed held by the Undersigned even though such ownership remains

12  undisclosed." *Id.* at 3.

13      In ruling on the trustee's exemption objection, the Court noted that under California law, a

14  debtor must have some legal or equitable interest in the subject real property to claim a homestead

15  exemption, and assets of an LLC belong to the LLC, not the debtor/member. *Id.* at 3. The court

16  further indicated that at common law and under the statutory law of most states, ownership and title

17  to real property is transferred by deed, and unrecorded deeds may be effective as between the grantor

18  and the grantee, but such conveyances in the absence of recordation are often ineffective against

19  other parties. *Id.* at 4. The court noted that the Bolzano LLC operating agreement purported to

20  transfer ownership of the property from Bolzano LLC to Ardeshir Farokhirad, without a deed. *Id.*

21  And, the court noted that an unrecorded deed would not be effective as against a Chapter 7 trustee.

22  *Id.* The court therefore sustained the trustee's exemption objection. *Id.* at 5.

23      Based on *Farokhirad*, any changes in title to the Property between Debtor and J-Sandcastle

24  LLC are ineffective against third parties, absent recordation. And, because the HCD records show

25  that J-Sandcastle LLC was the owner of record on the Petition Date as set forth in the Motion, and

26  Debtor, who bears the burden of proof, has presented no evidence to the contrary, she is not entitled

27  to claim a homestead exemption in the Property. Further, the court's decision in *Farokhirad* to

28  sustain a homestead exemption objection in debtors' residence dispels Debtor's argument, that she is

8

1  entitled to her claimed exemption because she has resided at the Property since its acquisition on

2  November 1, 2018. Opposition at 3, 15; *see also Schaefers v. Blizzard Energy, Inc. (In re Schaefers)*,

3  623 B.R. 777, 783, 785 (B.A.P. 9th Cir. 2020) (holding that a debtor could not claim a homestead

4  exemption in the property where he resided because he admitted that the property was owned by an

5  LLC); *see generally Eleiwa v. Whitmore (In re Eleiwa)*, 2013 Bankr.LEXIS 5746, at *7-8 (B.A.P.

6  9th Cir. June 5, 2013) (indicating, in ruling on a homestead exemption objection under California

7  law, that property cannot be exempted unless it is first property of the estate) (citing *Heintz v. Carey

8  (In re Heintz)*, 198 B.R. 581, 586 (B.A.P. 9th Cir. 1996)); *Kashkashian v. Lerner (In re

9  Kashkashian)*, 544 B.R. 824, 832 n.8 (Bankr. E.D. Pa. 2016) (noting that exemptions only apply to

10 property of the estate, and property of the estate is limited to property owned by the debtor as of the

11 commencement of the case) (citing 11 U.S.C. § 541(a)).[7] And, Debtor's reliance on *Salven v. Galli

12 (In re Pass)*, 553 B.R. 749, 757 (B.A.P. 9th Cir. 2016), is misplaced because it did not involve a

13 situation where a debtor's LLC acquired real property that the debtor tried to claim as exempt in

14 bankruptcy.

15         Because J-Sandcastle LLC was the Property's owner, Debtor is not entitled to her claimed

16 homestead exemption, and the objection should be sustained. *See Owen v. Owen*, 500 U.S. 305

17 (1991) ("Property that is properly exempted under § 522 is (with some exceptions) immunized

18 against liability for prebankruptcy debts. § 522(c). No property can be exempted (and thereby

19 immunized), however, unless it first falls *within* the bankruptcy estate.") (emphasis in original).

20 / / /

21 / / /

22

23

24 _____

25    [7] Although Debtor contends that she purchased the Property "with exempt funds, claimed as
   exempt," title to the Property was held by J-Sandcastle LLC. Motion at 116-17 (Ex. 13, the Ryan

26 Release Form, showing that Lisa Ryan released the Property to J-Sandcastle LLC on November 1,
   2018); Motion at 118-19 (the Notice of Sale, indicating that on November 1, 2018, Lisa Ryan sold,

27 transferred, and delivered the mobilehome to J-Sandcastle LLC). And, under California law, a
   limited liability company is a separate and distinct legal entity from its owners or members, and LLC

28 members have no interest in the company's assets. *In re Schaefers*, 623 B.R. at 783.

REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
4880-1284-8131,v.1

EXHIBIT 41, PAGE 1471

**D.      Even if the transfer date were the relevant date for determining entitlement to a homestead exemption, Debtor provides no credible evidence that she acquired an interest from the LLC on February 25, 2021, or any other date prior to bankruptcy.**

Debtor, in the Opposition, makes much of J-Sandcastle LLC's execution of a notarized release of title document, claiming: "On the petition date July 9, 2021, the registered title owner of the manufactured home located at 16222 Monterey Lane, Unit #376, Huntington Beach, CA 92649 ('Property') was Jamie Lynn Gallian as of February 25, 2021, the date J-Sandcastle Co LLC signed and dated to release the Certificate of Title to Jamie Lynn Gallian, ***notarized the same date***." Opposition at 29 (emphasis added); *see also* Opposition at 4 (contending that Debtor disclosed under penalty of perjury on July 9, 2021, that J-Sandcastle Co LLC "executed Release of Title, signed *and notarized* by Jamie Lynn Gallian, its Member on February 25, 2021") (emphasis added);[8] Opposition at 4 (referring to a "copy of the Notarized Release on the Certificate of Title, released dated February 25, 2021, and a copy of a NOTICE OF SALE OR TRANSFER, dated February 25, 2021) (capitalization in original); Opposition at 5 (contending that Houser Bros.'s own documents "establish that ownership of Unit 376 was released by J-Sandcastle Co LLC, signed and notarized by its Member Jamie Lynn Gallian on February 25, 2021).

In support of her claim that J-Sandcastle LLC transferred the Property to her individually on February 25, 2021, Debtor relies exclusively on the "notarized" title documents. She cites "Moving party's own documents" as her evidence that "ownership of Unit 376 was released by J-Sandcastle Co LLC, signed and notarized by its Member Jamie Lynn Gallian on February 25, 2021." Opposition at 5. And, she questions: "To the extent petitioners are arguing that HCD's Certificate of Title Documents and/or the Registration Card Document are conclusive evidence on this issue, then why aren't they stuck with the conclusion that HCD's transfer date is binding as well." *Id.* at 5.

---

[8] In Debtor's Original Schedules, filed on the Petition Date (July 9, 2021), Debtor provided, under penalty of perjury, that "Registered Title with HCD Debtor's single member LLC, J-Sandcastle Co, LLC." Motion at 33 (Exhibit 2).

10

1    The HCD documents submitted in support of the Motion include a "R/O Transfer – No Sale"

2    transaction, with a "Trans Date" of July 14, 2021 (defined in the Motion as the July 2021 HCD

3    Transaction). *See* Motion at 169-92 (Ex. 21). Contained in the documents are a release of title from

4    J-Sandcastle LLC to Debtor, dated February 25, 2021, and a "Statement of Facts" dated February 25,

5    2021, which provides that "Jamie Lynn Gallian is the sole registered owner of 2014 home. . . ."

6    Motion at 172-73, 181-83. Both the release of title document and the statement of facts attach an

7    "Acknowledgment" of California Notary Public Greg Buysman ("Mr. Buysman") also dated

8    February 25, 2021. *Id.*

9    The problem for Ms. Gallian, however, is that ***Mr. Buysman did not actually notarize these***

10   ***documents***. Instead, Mr. Buysman's notary book shows that on February 25, 2021, he notarized for

11   Debtor an "Affidavit of Death" and a "Transfer Grant Deed." A true and correct copy of Mr.

12   Buysman's notary book for February 25, 2021, is attached to the Declaration of Greg Buysman

13   ("Buysman Declaration") as **Exhibit 1**. In other words, ***Debtor has attempted to commit a fraud on***

14   ***this Court by backdating documents and attaching notarizations for unrelated documents in***

15   ***furtherance of her efforts to mislead this Court and creditors***.

16   Houser Bros. has obtained the "Affidavit of Death" ("Affidavit of Death") and "Affidavit,

17   Death of Grantor of Interfamily Transfer Grant Deed" ("Transfer Grant Deed"), which Mr. Buysman

18   did notarize. A true and correct copy of the Affidavit of Death is attached to the Buysman

19   Declaration as **Exhibit 2**. A true and correct copy of the Transfer Grant Deed is attached to the

20   Buysman Declaration as **Exhibit 3**.

21   Mr. Buysman notarized these two documents, and he in fact wrote "See Attached

22   Acknowledgment" on the first page of each one. Buysman Decl. ¶¶ 9-10. Mr. Buysman did not,

23   however, notarize the July 2021 HCD Submission, which he confirmed after being provided with a

24   copy of it by Houser Bros. Buysman Decl. ¶ 11 and Ex. 4. And, a close examination of the

25   acknowledgment pages on the July 2021 HCD Transaction, which Debtor relies on exclusively in

26   arguing that she obtained title to the Property on February 25, 2021, shows that they perfectly match

27   the acknowledgment pages that Mr. Buysman actually signed for the Affidavit of Death and Transfer

28   Grant Deed. *Compare* Buysman Decl. Ex. 2 at 6 (acknowledgment page for Affidavit of Death),

REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
4880-1284-8131,v.1

1  *with* Motion at 183 (acknowledgment page for Statement of Facts in July 2021 HCD Transaction);

2  *compare* Buysman Decl. Ex. 3 at 21 (acknowledgment page for Transfer Grant Deed), *with* Motion

3  at 173 (acknowledgment page for release document in July 2021 HCD Transaction).

4       In other words, the evidence shows that on February 25, 2021, Debtor had Mr. Buysman

5  notarize the Affidavit of Death and Transfer Grant Deed. Only when she needed to try to prove that

6  the back-dated transfer date was prior to bankruptcy, did she peel off the notary pages from those

7  documents so that she could try to prove a transfer date for the Property of February 25, 2021. But,

8  without Mr. Buysman's notarization, there is no acknowledgment that this transfer actually occurred

9  on February 25, 2021. Debtor's perjured and forged evidence cannot be trusted and should be

10  completely disregarded. *Banayan v. Mesbahi (In re Mesbahi)*, Nos. LA 03-39268 TD, LA 05-01139

11  TD, 2005 Bankr. LEXIS 2510, at *7 (Bankr. C.D. Cal. Dec. 13, 2005) ["Evidence can be

12  disregarded if the credibility of the witness is in question" citing *Hayden v. Chalfant Press, Inc.*, 281

13  F.2d 543, 546 (9th Cir. 1960)].

14       Debtor, who bears the burden of demonstrating entitlement to a homestead exemption, has

15  not provided any credible or admissible evidence that she received an interest in the Property before

16  the Petition Date that became property of the estate and upon which she could claim an exemption.

17  *See Kashkashian v. Lerner (In re Kashkashian)*, 544 B.R. 824, 832 n.8 (Bankr. E.D. Pa. 2016)

18  (noting that exemptions only apply to property of the estate, and property of the estate is limited to

19  property owned by the debtor as of the commencement of the case) (citing 11 U.S.C. § 541(a)); *see*

20  *also Schaefers v. Blizzard Energy, Inc. (In re Schaefers)*, 623 B.R. 777, 783, 785 (B.A.P. 9th Cir.

21  2020) (holding that a debtor could not claim a homestead exemption in the property where he

22  resided because he admitted that the property was owned by an LLC).

23       The conclusion that J-Sandcastle LLC did not release title to Debtor on February 25, 2021, is

24  completely consistent with the attempted payments to Houser Bros. As shown in the Motion, from

25  February 1, 2021, to July 30, 2021, which covers the purported February 25, 2021, transfer date,

26  seven attempted payments were made to Houser Bros., the first six of which were submitted on

27  behalf of J-Sandcastle LLC. Motion at 203-22 (Ex. 23). Only on July 30, 2021 (which date is post-

28  petition), did Debtor first try to submit a payment for the Property to Houser Bros. on her own

REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
4880-1284-8131,v.1

1    behalf. *Id.* Given Debtor's attempted fraud on the court, she lacks all credibility, and she has failed

2    to produce any documentary evidence which contradicts the clear record that it was the LLC that

3    held title and was tendering payments to movant at all times prior to bankruptcy.

4        Lastly, during her deposition on June 28, 2022, Debtor admitted that title was not in her

5    individual name as of the petition date. Specifically, she testified that she was trying to change the

6    title to herself individually on the same day that she filed bankruptcy but that she failed to have all

7    required documents including a Tax Statement completed. Instead, the Tax Statement was not

8    obtained until the Petition Date, on July 9, 2021, and Debtor did not believe that the HCD began

9    processing her HCD submission until July 14, 2021 (which date is post-petition). *See*, excerpts of

10   deposition transcript on pages 68-73 which are attached as **Exhibit 5**[9] to the Hays Declaration.

11   **E.      Debtor's filing of a declaration of homestead is irrelevant to this case**

12   **because declared homesteads do not help debtors in bankruptcy**

13   **cases.**

14       In the Opposition, Debtor highlights her filing of a "Declared Homestead on July 9, 2021"

15   and asserts that the "California homestead exemption statute entitles her to claim that exemption for

16   bankruptcy purposes." Opposition at 13. Debtor cites no authority in support of this proposition, and,

17   as set forth in footnote 6 of the Motion, a debtor's declaration of homestead "helps [her] not at all" in

18   the bankruptcy context, because the additional benefits conferred in CCP §§ 704.910-704.995 (the

19   declared homestead exemption) would benefit her only in the situation of a voluntary sale. *Kelley v.*

20   *Locke (In re Kelley)*, 300 B.R. 11, 17-18 (B.A.P. 9th Cir. 2003); *see also In re Sain*, 584 B.R. 325,

21   329 (Bankr. S.D. Cal. 2018) (indicating that only the automatic homestead was available to a debtor

22   who held a recorded declaration of homestead, because the debtor had not elected a declared

23   homestead exemption in his schedules, and declared homesteads are not applicable to sales by

24   bankruptcy trustees).

25

26

27   [9] The actual transcript was not ready at the time of filing of the Reply and this is a rough draft of
     transcript. The actual transcript will be filed with the Court prior to the hearing on the
28   Motion.

13

REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
4880-1284-8131,v.1

EXHIBIT 41, PAGE 1475

**F.**    **Debtor provides no evidence in support of her equitable estoppel argument, which appears to be entirely irrelevant to the arguments raised in the Motion.**

Debtor seems to claim that after entering into "a contract" with Houser Bros.'s state-court counsel in August 2019, J-Sandcastle Co LLC tendered a cashier's check for $10,860 to the park manager "to obtain a signed Lot 376 agreement with J-Sandcastle Co LLC." Opposition at 18. She further contends that the park manager accepted the check and gave it to the bookkeeper "for processing on the books." *Id.* Debtor cites no evidence to substantiate any of these facts, and it is further unclear how any of this narrative relates to the issue before the Court; namely, Debtor's entitlement to claim a homestead exemption in the Property pursuant to CCP § 703.740. If anything, this argument supports that it was the LLC and not Debtor that owned the Property. And, Houser Bros. and its state-court counsel, Vivienne Alston, deny entering into a contract with Debtor in August 2019 or accepting any money from Debtor.

**G.**    **Debtor's Opposition does not address the argument that 11 U.S.C. § 522(p) imposes a $170,350 cap on any exemption.**

11 U.S.C. § 522(p) imposes a monetary limit of $170,350 on the amount of a debtor's interest in homestead property that may be exempted to the extent that there has been an acquisition of a homestead interest within a period of 1,215 days before the commencement of the case. *See also* 4 COLLIER ON BANKRUPTCY P 522.13[1] (2022) (same). Even assuming that the Court accepted Debtor's claimed acquisition date of February 2021 (notwithstanding the forged notarizations), such date was only approximately five months prior to bankruptcy. As such, Section 522(p) caps the amount of any allowed exemption.

Moreover, Debtor fails to refute Houser Bros.'s argument, that any allowed exemption must be limited to $170,350 pursuant to 11 U.S.C. § 522(p). As such, she has waived any argument to the contrary. *See Star Fabrics, Inc. v. Ross Stores, Inc.*, 2017 U.S.Dist.LEXIS 225597, at *6-7 (C.D. Cal. Nov. 20, 2017) (indicating that where a party does not oppose arguments made in a motion, a court may find that the party has conceded those arguments or otherwise consented to granting the motion); *see also* Loc. Bankr. R. 9013-1(f)(2) ("Oppositions and Responses to Motions: Contents of

14

1   Response," providing that a response must be a "*complete* written statement of *all reasons* in

2   opposition thereto . . .") (emphasis added).[10]

3       **H.    Debtor did not have any legal or equitable interest in the Property to**

4           **support a homestead.**

5           Debtor claims, in the Opposition, that she "owned a legal or equitable interest in [the

6   Property]," with a "$235,000 value, Fee simple." Opposition at 3. But, during Debtor's deposition on

7   June 28, 2022, Debtor disclosed that she paid rent on the Property to J-Sandcastle LLC from

8   November 2018 until February 25, 2021, Hays Decl. Ex. 5 at 86. If Debtor's interest was only that of

9   renter under a month-to-month tenancy, then Trustee's sale of the Property itself (and not any

10  tenancy or leasehold rights), then Debtor would not be entitled to exempt any portion of the proceeds

11  of sale. *See*, excerpts of deposition transcript on pages 90-92 which are attached as **Exhibit 5** to the

12  Hays Declaration wherein she admits to paying rent to the LLC.

13  **4.    Conclusion**

14          For the reasons set forth in the Motion and above, Houser Bros. respectfully requests that the

15  Court grant the Motion and disallow or cap Debtor's claimed homestead exemption in the Property.

16  As set forth in Debtor's ten sets of amended schedules, she has been involved in litigation with her

17  creditors for years and fraudulently transferred the Property to her LLC in an effort to hinder, delay,

18  or defraud creditors. On July 5, 2022, while this Reply was being prepared, The Huntington Beach

19  Gables Homeowners Association filed a proof of claim attaching multiple prepetition money

20  judgments it obtained and abstracts it recorded against Debtor. The evidence is clear that Debtor

21  transferred the Property to her LLC in an effort to avoid such judgments and judgment liens.

22          Debtor now tries to defraud this Court into believing that she acquired an interest in the

23  Property prior to bankruptcy by forging the notary's signatures on documents he did not notarize so

24  that she can continue to defraud her creditors by exempting the Property she previously transferred.

25  By granting this Motion, the Court will pave the way for the Trustee to administer the Property so

26

27      [10] Debtor's arguments regarding fraudulent transfers, Opposition at 30-33, are entirely irrelevant to
    the Motion, which involves an objection to Debtor's claimed homestead exemption.

28

REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
4880-1284-8131,v.1

1    that creditors will finally receive distributions on account of their substantial claims. Bankruptcy is

2    for the honest, but unfortunate debtor. In this case, Ms. Gallian is neither honest, nor unfortunate.

3

4

5    DATED: July 7, 2022                          MARSHACK HAYS LLP

6                                                           /s/ D. Edward Hays
                                                  By: _____
7                                                      D. EDWARD HAYS
                                                       LAILA MASUD
8                                                      BRADFORD N. BARNHARDT
                                                       Attorneys for Movant and Creditor,
9                                                      HOUSER BROS. CO. dba RANCHO DEL
                                                       REY MOBILE HOME ESTATES
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

16

REPLY IN SUPPORT OF MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION
4880-1284-8131,v.1

002299                    EXHIBIT 41, PAGE 1478

## Declaration of D. Edward Hays

I, D. EDWARD HAYS, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I am an attorney at law duly admitted to practice before this Court and all courts of the State of California.

5.      I am a partner in the law firm of Marshack Hays LLP, attorneys of record for Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros.").

6.      I make this Declaration in support of the Reply in Support of Motion Objecting to Debtor's Claimed Homestead Exemption ("Reply").

7.      Capitalized terms not defined in this Declaration have the meaning ascribed to them in the Reply.

8.      A true and correct copy of the CM/ECF docket in this case is attached as Exhibit 1.

9.      A true and correct copy of the Scheduling Order is attached as Exhibit 2.

10.     A true and correct copy of the OCSC Complaint is attached as Exhibit 3.

11.     A true and correct copy of the AP Complaint is attached as Exhibit 4.

12.     On June 28, 2022, I conducted a deposition of Debtor in the AP. A true and correct copy of excerpts from a draft of the deposition transcript, provided to me, is attached as Exhibit 5.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on July 7, 2022.

/s/ D. Edward Hays

_____
D. EDWARD HAYS

4873-3244-8261, v. 5

17
DECLARATION OF D. EDWARD HAYS

002300        EXHIBIT 41, PAGE 1479

**EXHIBIT 1**

7/7/22, 11:07 AM                          CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

**727OBJ, NODISCH**

## U.S. Bankruptcy Court
## Central District of California (Santa Ana)
## Bankruptcy Petition #: 8:21-bk-11710-ES

*Assigned to:* Erithe A. Smith
Chapter 7
Voluntary
Asset

|  |  |
|---|---|
| *Date filed:* | 07/09/2021 |
| *341 meeting:* | 04/29/2022 |
| *Deadline for objecting to discharge:* | 10/18/2021 |
| *Deadline for financial mgmt. course:* | 10/18/2021 |

*Debtor*
**Jamie Lynn Gallian**
16222 Monterey Ln Unit 376
Huntington Beach, CA 92649
ORANGE-CA
714-321-3449
SSN / ITIN: xxx-xx-3936
*aka* **Jamie L Gallian**
*dba* **J-Sandcastle Co, LLC**
*dba* **J-PAD, LLC**

represented by **Jamie Lynn Gallian**
PRO SE

*Trustee*
**Jeffrey I Golden (TR)**
Weiland Golden Goodrich LLP
P.O. Box 2470
Costa Mesa, CA 92628-2470
(714) 966-1000

represented by **Aaron E DE Leest**
Danning, Gill, Israel & Krasnoff,
LLP
1901 Avenue of the Stars
Suite 450
Los Angeles, CA 90067-6006
310-277-0077
Fax : 310-277-5735
Email: adeleest@DanningGill.com

**Eric P Israel**
Danning Gill Israel & Krasnoff,
LLP
1901 Avenue of the Stars, Suite
450
Los Angeles, CA 90067-6006
310-277-0077
Fax : 310-277-5735
Email: eisrael@DanningGill.com

*U.S. Trustee*
**United States Trustee (SA)**
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4593
(714) 338-3400

| Filing Date | # | Docket Text |
|---|---|---|

https://ecf.cacb.uscourts.gov/cgi-bin/DktRpt.pl?618854628557426-L_1_0-1                          1/16

**002302**

EXHIBIT 1, PAGE 18
EXHIBIT 41, PAGE 1481

| 07/09/2021 | 1 (60 pgs) | Chapter 7 Voluntary Petition for Individuals . Fee Amount $338 Filed by Jamie Lynn Gallian (Nguyen, Vi) (Entered: 07/09/2021) |
|---|---|---|
| 07/09/2021 | 2 | Statement About Your Social Security Number (Official Form 121) Filed by Debtor Jamie Lynn Gallian . (Nguyen, Vi) (Entered: 07/09/2021) |
| 07/09/2021 | 3 (1 pg) | Certificate of Credit Counseling Filed by Debtor Jamie Lynn Gallian . (Nguyen, Vi) (Entered: 07/09/2021) |
| 07/09/2021 | 4 (2 pgs) | Declaration by Debtor as to Whether Debtor(s) Received Income From an Employer Within 60 Days of Petition (LBR Form F1002-1) Filed by Debtor Jamie Lynn Gallian . (Nguyen, Vi) (Entered: 07/09/2021) |
| 07/09/2021 | 5 (3 pgs) | Meeting of Creditors with 341(a) meeting to be held on 8/18/2021 at 09:00 AM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. for Debtor and Joint Debtor (if joint case) Cert. of Financial Management due by 10/18/2021. Last day to oppose discharge or dischargeability is 10/18/2021. (Scheduled Automatic Assignment, shared account) (Entered: 07/09/2021) |
| 07/09/2021 | 6 | Debtor's Request to Activate Electronic Noticing (DeBN) Filed by Debtor Jamie Lynn Gallian . (Nguyen, Vi) (Entered: 07/09/2021) |
| 07/09/2021 | | Receipt of Chapter 7 Filing Fee - $338.00 on 16. Receipt Number 80075587. (admin) (Entered: 07/09/2021) |
| 07/11/2021 | 7 (5 pgs) | BNC Certificate of Notice (RE: related document(s)5 Meeting (AutoAssign Chapter 7)) No. of Notices: 36. Notice Date 07/11/2021. (Admin.) (Entered: 07/11/2021) |
| 07/12/2021 | 8 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Smith, Valerie. (Smith, Valerie) (Entered: 07/12/2021) |
| 07/13/2021 | 9 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Mellor, Mark. (Mellor, Mark) (Entered: 07/13/2021) |
| 07/26/2021 | 10 (1 pg) | Personal Financial Management Course Certificate for Debtor 1 (Official Form 423) (Lazar, Orsolya) (Entered: 07/26/2021) |
| 08/18/2021 | 11 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 9/22/2021 at 01:30 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 08/18/2021) |
| 08/18/2021 | 12 (1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 08/18/2021) |
| 08/23/2021 | 13 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Masud, Laila. (Masud, Laila) (Entered: 08/23/2021) |
| 08/23/2021 | 14 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Hays, D. (Hays, D) (Entered: 08/23/2021) |

EXHIBIT 1, PAGE 19
EXHIBIT 41, PAGE 1482

002303

7/7/22, 11:07 AM                              CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

| Date | Doc # | Description |
|---|---|---|
| 09/07/2021 | <u>15</u><br>(29 pgs) | Amended Schedule A/B Individual: Property (Official Form 106A/B or 206A/B) , Amended Schedule C: The Property You Claimed as Exempt (Official Form 106C) , Schedule G Individual: Executory Contracts and Unexpired Leases (Official Form 106G or 206G) , Schedule H Individual: Your Codebtors (Official Form 106H or 206H) , Amended Schedule I Individual: Your Income (Official Form 106I) , Statement of Financial Affairs for Individual Filing for Bankruptcy (Official Form 107 or 207) , Statement of Intention for Individuals Filing Under Chapter 7 (Official Form 108) , Chapter 7 Statement of Your Current Monthly Income (Official Form 122A-1) (BNC Option) Filed by Debtor Jamie Lynn Gallian . [EDB] (Law, Tamika) (Entered: 09/07/2021) |
| 09/22/2021 | <u>16</u><br>(29 pgs) | Amended Schedule A/B Individual: Property (Official Form 106A/B or 206A/B) , FIRST AMENDMENT Amended Schedule C: The Property You Claimed as Exempt (Official Form 106C) , Amended Schedule I Individual: Your Income (Official Form 106I) , Amended Schedule G Individual: Executory Contracts and Unexpired Leases (Official Form 106G or 206G) , Amended Statement of Financial Affairs for Individual Filing for Bankruptcy (Official Form 107 or 207) ,Amended Statement of Intention for Individuals Filing Under Chapter 7 (Official Form 108) , Amended Statement of Related Cases (LBR Form 1015-2.1) , Amended Chapter 7 Statement of Your Current Monthly Income (Official Form 122A-1) (BNC Option) , Proof of service Filed by Debtor Jamie Lynn Gallian . (Nguyen, Vi) (Entered: 09/22/2021) |
| 09/22/2021 | <u>17</u><br>(15 pgs) | Amending Schedules (D) and (E/F) ,Amended List of Creditors (Master Mailing List of Creditors) , Amended Verification of Master Mailing List of Creditors (LBR Form F1007-1), Proof of Service. Filed by Debtor Jamie Lynn Gallian . (Nguyen, Vi) (Entered: 09/22/2021) |
| 09/22/2021 | 18 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 10/6/2021 at 01:30 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 09/22/2021) |
| 09/22/2021 | <u>19</u><br>(1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 09/22/2021) |
| 09/22/2021 | | Receipt of Amendment Filing Fee - $32.00 by 16. Receipt Number 80075677. (admin) (Entered: 09/22/2021) |
| 10/07/2021 | 20 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 10/14/2021 at 03:00 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 10/07/2021) |
| 10/07/2021 | <u>21</u><br>(1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 10/07/2021) |
| 10/14/2021 | <u>22</u><br>(31 pgs) | Amended Schedule A/B Individual: Property (Official Form 106A/B or 206A/B) , Amended Schedule C: The Property You Claimed as Exempt (Official Form 106C) , Amending Schedules (D) (E/F) , Schedule G Individual: Executory Contracts and Unexpired Leases (Official Form 106G or 206G) , Schedule H Individual: Your Codebtors (Official Form 106H or 206H) , Statement of Intention for Individuals Filing Under |

002304

EXHIBIT 1, PAGE 20
EXHIBIT 41, PAGE 1483

7/7/22, 11:07 AM                          CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

| | | |
|---|---|---|
| | | Chapter 7 (Official Form 108) [EDB] Filed by Debtor Jamie Lynn Gallian . (Law, Tamika) (Entered: 10/14/2021) |
| 10/14/2021 | 23 (1 pg) | Notice of Deficiency of Filing Fees Required to Add Additional Creditors (BNC) (RE: related document(s)22 Schedule A/B: Property (Official Form 106A/B or 206A/B) filed by Debtor Jamie Lynn Gallian, Schedule C: The Property You Claimed as Exempt (Official Form 106C), Amending Schedules D and/or E/F (Official Form 106D, 106E/F, 206D, or 206E/F) (Fee), Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G or 206G), Schedule H: Your Codebtors (Official Form 106H or 206H), Statement of Intention for Individuals Filing Under Chapter 7 (Official Form B8, or 108)) (Law, Tamika) (Entered: 10/14/2021) |
| 10/15/2021 | 24 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 11/10/2021 at 03:00 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 10/15/2021) |
| 10/15/2021 | 25 (1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 10/15/2021) |
| 10/16/2021 | 26 (3 pgs) | BNC Certificate of Notice (RE: related document(s)23 Notice of Deficiency of Filing Fees Required to Add Additional Creditors (BNC) No. of Notices: 1. Notice Date 10/16/2021. (Admin.) (Entered: 10/16/2021) |
| 10/18/2021 | 27 (74 pgs; 2 docs) | Adversary case 8:21-ap-01095. Complaint by The Huntington Beach Gables Homeowners Association against Jamie Lynn Gallian , Randall L Nickel . Fee Amount $350 (Attachments: # 1 Adv Cover Sheet) Nature of Suit: (41 (Objection / revocation of discharge - 727(c),(d),(e))) ,(21 (Validity, priority or extent of lien or other interest in property)) ,(62 (Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud)) (Law, Tamika) (Entered: 10/18/2021) |
| 10/18/2021 | 28 (93 pgs; 2 docs) | Adversary case 8:21-ap-01096. Complaint by Janine Jasso against Jamie Lynn Gallian . Fee Amount $350 (Attachments: # 1 Adv Cover Sheet) Nature of Suit: (41 (Objection / revocation of discharge - 727(c),(d),(e))) , (65 (Dischargeability - other)) ,(13 (Recovery of money/property - 548 fraudulent transfer)) ,(62 (Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud)) - Original not signed - (Law, Tamika) (Entered: 10/18/2021) |
| 10/18/2021 | 29 (3 pgs) | Stipulation By Jeffrey I Golden (TR) and *Stipulation to Extend Time to File a Complaint Objecting to Debtors Discharge Pursuant to 11 U.S.C. § 727 and Federal Rule of Bankruptcy Procedure 4004 (with Proof of Service)* Filed by Trustee Jeffrey I Golden (TR) (Golden (TR), Jeffrey) (Entered: 10/18/2021) |
| 10/18/2021 | 30 (25 pgs; 2 docs) | Adversary case 8:21-ap-01097. Complaint by Houser Bros. Co., a California general partnership against Jamie Lynn Gallian. Fee Amount $350 *Complaint to (1) Determine Dischargeability of Debt Pursuant to 11 U.S.C. Sections 523 (a)(2)(A) and (a)(6); (2) Deny Discharge Pursuant to 11 U.S.C. Sections 727 (a)(2)(A), (a)(4), and (a)(5)* (Attachments: # 1 Adversary Proceeding Cover Sheet) Nature of Suit: (62 (Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud)),(68 (Dischargeability - 523(a)(6), willful and malicious injury)),(65 (Dischargeability - other)) (Masud, Laila) (Entered: 10/18/2021) |

002305

EXHIBIT 1, PAGE 21
EXHIBIT 41, PAGE 1484

7/7/22, 11:07 AM                              CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

| | | |
|---|---|---|
| 10/19/2021 | 31 (2 pgs) | Order Approving Stipulation to Extend Time to File a Complaint Objecting to Debtor's Discharge Pursuant to 11 U.S.C. Section 727 and Federal Rule of Bankruptcy Procedure 4004. The Deadline for the Trustee, or United States Trustee, to file a Complaint Objecting to the Debtor's Discharge under 11 U.S.C. Section 727 is Extended to and Including November 17, 2021 (BNC-PDF) (Related Doc # 29 ) Signed on 10/19/2021 (Duarte, Tina) (Entered: 10/19/2021) |
| 10/20/2021 | 32 | Debtor's Request to Activate Electronic Noticing (DeBN) Filed by Debtor Jamie Lynn Gallian [EDB] (Law, Tamika) (Entered: 10/20/2021) |
| 10/21/2021 | 33 (4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)31 Order on Motion to Extend Time (Generic) (BNC-PDF)) No. of Notices: 1. Notice Date 10/21/2021. (Admin.) (Entered: 10/21/2021) |
| 11/10/2021 | 34 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 12/1/2021 at 11:00 AM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 11/10/2021) |
| 11/10/2021 | 35 (1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 11/10/2021) |
| 11/16/2021 | 36 (2 pgs) | Declaration by Debtor as to Whether Debtor(s) Received Income From an Employer Within 60 Days of Petition (LBR Form F1002-1) [EDB] Filed by Debtor Jamie Lynn Gallian . (Law, Tamika) (Entered: 11/17/2021) |
| 11/16/2021 | 37 (26 pgs) | Amended Schedule A/B Individual: Property (Official Form 106A/B or 206A/B) , Amended Schedule C: The Property You Claimed as Exempt (Official Form 106C) , Schedule G Individual: Executory Contracts and Unexpired Leases (Official Form 106G or 206G) , Schedule H Individual: Your Codebtors (Official Form 106H or 206H) , Amended Schedule I Individual: Your Income (Official Form 106I) , Statement of Financial Affairs for Individual Filing for Bankruptcy (Official Form 107 or 207) , Statement of Intention for Individuals Filing Under Chapter 7 (Official Form 108) [EDB] Filed by Debtor Jamie Lynn Gallian . (Law, Tamika) (Entered: 11/17/2021) |
| 11/22/2021 | 38 (23 pgs) | Amended Schedule A/B Individual: Property (Official Form 106A/B or 206A/B) , Amended Schedule C: The Property You Claimed as Exempt (Official Form 106C) , Schedule G Individual: Executory Contracts and Unexpired Leases (Official Form 106G or 206G) , Statement of Financial Affairs for Individual Filing for Bankruptcy (Official Form 107 or 207) , Statement of Intention for Individuals Filing Under Chapter 7 (Official Form 108) [EDB] Filed by Debtor Jamie Lynn Gallian . (Law, Tamika) (Entered: 11/23/2021) |
| 11/23/2021 | 39 (26 pgs) | Amended Schedule A/B Individual: Property (Official Form 106A/B or 206A/B) , Amended Schedule C: The Property You Claimed as Exempt (Official Form 106C) , Schedule G Individual: Executory Contracts and Unexpired Leases (Official Form 106G or 206G) , Statement of Financial Affairs for Individual Filing for Bankruptcy (Official Form 107 or 207) , Statement of Intention for Individuals Filing Under Chapter 7 (Official Form 108) [EDB] Filed by Debtor Jamie Lynn Gallian . (Law, Tamika) (Entered: 11/23/2021) |

002306

EXHIBIT 1, PAGE 22
EXHIBIT 41, PAGE 1485

| 12/01/2021 | 40 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 12/15/2021 at 10:00 AM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 12/01/2021) |
| 12/01/2021 | 41 (1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 12/01/2021) |
| 12/01/2021 | 42 (15 pgs) | Amending Schedules (D) (E/F) Filed by Debtor Jamie Lynn Gallian . (Law, Tamika) (Entered: 12/01/2021) |
| 12/01/2021 | | Receipt of Amendment Filing Fee - $32.00 by 08. Receipt Number 80075783. (admin) Paid in reference to dock #22 (Deficiency Ntc dock #23). Modified on 12/3/2021 (Law, Tamika). (Entered: 12/02/2021) |
| 12/01/2021 | | Receipt of Amendment Filing Fee - $32.00 by 08. Receipt Number 80075784. (admin) (Entered: 12/02/2021) |
| 12/15/2021 | 43 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 1/7/2022 at 03:00 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 12/15/2021) |
| 12/15/2021 | 44 (1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 12/15/2021) |
| 12/22/2021 | 45 (16 pgs) | Notice of motion and motion for relief from automatic stay with supporting declarations ACTION IN NON-BANKRUPTCY FORUM RE: Randall I. Nickel vs. The Huntington Beach Gables HOA et al., Superior Court of California, County of Orange, Central Justice Center Docket Number: 30-2020-01163055-CU-OR-CJC . Fee Amount $188, Filed by Creditor The Huntington Beach Gables Homeowners Association [NOTE: Attorney Michael Poole Notified via voice mail and e-mail to file supplemental notice of hearing to be held remotely using Zoomgov audio and video hearing] (Duarte, Tina) (Entered: 12/22/2021) |
| 12/22/2021 | 46 (112 pgs) | Memorandum of Points and Authorities in Support of Creditor The Huntington Beach Gables Homeowners Association's Motion for Relief from the Automatic Stay; Filed by Creditor The Huntington Beach Gables Homeowners Association. [NOTE: Attorney Michael Poole Notified via voice mail and e-mail to file supplemental notice of hearing to be held remotely using Zoomgov audio and video hearing] (Duarte, Tina) (Entered: 12/22/2021) |
| 12/22/2021 | | Receipt of Motion Filing Fee - $188.00 by 08. Receipt Number 80075831. (admin) (Entered: 12/22/2021) |
| 12/29/2021 | 47 (3 pgs) | Supplemental Notice of Hearing to Be Held Remotely Using Zoomgov Audio and Video, Filed by Creditor The Huntington Beach Gables Homeowners Association [Filed by FAX] (RE: related document(s)45 Notice of motion and motion for relief from automatic stay with supporting declarations ACTION IN NON-BANKRUPTCY FORUM RE: Randall I. Nickel vs. The Huntington Beach Gables HOA et al., Superior Court of California, County of Orange, Central Justice Center Docket Number: 30-2020-01163055-CU-OR-CJC . Fee Amount $188, Filed by |

002307

EXHIBIT 1, PAGE 23
EXHIBIT 41, PAGE 1486

|  |  | Creditor The Huntington Beach Gables Homeowners Association [NOTE: Attorney Michael Poole Notified via voice mail and e-mail to file supplemental notice of hearing to be held remotely using Zoomgov audio and video hearing] filed by Creditor The Huntington Beach Gables Homeowners Association). The Hearing date is set for 1/20/2022 at 10:00 AM at Crtrm 5A, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Erithe A. Smith. NOTE: [NOTE: This document is to be docketed in the main bankruptcy case. Attorney Michael Poole Notified via voice mail and e-mail to file supplemental notice of hearing to be held remotely using Zoomgov audio and video hearing using the correct form for bankruptcy] (Duarte, Tina). (Entered: 12/29/2021) |
|---|---|---|
| 12/29/2021 | 48 | Hearing Set (RE: related document(s)45 Motion for Relief from Stay - ACTION IN NON-BANKRUPTCY FORUM filed by Creditor The Huntington Beach Gables Homeowners Association). The Hearing date is set for 1/20/2022 at 10:00 AM at Crtrm 5A, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Erithe A. Smith (Duarte, Tina) (Entered: 12/29/2021) |
| 01/04/2022 | 49<br>(3 pgs) | Supplemental Notice of Hearing to be Held Remotely Using Zoomgov Audio and Video; Filed by Creditor The Huntington Beach Gables Homeowners Association [By FAX] (RE: related document(s)45 Notice of motion and motion for relief from automatic stay with supporting declarations ACTION IN NON-BANKRUPTCY FORUM RE: Randall I. Nickel vs. The Huntington Beach Gables HOA et al., Superior Court of California, County of Orange, Central Justice Center Docket Number: 30-2020-01163055-CU-OR-CJC . Fee Amount $188, Filed by Creditor The Huntington Beach Gables Homeowners Association [NOTE: Attorney Michael Poole Notified via voice mail and e-mail to file supplemental notice of hearing to be held remotely using Zoomgov audio and video hearing]). The Hearing date is set for 1/20/2022 at 10:00 AM at Crtrm 5A, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Erithe A. Smith (Duarte, Tina) (Entered: 01/04/2022) |
| 01/07/2022 | 50 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 1/24/2022 at 03:00 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 01/07/2022) |
| 01/07/2022 | 51<br>(1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 01/07/2022) |
| 01/14/2022 | 52<br>(3 pgs) | Notice of Continuance of Hearing of Creditor The Huntington Beach Gables Homeowners Association's Motion for Relief from the Automatic Stay; Filed by Creditor The Huntington Beach Gables Homeowners Association [By FAX] (RE: related document(s)45 Notice of motion and motion for relief from automatic stay with supporting declarations ACTION IN NON-BANKRUPTCY FORUM RE: Randall I. Nickel vs. The Huntington Beach Gables HOA et al., Superior Court of California, County of Orange, Central Justice Center Docket Number: 30-2020-01163055-CU-OR-CJC . Fee Amount $188, Filed by Creditor The Huntington Beach Gables Homeowners Association [NOTE: Attorney Michael Poole Notified via voice mail and e-mail to file supplemental notice of hearing to be held remotely using Zoomgov audio and video hearing]). The Hearing date is CONTINUED TO 2/17/2022 at 10:30 AM at Crtrm 5A, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Erithe A. Smith (Duarte, Tina). (Entered: 01/14/2022) |

002308

7/7/22, 11:07 AM                                CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

| | | |
|---|---|---|
| 01/14/2022 | 53<br>(3 pgs) | Supplemental Notice of Hearing to Be Held Remotely Using Zoomgov Audio and Video; Filed by Creditor The Huntington Beach Gables Homeowners Association [By FAX] (RE: related document(s)45 Notice of motion and motion for relief from automatic stay with supporting declarations ACTION IN NON-BANKRUPTCY FORUM RE: Randall I. Nickel vs. The Huntington Beach Gables HOA et al., Superior Court of California, County of Orange, Central Justice Center Docket Number: 30-2020-01163055-CU-OR-CJC . Fee Amount $188, Filed by Creditor The Huntington Beach Gables Homeowners Association [NOTE: Attorney Michael Poole Notified via voice mail and e-mail to file supplemental notice of hearing to be held remotely using Zoomgov audio and video hearing]). The Hearing date is set for 2/17/2022 at 10:30 AM at Crtrm 5A, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Erithe A. Smith (Duarte, Tina) (Entered: 01/14/2022) |
| 01/20/2022 | 56 | Hearing Rescheduled/Continued (RE: related document(s)45 Motion for Relief from Stay - ACTION IN NON-BANKRUPTCY FORUM filed by Creditor The Huntington Beach Gables Homeowners Association). The Hearing is CONTINUED TO 2/17/2022 at 10:30 AM at Crtrm 5A, 411 W Fourth St., Santa Ana, CA 92701, Per Hearing Held 1/13/2022. The case judge is Erithe A. Smith (Duarte, Tina) (Entered: 01/25/2022) |
| 01/24/2022 | 54 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 2/14/2022 at 09:00 AM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 01/24/2022) |
| 01/24/2022 | 55<br>(1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 01/24/2022) |
| 02/04/2022 | 57<br>(8 pgs) | Notice of Proposed Abandonment of Property of the Estate *Trustee's Notice of Intent to Abandon Estate's Interest in an Unscheduled Check, With Proof of Service* Filed by Trustee Jeffrey I Golden (TR). (DE Leest, Aaron) (Entered: 02/04/2022) |
| 02/04/2022 | 58<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Israel, Eric. (Israel, Eric) (Entered: 02/04/2022) |
| 02/07/2022 | 59<br>(3 pgs) | Notice -*Notice of Withdrawal re: Trustee's Notice of Intent to Abandon Estate's Interest in an Unscheduled Check; proof of service* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)57 Notice of Proposed Abandonment of Property of the Estate *Trustee's Notice of Intent to Abandon Estate's Interest in an Unscheduled Check, With Proof of Service* Filed by Trustee Jeffrey I Golden (TR). (DE Leest, Aaron)). (DE Leest, Aaron) (Entered: 02/07/2022) |
| 02/11/2022 | 60<br>(8 pgs) | Notice of Proposed Abandonment of Property of the Estate -*Trustee's Notice of Intent to Abandon Estate's Interest in Debtor's Covid 19 Rent Relief Check; proof of service* Filed by Trustee Jeffrey I Golden (TR). (DE Leest, Aaron) (Entered: 02/11/2022) |
| 02/11/2022 | 61<br>(115 pgs) | Response to Motion Regarding the Automatic Stay and Declarations In Support; Memorandum of Points and Authorities in Opposition of Creditor The Huntington Beach Gables Homeowners Associations' Motion for Relief from the Automatic Stay 'EDB' (related document(s): 45 Notice of motion and motion for relief from automatic stay with supporting declarations ACTION IN NON-BANKRUPTCY FORUM RE: |

EXHIBIT 1, PAGE 25
EXHIBIT 41, PAGE 1488

002309

| | | |
|---|---|---|
| | | Randall I. Nickel vs. The Huntington Beach Gables HOA et al., Superior Court of California, County of Orange, Central Justice Cen filed by Creditor The Huntington Beach Gables Homeowners Association) Filed by Debtor Jamie Lynn Gallian (Le, James) Warning: Item subsequently amended by docket entry no:62 Modified on 2/11/2022 (Le, James). (Entered: 02/11/2022) |
| 02/11/2022 | 62 (241 pgs) | Amended Response to Motion Regarding the Automatic Stay and Declarations In Support; Memorandum of Points and Authorities in Opposition of Creditor The Huntington Beach Gables Homeowners Associations' Motion for Relief from the Automatic Stay 'EDB'(related document(s): 45 Notice of motion and motion for relief from automatic stay with supporting declarations ACTION IN NON-BANKRUPTCY FORUM RE: Randall I. Nickel vs. The Huntington Beach Gables HOA et al., Superior Court of California, County of Orange, Central Justice Cen filed by Creditor The Huntington Beach Gables Homeowners Association) Filed by Debtor Jamie Lynn Gallian (Le, James) (Entered: 02/11/2022) |
| 02/15/2022 | 63 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 2/28/2022 at 03:00 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 02/15/2022) |
| 02/15/2022 | 64 (1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 02/15/2022) |
| 02/17/2022 | 65 | Hearing Held (RE: related document(s)45 Motion for Relief from Stay - ACTION IN NON-BANKRUPTCY FORUM filed by Creditor The Huntington Beach Gables Homeowners Association) - Deny motion without prejudice to re-filing the motion if the cause of action for voidable transfer is abandoned or deemed abandoned by the chapter 7 trustee pursuant to 11 U.S.C. 554. (Daniels, Sally) (Entered: 02/28/2022) |
| 02/28/2022 | 66 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 3/21/2022 at 03:00 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 02/28/2022) |
| 02/28/2022 | 67 (1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 02/28/2022) |
| 03/03/2022 | 68 (12 pgs) | Declaration That No Party Requested a Hearing on Motion (LBR 9013-1(o)(3)) 60; proof of service Filed by Trustee Jeffrey I Golden (TR). (DE Leest, Aaron) (Entered: 03/03/2022) |
| 03/03/2022 | 69 (6 pgs) | Notice of lodgment of Order in Bankruptcy Case; proof of service Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)60 Notice of Proposed Abandonment of Property of the Estate -Trustee's Notice of Intent to Abandon Estate's Interest in Debtor's Covid 19 Rent Relief Check; proof of service Filed by Trustee Jeffrey I Golden (TR). (DE Leest, Aaron)). (DE Leest, Aaron) (Entered: 03/03/2022) |
| 03/04/2022 | 70 (2 pgs) | Order Authorizing Trustee's Abandonment of Estate's Interest in Debtor's Covid 19 Rent Relief Check (BNC-PDF) (Related Doc # 60 ) Signed on 3/4/2022 (Duarte, Tina) (Entered: 03/04/2022) |

002310

EXHIBIT 1, PAGE 26
EXHIBIT 41, PAGE 1489

7/7/22, 11:07 AM                                  CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

| 03/06/2022 | 71 (4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)70 Order on Motion to Abandon (BNC-PDF)) No. of Notices: 0. Notice Date 03/06/2022. (Admin.) (Entered: 03/06/2022) |
|---|---|---|
| 03/11/2022 | 72 (64 pgs) | Addendum to voluntary petition , Statement of Related Cases (LBR Form 1015-2.1) , Amended Schedule A/B Individual: Property (Official Form 106A/B or 206A/B) , Amended Schedule C: The Property You Claimed as Exempt (Official Form 106C) , Schedule G Individual: Executory Contracts and Unexpired Leases (Official Form 106G or 206G) , Schedule H Individual: Your Codebtors (Official Form 106H or 206H) , Amended Schedule I Individual: Your Income (Official Form 106I) , Declaration About an Individual Debtor's Schedules (Official Form 106Dec) , Statement of Financial Affairs for Individual Filing for Bankruptcy (Official Form 107 or 207) , Statement of Intention for Individuals Filing Under Chapter 7 (Official Form 108) , Chapter 7 Statement of Your Current Monthly Income (Official Form 122A-1) (BNC Option) , Verification of Master Mailing List of Creditors (LBR Form F1007-1), Proof of service. Verification of Declaration of Homestead filed with Orange County Clerk Recorder. Filed by Debtor Jamie Lynn Gallian . (Nguyen, Vi) (Entered: 03/14/2022) |
| 03/11/2022 | 73 (11 pgs) | Addendum to voluntary petition to amend Debtor's DBA, Item #11 pg 3, Item #16b pg6. Filed by Debtor Jamie Lynn Gallian . (Nguyen, Vi) (Entered: 03/14/2022) |
| 03/11/2022 | 74 (4 pgs) | Document re Verification of Declaration of Homestead. Filed by Debtor Jamie Lynn Gallian (RE: related document(s)72 Addendum to Vol Pet filed by Debtor Jamie Lynn Gallian, Statement of Related Cases (LBR Form 1015-2.1), Schedule A/B: Property (Official Form 106A/B or 206A/B), Schedule C: The Property You Claimed as Exempt (Official Form 106C), Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G or 206G), Schedule H: Your Codebtors (Official Form 106H or 206H), Schedule I: Your Income (Official Form 106I), Declaration About an Individual Debtor's Schedules (Official Form 106Dec), Statement of Financial Affairs (Official Form 107 or 207) (Official Form 107 or 207), Statement of Intention for Individuals Filing Under Chapter 7 (Official Form B8, or 108), Chapter 7 Statement of Your Current Monthly Income (Official Form 122A-1) (BNC Option), Verification of Master Mailing List of Creditors (LBR F1007-1)) (Nguyen, Vi) (Entered: 03/14/2022) |
| 03/15/2022 | 75 (22 pgs) | Amending Schedules (D) and (E/F) Filed by Debtor Jamie Lynn Gallian . (Nguyen, Vi) (Entered: 03/15/2022) |
| 03/15/2022 | | Receipt of Amendment Filing Fee - $32.00 by 16. Receipt Number 80075964. (admin) (Entered: 03/15/2022) |
| 03/16/2022 | 76 (105 pgs) | Proof of service of Amended Schedules Filed by Debtor Jamie Lynn Gallian . [EDB] (Law, Tamika) (Entered: 03/16/2022) |
| 03/16/2022 | 77 (8 pgs) | Statement of Corporate Ownership -none listed Filed by Debtor Jamie Lynn Gallian . [EDB] (Law, Tamika) (Entered: 03/17/2022) |
| 03/21/2022 | 78 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 4/4/2022 at 03:00 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 03/21/2022) |

002311

EXHIBIT 1, PAGE 27
EXHIBIT 41, PAGE 1490

7/7/22, 11:07 AM                                   CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

| | | |
|---|---|---|
| 03/21/2022 | 79<br>(1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 03/21/2022) |
| 03/22/2022 | 80<br>(6 pgs) | Chapter 7 Statement of Your Current Monthly Income (Official Form 122A-1) (BNC Option) Filed by Debtor Jamie Lynn Gallian . [EDB] (Law, Tamika) (Entered: 03/23/2022) |
| 04/04/2022 | 81 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 4/11/2022 at 03:00 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 04/04/2022) |
| 04/04/2022 | 82<br>(1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 04/04/2022) |
| 04/11/2022 | 83 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 4/22/2022 at 03:00 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 04/11/2022) |
| 04/11/2022 | 84<br>(1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 04/11/2022) |
| 04/26/2022 | 85 | Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 4/29/2022 at 01:30 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey) (Entered: 04/26/2022) |
| 04/26/2022 | 86<br>(1 pg) | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 04/26/2022) |
| 05/02/2022 | 87<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Iskander, Brandon. (Iskander, Brandon) (Entered: 05/02/2022) |
| 05/02/2022 | 88<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Goe, Robert. (Goe, Robert) (Entered: 05/02/2022) |
| 05/02/2022 | 89<br>(6 pgs) | Notice *Trustees Notice Of Intent To Abandon Estates Interest In Probate Claims (with Proof of Service)* Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 05/02/2022) |
| 05/03/2022 | 90<br>(2 pgs) | Notice of Assets (no bar date for claims is required) *with proof of service* Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 05/03/2022) |
| 05/03/2022 | 91 | Meeting of Creditors Held and Concluded (Chapter 7 Asset) Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s) 83 Continuance of Meeting of Creditors (Rule 2003(e)) (Trustee's 341 Filings) 341(a) Meeting Continued to be held on 4/22/2022 at 03:00 PM at TR 7, TELEPHONIC MEETING. FOR INSTRUCTIONS CONTACT THE TRUSTEE. (Golden (TR), Jeffrey)). (Golden (TR), Jeffrey) (Entered: 05/03/2022) |

002312

EXHIBIT 1, PAGE 28
EXHIBIT 41, PAGE 1491

7/7/22, 11:07 AM                                     CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

| | | |
|---|---|---|
| 05/11/2022 | **92**<br>(38 pgs) | Application to Employ Danning, Gill, Israel & Krasnoff, LLP as General Bankruptcy Counsel *Chapter 7 Trustees Notice Of Application And Application To Employ Danning, Gill, Israel & Krasnoff, LLP As General Bankruptcy Counsel Effective As Of January 27, 2022; Declaration Of Eric P. Israel; And Statement Of Disinterestedness, with Proof of Service* Filed by Trustee Jeffrey I Golden (TR) (Israel, Eric) (Entered: 05/11/2022) |
| 05/11/2022 | **93**<br>(2 pgs) | Notification of Discrepancy of Conclusion of Whether or Not No Asset Case (Claims Bar Dar Date Should Be Required); Filed by Debtor Jamie Lynn Gallian [EDB] (RE: related document(s)**90** Notice of Assets (no bar date for claims is required) filed by Trustee Jeffrey I Golden (TR)) (TD8) (Entered: 05/11/2022) |
| 05/12/2022 | **94**<br>(10 pgs) | Amended Schedule I Individual: Your Income (Official Form 106I) , Amended Schedule J: Your Expenses (Official Form 106J) , Chapter 7 Statement of Your Current Monthly Income (Official Form 122A-1) (BNC Option) , Declaration About an Individual Debtor's Schedules (Official Form 106Dec) Filed by Debtor Jamie Lynn Gallian . [EDB] (TL) (Entered: 05/12/2022) |
| 05/12/2022 | **95**<br>(259 pgs) | Objection to Homestead Exemption *Notice of Motion and Motion Objecting to Debtor's Claimed Homestead Exemption; Memorandum of Points and Authorities; Declaration of D. Edward Hays in Support; with Proof of Service [Hrg. 6/2/22 at 10:30 a.m.]* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates. (Hays, D) (Entered: 05/12/2022) |
| 05/12/2022 | **96**<br>(4 pgs) | Notice *Supplemental Notice of Hearing to be Held Remotely Using Zoomgov Audio and Video; with Proof of Service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)**95** Objection to Homestead Exemption *Notice of Motion and Motion Objecting to Debtor's Claimed Homestead Exemption; Memorandum of Points and Authorities; Declaration of D. Edward Hays in Support; with Proof of Service [Hrg. 6/2/22 at 10:30 a.m.]* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates.). (Hays, D) (Entered: 05/12/2022) |
| 05/12/2022 | **97**<br>(31 pgs) | Declaration of Debtor RE Postpetition Income and Expenses as of the Following Date 05/11/2022 Filed by Debtor Jamie Lynn Gallian . [EDB] (TL) . (Entered: 05/13/2022) |
| 05/12/2022 | 99 | Hearing Set (related document # **95** Motion Objecting to Debtor's Claimed Homestead Exemption filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates. The Hearing date is set for 6/2/2022 at 10:30 AM at Crtrm 5A, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Erithe A. Smith (TD8) (Entered: 05/13/2022) |
| 05/13/2022 | **98**<br>(3 pgs) | Statement *The Huntington Beach Gables Homeowners Associations Joinder To Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates Motion Objecting To Debtors Claimed Homestead Exemption with proof of service* Filed by Creditor The Huntington Beach Gables Homeowners Association. (Goe, Robert) (Entered: 05/13/2022) |
| 05/16/2022 | **100**<br>(2 pgs) | Janine Jasso's Joinder to Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates' Motion Objecting to Debtor's Claimed Homestead Exemption Filed by Creditor Janine Jasso 'EDB' (RE: related |

**002313**

EXHIBIT 1, PAGE 29
EXHIBIT 41, PAGE 1492

CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

| | | |
|---|---|---|
| | | document(s)95 Objection to Homestead Exemption filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates) (JL) (Entered: 05/16/2022) |
| 05/26/2022 | | Receipt of Motion Filing Fee - $188.00 by 16. Receipt Number 80076089. (admin) (Entered: 05/26/2022) |
| 05/26/2022 | 101 (317 pgs; 4 docs) | Motion Confirming That No Stay is in effect for Criminal Restitution Case, or, If an Automatic Stay Exists, then for Relief from Stay . Fee Amount $188, Filed by Creditor Janine Jasso (Attachments: # 1 2 of 4 Motion # 2 3 of 4 Motion # 3 4 of 4 Motion) (AM) (Entered: 05/27/2022) |
| 05/26/2022 | 103 (2 pgs) | Notice of motion/application Filed by Creditor Janine Jasso (RE: related document(s)101 Motion Confirming That No Stay is in effect for Criminal Restitution Case, or, If an Automatic Stay Exists, then for Relief from Stay . Fee Amount $188, Filed by Creditor Janine Jasso (Attachments: # 1 2 of 4 Motion # 2 3 of 4 Motion # 3 4 of 4 Motion) (AM)). (AM) (Entered: 05/27/2022) |
| 05/27/2022 | 102 | Hearing Set (RE: related document(s)101 Motion for Relief - Order Confirming Termination of Stay or That no Stay is in Effect filed by Creditor Janine Jasso) The Hearing date is set for 6/16/2022 at 10:00 AM at Crtrm 5A, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Erithe A. Smith (AM) (Entered: 05/27/2022) |
| 05/27/2022 | 104 (3 pgs) | Supplemental Notice of Hearing To Be Held Remotely Using Zoomgov Audio and Video Filed by Creditor Janine Jasso (RE: related document(s)101 Motion Confirming That No Stay is in effect for Criminal Restitution Case, or, If an Automatic Stay Exists, then for Relief from Stay . Fee Amount $188, Filed by Creditor Janine Jasso (Attachments: # 1 2 of 4 Motion # 2 3 of 4 Motion # 3 4 of 4 Motion) (AM)). The Hearing date is set for 6/16/2022 at 10:00 AM at Crtrm 5A, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Erithe A. Smith [EDB] (AM) (Entered: 05/27/2022) |
| 06/01/2022 | 105 (361 pgs; 2 docs) | Debtors Reply Opposition, Memorandum of Points and Authorities to Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates' Motion Objecting to Debtor's Claimed Homestead Exemption and Joinder Parties Huntington Beach Gables HOA; Janine Jasso (related document(s): 95 Objection to Homestead Exemption filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates), Filed by Debtor Jamie Lynn Gallian [EDB] (TD8) Additional attachment(s) added on 6/1/2022 (TD8). (Entered: 06/01/2022) |
| 06/01/2022 | 106 (43 pgs) | Declaration That No Party Requested a Hearing on Motion (LBR 9013-1(o)(3)) *with Proof of Service* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)92 Application to Employ Danning, Gill, Israel & Krasnoff, LLP as General Bankruptcy Counsel *Chapter 7 Trustees Notice Of Application And Application To Employ Danning, Gill, Israel & Krasnoff, LLP As General Bankruptcy Counsel Effective As Of January 2). (Israel, Eric) (Entered: 06/01/2022)* |
| 06/01/2022 | 107 (10 pgs) | Declaration That No Party Requested a Hearing on Motion (LBR 9013-1(o)(3)) *Declaration that No Party Requested a Hearing on Trustees Notice Of Intent To Abandon Estates Interest In Probate Claims (with Proof of Service)* Filed by Trustee Jeffrey I Golden (TR). (Golden (TR), Jeffrey) (Entered: 06/01/2022) |

EXHIBIT 1, PAGE 30
EXHIBIT 41, PAGE 1493

002314

7/7/22, 11:07 AM                                CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

| 06/01/2022 | 108<br>(2 pgs) | Order Granting Chapter 7 Trustee's Application to Employ Danning, Gill, Israel & Krasnoff, LLP as his General Bankruptcy Counsel [Doc. No. 92] (BNC-PDF) (Related Doc # 92) Signed on 6/1/2022. (TD8) (Entered: 06/01/2022) |
| --- | --- | --- |
| 06/01/2022 | 109<br>(2 pgs) | Order Authorizing Trustee's Abandonment of Estate's Interest in Probate Claims (BNC-PDF) (Related Doc # 89 ) Signed on 6/1/2022 (TD8) (Entered: 06/01/2022) |
| 06/01/2022 | 111<br>(29 pgs) | Opposition to Chapter 7 Trustee's (related document(s): 92 Application to Employ Danning, Gill, Israel & Krasnoff, LLP as General Bankruptcy Counsel *Chapter 7 Trustees Notice Of Application And Application To Employ Danning, Gill, Israel & Krasnoff, LLP As General Bankruptcy Counsel Effective As Of January 2 filed by Trustee Jeffrey I Golden (TR)); Filed by Debtor Jamie Lynn Gallian [Request for Hearing] [EDB] (Filed at 9:33 pm) (TD8). (Entered: 06/02/2022)* |
| 06/02/2022 | 110<br>(8 pgs) | Opposition to (related document(s): 101 Notice of Motion and Motion in Individual Case for Order Confirming Termination of Stay under 11 U.S.C. 362(j) or That No Stay is in Effect under 11 U.S.C. 362(c)(4)(A)(ii). Fee Amount $188, filed by Creditor Janine Jasso -*Trustee's Notice of Opposition and Opposition to Motion Confirming that No Stay is in Effect for Criminal Restitution Case, or, if an Automatic Stay Exists, then for Relief from Stay filed by Creditor Janine Jasso; Memorandum of Points and Authorities in Support Thereof; proof of service* Filed by Trustee Jeffrey I Golden (TR) (DE Leest, Aaron) (Entered: 06/02/2022) |
| 06/02/2022 | 112<br>(39 pgs) | Debtor's Notice of Opposition and Opposition to Motion Confirming that No Stay is in Effect for Criminal Restitution Case, or, if an Automatic Stay Exists, Then for Relief from Stay filed by Interested Party Janine Jasso (related document(s): 101 Notice of Motion and Motion in Individual Case for Order Confirming Termination of Stay under 11 U.S.C. 362(j) or That No Stay is in Effect under 11 U.S.C. 362(c)(4)(A)(ii). Fee Amount $188, filed by Creditor Janine Jasso) Filed by Debtor Jamie Lynn Gallian 'EDB' (JL) (Entered: 06/03/2022) |
| 06/02/2022 | 113 | Hearing Rescheduled/Continued (related document # 95 Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates Motion Objecting to Debtor's Claimed Homestead Exemption). The Hearing is CONTINUED TO 7/21/2022 at 10:30 AM at Crtrm 5A, 411 W Fourth St., Santa Ana, CA 92701 to allow Movant/Joining Parties to file a reply to Debtor's late opposition filed on June 1, 2022, which reply(ies) must be filed by July 7, 2022. No other pleadings may be filed. The case judge is Erithe A. Smith (TD8) (Entered: 06/03/2022) |
| 06/03/2022 | 114<br>(4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)108 Order on Application to Employ (BNC-PDF)) No. of Notices: 0. Notice Date 06/03/2022. (Admin.) (Entered: 06/03/2022) |
| 06/03/2022 | 116<br>(322 pgs) | Amended Motion Confirming That No Stay is in effect for Criminal Restitution Case, or, If an Automatic Stay Exists, then for Relief from Stay (Updated Proof of Service) 'EDB' (related document(s): 101 Notice of Motion and Motion in Individual Case for Order Confirming Termination of Stay under 11 U.S.C. 362(j) or That No Stay is in Effect under 11 U.S.C. 362(c)(4)(A)(ii). Fee Amount $188, filed by Creditor Janine Jasso) Filed by Creditor Janine Jasso (JL) (Entered: 06/06/2022) |
| 06/03/2022 | 117 | Amended Supplemental Notice of Hearing To Be Held Remotely Using |

EXHIBIT 1, PAGE 31
EXHIBIT 41, PAGE 1494

002315

7/7/22, 11:07 AM                                    CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

| Date | Doc | Description |
|---|---|---|
| | (8 pgs) | Zoomgov Audio and Video Filed by Creditor Janine Jasso (Updated Proof of Service) 'EDB' (RE: related document(s)104) (Filed by Creditor Janine Jasso . (JL) (Entered: 06/06/2022) |
| 06/04/2022 | 115 (4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)109 Order on Motion to Abandon (BNC-PDF)) No. of Notices: 0. Notice Date 06/04/2022. (Admin.) (Entered: 06/04/2022) |
| 06/09/2022 | 118 (23 pgs) | Reply to Trustee's and Debtor's Opposition to Motion Confirming that No Stay is in Effect for Criminal Restitution Case, or, if an Automatic Stay Exists, Then for Relief From Stay (related document(s): 110 Opposition filed by Trustee Jeffrey I Golden (TR), 112 Opposition filed by Debtor Jamie Lynn Gallian) Filed by Creditor Janine Jasso 'EDB' (JL) NOTE: Filed with incorrect caption and lists adversary number; this document belongs in the main bankruptcy case 8:21-bk-11710-ES. Modified on 6/10/2022 (TD8). (Entered: 06/09/2022) |
| 06/09/2022 | 119 (9 pgs) | Notice of lodgment Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)95 Objection to Homestead Exemption *Notice of Motion and Motion Objecting to Debtor's Claimed Homestead Exemption; Memorandum of Points and Authorities; Declaration of D. Edward Hays in Support; with Proof of Service [Hrg. 6/2/22 at 10:30 a.m.]* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates.). (Hays, D) (Entered: 06/09/2022) |
| 06/10/2022 | 120 (8 pgs) | Amended Notice of lodgment, Filed by Debtor Jamie Lynn Gallian [EDB] (RE: related document(s)95 Objection to Homestead Exemption). (TD8) (Entered: 06/10/2022) |
| 06/10/2022 | 121 (8 pgs) | Notice of Lodgment Filed by Debtor Jamie Lynn Gallian 'EDB' (RE: related document(s)95 Objection to Homestead Exemption). (JL) (Entered: 06/13/2022) |
| 06/16/2022 | 123 | Hearing Held (RE: related document(s)101 Motion for Relief - Order Confirming Termination of Stay or That no Stay is in Effect filed by Creditor Janine Jasso) Motion Denied Without Prejudice. (JL) (Entered: 06/22/2022) |
| 06/17/2022 | 122 (8 pgs) | Notice of lodgment, Filed by Creditor Janine Jasso [EDB] (RE: related document(s)101 Notice of Motion and Motion in Individual Case for Order Confirming Termination of Stay under 11 U.S.C. 362(j) or That No Stay is in Effect under 11 U.S.C. 362(c)(4)(A)(ii). Fee Amount $188,). (TD8). (Entered: 06/21/2022) |
| 06/23/2022 | 124 (5 pgs) | Order Continuing Hearing on Motion Objecting to Debtor's Claimed Homestead Exemption. IT IS ORDERED that: The Hearing on the Motion is CONTINUED TO July 21, 2022, at 10:30 a.m. to Allow Houser Bros and/or the Joining Parties to File a Reply/Replies to Debtor's Late Opposition filed on June 1, 2022 (See Order for Further Ruling) (BNC-PDF) (Related Doc # 95 ) Signed on 6/23/2022 (TD8) (Entered: 06/23/2022) |
| 06/25/2022 | 125 (7 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)124 Order on Generic Motion (BNC-PDF)) No. of Notices: 0. Notice Date 06/25/2022. (Admin.) (Entered: 06/25/2022) |

EXHIBIT 1, PAGE 32
EXHIBIT 41, PAGE 1495

002316

Case 8:21-bk-11710-ES    Doc 130    Filed 07/07/22    Entered 07/07/22 19:06:09    Desc
Main Document      Page 37 of 96

7/7/22, 11:07 AM                                                  CM/ECF - U.S. Bankruptcy Court (NG 1.6.3 - LIVE)

| 06/27/2022 | 126 (2 pgs) | Order Denying Motion for Relief from the Automatic Stay Under 11 U.S.C. Section 362 (BNC-PDF) Signed on 6/27/2022 (RE: related document(s)101 Motion for Relief - Order Confirming Termination of Stay or That no Stay is in Effect filed by Creditor Janine Jasso). (TD8) (Entered: 06/27/2022) |
| 06/29/2022 | 127 (4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)126 Order (Generic) (BNC-PDF)) No. of Notices: 0. Notice Date 06/29/2022. (Admin.) (Entered: 06/29/2022) |
| 06/30/2022 | 128 (4 pgs) | Statement -*Trustee's Joinder in Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates' Motion Objecting to Debtor's Claimed Homestead Exemption; proof of service* 95 Filed by Trustee Jeffrey I Golden (TR). (DE Leest, Aaron) (Entered: 06/30/2022) |

### PACER Service Center

#### Transaction Receipt

| 07/07/2022 11:07:00 | | | |
|---|---|---|---|
| **PACER Login:** | atty272406 | **Client Code:** | 9999-001 |
| **Description:** | Docket Report | **Search Criteria:** | 8:21-bk-11710-ES Fil or Ent: filed From: 4/8/2000 To: 7/7/2022 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |

002317

EXHIBIT 1, PAGE 33
EXHIBIT 41, PAGE 1496

**EXHIBIT 2**

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 206 of 418   Page ID #:4117

Case 8:21-bk-11710-ES   Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document   Page 39 of 96
Case 8:21-bk-11710-ES   Doc 124   Filed 06/23/22   Entered 06/23/22 15:20:43   Desc
Main Document   Page 1 of 5

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  LAILA MASUD, #311731
   lmasud@marshackhays.com
3  BRADFORD N. BARNHARDT, #328705
   bbarnhardt@marshackhays.com
4  MARSHACK HAYS LLP
   870 Roosevelt
5  Irvine, CA 92620
   Telephone: (949) 333-7777
6  Facsimile: (949) 333-7778

7

8  Attorneys for Movant and Creditor,
   HOUSER BROS. CO. dba RANCHO DEL
9  REY MOBILE HOME ESTATES

```
┌─────────────────────────────────┐
│      FILED & ENTERED            │
│                                 │
│      JUN 23 2022                │
│                                 │
│  CLERK U.S. BANKRUPTCY COURT    │
│  Central District of California │
│  BY duarte      DEPUTY CLERK    │
└─────────────────────────────────┘
```

10                  UNITED STATES BANKRUPTCY COURT

11         CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

12  In re                              Case No. 8:21-bk-11710-ES

13  JAMIE LYNN GALLIAN,                Chapter 7

14             Debtor.                 ORDER CONTINUING HEARING ON
                                       MOTION OBJECTING TO DEBTOR'S
15                                     CLAIMED HOMESTEAD EXEMPTION

16                                     PREVIOUS HEARING DATE
                                       Date:   June 2, 2022
17                                     Time:   10:30 a.m.
                                       Ctrm:   5A
18                                     Location: 411 W. Fourth Street, Santa Ana, CA
                                       92701
19
                                       CONTINUED HEARING DATE
20                                     Date:   July 21, 2022
                                       Time:   10:30 a.m.
21                                     Ctrm:   5A[1]
                                       Location: 411 W. Fourth Street, Santa Ana, CA
22                                     92701

23

24

25

26  ─────────────────────
    [1] To continue to aid in the mitigation of the spread of the COVID-19 virus and in light of the response of the Bar to
27     continue virtual appearances, Judge Smith will continue to hold the majority of her hearings remotely using
       ZoomGov audio and video. However, beginning September 1, 2021, Judge Smith will allow the option for in-
28     person hearings and/or hybrid proceedings for trial and evidentiary hearings only.

                                       1

On June 2, 2022, at 10:30 a.m., the Court conducted a hearing on the Motion objecting to Debtor's claimed homestead exemption ("Motion"), filed by Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") on May 12, 2022, as Dk No. 95. All appearances were as noted on the record. Prior to the hearing, the Court published a tentative ruling regarding the Motion, which is attached as Exhibit "1" and incorporated as the final ruling of the Court.

The Court, having read and considered the Motion, declaration, supporting evidence, and memorandum of points and authorities, filed by Houser Bros.; the Debtor's late filed opposition to the Motion, Dk. No. 105; the joinders to the Motion filed by The Huntington Beach Gables Homeowners Associations ("HOA"), Dk. No. 98, and by Janine Jasso ("Ms. Jasso," and collectively with HOA the "Joining Parties"), Dk. No. 100; and all other pleadings and papers filed in this case, and having heard the statements of counsel, the Court orders as follows:

IT IS ORDERED that:

1. The hearing on the Motion is continued to July 21, 2022, at 10:30 a.m. to allow Houser Bros. and/or the Joining Parties to file a reply/replies to Debtor's late opposition filed on June 1, 2022.

2. Any replies by Houser Bros. or the Joining Parties must be filed by July 7, 2022.

3. No other pleadings may be filed regarding the Motion.

# # #

Date: June 23, 2022

Erithe A. Smith
United States Bankruptcy Judge

2

EXHIBIT 2, PAGE 35
EXHIBIT 41, PAGE 1499

Case 8:21-bk-11710-ES   Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document    Page 41 of 96

Case 8:21-bk-11710-ES   Doc 124   Filed 06/23/22   Entered 06/23/22 15:20:43   Desc
Main Document    Page 3 of 5

# EXHIBIT 1

002321

EXHIBIT 2, PAGE 36
EXHIBIT 41, PAGE 1500

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Erithe Smith, Presiding**
**Courtroom 5A Calendar**

**Thursday, June 2, 2022**                                    **Hearing Room    5A**

<u>10:30 AM</u>
**8:21-11710   Jamie Lynn Gallian**                                    **Chapter 7**

**#30.00**   Hearing RE: Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home
Estates Motion Objecting to Debtor's Claimed Homestead Exemption

Docket      95

**Courtroom Deputy:**
- NONE LISTED -

**Tentative Ruling:**

**June 2, 2022**

Continue hearing to July 21, 2022 at 10:30 a.m. to allow Movant/Joining
Parties to file a reply to Debtor's late opposition filed on June 1, 2022, which
reply(ies) must be filed by July 7, 2022.  No other pleadings may be filed.

<u>Basis for Tentative Ruling</u>:

1.  Because Debtor filed her opposition one day prior to the hearing, the court
has not had an opportunity to review it and the Movant was not afforded the
opportunity to file a reply to the opposition. Under the Local Bankruptcy
Rules, the court may exclude late-filed pleadings and not consider them at all.
On this one occassion, the court will make an exception and allow the
opposition.  <u>However</u>, in the future, the court will not consider any pleadings
filed by Debtor after the day they are due.

2.  Based solely on the timely filed Motion and joinders, the court would be
inclined to grant the Motion.

| Party Information |
|---|

**Debtor(s):**

Jamie Lynn Gallian                    Pro Se

**Trustee(s):**

Jeffrey I Golden (TR)                  Represented By

6/2/2022 11:20:58 AM                  Page 67 of 74

EXHIBIT 1, PAGE 3
EXHIBIT 2, PAGE 37
EXHIBIT 41, PAGE 1501

002322

Case 8:21-bk-11710-ES    Doc 124    Filed 06/23/22    Entered 06/23/22 15:20:43    Desc
Main Document      Page 5 of 5

## United States Bankruptcy Court
### Central District of California
**Santa Ana**
**Erithe Smith, Presiding**
**Courtroom 5A Calendar**

---

**Thursday, June 2, 2022**                                         **Hearing Room      5A**

---

<u>10:30 AM</u>
**CONT...**      **Jamie Lynn Gallian**                                          **Chapter 7**

                                    Aaron E DE Leest
                                    Eric P Israel

---

EXHIBIT 1, PAGE 4
EXHIBIT 2, PAGE 38
EXHIBIT 41, PAGE 1502

002323

# EXHIBIT 3

002324                    EXHIBIT 41, PAGE 1503

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 212 of 418   Page ID #:4123

Case 8:21-bk-11710-ES   Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document      Page 45 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document      Page 15 of 25

1   ELAINE B. ALSTON, Bar No. 134139,
    VIVIENNE J. ALSTON, Bar No. 170746
2   Members of
    **ALSTON, ALSTON & DIEBOLD**
3       Attorneys at Law
    27201 Puerta Real, Suite 300
4   Mission Viejo, California 92691
    (714) 556-9400 – FAX (714) 556-9500
5
    Attorney for Plaintiff
6

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**01/02/2019** at 08:00:00 AM
Clerk of the Superior Court
By Diana Cuevas, Deputy Clerk

7
8               SUPERIOR COURT, STATE OF CALIFORNIA
9                       COUNTY OF ORANGE,
10

11   HOUSER BROS. CO., a California limited         Case No.:  30-2019-01041423-CL-UD-CJC
     partnership dba RANCHO DEL REY MOBILE
12   HOME ESTATES
                                                   COMPLAINT FOR FORCIBLE ENTRY/
13               Plaintiff,                          DETAINER (MOBILEHOME PARK)

14       vs.                                        [CIVIL CODE §798.75 AND CODE OF
                                                    CIVIL PROCEDURE §§1159, et seq.]
15   JAMIE GALLIAN AND ALL OTHER
     OCCUPANTS AND PERSONS IN POSSESSION           **DOES NOT EXCEED $10,000.00**
16   WITHOUT A SIGNED LEASE AGREEMENT,
     and DOES 1 to 10, inclusive,
17
                 Defendant
18

19   COMES NOW, the Plaintiff herein, and alleges as follows:

20       1.      Plaintiff, HOUSER BROS. CO., a California limited partnership doing business in the

21   County of Orange State of California, under the fictitious name of RANCHO DEL REY MOBILE

22   HOME ESTATES.  Plaintiff has filed the statements and published the notices required by §§17900, et

23   seq., of the Business and Professions Code.

24       2.      Defendants, JAMIE GALLIAN AND ALL OTHER OCCUPANTS AND PERSONS

25   IN POSSESSION WITHOUT A SIGNED LEASE AGREEMENT, are individuals residing in the City

26   of Huntington Beach, County of Orange State of California

27       3.      The true names and capacities of Defendants sued herein as DOES 1 through 10,

28   inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who

                                              1
                  **COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 213 of 418   Page ID #:4124

Case 8:21-bk-11710-ES    Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document      Page 46 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document      Page 16 of 25

1  therefore sues said Defendants by said fictitious names.  Plaintiff will amend this Complaint to insert

2  said Defendants' true names and capacities when the same have been ascertained.

3       4.    The premises which are the subject of this action are located in the judicial district in

4  which this action is brought.  Said premises are situated at 16222 Monterey Lane. Space 376,

5  Huntington Beach, California 92647  (the "Premises").

6       5.    Plaintiff is the owner of said Premises and has a superior right to possession thereof.

7       6.    Defendants entered into possession of the subject Premises without the consent of

8  Plaintiff.  No rental agreement has been entered into between Plaintiff and Defendants. Defendant's

9  application was denied due to her poor financial condition.  Defendant also made a material falsehood

10 on her application, and her prior conduct indicates she will not comply with the Rules and Regulations

11 governing the mobilehome park.

12      7.    Due to the failure of Defendants to execute a rental agreement prior to taking possession

13 of the Premises, Defendants have no right of tenancy and are unlawful occupants within the meaning of

14 Civil Code §798.75.

15      8.    On or about December 11, 2018 Plaintiff caused to be served on Defendants a Five (5)

16 Day Notice to Quit Premises.  A copy of said Notice is attached hereto as Exhibit "1" and incorporated

17 herein by this reference.

18      9.    Defendants remain in possession of the subject Premises as of this date, and said

19 possession is without Plaintiff's consent.

20      10.   Defendants continue in willful, malicious, obstinate and/or intentional possession of said

21 Premises without Plaintiff's consent and refuse to surrender possession of same to Plaintiff.

22      11.   The reasonable rental value of the Premises is at least Thirty-Six Dollars and Twenty

23 Cents ($36.20) per day, and damages caused by Defendants' forcible detention will accrue at said rate so

24 long as Defendants' mobilehome remains in possession of said Premises.

25      12.   The reasonable value of utilities consumed is the amount evidenced by the meters

26 installed on the Premises, and damages caused by Defendants' forcible detention will accrue at said

27 rates so long as Defendants' mobilehome remains in possession of the said Premises.

28

2
**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

EXHIBIT 3, PAGE 40
EXHIBIT 41, PAGE 1505

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 214 of 418   Page ID #:4125

Case 8:21-bk-11710-ES    Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document      Page 47 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document      Page 17 of 25

1     13.     The reasonable value for trash removal and sewage charges are the amounts charged by

2   the suppliers for these services, and damages caused by Defendants' forcible detention will accrue at

3   said rate so long as Defendants, or any of them, remain in possession of said premises.

4     14.     California Civil Code §798.85 states as follows:

5         "In any action arising out of the provisions of this chapter the prevailing
          party shall be entitled to reasonable attorneys' fees and costs."
6

7     15.     Plaintiff has been compelled to commence this action for recovery of possession of said

8   Premises and for default in payment of rent and utilities, and Plaintiff has thereby incurred and been

9   required to expend money for attorneys' fees.

10     16.     Plaintiff has been compelled to commence this action for recovery of possession of said

11   Premises and for default in payment of rent, utilities and other charges, and to otherwise enforce

12   Plaintiff's rights under Exhibit "1," and Plaintiff has thereby incurred and been required to expend

13   money for attorneys' fees.

14

15     WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

16   (1)     For restitution of said Premises;

17   (2)     For damages at the rate of Thirty-Six Dollars and Twenty Cents ($36.20) per day as a

18   reasonable rental value of the Premises from and after the date Defendants went into

19   possession according to proof, and until judgment and for so long as Defendants, or any of

20   them, continue to occupy said Premises;

21   (3)     For actual consumption of utilities commencing from and after the date Defendants

22   went into possession according to proof, and until judgment and for so long as Defendants, or

23   any of them, continue in possession of said Premises;

24   (4)     For treble the amount above;

25   (5)     For attorneys' fees incurred herein;

26   (6)     For costs of suit incurred herein;

27   (7)     For interest at the legal rate on judgment; and

28

3

**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

EXHIBIT 3, PAGE 41
EXHIBIT 41, PAGE 1506

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 215 of 418   Page ID #:4126

Case 8:21-bk-11710-ES   Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document   Page 48 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document   Page 18 of 25



1     (8)    For such other and further relief as the Court may deem just and proper, except that

2  Plaintiff remits all damages in excess of the jurisdiction of this Court.

3

4  DATED: December __18__, 2018     By: _____

5                      Vivienne J. Alston
                    Attorney for Plaintiff

4

**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

EXHIBIT 3, PAGE 42
EXHIBIT 41, PAGE 1507

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 216 of 418   Page ID #:4127

Case 8:21-bk-11710-ES    Doc 130    Filed 07/07/22   Entered 07/07/22 19:06:09    Desc
                 Main Document      Page 49 of 96
          Case 8:21-ap-01097-ES    Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
                        Main Document      Page 19 of 25

**EXHIBIT 1**

EXHIBIT 3, PAGE 43
EXHIBIT 41, PAGE 1508

ELAINE B. ALSTON
VIVIENNE J. ALSTON
DONALD A. DIEBOLD

ALSTON, ALSTON & DIEBOLD

TELEPHONE (714) 556-9400
FACSIMILE (714) 556-9500

27201 PUERTA REAL
SUITE 300
MISSION VIEJO, CALIFORNIA 92691

OUR FILE NO: 1510.

December 10, 2018

**FIVE (5) DAY DEMAND
FOR SURRENDER OF POSSESSION OF SITE**

To:    **Jamie Gallian and All Unlawful Occupants and Persons in Possession Without a Signed Rental
Agreement ("Occupants"):**

NOTICE IS HEREBY GIVEN that management of the mobilehome park commonly known as:

Rancho Del Rey
16222 Monterey Lane
Huntington Beach, CA 92649
(referred to as "Park" herein)

HEREBY DEMANDS that the Occupants named above, and each of them, quit the premises in the Park and
surrender possession thereof commonly described as:

Space376
(referred to as "site" herein)

WITHIN FIVE (5) DAYS FROM AND AFTER SERVICE OF THIS NOTICE, and that said surrender of the
mobilehome site be made to the park manager(s), who is authorized to receive the same on behalf of the
management.

Civil Code Section 798.75 authorizes forcible detainer proceedings against any occupant of a mobilehome park
who does not have rights of tenancy and is not otherwise entitled to occupy the premises, upon failure of the
occupants to quit the premises within five (5) days after service of a demand for surrender of the site.

This notice is served with reference to the following facts, inter alia, upon which said demand is now hereby made:

That you have actual and physical possession of the site, without permission from park management, and without
right or authority under a rental agreement or otherwise. Based upon the foregoing facts, management is authorized
to pursue its legal remedies to obtain possession of the site from all such Occupants having no right of tenancy or
possession.

**002330**

EXHIBIT 3, PAGE 44
EXHIBIT 41, PAGE 1509

J Gallian
and All Unlawful Occupants
December 10, 2018
Page 2

**THIS NOTICE IS INTENDED AS A FIVE (5) DAY DEMAND TO SURRENDER POSSESSION AND
NOTICE TO QUIT AS PER <u>CIVIL CODE</u> SECTION 798.75.  SHOULD YOU FAIL TO QUIT AND
SURRENDER POSSESSION AS HEREBY DEMANDED, LEGAL PROCEEDINGS SHALL BE
INSTITUTED FOR RESTITUTION OF POSSESSION OF THE PREMISES, REASONABLE RENTAL
VALUE, DAMAGES INCIDENTAL TO OCCUPANTS WRONGFUL UNLAWFUL OCCUPATION OF
THE SITE, AND ATTORNEYS' FEES AND COSTS, AND STATUTORY DAMAGES.**

ALSTON, ALSTON & DIEBOLD

Dated:  December 10, 2018

By: _____
VIVIENNE J. ALSTON
Authorized Agent for Owner

cc:   Client
Park Manager

EXHIBIT 3, PAGE 45
EXHIBIT 41, PAGE 1510

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 219 of 418   Page ID #:4130

Case 8:21-bk-11710-ES    Doc 130    Filed 07/07/22    Entered 07/07/22 19:06:09    Desc
Main Document      Page 52 of 96
Case 8:21-ap-01097-ES    Doc 3    Filed 10/22/21    Entered 10/22/21 17:11:36    Desc
Main Document      Page 22 of 25

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address)<br>**Vivienne J. Alston SBN 170746**<br>**ALSTON, ALSTON & DIEBOLD**<br>**27201 Puerta Real ste 300**<br>**Mission Viejo, CA 92691**<br>ATTORNEY FOR  **Plaintiff** | TELEPHONE NUMBER<br>**(714) 556-9400** | FOR COURT USE ONLY |
|---|---|---|
| SHORT TITLE OF CASE:<br>Rancho Del Rey v. Gallian, Jamie | | |
| DATE:       TIME:       DEP./DIV. | | CASE NUMBER:<br>Not Applicable |
| **Declaration of Service of Notice to Tenant** | | Ref. No. or File No:<br>1510 |

I, the undersigned, declare that I served the tenant with the: **Five (5) Day Demand for Surrender of Possessin of site.;**

Constructive Service

After unsuccessfully attempting to personally serve said Notice(s) on each of the named parties on **12/11/2018** at **05:39 PM**, I completed service by serving said notice(s) as authorized by C.C.P. Section 1162 (2,3). In the manner set forth below.

To: **Jamie Gallian**

On: **12/11/2018**       At: **05:39 PM**

**By posting** a copy for each tenant in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at the property where situated, **and mailing** a copy to said tenant(s) by depositing said copies in the United States Mail in a sealed envelope with postage fully prepaid, addressed to the tenant  on **12/11/2018** from **Garden Grove** at the address where served: **16222 Monterey Lane 376  Huntington Beach, CA 92649**

Person Who served papers:
  a. Name: **Cesar Gonzalez**
  b. Address: **840 N. Birch St, Santa Ana, CA 92701**
  c. Telephone number: **714-953-9451**
  d. **The fee** for this service was: **129.50**
  e. I am:
  (3) [X] a registered California process server:
      (i) [X] Independent Contractor
      (ii) Registration No.: **2729**
      (iii) County: **Orange**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.



Cesar Gonzalez        Date: **12/12/2018**

Declaration of Service of Notice to Tenant        Invoice #: 2305520-01

EXHIBIT 3, PAGE 46
EXHIBIT 41, PAGE 1511

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address) | TELEPHONE NUMBER | FOR COURT USE ONLY |
|---|---|---|
| Vivienne J. Alston SBN 170746<br>ALSTON, ALSTON & DIEBOLD<br>27201 Puerta Real ste 300<br>Mission Viejo, CA 92691<br>ATTORNEY FOR  Plaintiff | (714) 556-9400 | |

| SHORT TITLE OF CASE:<br>Rancho Del Rey v. Gallian, Jamie | | |
|---|---|---|
| DATE:          TIME:          DEP./DIV. | | CASE NUMBER:<br>Not Applicable |
| **Declaration of Service of Notice to Tenant** | | Ref. No. or File No:<br>1510 |

I, the undersigned, declare that I served the tenant with the: **Five (5) Day Demand for Surrender of Possession of site.;**

Constructive Service

After unsuccessfully attempting to personally serve said Notice(s) on each of the named parties on **12/11/2018** at **05:39 PM**, I completed service by serving said notice(s) as authorized by C.C.P. Section 1162 (2,3). In the manner set forth below.

To: **All Other Occupants**

On: **12/11/2018**          At: **05:39 PM**

**By posting** a copy for each tenant in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at the property where situated, **and mailing** a copy to said tenant(s) by depositing said copies in the United States Mail in a sealed envelope with postage fully prepaid, addressed to the tenant on **12/11/2018** from **Garden Grove** at the address where served: **16222 Monterey Lane 376  Huntington Beach, CA 92649**

Person Who served papers:
  a. Name: **Cesar Gonzalez**
  b. Address: **840 N. Birch St, Santa Ana, CA 92701**
  c. Telephone number: **714-953-9451**
  d. The fee for this service was: **39.50**
  e. I am:
  (3) [X] a registered California process server:
    (i) [X] Independent Contractor
    (ii) Registration No.: 2729
    (iii) County: Orange

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.



**Cesar Gonzalez**          Date: **12/12/2018**

Declaration of Service of Notice to Tenant                    Invoice #: 2305520-02

002333

EXHIBIT 3, PAGE 47
EXHIBIT 41, PAGE 1512

**VERIFICATION**

STATE OF CALIFORNIA, COUNTY OF ORANGE
I have read the foregoing COMPLAINT
_____ and know its contents.

☐ **CHECK APPLICABLE PARAGRAPHS**
☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to
those matters which are stated on information and belief, and as to those matters I believe them to be true.
☒ I am ☐ an Officer ☒ a partner _____ ☐ a _____ of HOUSER BROS CO.
a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that
reason. ☐ I am informed and believe and on that ground allege that the matters stated in the foregoing document are
true. ☒ The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are
stated on information and belief, and as to those matters I believe them to be true.
☐ I am one of the attorneys for _____
a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make
this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that
the matters stated in the foregoing document are true.
Executed on December 19, 2018, at HUNTINGTON BEACH, California.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_Christopher C. Houser_                                    _[Signature]_
Type or Print Name                                            Signature

**PROOF OF SERVICE**
1013a (3) CCP Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF _____
I am employed in the county of _____, State of California.
I am over the age of 18 and not a party to the within action; my business address is: _____
_____
On. _____ I served the foregoing document described as _____
_____
_____ on _____ in this action
☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:
☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:


☐ **BY MAIL**
☐ *I deposited such envelope in the mail at _____, California.
The envelope was mailed with postage thereon fully prepaid.
☐ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.
Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at
_____ California in the ordinary course of business. I am aware that on motion of the
party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of
deposit for mailing in affidavit.
Executed on _____, at _____, California.
☐ **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.
Executed on _____, at _____, California.
☐ (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
☐ (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was
made.

_____                                    _____
Type or Print Name                                            Signature
                                                    *BY MAIL SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN
                                                    MAIL SLOT, BOX, OR BAG)
                                                    **(FOR PERSONAL SERVICE SIGNATURE MUST BE THAT OF MESSENGER)
                                                    Legal
                                                    Solutions        Rev. 7/99
                                                    ℞ Plus

002334

EXHIBIT 3, PAGE 48
EXHIBIT 41, PAGE 1513

**EXHIBIT 4**

002335                    EXHIBIT 41, PAGE 1514

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 223 of 418   Page ID #:4134

Case 8:21-bk-11710-ES    Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document    Page 56 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document    Page 1 of 25

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  LAILA MASUD, #311731
   lmasud@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, CA 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Plaintiff,
   HOUSER BROS. CO. dba RANCHO DEL REY
7  MOBILE HOME ESTATES

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11 | In re                                  | Case No. 8:21-bk-11710-ES

12 | JAMIE LYNN GALLIAN,                     | Chapter 7

13 |              Debtor.                    | Adv. No. 8:21-ap-01097-ES

14 | ─────────────────────────              | FIRST AMENDED COMPLAINT TO

15 | HOUSER BROS. CO. dba RANCHO DEL         |   (1) DETERMINE
   | REY MOBILE HOME ESTATES,               |       DISCHARGEABILITY OF DEBT

16 |                                         |       PURSUANT TO 11 U.S.C. §§ 523
   |              Plaintiff,                 |       (a)(2)(A) and (a)(6);

17 | v.                                      |   (2) DENY DISCHARGE PURSUANT
   |                                         |       TO 11 U.S.C. §§ 727(a)(2)(A),

18 | JAMIE LYNN GALLIAN,                     |       (a)(4), and (a)(5)

19 |              Defendant.                 | Status Conference

20 | ─────────────────────────              | Hearing: January 6, 2022
   |                                         | Time: 9:30 a.m.

21 |                                         | Ctrm: 5A
   |                                         | Location: 411 W. Fourth St., Santa Ana, CA

22 |                                         | 92701

23 TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE,

24 DEFENDANT AND HER ATTORNEY OF RECORD, AND TO ALL INTERESTED PARTIES:

25      Plaintiff, HOUSER BROS. CO., a California limited partnership dba RANCHO DEL REY

26 MOBILE HOME ESTATES ("Houser Bros." or "Plaintiff"), files this First Amended Complaint

27 against Debtor, Jaime Lynn Gallian ("Defendant" or "Debtor"), and alleges as follows:

28

                                  1
                        FIRST AMENDED COMPLAINT
4842-2871-2959,v.1

EXHIBIT 4, PAGE 49
EXHIBIT 41, PAGE 1515

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 224 of 418   Page ID #:4135

Case 8:21-bk-11710-ES   Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document    Page 57 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document    Page 2 of 25

## Statement of Jurisdiction and Venue

1.      The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *Jaime Lynn Gallian*, Case Number 8:21-bk-11710-ES on the docket of the Court.

2.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (dischargeability of particular debts) and 28 U.S.C. § 157(b)(2)(J) (objections to discharge). To the extent any claim for relief contained in this proceeding is determined to be non-core or involve a *Stern* claim, Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Court.

3.      Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United State Code as provided in 28 U.S.C. § 1409.

## Parties

4.      Plaintiff is a California limited partnership doing business in the County of Orange, State of California, under the fictitious name of Rancho Del Rey Mobile Home Estates.

5.      Plaintiff is informed and believes, and thereon alleges that Defendant is an individual residing in Huntington Beach, California.

## General Allegations

### The Parties and Their Background

6.      Houser Bros. Co. owns several acres of real property in Huntington Beach California. The real property has been improved with both (a) a senior mobilehome park known as Rancho Del Re Mobile Home Estates (hereinafter referred to as "The Park" or "Plaintiff") and (b) an 80-unit condominium complex known as The Huntington Beach Gables ("The Gables").[1]

---

[1] Defendant was involved in hotly-contested litigation with the Gables concerning property located at 4476 Alderport Drive, Unit 53, Huntington Beach, California 92649 ("4476 Alderport"). The litigation spawned a judgment of over $316,583.59 ("Gables Judgment") in favor of the Gables which was formally entered on May 6, 2019. To that end, the Gables has separately filed an adversary action against Defendant seeking to except the Gables Judgment from discharge as well as to deny Debtor a discharge. *See*, Dk. No. 57 in Case No., 8:21-bk-11710-ES ("Gables Adversary Complaint"). By this reference, Plaintiff incorporates all allegations in the Gables Adversary Complaint as if specifically set forth herein.

2

FIRST AMENDED COMPLAINT

4842-2871-2959,v.1

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 225 of 418   Page ID #:4136

Case 8:21-bk-11710-ES     Doc 130     Filed 07/07/22     Entered 07/07/22 19:06:09     Desc
Main Document     Page 58 of 96
Case 8:21-ap-01097-ES     Doc 3     Filed 10/22/21     Entered 10/22/21 17:11:36     Desc
Main Document     Page 3 of 25

1   The Park is operated by Plaintiff and the condominium community sub-leases the real property and

2   is operated by an independent Homeowners Association ("Association"). Both The Park and the

3   Gables are enclosed in a six-foot perimeter wall and traffic to both communities is controlled by the

4   same gate with a manned gatehouse. Once a person is past the gatehouse, they have complete and

5   unfettered access to both communities.

6       7.      In February 2018, Defendant came to The Park's leasing office to inquire whether

7   there were any mobilehomes for sale. At this meeting, Defendant neither requested an application

8   packet nor any information as to The Park's requirements for tenancy and its application

9   procedures.

10      8.      Separately, on August 21, 2018, Plaintiff filed a complaint ("Ryan Complaint")

11  against an individual by the name of Lisa Ryan in Orange County Superior Court for failure to pay

12  rent stemming from Ms. Ryan's tenancy at the Park – namely 16222 Monterey Lane, Space 376,

13  Huntington Beach, CA 92649 ("Space 376" or "Premises").[2] Subsequently, Ms. Ryan and The Park

14  entered into a stipulated judgment ("Stipulated Judgment") resolving the Ryan Complaint and

15  providing for turnover of Space 376. Specifically:

16      (a)     No later than November 3, 2018, Ms. Ryan was to vacate Space 376;

17      (b)     The Park was entitled to a Writ of Possession provided no lock-out could occur prior

18              to November 4, 2018;

19      (c)     Ms. Ryan had 120 days to market and sell her mobilehome located at Space 376 or

20              the mobilehome would be subject to a warehouse lien auction;

21      (d)     The Park was to review any prospective buyers in accordance with Mobilehome

22              Residency Law ("MRL");

23      (e)     The sale of the mobilehome was to proceed via escrow; and

24      (f)     Ms. Ryan was to pay a money judgment of not less than $8,437.07 plus judicial

25              interest.

26

27

28  [2] See, Case No. 30-2018-01013582-CL-UD-CJC ("Ryan State Court Action"). On March 6, 2019, in
    the Ryan State Court Action the Court granted Plaintiff's motion for reconsideration to intervene and
    TRO to stay writ of possession.

                                    3
                        FIRST AMENDED COMPLAINT
4842-2871-2959,v.1

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 226 of 418   Page ID #:4137

Case 8:21-bk-11710-ES    Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document    Page 59 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document    Page 4 of 25

9.      On November 19, 2018, Defendant emailed an outdated application ("Application") to the management office for The Park. At this time, the minimum requirements for tenancy at The Park were as follows:

(a)      At least 55 years of age;

(b)      Credit worthiness including a credit score of not less than 650;

(c)      Three times the subject rent in monthly income; and

(d)      Investigation of prior tenancies (lack of prior holdovers, unlawful detainers etc.).

10.      The Park reviewed the Application and found Defendant (a) did not meet the minimum financial requirements for tenancy; (b) had a credit score of 523; and (c) had numerous collections and charge offs as bad debts.

11.      Accordingly, on November 20, 2018, the Park (a) mailed a letter informing Defendant of the denial of her Application ("Denial Letter"); and (b) verbally informed Defendant's real estate agent of the Denial Letter. On the same day, Defendant called the The Park office to discuss the Denial Letter.

12.      On November 21, 2018, Defendant physically came to The Park office and tendered a cashier's check in the amount of $8,743.07 ("Cashier's Check"). The Cashier's Check (a) was in the name of J-Sandcastle Co, LLC; (b) made payable to RDR Mobile Home Estates; (c) contained no indication of the intended purpose. Subsequently, a game of "hot potato" with the Cashier's Check occurred between The Park and Defendant, where The Park finally returned to Defendant the Cashier's Check by certified mail.

13.      In December 2018, The Park found a second cashier's check from Defendant ("2nd Cashier's Check"). Again, the 2nd Cashier's Check was also returned by The Park to Defendant by certified mail.

14.      Subsequently, The Park learned Defendant lied on the Application. Specifically, when Defendant was asked "[h]ave you been asked to terminate your residency elsewhere or have you ever been evicted?" she answered in the negative. Yet, in October 2018 - *one month prior to*

4

**FIRST AMENDED COMPLAINT**

4842-2871-2959,v.1

EXHIBIT 4, PAGE 52
EXHIBIT 41, PAGE 1518

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 227 of 418   Page ID #:4138

Case 8:21-bk-11710-ES    Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document        Page 60 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document        Page 5 of 25

1  *turning in the Application* - Defendant was sued by The BS Investors LP for unlawful detainer.[3]

2      15.    From what The Park could ascertain, on or around November 1, 2018, Ms. Ryan

3  allegedly transferred her interest in her mobilehome located at the Premises to an LLC owned by

4  Defendant called J-Sandcastle Co., LLC ("JSC"). But the transfer was not done pursuant to any

5  written purchase agreement.

6      16.    Rather, Defendant asserts there (a) exists a security agreement between JSC and

7  Defendant where Defendant allegedly lent JSC $225,000 in exchange for a security interest in the

8  Premises; (b) accompanying the agreement is a secured promissory note ("Note") for $225,000,[4]

9  dated November 16, 2018, between JSC and J-Pad LLC ("JP") – which LLC Debtor also holds

10  some vague ownership interest in.

11      17.    Importantly, Defendant was never approved by the Park to be a tenant for Space

12  376.[5]

13      18.    In December 2018, The Park caused to be served on Defendant a Five-Day Notice of

14  Quit Premises.

15      19.    On January 2, 2019, The Park filed a complaint ("Complaint") against Defendant for

16  forcible entry/detainer (mobilehome park).[6]

17      20.    On January 14, 2019, the Defendant filed a UCC Financing Statement against J-

18  Sandcastle Co LLC, Document No. 76027030002.

19      21.    On January 14, 2019, the Defendant filed a UCC Financing Statement against J-

20  Sandcastle Co LLC, Document No. 76027940002.

21  / / /

22

23

24  [3] *See*, Case No. 30-2018-01024401.
    [4] Shortly after execution of the Note, on January 14, 2019, JP filed a UCC Financing Statement in
    favor of itself with the Debtor listed as the JSC and Defendant with the collateral being the Premises.
25  In sum, in January 2019, the JSC was the registered owner and JP was the legal owner-holder of the
    Note.
26  [5] 5 Reasonable daily rental value of the Premises is at least $36.20 or $1,086 monthly. This is the
    amount Ms. Ryan was charged in 2018. Since then the amount has increased with move in rates for
27  The Park as follows: (a) 2019 $1372; (b) 2020 $1420; and (c) 2021 $1460.
    [6] *See*, Case No. 30-2019-01041423-CL-UD-CJC ("State Court Action"). A true and correct copy of
28  the State Court Action is attached as **Exhibit 1**. Plaintiff incorporates by reference the allegations in
    the State Court Action into this Complaint.

5

FIRST AMENDED COMPLAINT

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 228 of 418   Page ID #:4139

Case 8:21-bk-11710-ES   Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document      Page 61 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document      Page 6 of 25

22.     On January 14, 2019, the Defendant filed a UCC Financing Statement against J-Sandcastle Co LLC, Document No. 76027940003.

23.     On January 14, 2019, the Defendant filed a UCC Financing Statement against Craig Houser and Kathryn Curtiss, Document No. 7602794004.

24.     On February 22, 2019, Defendant filed her answer-to the Complaint.

25.     In August 2020, title to the mobilehome located on the Premises was transferred to Ron Pierpont. Subsequently, title to the Premises was also transferred to Defendant's children.

26.     Subsequently, the title certificate for the mobilehome on the Premises was further changed to show Defendant as the registered owner.

**The Bankruptcy Filing**

27.     On July 9, 2021, Defendant filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code ("Petition Date") commencing Case No. 8:21-bk-11710-ES.

28.     On September 7, 2021, as Dk. No. 15, Defendant filed amended schedules: Amended Schedule A/B Individual: Property, Amended Schedule C: The Property You Claimed as Exempt, Schedule G Individual: Executory Contracts and Unexpired Leases, Schedule H Individual: Your Codebtors, Amended Schedule I Individual: Your Income, Statement of Financial Affairs for Individual Filing for Bankruptcy, Statement of Intention for Individuals Filing Under Chapter 7, Chapter 7 Statement of Your Current Monthly Income.

29.     On September 22, 2021, as Dk. No. 16, Defendant filed First Amended Schedule C: The Property You Claimed as Exempt, Amended Schedule I Individual: Your Income, Amended Schedule G Individual: Executory Contracts and Unexpired Leases, Amended Statement of Financial Affairs for Individual Filing for Bankruptcy, Amended Statement of Intention for Individuals Filing Under Chapter 7, Amended Statement of Related Cases, and Amended Chapter 7 Statement of Your Current Monthly Income.

30.     On the same day, as Dk. No. 17, Defendant filed Amended Schedules (D) and (E/F), Amended List of Creditors (Master Mailing List of Creditors), and Amended Verification of Master Mailing List of Creditors.

FIRST AMENDED COMPLAINT

4842-2871-2959,v.1

002341

EXHIBIT 4, PAGE 54
EXHIBIT 41, PAGE 1520

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 229 of 418   Page ID #:4140

Case 8:21-bk-11710-ES    Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document      Page 62 of 96
Case 8:21-ap-01097-ES    Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document      Page 7 of 25

31.     On October 14, 2021, as Dk. No. 22, Defendant filed Amended Schedule A/B Individual: Property, Amended Schedule C: The Property You Claimed as Exempt, Amended Schedules (D) (E/F), Schedule G Individual: Executory Contracts and Unexpired Leases, Schedule H Individual: Your Codebtors, and Statement of Intention for Individuals Filing Under Chapter 7.

**First Claim for Relief**

(11 U.S.C. § 523(a)(2)(A))

32.     Plaintiff incorporates by reference, paragraphs 1 through 27 and realleges these paragraphs as though set forth in full.

33.     Defendant trespassed and took possession of the subject Premises without the consent of Plaintiff. No rental agreement has been entered into between Plaintiff and Defendant. Defendant's Application was denied due to her poor financial condition. Defendant also made a material falsehood on her Application.

34.     Due to the failure of Defendant to execute a rental agreement prior to taking possession of the Premises, Defendant has no right of tenancy and is an unlawful occupant within the meaning of 11 Civil Code §798.75.

35.     Defendant remains in possession of the subject Premises as of this date, and said possession is without Plaintiff's consent.

36.     Defendant continues in willful, malicious, obstinate and/or intentional possession of said Premises without Plaintiff's consent and refuse to surrender possession of same to Plaintiff.

37.     The reasonable rental value of the Premises is at least Thirty-Six Dollars and Twenty Cents ($36.20) per day or $1,086 monthly[7], and damages caused by Defendants' forcible detention will accrue at said rates long as Defendants' mobilehome remains in possession of said Premises.

38.     The reasonable value of utilities consumed is the amount evidenced by the meter installed on the Premises, and damages caused by Defendant's forcible detention will accrue at said rates so long as Defendant's mobilehome remains in possession of said Premises.

/ / /

_____

[7] *Supra*, Fn. 5

7

FIRST AMENDED COMPLAINT

4842-2871-2959,v.1

EXHIBIT 4, PAGE 55
EXHIBIT 41, PAGE 1521

39.     The reasonable value for trash removal and sewage charges are the amounts charged by the suppliers for these services, and damages caused by Defendant's forcible detention will accrue a said rate so long as Defendants, or any of them, remain in possession of said premises.

40.     As a direct and proximate result of Defendant's false pretenses, false representations, or actual fraud, Plaintiff has suffered damages in an amount that exceeds $50,000.

41.     In short, Defendant trespassed, refuses to leave and this has caused Damage to Plaintiff.

42.     Defendant further fraudulently represents that she has a right to be at the Premises that is false and fraudulent resulting in her willfully and maliciously causing damage to Plaintiff.

43.     By reason of the foregoing, all amounts due to Plaintiff under the Judgment must be excepted from any discharge received by the Debtor pursuant to 11 U.S.C. § 523(a)(2)(A).

**Second Claim for Relief**

(11 U.S.C. §523(a)(6))

44.     Plaintiff incorporates by reference paragraphs 1 through 39 and realleges these paragraphs as though set forth in full.

45.     Defendant knowingly, willfully, and/or intentionally converted Plaintiff's property, namely the Premises, for her own use while depriving Plaintiff of its right to the Premises.

46.     Defendant's actions were malicious.

47.     Defendant knew that the Premises were not her property and that she had no permission or right to be there.

48.     Defendant failed to return the Premises to Plaintiff despite demand. Defendant's conversion was willful and malicious and not innocent or technical.

49.     As a result of Debtor's willful and malicious actions, Plaintiff incurred damages in the amount of at least $50,000, exclusive of interest, costs, and attorney's fees.

50.     By reason of the foregoing, all amounts due to Plaintiff under the Judgment must be excepted from any discharge to be received by Debtor pursuant to 11 U.S.C. § 523(a)(6).

/ / /

8

FIRST AMENDED COMPLAINT

4842-2871-2959,v.1

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 231 of 418   Page ID #:4142

Case 8:21-bk-11710-ES   Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document   Page 64 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document   Page 9 of 25

**Third Claim for Relief**

**Debtor Took Actions to Hinder, Delay, and Defraud Creditors**

**[11 U.S.C. § 727(a)(2)(A)]**

51.     Plaintiff incorporates by reference all allegations of Paragraphs 1 through 46, inclusive, of this complaint as though fully set forth herein.

52.     Pursuant to 11 U.S.C. § 727(a)(2)(A), a debtor shall not receive a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—property of the debtor, within one year before the date of the filing of the petition." *See, e.g., In re Lawson*, 122 F.3d 1237, 1240 (9th Cir. 1997).

53.     Within one year of the Petition Date, Debtor transferred or disposed of the Premises ("Transfer").

54.     When making the Transfer, Debtor subjectively intended to hinder, delay, or defraud creditors through the act of the Transfer.

55.     Specifically, Debtor engaged in the Transfer at a time when creditors were attempting collection and unlawful detainer efforts, such that collection efforts by Debtor's creditors were hindered, delayed, or frustrated.

56.     Additionally, certain badges of fraud accompanied the Transfer, including that (a) there was a close relationship between JPS, JP and Debtor, as Debtor hold some ownership interest in both LLCs; (b) the Transfer, and subsequent transfers, were made in response to a pending lawsuit filed by Defendant and other creditors; (c) prior to the Transfer or as a result of the Transfer, Debtor was or was rendered insolvent; (d) substantially all of Debtor's property was transferred as a result of the transfers of the Premises; (e) Plaintiff is informed and believes that Debtor received no consideration for the Transfer, or any subsequent transfers. *See Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010).

57.     Additionally, Debtor concealed her interest in the Premises by paying for the purchase of the Premises but placing title in the name of one or more LLCs and/or other individuals.

9

FIRST AMENDED COMPLAINT

EXHIBIT 4, PAGE 57
EXHIBIT 41, PAGE 1523

58.     Defendant's concealed interest in the Property continued into the one year period prior to bankruptcy.

59.     Accordingly, Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2).

## Fourth Claim for Relief

## False Oaths

## [11 U.S.C. § 727(a)(4)]

60.     Plaintiff incorporates by reference all allegations of Paragraph 1 through 55, inclusive, of this complaint as though fully set forth herein.

61.     Pursuant to 11 U.S.C. § 727(a)(4)(A), a debtor shall not receive a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." *See Retz*, 606 F.3d at 1196-99 (9th Cir. 2010).

62.     Debtor signed her Chapter 7 Petition, Bankruptcy Schedules, Statements of Financial Affairs and other documents filed with the Court under penalty of perjury, acknowledging that the information provided therein was true and correct, even though she knew some of the information provided was not true or correct.

63.     At her initial 341(a) meeting of creditors, under penalty of perjury, Debtor answered in the affirmative that she signed, read and was personally familiar with the petition, schedules, statement of financial affairs and related documents, and that there were no errors or omissions. Debtor nevertheless made several material omissions and false oaths.

64.     First, on Debtor's Schedule A/B, she stated that originally that she held a 1/3 interest in JP. Subsequently, Debtor stated that she held a 1/7 interest in JP. Now, Debtor claims a 70% ownership interest without accounting for the change in interest/value.

65.     Second, Debtor transferred title to the Premises in and out of her name including transferring it to an JSC to conceal her alleged interest at a time when she was facing an adverse judgment in favor of the Gables. This omission is a false oath and is material because it is relevant to Debtor's financial affairs and business dealings, which Trustee must assess in order to properly administer the estate.

10

FIRST AMENDED COMPLAINT

4842-2871-2959,v.1

66. Third, on Debtor's statement of financial affairs, she stated that she had not sold, traded, or otherwise transferred any property to anyone outside the ordinary course of business within the past two years prior to bankruptcy. This is contrary to the fact Debtor engaged in a series of transfers, through the Petition Date, involving the Premises. All transfers were outside the ordinary course of business. As stated above, this omission and false oath is material because it conceals a fraudulent transfer of estate property worth approximately $300,000. Without knowledge of this transfer, Trustee would be unable to pursue a fraudulent transfer action to recover up to $300,000 for the benefit of the estate and its creditors.

67. Fourth, Defendant states in the schedules that she has an unexpired ground lease with Defendant when one does not exist.[8]

68. Fifth, at her 341(a) meeting of creditors, Defendant stated that JSC and Defendant are the same and not legally distinct entities. Yet, Debtor provided alleged loan documents between herself, JSC and JP as if all were distinct legal entities. Moreover, the date on the public notary page has been removed and there are no dates or signatures on these documents.[9]

69. Debtor made the foregoing omissions and false oaths knowingly by acting deliberately and consciously. Debtor deliberately and consciously signed the schedules and statement of financial affairs knowing that the information provided was not completely true and correct. Thereafter, at her 11 U.S.C. § 341(a) meeting of creditors, Debtor testified under penalty of perjury that there were no inaccuracies in her schedules or statement of financial affairs. This supports a finding that Debtor acted knowingly in making the omissions and false oaths.

70. Accordingly, Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(4).

/ / /

---

[8] Allegedly involving Tract 10542, Unit 4, Lot 376 16222 Monterey Lane. There is no ground lease on the MHP. There is a ground lease between BS Investors and Defendant for the condominium complex known as the HB Gables Tract 10542.
[9] Interestingly, the notary page references "Anthony Calderon" which Plaintiff believes was Defendant's ex-husband's boss who transferred JP to Defendant in 2018. Further Plaintiff believes that the signature appears to be a "copy paste" from a Secretary of State Filing.

11

FIRST AMENDED COMPLAINT

4842-2871-2959,v.1

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 234 of 418   Page ID #:4145

Case 8:21-bk-11710-ES     Doc 130     Filed 07/07/22     Entered 07/07/22 19:06:09     Desc
Main Document      Page 67 of 96
Case 8:21-ap-01097-ES     Doc 3     Filed 10/22/21     Entered 10/22/21 17:11:36     Desc
Main Document      Page 12 of 25

**Fifth Claim for Relief**

**Objection to Debtor's Discharge**

**[11 U.S.C. § 727(a)(5)]**

71.     Plaintiff realleges and incorporates herein by this reference, the allegations contained in Paragraphs 1 through 66 inclusive, as though fully set forth herein.

72.     Defendant has failed to explain satisfactorily the purchase and series of transfers involving the Premises, including but not limited to the circumstances surrounding the alleged loan of $225,000 between JP, JSC, and Defendant for the purchase of the mobilehome located on the Premises.

73.     Defendant has failed to explain satisfactorily, namely produce any documentation, evidencing that there exists any lease agreement – ground or otherwise - between Defendant and Plaintiff.

74.     Defendant has been unable to explain how much she sold 4476 Alderport for and where the proceeds went, including any agreements between herself and the subsequent purchaser.

75.     As a result of her failure to explain satisfactorily material issues related to the Premises, any lease or purchase agreements, Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(5).

**ON THE FIRST CLAIM FOR RELIEF**

1.     For a determination that all amounts owed to Plaintiff under the Judgment be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A);

**ON THE SECOND CLAIM FOR RELIEF**

2.     For a determination that all amounts owed to Plaintiff under the Judgment be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6);

**ON THE THIRD CLAIM FOR RELIEF**

3.     For a determination that Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2);

12

FIRST AMENDED COMPLAINT

4842-2871-2959,v.1

EXHIBIT 4, PAGE 60
EXHIBIT 41, PAGE 1526

**ON THE FOURTH CLAIM FOR RELIEF**

4.     For a determination that Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4);

**ON THE FIFTH CLAIM FOR RELIEF**

5.     For a determination that Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(5);

**ON ALL CLAIMS FOR RELIEF**

6.     For costs of suit incurred, including attorneys' fees as provided by applicable case law, statute, and/or agreement of the parties; and

7.     For such other relief as the Court deems just and proper.

DATED: October 22, 2021                    MARSHACK HAYS LLP


By: */s/ Laila Masud*
    D. EDWARD HAYS
    LAILA MASUD
    Attorneys for Plaintiff,
    HOUSER BROS. CO. dba RANCHO DEL REY
    MOBILE HOME ESTATES

13

FIRST AMENDED COMPLAINT

4842-2871-2959,v.1

Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document      Page 14 of 25

**EXHIBIT 1**

002349

EXHIBIT 4, PAGE 62
EXHIBIT 41, PAGE 1528

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 237 of 418   Page ID #:4148

Case 8:21-bk-11710-ES    Doc 130   Filed 07/07/22   Entered 07/07/22 19:06:09   Desc
Main Document    Page 70 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document    Page 15 of 25

1  ELAINE B. ALSTON, Bar No. 134139,
   VIVIENNE J. ALSTON, Bar No. 170746
2  Members of
   **ALSTON, ALSTON & DIEBOLD**
3      Attorneys at Law
   27201 Puerta Real, Suite 300
4  Mission Viejo, California 92691
   (714) 556-9400 – FAX (714) 556-9500
5
   Attorney for Plaintiff
6

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/02/2019** at 08:00:00 AM
Clerk of the Superior Court
By Diana Cuevas, Deputy Clerk

7
8                  SUPERIOR COURT, STATE OF CALIFORNIA
9                        COUNTY OF ORANGE,
10

11  HOUSER BROS. CO., a California limited        Case No.:  30-2019-01041423-CL-UD-CJC
    partnership dba RANCHO DEL REY MOBILE
12  HOME ESTATES
                                                  **COMPLAINT FOR FORCIBLE ENTRY/**
13          Plaintiff,                            **DETAINER (MOBILEHOME PARK)**

14      vs.                                       [CIVIL CODE §798.75 AND CODE OF
                                                  CIVIL PROCEDURE §§1159, et seq.]
15  JAMIE GALLIAN AND ALL OTHER
    OCCUPANTS AND PERSONS IN POSSESSION           **DOES NOT EXCEED $10,000.00**
16  WITHOUT A SIGNED LEASE AGREEMENT,
    and DOES 1 to 10, inclusive,
17
            Defendant
18

19  COMES NOW, the Plaintiff herein, and alleges as follows:

20       1.     Plaintiff, HOUSER BROS. CO., a California limited partnership doing business in the

21  County of Orange State of California, under the fictitious name of RANCHO DEL REY MOBILE

22  HOME ESTATES.  Plaintiff has filed the statements and published the notices required by §§17900, et

23  seq., of the Business and Professions Code.

24       2.     Defendants, JAMIE GALLIAN AND ALL OTHER OCCUPANTS AND PERSONS

25  IN POSSESSION WITHOUT A SIGNED LEASE AGREEMENT, are individuals residing in the City

26  of Huntington Beach, County of Orange State of California

27       3.     The true names and capacities of Defendants sued herein as DOES 1 through 10,

28  inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who

                                             1
                     **COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 238 of 418   Page ID #:4149

Case 8:21-bk-11710-ES    Doc 130    Filed 07/07/22    Entered 07/07/22 19:06:09    Desc
Main Document      Page 71 of 96
Case 8:21-ap-01097-ES    Doc 3    Filed 10/22/21    Entered 10/22/21 17:11:36    Desc
Main Document      Page 16 of 25

1    therefore sues said Defendants by said fictitious names.  Plaintiff will amend this Complaint to insert

2    said Defendants' true names and capacities when the same have been ascertained.

3        4.    The premises which are the subject of this action are located in the judicial district in

4    which this action is brought.  Said premises are situated at 16222 Monterey Lane. Space 376,

5    Huntington Beach, California 92647  (the "Premises").

6        5.    Plaintiff is the owner of said Premises and has a superior right to possession thereof.

7        6.    Defendants entered into possession of the subject Premises without the consent of

8    Plaintiff.  No rental agreement has been entered into between Plaintiff and Defendants. Defendant's

9    application was denied due to her poor financial condition.  Defendant also made a material falsehood

10   on her application, and her prior conduct indicates she will not comply with the Rules and Regulations

11   governing the mobilehome park.

12       7.    Due to the failure of Defendants to execute a rental agreement prior to taking possession

13   of the Premises, Defendants have no right of tenancy and are unlawful occupants within the meaning of

14   Civil Code §798.75.

15       8.    On or about December 11, 2018 Plaintiff caused to be served on Defendants a Five (5)

16   Day Notice to Quit Premises.  A copy of said Notice is attached hereto as Exhibit "1" and incorporated

17   herein by this reference.

18       9.    Defendants remain in possession of the subject Premises as of this date, and said

19   possession is without Plaintiff's consent.

20       10.   Defendants continue in willful, malicious, obstinate and/or intentional possession of said

21   Premises without Plaintiff's consent and refuse to surrender possession of same to Plaintiff.

22       11.   The reasonable rental value of the Premises is at least Thirty-Six Dollars and Twenty

23   Cents ($36.20) per day, and damages caused by Defendants' forcible detention will accrue at said rate so

24   long as Defendants' mobilehome remains in possession of said Premises.

25       12.   The reasonable value of utilities consumed is the amount evidenced by the meters

26   installed on the Premises, and damages caused by Defendants' forcible detention will accrue at said

27   rates so long as Defendants' mobilehome remains in possession of the said Premises.

28

2

**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

EXHIBIT 4, PAGE 64
EXHIBIT 41, PAGE 1530

Case 8:23-cv-00961-WLH    Document 13-2    Filed 08/16/23    Page 239 of 418    Page ID #:4150

Case 8:21-bk-11710-ES    Doc 130    Filed 07/07/22    Entered 07/07/22 19:06:09    Desc
Main Document    Page 72 of 96
Case 8:21-ap-01097-ES    Doc 3    Filed 10/22/21    Entered 10/22/21 17:11:36    Desc
Main Document    Page 17 of 25

13.    The reasonable value for trash removal and sewage charges are the amounts charged by the suppliers for these services, and damages caused by Defendants' forcible detention will accrue at said rate so long as Defendants, or any of them, remain in possession of said premises.

14.    California Civil Code §798.85 states as follows:

> "In any action arising out of the provisions of this chapter the prevailing party shall be entitled to reasonable attorneys' fees and costs."

15.    Plaintiff has been compelled to commence this action for recovery of possession of said Premises and for default in payment of rent and utilities, and Plaintiff has thereby incurred and been required to expend money for attorneys' fees.

16.    Plaintiff has been compelled to commence this action for recovery of possession of said Premises and for default in payment of rent, utilities and other charges, and to otherwise enforce Plaintiff's rights under Exhibit "1," and Plaintiff has thereby incurred and been required to expend money for attorneys' fees.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

(1)    For restitution of said Premises;

(2)    For damages at the rate of Thirty-Six Dollars and Twenty Cents ($36.20) per day as a reasonable rental value of the Premises from and after the date Defendants went into possession according to proof, and until judgment and for so long as Defendants, or any of them, continue to occupy said Premises;

(3)    For actual consumption of utilities commencing from and after the date Defendants went into possession according to proof, and until judgment and for so long as Defendants, or any of them, continue in possession of said Premises;

(4)    For treble the amount above;

(5)    For attorneys' fees incurred herein;

(6)    For costs of suit incurred herein;

(7)    For interest at the legal rate on judgment; and

3

**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 240 of 418   Page ID #:4151

Case 8:21-bk-11710-ES    Doc 130    Filed 07/07/22    Entered 07/07/22 19:06:09    Desc
Main Document       Page 73 of 96
Case 8:21-ap-01097-ES    Doc 3    Filed 10/22/21    Entered 10/22/21 17:11:36    Desc
Main Document       Page 18 of 25



(8)    For such other and further relief as the Court may deem just and proper, except that

Plaintiff remits all damages in excess of the jurisdiction of this Court.

DATED: December _18_, 2018          By: _____

Vivienne J. Alston
Attorney for Plaintiff

4

**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 241 of 418   Page ID #:4152

Case 8:21-bk-11710-ES    Doc 130    Filed 07/07/22   Entered 07/07/22 19:06:09    Desc
Main Document      Page 74 of 96
Case 8:21-ap-01097-ES   Doc 3   Filed 10/22/21   Entered 10/22/21 17:11:36   Desc
Main Document      Page 19 of 25

**EXHIBIT 1**

002354

ELAINE B. ALSTON
VIVIENNE J. ALSTON
DONALD A. DIEBOLD

ALSTON, ALSTON & DIEBOLD

TELEPHONE (714) 556-9400
FACSIMILE (714) 556-9500

27201 PUERTA REAL
SUITE 300
MISSION VIEJO, CALIFORNIA 92691

OUR FILE NO:  1510.

December 10, 2018

**FIVE (5) DAY DEMAND
FOR SURRENDER OF POSSESSION OF SITE**

To:    **Jamie Gallian and All Unlawful Occupants and Persons in Possession Without a Signed Rental
Agreement ("Occupants"):**

NOTICE IS HEREBY GIVEN that management of the mobilehome park commonly known as:

Rancho Del Rey
16222 Monterey Lane
Huntington Beach, CA 92649
(referred to as "Park" herein)

HEREBY DEMANDS that the Occupants named above, and each of them, quit the premises in the Park and
surrender possession thereof commonly described as:

Space376
(referred to as "site" herein)

WITHIN FIVE (5) DAYS FROM AND AFTER SERVICE OF THIS NOTICE, and that said surrender of the
mobilehome site be made to the park manager(s), who is authorized to receive the same on behalf of the
management.

Civil Code Section 798.75 authorizes forcible detainer proceedings against any occupant of a mobilehome park
who does not have rights of tenancy and is not otherwise entitled to occupy the premises, upon failure of the
occupants to quit the premises within five (5) days after service of a demand for surrender of the site.

This notice is served with reference to the following facts, inter alia, upon which said demand is now hereby made:

That you have actual and physical possession of the site, without permission from park management, and without
right or authority under a rental agreement or otherwise.  Based upon the foregoing facts, management is authorized
to pursue its legal remedies to obtain possession of the site from all such Occupants having no right of tenancy or
possession.

**002355**

EXHIBIT 4, PAGE 68
EXHIBIT 41, PAGE 1534

J Gallian
and All Unlawful Occupants
December 10, 2018
Page 2

**THIS NOTICE IS INTENDED AS A FIVE (5) DAY DEMAND TO SURRENDER POSSESSION AND NOTICE TO QUIT AS PER CIVIL CODE SECTION 798.75.  SHOULD YOU FAIL TO QUIT AND SURRENDER POSSESSION AS HEREBY DEMANDED, LEGAL PROCEEDINGS SHALL BE INSTITUTED FOR RESTITUTION OF POSSESSION OF THE PREMISES, REASONABLE RENTAL VALUE, DAMAGES INCIDENTAL TO OCCUPANTS WRONGFUL UNLAWFUL OCCUPATION OF THE SITE, AND ATTORNEYS' FEES AND COSTS, AND STATUTORY DAMAGES.**

ALSTON, ALSTON & DIEBOLD

Dated:  December 10, 2018

By: _____
VIVIENNE J. ALSTON
Authorized Agent for Owner

cc:    Client
       Park Manager

002356

EXHIBIT 4, PAGE 69
EXHIBIT 41, PAGE 1535

Case 8:23-cv-00961-WLH   Document 13-2   Filed 08/16/23   Page 244 of 418   Page ID #:4155

Case 8:21-bk-11710-ES    Doc 130    Filed 07/07/22    Entered 07/07/22 19:06:09    Desc
Main Document       Page 77 of 96
Case 8:21-ap-01097-ES    Doc 3    Filed 10/22/21    Entered 10/22/21 17:11:36    Desc
Main Document       Page 22 of 25

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address) | TELEPHONE NUMBER | FOR COURT USE ONLY |
|---|---|---|
| Vivienne J. Alston SBN 170746<br>ALSTON, ALSTON & DIEBOLD<br>27201 Puerta Real ste 300<br>Mission Viejo, CA 92691<br>ATTORNEY FOR  **Plaintiff** | **(714) 556-9400** | |

| SHORT TITLE OF CASE:<br>Rancho Del Rey v. Gallian, Jamie | | |
|---|---|---|
| DATE:          TIME:          DEP./DIV. | | CASE NUMBER:<br>Not Applicable |
| **Declaration of Service of Notice to Tenant** | | Ref. No. or File No:<br>1510 |

I, the undersigned, declare that I served the tenant with the: **Five (5) Day Demand for Surrender of Possessin of site.;**

Constructive Service

After unsuccessfully attempting to personally serve said Notice(s) on each of the named parties on **12/11/2018** at **05:39 PM**, I completed service by serving said notice(s) as authorized by C.C.P. Section 1162 (2,3). In the manner set forth below.

To: **Jamie Gallian**

On: **12/11/2018**          At: **05:39 PM**

**By posting** a copy for each tenant in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at the property where situated, **and mailing** a copy to said tenant(s) by depositing said copies in the United States Mail in a sealed envelope with postage fully prepaid, addressed to the tenant  on **12/11/2018** from **Garden Grove** at the address where served: **16222 Monterey Lane 376  Huntington Beach, CA 92649**

Person Who served papers:
  a. Name: **Cesar Gonzalez**
  b. Address: **840 N. Birch St, Santa Ana, CA 92701**
  c. Telephone number: **714-953-9451**
  d. **The fee** for this service was: **129.50**
  e. I am:
    (3) [X] a registered California process server:
      (i) [X] Independent Contractor
      (ii) Registration No.: **2729**
      (iii) County: **Orange**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.



JANNEY & JANNEY
LEGAL SUPPORT SERVICE

**Cesar Gonzalez**          Date: **12/12/2018**

Declaration of Service of Notice to Tenant                    Invoice #: 2305520-01

EXHIBIT 4, PAGE 70
EXHIBIT 41, PAGE 1536

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address) | TELEPHONE NUMBER | FOR COURT USE ONLY |
|---|---|---|
| Vivienne J. Alston SBN 170746<br>ALSTON, ALSTON & DIEBOLD<br>27201 Puerta Real ste 300<br>Mission Viejo, CA 92691<br>ATTORNEY FOR **Plaintiff** | (714) 556-9400 | |

| SHORT TITLE OF CASE:<br>Rancho Del Rey v. Gallian, Jamie | | |
|---|---|---|
| DATE:    TIME:    DEP./DIV. | | CASE NUMBER:<br>Not Applicable |
| **Declaration of Service of Notice to Tenant** | | Ref. No. or File No:<br>1510 |

I, the undersigned, declare that I served the tenant with the: **Five (5) Day Demand for Surrender of Possessin of site.;**

Constructive Service

After unsuccessfully attempting to personally serve said Notice(s) on each of the named parties on **12/11/2018** at **05:39 PM**, I completed service by serving said notice(s) as authorized by C.C.P. Section 1162 (2,3). In the manner set forth below.

To: **All Other Occupants**

On: **12/11/2018**    At: **05:39 PM**

**By posting** a copy for each tenant in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at the property where situated, **and mailing** a copy to said tenant(s) by depositing said copies in the United States Mail in a sealed envelope with postage fully prepaid, addressed to the tenant on **12/11/2018** from **Garden Grove** at the address where served: **16222 Monterey Lane 376  Huntington Beach, CA 92649**

Person Who served papers:
  a. Name: **Cesar Gonzalez**
  b. Address: **840 N. Birch St, Santa Ana, CA 92701**
  c. Telephone number: **714-953-9451**
  d. The fee for this service was: **39.50**
  e. I am:
  (3) [X] a registered California process server:
     (i) [X] Independent Contractor
     (ii) Registration No.: 2729
     (iii) County: Orange

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.



    **Cesar Gonzalez**        Date: **12/12/2018**

Declaration of Service of Notice to Tenant                        Invoice #: 2305520-02

002358

EXHIBIT 4, PAGE 71
EXHIBIT 41, PAGE 1537

**VERIFICATION**

STATE OF CALIFORNIA, COUNTY OF ORANGE
I have read the foregoing COMPLAINT
_____ and know its contents.

☐ **CHECK APPLICABLE PARAGRAPHS**

☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[X] I am ☐ an Officer [X] a partner _____ ☐ a _____ of HOUSER BROS CO.

a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. ☐ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true. [X] The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for _____

a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on  December 19, 2018 , at HUNTINGTON BEACH _____ , California.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_Christopher C. Houser_
Type or Print Name                                                                      Signature

**PROOF OF SERVICE**
1013a (3) CCP Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF _____
I am employed in the county of _____ , State of California.
I am over the age of 18 and not a party to the within action; my business address is: _____

On _____ I served the foregoing document described as _____

_____ on _____ in this action

___ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:
___ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

☐ **BY MAIL**
☐ *I deposited such envelope in the mail at _____ , California.
The envelope was mailed with postage thereon fully prepaid.
☐ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at _____ California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.
Executed on _____ , at _____ , California.
☐ **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.
Executed on _____ , at _____ , California.
☐ (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
☐ (Federal)   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____                          _____
Type or Print Name                                           Signature
*IBY MAIL SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN
MAIL SLOT, BOX, OR BAG)
**(FOR PERSONAL SERVICE SIGNATURE MUST BE THAT OF MESSENGER)

Legal
Solutions
Plus                          Rev. 7/99

002359

EXHIBIT 4, PAGE 72
EXHIBIT 41, PAGE 1538

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): FIRST AMENDED COMPLAINT TO
(1) DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523 (a)(2)(A) and (a)(6);
(2) DENY DISCHARGE PURSUANT TO 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5) will be served or was served **(a)** on
the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**October 22, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

- **Jeffrey I Golden (TR)**    lwerner@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com
- **D Edward Hays**    ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.court
  drive.com
- **Laila Masud**    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **October 22, 2021**, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
Honorable Erithe A. Smith
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 22, 2021    Layla Buchanan | /s/ Layla Buchanan |
|---|---|
| *Date*    *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

002360

EXHIBIT 4, PAGE 73
EXHIBIT 41, PAGE 1539

**EXHIBIT 5**

EXHIBIT 41, PAGE 1540

Gallian Jamie 6-28-22rough

1

P R O C E E D I N G S.

June 28, 2022

---oOo---

ROUGH DRAFT

The information on this disk/email is being

provided by the reporter as a litigation support

tool using realtime computer technology. This is a ROUGH

DRAFT and cannot be quoted in any pleadings or for   any

other purpose and may not be filed with any court.

Please be aware that page and line references in this

draft will not coincide with the official transcript.

When the reporter's computer software doesn't

recognize a shorthand symbol, it will not translate it.

The symbol will appear in the text looking something
Page 1

002362          EXHIBIT 5, PAGE 74
EXHIBIT 41, PAGE 1541

Gallian Jamie 6-28-22rough

Q.  And?

A.  It was notarized twice.

Q.  And you've provided the us with that notary

acknowledgement in the documents correct?

A.  Yes, I have.

Q.  And?

A.  It's in your it's in your documents as well.

Q.  And I'll I think I have it up on the screen here

so let me see if I'm smart enough to do a screen share.

A.  And I think that I believe I asked sent you back

your documents yesterday and put page numbers if we

could use the page numbers so that I can get to it

easily.

Q.  It's page 5 of 461.

A.  Okay.

Q.  In the PDF.  And that's an acknowledgement of


ROUGH, UNCERTIFIED DRAFT; YET TO BE PROOFREAD; NOT FOR CITING

⚥

68


February 25, 2021, by a notary Greg BU san is that

correct?

A.  Yeah he's at the local UPS store here.

Page 84

EXHIBIT 5, PAGE 75
EXHIBIT 41, PAGE 1542

Gallian Jamie 6-28-22rough

Q.  Buy men I see it's spelled out B-U-Y-S-M-A-N.

And so you went into the UPS store and had this
notary acknowledge that this document this certificate
of title was being signed on February 25th of 2021,
correct?

A.  That's correct.  However.  If you stop scrolling
for a second, what he notarized go up a little bit no up
up up up.  Okay okay so what he's notarizing I'm sorry
can you show me the first line under the signature --
no.  Go go well I guess down is that what you're -- okay
stop.  So what he's notarizing is this section here the
date that I released section B is what he's what he's
you see the two TA right here.

Q.  Yeah I see it so that's what's notarized and
then ultimately submitted to HCD correct?

A.  Yes. However don't forget the.

(Reporter clarification.)

THE WITNESS:  It's called the tax clearance
certificate.

BY MR. HAYS:

Q.  So why don't you tell us what this is and why it
was a nightmare?

ROUGH, UNCERTIFIED DRAFT; YET TO BE PROOFREAD; NOT FOR CITING
Page 85

002364

EXHIBIT 5, PAGE 76
EXHIBIT 41, PAGE 1543

Gallian Jamie 6-28-22rough

♀

69

A.  Well because the HCD does not change a -- change

a certificate of title without paying the current taxes

and a year in advance and I didn't have the money for

that and that's why there's such a difference between

you see this date right here is July 9th.

Q.  Of 2021 correct?

A.  That's right that's the day that I filed

bankruptcy that's when I had that's the only time I had

the money to pay all that I didn't realize they they

charge so they they I go why are you charging me like 2

or 3 years that's our policy I'm like that can't be the

policy but it's it's what they do.

Q.  So you submitted the request for the title to be

reissued?

A.  Uh-huh.

Q.  Based on the February 2021 release?

A.  Right but I didn't have a tax clearance

certificate.

Q.  And then you were notified that they would not

reissue the title until you get this tax clearance

certificate?

Page 86

EXHIBIT 5, PAGE 77
EXHIBIT 41, PAGE 1544

Gallian Jamie 6-28-22rough

A.  That's correct and that's why finally when I got
everything that's why I believed that July 14th stamp is
finally on when they started when they finally
officially started making the change.


ROUGH, UNCERTIFIED DRAFT; YET TO BE PROOFREAD; NOT FOR CITING

⚥

70


Q.  And so when what resulted in this tax clearance
surrogating issued you submitted some money?

A.  Yeah you have to pay the current plus a year in
advance.

Q.  And the money that you paid was paid on
July 9th?

A.  Correct.

Q.  2021?

A.  That's correct.

Q.  And in what form did you pay it?

A.  My capital one charge card my VISA card.

Q.  Did you have to submit any other paperwork on
that date or was it just make the payments?

A.  No. You order it on line and you go and pick it
up with and you know obviously besides give the money

Page 87

EXHIBIT 5, PAGE 78
EXHIBIT 41, PAGE 1545

Gallian Jamie 6-28-22rough

but that's it.

Q.  So on July 9th you go on line on the computer?

A.  And order it again because see it's son-in-law

good for -- when you order it, I ordered it in you know

a long time ago but I didn't know they were going to

charge me two years.  So I never went and picked it up

the first time.  And then it wasn't until the ninth that

I had all the money I went down there I paid it and then

that certificate is good for 90 days.

Q.  Okay.  Let me stop you right there.  You said


ROUGH, UNCERTIFIED DRAFT; YET TO BE PROOFREAD; NOT FOR CITING

⚲

71

you went down and paid it and earlier I thought you said

you paid on line with your charge card?

A.  No you order it you order the certificate you

don't you have to order it you can go to the Orange

County tax assessor and you drop down to the mobile home

and you type in there and you order this tax clearance

certificate and they call you and tell you when it's

ready or you can follow up and say hey you know what

I've been waiting a long time you know can you possibly

Page 88

EXHIBIT 5, PAGE 79
EXHIBIT 41, PAGE 1546

Gallian Jamie 6-28-22rough

find the time to do this today and I went down to the

office the tax clearance or the tax assessor's office

and paid the bill with my capital one VISA card.

Q.  So?

A.  And then they give you this document.

Q.  So on July 9th of 2021 you were standing in the

tax collect ERZ office with a charge card paying the

money that they required?

A.  Yes. Before I filed bankruptcy it was in the

morning that I was there and the the I don't know

Bankruptcy Court was in the afternoon like two or

something.

Q.  And then when you got this piece of paper?

A.  Uh-huh.

Q.  Handed to you this original piece of paper with

the stamp on it?


ROUGH, UNCERTIFIED DRAFT; YET TO BE PROOFREAD; NOT FOR CITING

♀

72


A.  Yep.

Q.  What do you do with that?

A.  You have to send it up to Sacramento.

Page 89

EXHIBIT 5, PAGE 80
EXHIBIT 41, PAGE 1547

Gallian Jamie 6-28-22rough

Q.  So you then mailed it to Sacramento?

A.  Or I could have scanned it into my computer
either one.  I don't remember which how how it got there
but they have the original so I think I followed up with
the original.

Q.  So you think you mailed the original to them and
that's why on July 1, '45 days later they finally put a
stamp on it like they're now processing all these?

A.  That's correct.

Q.  Okay.  And then some time after July 14th you
get the brand new original certificate of title back in
the mail?

A.  Yeah well but I think what I said was is that I
had thought you know what is taking so long I didn't
realize that Sacramento is the only one that -- that
processes original, you know, so to speak, these big
pink slips.  So any way.  So that's what happened.  So I
remember I said that I had to wait because I noticed on
the what do you call it the title search that whoever
processed it took J pad and Ron Pierpont off and that
was not the intent.

Q.  I understand.  So the I want to make sure that

ROUGH, UNCERTIFIED DRAFT; YET TO BE PROOFREAD; NOT FOR CITING
Page 90

EXHIBIT 5, PAGE 81
EXHIBIT 41, PAGE 1548

Gallian Jamie 6-28-22rough

♀

73

the documents are that we've been referring to are

clearly marked as exhibits and so?

     A.  They are but they're out of order and you've got

and that's why I wanted to do the page numbers so that.

     Q.  If we can but just hold hold on?

     A.  Go ahead I'm sorry.

     Q.  I'm trying to ask a question and we need to?

     A.  I'm sorry.

     Q.  Happy with both of us.

          So the first piece of paper that shows the

July 14th stamp is now up on the screen it's page of 3

of 461 is that the front page of the title that got

issued after the tax clearance certificate?

     A.  No. That's the that's the original certificate

of title the February 24 th 12021 if you look down here

at the bottom if you go up a little bit tiny tiny print

there should be okay see right there underneath the word

department see right those those numbers down there 0224

way down underneath the word important.

     Q.  Yes yes?

     A.  That's the day I come to find out or come to

Page 91

EXHIBIT 5, PAGE 82
EXHIBIT 41, PAGE 1549

Gallian Jamie 6-28-22rough

learn that's their little date on there where they mail

this document but that's just my own I don't Wong there

so I don't know what they do.

Q.  So?


ROUGH, UNCERTIFIED DRAFT; YET TO BE PROOFREAD; NOT FOR CITING

⚥

74


A.  I kind of figure out that's must be what that

means.

Q.  Hold on hold on.  I'm trying to figure out

because all of this is in one big PDF?

A.  Uh-huh.

Q.  Was the first page of the title is this the

first page?

A.  Correct.

Q.  Okay.  And is it a one-page document?

A.  This is the back.

Q.  So the back of page 3 of 461 is what's up on the

screen now which is page 4 of 461?

A.  Correct but that -- that -- this document that

was submitted to HCD wasn't -- well let's see no.  Okay.

So because the tax clearance certificate had J

Page 92

EXHIBIT 5, PAGE 83
EXHIBIT 41, PAGE 1550

Gallian Jamie 6-28-22rough

though it was not a named party, correct?

    A.  Well because that's where all the money is I

mean there was only you know as you said in the very

beginning there was only $379,000 okay well if 185 of it


    ROUGH, UNCERTIFIED DRAFT; YET TO BE PROOFREAD; NOT FOR CITING

⚥

                                                          90


went over here you know what's left and 175 went over

here okay well you know I took money out of my 401(k)

because all the money is gone there is no more and so

the problem I think I think let me just let me just say

this.  What's convoluted about all of this is the fact

that I've been trying to be very, very frugal in trying

to not spend money that I believe didn't belong to me

meaning that I AMZ I was J Sandcastle's tenant okay and

I was paying rent to J Sandcastle so you know y'all

though I'm the member also, I in my mind they are

separate -- separate and it's I paid rent just as if a

stranger off the street like I said that if I was forced

to have to to rent this place that's that's why that

$9,000 was there it's like it's not it doesn't belong to

Jimmy Gallian any more it's rent paid to J Sandcastle
                    Page 112

EXHIBIT 5, PAGE 84
EXHIBIT 41, PAGE 1551

Gallian Jamie 6-28-22rough

because they are the legal owner whose trying to pay the

debt of the space so it just gets so convoluted to doing

I know we've been very patient with each other however

it's not simple it's not a simple answer because it's

been almost five years.

Q.  So let me clarify something you just said I

believe you said you've been paying rent to J Sandcastle

is that correct?

A.  That's correct until February 25th.

Q.  And so from November of 2018 through February of


ROUGH, UNCERTIFIED DRAFT; YET TO BE PROOFREAD; NOT FOR CITING

☿

91


2021 you were making monthly payments to J Sandcastle

for rent?

A.  Yeah or I would make -- give deposits to them so

that you know I was the tenant okay they're still

entitled to be paid rent for the person who lives in --

in the unit and that's the way I was trying to treat it

is that the the rent goes to them and.

Q.  So so on a monthly  basis you would pay rent?

A.  Yes.

Page 113


002373

EXHIBIT 5, PAGE 85
EXHIBIT 41, PAGE 1552

Gallian Jamie 6-28-22rough

Q.  And what was the amount of the rent?

A.  1,086 exactly what the ground lease or what the
last ground lease payment or amount was here that was in
the UD action.

Q.  So from November of 2018 through February of
2021 that's a little bit more than two years?

A.  Correct.

Q.  It's about two years and 3 or 4 months?

A.  Yes.

Q.  And at just over a thousand dollars a month,
that's roughly $25,000 give or take, correct?

A.  That's that's correct that's correct.

Q.  So?

A.  However -- okay however, circumstances changed
okay where there were many months that I couldn't pay
that because I lost my job okay and my disability was


     ROUGH, UNCERTIFIED DRAFT; YET TO BE PROOFREAD; NOT FOR CITING
♀


                                                            92


exhausted.  Okay thanks God you know COVID relief money
came.  So yeah about 20.

Q.  Is there?
          Page 114


002374                    EXHIBIT 5, PAGE 86
                           EXHIBIT 41, PAGE 1553

Gallian Jamie 6-28-22rough

A.  About $20,000 is is about what I believe that I
have set aside specifically that is due houser because
of the rent that I need to pay that I set aside for J
Sandcastle who should have paid J houser so now I'm
paying J pad.

Q.  Let me let me clarify.  So on a monthly  basis
you would take the money from a Jamie Gallian account
and transfer it over to a J Sandcastle account?

A.  Pretty much Oregon if there was a lump sum that
I put into that account, meaning I think there was 1 or
2 when my career ended at united the 401(k) payments so
those FWOENT J Sandcastle so that's why I'm so
interested in getting with the CPA to figure out you
know this money was paid on my behalf for the purpose
because I was their tenant and that's the way I had
always intended to treat it, if that makes sense.

Q.  But again whether it was each and every month or
periodically you paid rent by transferring money from
your account to a J Sandcastle's account over this
period of time?

A.  Yes.

Q.  And then the rent stopped in February of 2021

ROUGH, UNCERTIFIED DRAFT; YET TO BE PROOFREAD; NOT FOR CITING
Page 115

EXHIBIT 5, PAGE 87
EXHIBIT 41, PAGE 1554

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **REPLY TO DEBTOR'S OPPOSITION TO MOTION OBJECTING TO CLAIMED HOMESTEAD EXEMPTION; DECLARATION OF D. EDWARD HAYS IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 7, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **_____**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 7, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

PURSUANT TO THE COURTROOM POLICIES AND PROCEDURES OF THE HONORABLE ERITHE A. SMITH, COURTROOM 5A, §VIII. JUDGES' OR COURTESY COPIES, EXCEPT FOR DOCUMENTS 200 PAGES OR OVER, INCLUDING EXHIBITS, JUDGE SMITH **DOES NOT** REQUIRE JUDGES' COPIES.

**DEBTOR – VIA OVERNIGHT DELIVERY**
JAMIE LYNN GALLIAN
16222 MONTEREY LN UNIT 376
HUNTINGTON BEACH, CA 92649

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 7, 2022 | Layla Buchanan | /s/ Layla Buchanan |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 41, PAGE 1555

EXHIBIT 42

D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Movant and Creditor,
HOUSER BROS. CO. dba RANCHO DEL
REY MOBILE HOME ESTATES

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:21-bk-11710-ES |
| JAMIE LYNN GALLIAN, | Chapter 7 |
| Debtor. | DECLARATION OF GREG BUYSMAN RE: MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION |
| | Date:   July 21, 2022<br>Time:   10:30 a.m.<br>Ctrm:   5A[1]<br>Location: 411 W. Fourth Street, Santa Ana, CA 92701 |

I, Greg Buysman, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

---

[1] To continue to aid in the mitigation of the spread of the COVID-19 virus and in light of the response of the Bar to continue virtual appearances, Judge Smith will continue to hold the majority of her hearings remotely using ZoomGov audio and video. However, beginning September 1, 2021, Judge Smith will allow the option for in-person hearings and/or hybrid proceedings for trial and evidentiary hearings only.

1
DECLARATION OF GREG BUYSMAN

4880-1284-8131,v.1

EXHIBIT 42, PAGE 1556

1       3.     The facts set forth below are true of my personal knowledge.

2       4.     I am employed at The UPS Store at 5942 Edinger Ave., Ste. 113, Huntington Beach,

3  CA 92649.

4       5.     I am also a California Notary Public, with Commission Number 2341449. My

5  commission expiration date is February 5, 2025.

6       6.     I make this declaration in support of the homestead exemption objection filed by

7  Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros.").

8       7.     A true and correct copy of my notary book for February 25, 2021, is attached as

9  **Exhibit 1**.

10      8.     According to my records, on February 25, 2021, I notarized an Affidavit of Death and

11  a Transfer Grant Deed for Jamie Lynn Gallian ("Ms. Gallian").

12      9.     A true and correct copy of an "Affidavit of Death" that I notarized for Ms. Gallian

13  on February 25, 2021, is attached as **Exhibit 2**. I wrote on the first page of this document "See

14  Attached Acknowledgment."

15      10.    A true and correct copy of an "Affidavit, Death of Grantor of Interfamily Transfer

16  Grant Deed" that I notarized for Ms. Gallian on February 25, 2021, is attached as **Exhibit 3**. I wrote

17  on the first page of this document "See Attached Acknowledgement."

18      11.    I have been provided a copy of a California Department of Housing and Community

19  Development ("HCD") document that contains my acknowledgment signature in two places. A true

20  and correct copy of the HCD document provided to me is attached as **Exhibit 4**. I did not, however,

21  notarize this document.

22        I declare under penalty of perjury that the foregoing is true and correct. Executed on

23  June 20, 2022.

24

25

26                      GREG BUYSMAN

27

28

2

DECLARATION OF GREG BUYSMAN

4880-1284-8131,v.1

# EXHIBIT 1

EXHIBIT 42, PAGE 1558



EXHIBIT 42, PAGE 1559

EXHIBIT 42, PAGE 1560

**EXHIBIT 2**

002383                    EXHIBIT 42, PAGE 1561

Electronically Filed by Superior Court of California, County of Orange, 05/12/2021 08:44:00 AM.
30-2017-00915711-PR-LA-CJC - ROA # 141 - DAVID H. YAMASAKI, Clerk of the Court By e Clerk, Deputy Clerk.

Recording at the request of:

JAMIE LYNN GALLIAN
16222 MONTEREY LANE #376
HUNTINGTON BEACH, CA 92649
714-321-3449

_This space for recorder's use only_

## AFFADAVIT OF DEATH

### CHARLES JAMES BRADLEY, JR. Date of Death 06/18/2000

Affiant's Name: JAMIE LYNN GALLIAN

The affiant, JAMIE LYNN GALLIAN, first being sworn, deposes and says: I am fully capacitated at this present time to give sworn written testimony, and hereby acknowledge the following to be true.  I am over the age of 18 years and I am currently a resident within the State of California, County of Orange. I say, I am the only daughter of the decedent Charles James Bradley, Jr. and named executor in that certain Will of the Decedent of Charles J. Bradley, Jr.

I standby all facts herein stated within this written instrument to be true.  The following testimony is an accurate account, both true and correct, of my personal knowledge.

I, JAMIE LYNN GALLIAN, the affiant, testify under oath to the following written statement: That the decedent CHARLES JAMES BRADLEY, JR. born September 13, 1935, died on June 18, 2000, State of Montana. A true and correct copy of Decedent Charles J. Bradley, Jr. Certificate of Death, Montana, State File No. 8446 is attached, herein.

That Sandra L. Bradley transferred community property conveyed to said GRANTEE by the Decedent, GRANTOR, Charles J. Bradley, Jr. and knowingly and willfully filed a fraudulent Quitclaim Deed on October 24, 2001, Document No. 20010753606, at the Clerk Recorders Office, County of Orange California, without authority of the Grantee.

Notice is hereby given said Document No. 20010753606, attached herein, is VOID. _See Attachments_

Dated this _25_ day of _February_ 20_21_

Sworn (or affirmed) before me at

Signature of Affiant _Jamie L Gallian_   _See Notarial Acknowledgment_

Signature of Notary _____

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Orange_ )

On _2/25/21_ before me, _Greg Buysman Notary Public_

(insert name and title of the officer)

personally appeared _Jennie Lynn Collins_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**GREG BUYSMAN**
COMM # 2341449
ORANGE County
California Notary Public
Comm Exp Feb. 5, 2025

Signature _Greg Buysman_                (Seal)

EXHIBIT 42, PAGE 1563

FORM V.S. 3 (1988 revision)

**34**

Local File Number

MONTANA
CERTIFICATE OF DEATH

**8446**

State File Number

| DECEDENT'S NAME (First) Charles | (Middle) James | (Last) Bradley Jr. | SEX Male | DATE OF DEATH (Month, Day, Year) June 18, 2000 |
|---|---|---|---|---|

| RACE—American Indian, Black, White, etc. (Specify) White | AGE—Last Birthday (Years) 64 | UNDER 1 YEAR Months / Days | UNDER 1 Day Hours / Minutes | DATE OF BIRTH (Month, Day, Year) September 13, 1935 | COUNTY OF DEATH Beaverhead |

7b. PLACE OF DEATH (Check only one)
HOSPITAL:  ☐ Inpatient  ☐ ER/Outpatient  ☐ DOA   OTHER:  ☐ Nursing Home  ☐ Residence  ☒ Other (Specify)

| FACILITY NAME (If not institution, give street and number) Hwy #278 | CITY, TOWN, OR LOCATION OF DEATH Near Jackson |
|---|---|

**DECEDENT**

| BIRTHPLACE (City and State or Foreign Country) Worthington, Minn. | MARITAL STATUS ☐ Never Married ☐ Widowed ☒ Married ☐ Divorced | SURVIVING SPOUSE (If wife, give maiden surname) Sandra L. Smith |
|---|---|---|

| SOCIAL SECURITY NUMBER 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 | DECEDENT'S USUAL OCCUPATION (Give kind of work done during most of working life. Do not use retired.) Management | KIND OF BUSINESS/INDUSTRY Construction engineering | WAS DECEDENT EVER IN U.S. ARMED FORCES? (Yes or no) No |
|---|---|---|---|

| RESIDENCE—STATE California | COUNTY Orange | CITY, TOWN, OR LOCATION Coto de Caza | STREET NUMBER 9 Rae's Creek Lane |
|---|---|---|---|

| INSIDE CITY LIMITS? (Yes or no) Yes | ZIP CODE 92679 | ANCESTRY—Mexican, Puerto Rican, Cuban, African, English, Irish-German, Hmong, etc. (Specify) English | 16. DECEDENT'S EDUCATION (Specify only highest grade completed) Elementary/Secondary (0-12) / College (1-4 or 5+) College |
|---|---|---|---|

**PARENTS**

| FATHER'S NAME (First, Middle, Last) Charles James Bradley | MOTHER'S NAME (First, Middle, Maiden Surname) Bernice Stone |
|---|---|

**INFORMANT**

| INFORMANT'S NAME (Type/Print) Sandra L. Bradley | MAILING ADDRESS (Street and Number or Rural Route Number, City or Town, State, Zip Code) 9 Rae's Creek Lane - Coto de Casa, CA 92679 |
|---|---|

**DISPOSITION**

| METHOD OF DISPOSITION ☐ Burial ☒ Cremation ☐ Other (Specify) ☐ Removal from State | PLACE OF DISPOSITION (Name of cemetery, crematory, or other place) Butte Crematory Inc | LOCATION—City or Town, State Butte, Montana |
|---|---|---|

| SIGNATURE OF FUNERAL SERVICE LICENSEE OR OTHER PERSON IN CHARGE OF DISPOSITION | MONTANA LICENSE NUMBER (of Licensee) #381 | NAME AND ADDRESS (of Funeral Home) Brundage Funeral Home Inc. 300 South Atlantic Dillon, Montana 59725 |
|---|---|---|

**CAUSE OF DEATH**

23. PART I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line. (See instructions on other side)

| | | Approximate Interval Between Onset and Death. |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | a. crushing injuries to the head & thoracic | sudden |
| Sequentially list conditions if any, leading to immediate cause. Enter Underlying Cause (Disease or injury that initiated events resulting in death) Last | DUE TO (OR AS A CONSEQUENCE OF): b. | |
| | DUE TO (OR AS A CONSEQUENCE OF): c. | |
| | DUE TO (OR AS A CONSEQUENCE OF): d. | |

PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.

not wearing seat belt

| WAS AN AUTOPSY PERFORMED? (Yes or no) no | 24b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? (Yes or no) |
|---|---|
| WAS CASE REFERRED TO CORONER? (Yes or no) yes | |

| 26. MANNER OF DEATH ☐ Natural ☐ Pending Investigation ☒ Accident ☐ Could not be Determined ☐ Suicide ☐ Homicide | DATE OF INJURY (Month, Day, Year) 6/18/00 | TIME OF INJURY app. 8:30 a ☐ M | INJURY AT WORK? (Yes or no) no | DESCRIBE HOW INJURY OCCURRED thrown from auto |
|---|---|---|---|---|

| PLACE OF INJURY—At home, farm, street, factory, office (Specify) Hwy | LOCATION (Street and Number or Rural Route Number, City or Town, State) #278 near Jackson |
|---|---|

**CERTIFIER**

| 28a. TO BE COMPLETED BY CERTIFYING PHYSICIAN ONLY. To the best of my knowledge, death occurred at the time, date and place and due to the cause(s) stated. | 29a. TO BE COMPLETED BY CORONER ONLY. On the basis of examination and/or investigation in my opinion death occurred at the time, date and place and due to the cause(s) and manner stated. |
|---|---|

| (Signature and Title) | (Signature and Title) Coroner |
|---|---|

| DATE SIGNED (Month, Day, Year) June 20, 2000 | HOUR OF DEATH | DATE SIGNED (Month, Day, Year) June 18, 2000 | HOUR OF DEATH app 8:30a |
|---|---|---|---|

| NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print) | DATE PRONOUNCED DEAD (Month, Day, Year) June 18, 2000 | PRONOUNCED DEAD app 10:00 a |
|---|---|---|

| NAME AND ADDRESS OF CERTIFIER (PHYSICIAN OR CORONER) (Type or Print) Kenneth W. Brunkhorst - 300 South Atlantic - Dillon, Montana 59725 |
|---|

**REGISTRAR**

| LOCAL REGISTRAR'S SIGNATURE | DATE FILED (Month, Day, Year) June 26, 2000 |
|---|---|

**002386**

EXHIBIT 42, PAGE 1564

STATE OF MONTANA        ] ss
County of Beaverhead    ]
I hereby certify that the instrument to which
this certificate is annexed, is a true, complete
and correct copy of the original on file in my
office. Witness my hand and seal of office
_____ _____ _____
            Date
_____ _____ _____
       County Clerk and Recorder
By_____ _____ _____
              Deputy

002387        EXHIBIT 42, PAGE 1565

16

RECORDING REQUESTED BY:

Mrs. Sandra L. Bradley
9 Rae's Creek Lane
Coto de Caza, CA 92679

**Recorded in Official Records, County of Orange**
**Gary Granville, Clerk-Recorder**

20010753606 03:36pm 10/24/01
114 16 D10 2
0.00 0.00 0.00 0.00 2.00 0.00 0.00 0.00

WHEN RECORDED RETURN TO:
same as above

MAIL TAX STATEMENTS TO:
same as above

_____
(space above this line for recorder's use)
A.P.N.# 778 201-17
QUITCLAIM DEED

1T
2F
3N
1CF

The undersigned quitclaimer declares:  Documentary transfer tax is NONE.
No consideration given - Change in formal title only.
FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Sandra L. Bradley, AS HER SOLE AND SEPARATE PROPERTY** does hereby REMISE, RELEASE AND
FOREVER QUITCLAIM to Sandra L. Bradley trustee of the SANDRA L. BRADLEY TRUST dated
October 17, 2001 the real property in the City of (UNINCORPORATED AREA), County of
ORANGE commonly known as 9 Rae's Creek Lane, Coto de Caza, CA 92679.  Legal Description
is attached hereto and made a part hereof as Exhibit "A".

This conveyance is pursuant to Rev. & Tax Code Section 62(d)(2), does not constitute a
change in ownership and does not subject the property to reassessment.

Dated: 10/17/01

_Sandra L Bradley_
SANDRA L. BRADLEY

STATE OF CALIFORNIA        )
                          )ss.
COUNTY OF ORANGE          )

On 10-17-01 _____, before me, the undersigned, a Notary Public in and for
said State, personally appeared
SANDRA L. BRADLEY
Personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person who executed the within instrument and acknowledged to me that said persons
executed the same in her authorized capacity, and that by her signature on the
instrument the person, or the entity upon behalf of which the person acted, executed
the instrument.

WITNESS my hand and official seal.

_____
DEED BRADLEY bssss

DOROTHY SMETANA
Commission # 1237285
Notary Public - California
Orange County
My Comm. Expires Oct 22, 2003

Document Number: 20010753606 Page: 1 of 2

002388

EXHIBIT 42, PAGE 1566

LOTS 9-20 TRACT 15161

EXHIBIT "A"

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ORANGE, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 17 OF TRACT NO. 15161, AS SHOWN ON A MAP RECORDED IN BOOK 732, PAGES 45 TO 49
INCLUSIVE, OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

EXCEPTING THEREFROM ONE-HALF (1/2) OF ALL RIGHTS TO OIL, GAS, PETROLEUM, HYDROCARBON
SUBSTANCES AND OTHER MINERALS AND GASES BELOW A DEPTH OF 500 FEET MEASURED VERTICALLY
FROM THE PRESENT SURFACE OF SAID LAND, WITHOUT THE RIGHT OF SURFACE ENTRY AND WITHOUT
THE RIGHT OF ENTRY WITHIN SAID 500 FEET, AS RESERVED BY ERNEST A. BRYANT, JR., AND
JUDITH TILT BRYANT, HUSBAND AND WIFE, IN THE DEED RECORDED SEPTEMBER 24, 1963 IN BOOK
6729, PAGE 443 OF OFFICIAL RECORDS.

ALSO EXCEPTING ALL WATER RIGHTS OR INTERESTS IN WATER RIGHTS THAT MAY BE WITHIN, UNDER
OR ON THE PROPERTY, WHETHER SUCH WATER RIGHTS ARE RIPARIAN, OVERLYING, APPROPRIATIVE,
PERCOLATING, PRESCRIPTIVE OR CONTRACTUAL; PROVIDED, HOWEVER, THAT THE RESERVATION MADE
HEREIN SHALL NOT RESERVE TO OR FOR THE BENEFIT OF GRANTOR ANY RIGHT TO ENTER UPON THE
SURFACE OF THE PROPERTY IN THE EXERCISE OF SUCH RIGHTS, TOGETHER WITH THE RIGHT AND
POWER TO USE OR UTILIZE ON ANY OTHER PROPERTY OWNED OR LEASED BY GRANTOR ANY AND ALL
WATER RIGHTS OR INTERESTS IN WATER RIGHTS NO MATTER HOW ACQUIRED BY GRANTOR, AS
RESERVED IN THE DEED FROM COTO DE CAZA LTD., RECORDED NOVEMBER 9, 1995 AS INSTRUMENT
NO. 19950500138 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL WATER AND WATER RIGHTS, IF ANY, INCLUDED WITHIN SAID TRACT
AS DEDICATED TO THE SANTA MARGARITA WATER DISTRICT ON THE MAP OF SAID TRACT.

RESERVING THEREFROM, FOR THE BENEFIT OF GRANTOR AND OTHERS, NON-EXCLUSIVE EASEMENTS FOR
ACCESS, INGRESS, EGRESS, ENCROACHMENT, MAINTENANCE, REPAIR, DRAINAGE AND SUPPORT, AS
DESCRIBED IN THE RECORDED SUBDIVISION MAP FOR TRACT 15161 AND IN THE MASTER DECLARATION
AND THE SUPPLEMENTAL DECLARATION DEFINED BELOW.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, REPAIR, DRAINAGE,
ENCROACHMENT AND SUPPORT, ALL AS DESCRIBED IN THE MASTER DECLARATION OF COVENANTS,
CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR COTO DE CAZA ("MASTER
DECLARATION"), RECORDED MARCH 5, 1984 AS INSTRUMENT NO. 84-092424, AND THE NOTICE OF
ADDITION OF TERRITORY AND SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS,
RESTRICTIONS AND RESERVATION OF EASEMENTS FOR COTO DE CAZA ("SUPPLEMENTAL DECLARATION")
RECORDED MAY 7, 1996 AS INSTRUMENT NO. 19960229147 AND RE-RECORDED MAY 14, 1996 AS
INSTRUMENT NO. 19960242101 AND RE-RECORDED NOVEMBER 13, 1996 AS INSTRUMENT NO.
19960574009, ALL IN OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

* * * * * * * * * * * * * * * * *

Document Number: 20010753606 Page: 2 of 2

002389

EXHIBIT 42, PAGE 1567

*16.*

RECORDING REQUESTED BY
Mrs. Sandra L. Bradley
9 Rae's Creek Lane
Coto de Caza, CA 92679

Recorded in Official Records, County of Orange
Gary Granville, Clerk-Recorder

WHEN RECORDED MAIL TO
same as above

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 12.00
20010753552 03:25pm 10/24/01
114 16 A09 4
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

Mail Tax Statements to
same as above

### AFFIDAVIT - DEATH OF JOINT TENANT

STATE OF CALIFORNIA,
County of ORANGE

Sandra L. Bradley, of legal age, being first duly sworn, deposes and says:
That **CHARLES JAMES BRADLEY**, the decedent mentioned in the attached certified
copy of Certificate of Death, is the same person as **Charles J. Bradley** in that
certain Grant Deed dated ___11-21-96___, and executed by R. Lawrence Olin
& <u>Greg R. Petersen</u>, recorded as Instrument No. 19970061523 on 02/07-97 of
Official Records of **ORANGE** County, CA, covering **(See Exhibit "A" attached
hereto and by this reference made a part hereof)**.

Dated ___10/17/01___

SANDRA L. BRADLEY

SUBSCRIBED AND SWORN TO before me

this _17_ day of _October_

Signature _____

DOROTHY SMETANA
Commission # 1237285
Notary Public - California
Orange County
My Comm. Expires Oct 22, 2003

1*T*
4*P*
2*N*
1*CF*

Document Number: 20010753552 Page: 1 of 4

LOTS 9-20 TRACT 15161

EXHIBIT "A"

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ORANGE, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 17 OF TRACT NO. 15161, AS SHOWN ON A MAP RECORDED IN BOOK 732, PAGES 45 TO 49
INCLUSIVE, OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

EXCEPTING THEREFROM ONE-HALF (1/2) OF ALL RIGHTS TO OIL, GAS, PETROLEUM, HYDROCARBON
SUBSTANCES AND OTHER MINERALS AND GASES BELOW A DEPTH OF 500 FEET MEASURED VERTICALLY
FROM THE PRESENT SURFACE OF SAID LAND, WITHOUT THE RIGHT OF SURFACE ENTRY AND WITHOUT
THE RIGHT OF ENTRY WITHIN SAID 500 FEET, AS RESERVED BY ERNEST A. BRYANT, JR., AND
JUDITH TILT BRYANT, HUSBAND AND WIFE, IN THE DEED RECORDED SEPTEMBER 24, 1963 IN BOOK
6729, PAGE 443 OF OFFICIAL RECORDS.

ALSO EXCEPTING ALL WATER RIGHTS OR INTERESTS IN WATER RIGHTS THAT MAY BE WITHIN, UNDER
OR ON THE PROPERTY, WHETHER SUCH WATER RIGHTS ARE RIPARIAN, OVERLYING, APPROPRIATIVE,
PERCOLATING, PRESCRIPTIVE OR CONTRACTUAL; PROVIDED, HOWEVER, THAT THE RESERVATION MADE
HEREIN SHALL NOT RESERVE TO OR FOR THE BENEFIT OF GRANTOR ANY RIGHT TO ENTER UPON THE
SURFACE OF THE PROPERTY IN THE EXERCISE OF SUCH RIGHTS, TOGETHER WITH THE RIGHT AND
POWER TO USE OR UTILIZE ON ANY OTHER PROPERTY OWNED OR LEASED BY GRANTOR ANY AND ALL
WATER RIGHTS OR INTERESTS IN WATER RIGHTS NO MATTER HOW ACQUIRED BY GRANTOR, AS
RESERVED IN THE DEED FROM COTO DE CAZA LTD., RECORDED NOVEMBER 9, 1995 AS INSTRUMENT
NO. 19950500138 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL WATER AND WATER RIGHTS, IF ANY, INCLUDED WITHIN SAID TRACT
AS DEDICATED TO THE SANTA MARGARITA WATER DISTRICT ON THE MAP OF SAID TRACT.

RESERVING THEREFROM, FOR THE BENEFIT OF GRANTOR AND OTHERS, NON-EXCLUSIVE EASEMENTS FOR
ACCESS, INGRESS, EGRESS, ENCROACHMENT, MAINTENANCE, REPAIR, DRAINAGE AND SUPPORT, AS
DESCRIBED IN THE RECORDED SUBDIVISION MAP FOR TRACT 15161 AND IN THE MASTER DECLARATION
AND THE SUPPLEMENTAL DECLARATION DEFINED BELOW.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, REPAIR, DRAINAGE,
ENCROACHMENT AND SUPPORT, ALL AS DESCRIBED IN THE MASTER DECLARATION OF COVENANTS,
CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR COTO DE CAZA ("MASTER
DECLARATION"), RECORDED MARCH 5, 1984 AS INSTRUMENT NO. 84-092424, AND THE NOTICE OF
ADDITION OF TERRITORY AND SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS,
RESTRICTIONS AND RESERVATION OF EASEMENTS FOR COTO DE CAZA ("SUPPLEMENTAL DECLARATION")
RECORDED MAY 7, 1996 AS INSTRUMENT NO. 19960229147 AND RE-RECORDED MAY 14, 1996 AS
INSTRUMENT NO. 19960242101 AND RE-RECORDED NOVEMBER 13, 1996 AS INSTRUMENT NO.
19960574009, ALL IN OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

* * * * * * * * * * * * * * * * *

Document Number: 20010753552 Page: 2 of 4

EXHIBIT 42, PAGE 1569

FORM V.S. 3 (1986 revision)

**34**

MONTANA
CERTIFICATE OF DEATH

**8446**

Local File Number | State File Number

**DECEDENT**

| DECEDENT'S NAME (First) Charles | (Middle) James | (Last) Bradley Jr. | SEX Male | DATE OF DEATH (Month, Day, Year) June 18, 2000 |
|---|---|---|---|---|

| RACE—American Indian, Black, White, etc. (Specify) White | AGE—Last Birthday (Years) 64 | UNDER 1 YEAR / UNDER 1 DAY | DATE OF BIRTH (Month, Day Year) September 13, 1935 | COUNTY OF DEATH Beaverhead |

7b. PLACE OF DEATH (Check only one)

HOSPITAL: ☐ Inpatient  ☐ ER/Outpatient  ☐ DOA  OTHER: ☐ Nursing Home  ☐ Residence  ☒ Other (Specify)

| FACILITY NAME (If not institution, give street and number) Hwy #278 | CITY, TOWN, OR LOCATION OF DEATH Near Jackson |

| BIRTHPLACE (City and State or Foreign Country) Worthington, Minn. | MARITAL STATUS ☐ Never Married ☐ Widowed ☒ Married ☐ Divorced | SURVIVING SPOUSE (If wife, give maiden surname) Sandra L. Smith |

| SOCIAL SECURITY NUMBER 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 | DECEDENT'S USUAL OCCUPATION (Give kind of work done during most of working life. Do not give retired.) Management | KIND OF BUSINESS/INDUSTRY Construction engineering | WAS DECEDENT EVER IN U.S. ARMED FORCES? (Yes or no) No |

| RESIDENCE—STATE California | COUNTY Orange | CITY, TOWN, OR LOCATION Coto de Caza | STREET NUMBER 9 Rae's Creek Lane |

| INSIDE CITY LIMITS? (Yes or no) Yes | ZIP CODE 92679 | ANCESTRY—Mexican, Puerto Rican, Cuban, African, English, Irish-German, Hmong, etc. (Specify) English | DECEDENT'S EDUCATION (Specify only highest grade completed) Elementary/Secondary (0-12) | College (4 or 5 +) College |

**PARENTS**

| FATHER'S NAME (First, Middle, Last) Charles James Bradley | MOTHER'S NAME (First, Middle, Maiden Surname) Bernice Stone |

**INFORMANT**

| INFORMANT'S NAME (Type/Print) Sandra L. Bradley | MAILING ADDRESS (Street and Number or Rural Route Number, City or Town, State, Zip Code) 9 Rae's Creek Lane – Coto de Caza, CA 92679 |

**DISPOSITION**

| METHOD OF DISPOSITION ☐ Burial  ☒ Cremation  ☐ Removal from State | PLACE OF DISPOSITION (Name of cemetery, crematory, or other place) Butte Crematory Inc | LOCATION—City or Town, State Butte, Montana |

| SIGNATURE OF FUNERAL SERVICE LICENSEE OR OTHER PERSON IN CHARGE OF DISPOSITION | MONTANA LICENSE NUMBER (of Licensee) #381 | NAME AND ADDRESS OF FUNERAL HOME Brundage Funeral Home Inc. 300 South Atlantic Dillon, Montana 59725 |

**CAUSE OF DEATH**

23. PART I.  Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only the cause on each line. (See instructions on other side)

| | | Approximate Interval Between Onset and Death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | a. crushing injuries to the head & thoracic | sudden |
| | DUE TO (OR AS A CONSEQUENCE OF) | |
| Sequentially list conditions if any, leading to immediate cause. Enter Underlying cause (Disease or injury that initiated events resulting in death) Last | b. | |
| | DUE TO (OR AS A CONSEQUENCE OF) | |
| | c. | |
| | DUE TO (OR AS A CONSEQUENCE OF) | |

| PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I not wearing seat belt | WAS AN AUTOPSY PERFORMED? (Yes or no) no | WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? (Yes or no) |
| | WAS CASE REFERRED TO CORONER? (Yes or no) yes | |

| 26. MANNER OF DEATH ☐ Natural ☐ Pending Investigation ☒ Accident ☐ Could not be Determined ☐ Suicide ☐ Homicide | DATE OF INJURY (Month, Day, Year or Hour) 2/6/18/00 | TIME OF INJURY app. 8:30 a.m. | INJURY AT WORK? (Yes or no) no | DESCRIBE HOW INJURY OCCURRED thrown from auto |
| | PLACE OF INJURY—At home, farm, street, factory, office building, etc. (Specify) Hwy | LOCATION (Street and Number or Rural Route Number, City or Town, State) #278 near Jackson |

| 28a. TO BE COMPLETED BY CERTIFYING PHYSICIAN ONLY. To the best of my knowledge, death occurred at the time, date and place and due to the cause(s) stated | 29a. TO BE COMPLETED BY CORONER ONLY. On the basis of examination and/or investigation in my opinion death occurred at the time, date and place and due to the cause(s) and manner stated | |

**CERTIFIER**

| (Signature and Title) | (Signature and Title) Coroner |
| DATE SIGNED (Month, Day, Year) June 20, 2000 | HOUR OF DEATH | DATE SIGNED (Month, Day, Year) June 18, 2000 | HOUR OF DEATH app 8:30a |
| NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print) | DATE PRONOUNCED DEAD (Month, Day, Year) June 18, 2000 | PRONOUNCED DEAD app10:00a |
| NAME AND ADDRESS OF CERTIFIER (PHYSICIAN OR CORONER) (Type or Print) Kenneth W. Brunkhorst – 300 South Atlantic – Dillon, Montana 59725 | | |

**REGISTRAR**

| LOCAL REGISTRAR'S SIGNATURE | DATE FILED (Month, Day, Year) June 26, 2000 |

Document Number: 20010753552 Page: 3 of 4

STATE OF MONTANA   ] ss
County of Beaverhead ]
I hereby certify that the instrument to which
this certificate is annexed, is a true, complete
and correct copy of the original on file in my
office. Witness my hand and seal of office
_June 26_ of _2020_
_____
County Clerk and Recorder
BY _____ /Deputy

Document Number: 20010753552 Page: 4 of 4

002393                EXHIBIT 42, PAGE 1571

Order No. 9645696 - BL
Escrow No. 1949-JM
RECORDING REQUESTED BY
FIRST AMERICAN TITLE INS.
WHEN RECORDED MAIL TO:

Sandra L. Bradley
9 Rae's Creek Lane
Coto de Caza Ca 92679

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder

16.00
19970061523 04:30PM 02/07/97
004 17082363 17 17
G02 4 55 539.00 7.00 9.00 0.00 0.00 0.00 0.00
0.00 0.00

---

THE UNDERSIGNED DECLARES:
DOCUMENTARY TRANSFER TAX $ 539.—
XX Computed on the consideration or value of property conveyed;OR
__ Computed on the consideration or value less liens or encumbrances remaining at time of sale.

### G R A N T   D E E D

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

### POLYGON GLENEAGLES LIMITED PARTNERSHIP, A WASHINGTON LIMITED PARTNERSHIP

hereby GRANTS to: CHARLES J. BRADLEY AND SANDRA L. BRADLEY, HUSBAND AND WIFE AS COMMUNITY
PROPERTY

the real property in the   City of   (UNINCORPORATED AREA),   County of   ORANGE,
State of California, described as follows:

(DESCRIPTION)         LOT __17__ OF TRACT 15161, AS MORE PARTICULARLY DESCRIBED IN EXHIBIT "A"
ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE.

SUBJECT TO:

1. TAXES/ASSESSMENTS. NONDELINQUENT REAL PROPERTY TAXES AND ALL NONDELINQUENT UNPAID
GENERAL AND SPECIAL ASSESSMENTS;

2. RECORD/SURVEY MATTERS. COVENANTS, CONDITIONS, RESTRICTIONS, EASEMENTS, RESERVATIONS,
DEDICATIONS, RIGHTS AND RIGHTS-OF-WAY OF RECORD, INCLUDING WITHOUT LIMITATION, THE
MASTER DECLARATION, AND THE SUPPLEMENTAL DECLARATION.

3. GRANTEE ACKNOWLEDGMENT. GRANTEE, BY ACCEPTANCE AND RECORDATION OF THIS DEED,
EXPRESSLY ACCEPTS, COVENANTS, AND AGREES TO BE BOUND BY AND ASSUME PERFORMANCE OF ALL
APPLICABLE PROVISIONS SET FORTH HEREIN AND IN THE MASTER DECLARATION AND THE
SUPPLEMENTAL DECLARATION, WHICH PROVISIONS ARE ACKNOWLEDGED TO BE REASONABLE; AND
THIS GRANT IS EXPRESSLY SUBJECT TO THE PERFORMANCE OF SUCH PROVISIONS TO BE PERFORMED
BY GRANTEE THEREUNDER. RESTRICTIONS ON GRANTEE'S USE OF THE PROPERTY ARE SET FORTH IN
THIS DEED, THE MASTER DECLARATION, THE SUPPLEMENTAL DECLARATION AND THE RECORDED
SUBDIVISION MAP(S) FOR THE PROPERTY TO WHICH THIS CONVEYANCE IS SPECIFICALLY AND
EXPRESSLY MADE SUBJECT.

MAIL TAX STATEMENTS TO:     Sandra L. Bradley
9 Rae's Creek Lane
Coto de Caza Ca 92679

---

002394          EXHIBIT 42, PAGE 1572

DATED _11-21-96_

POLYGON GLENEAGLES LIMITED PARTNERSHIP,
A WASHINGTON LIMITED PARTNERSHIP

BY:   POLYGON COMMUNITIES, INC., A WASHINGTON
CORPORATION, ITS GENERAL PARTNER

BY:
ITS:      R. Lawrence Olin
          President

BY:
ITS:      Greg R. Petersen
          Vice President

STATE OF CALIFORNIA      )
                         )ss.
COUNTY OF ORANGE         )

On _____, before me, the undersigned, a Notary Public in and for said State, personally

appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

EXHIBIT 42, PAGE 1573

STATE OF CALIFORNIA  } } SS.
COUNTY OF ORANGE  }

On ___November 21, 1996___, before me, **Charlotte L. Baxter** personally appeared___R. Lawrence Olin and Greg R. Petersen_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

(This area for official notarial seal)

CHARLOTTE L. BAXTER
COMM. # 1058533
Notary Public — California
ORANGE COUNTY
My Comm. Expires MAY 10, 1999

002396                    EXHIBIT 42, PAGE 1574

LOTS 9-20 TRACT 15161

EXHIBIT "A"

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ORANGE, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 17 OF TRACT NO. 15161, AS SHOWN ON A MAP RECORDED IN BOOK 732, PAGES 45 TO 49
INCLUSIVE, OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

EXCEPTING THEREFROM ONE-HALF (1/2) OF ALL RIGHTS TO OIL, GAS, PETROLEUM, HYDROCARBON
SUBSTANCES AND OTHER MINERALS AND GASSES BELOW A DEPTH OF 500 FEET MEASURED VERTICALLY
FROM THE PRESENT SURFACE OF SAID LAND, WITHOUT THE RIGHT OF SURFACE ENTRY AND WITHOUT
THE RIGHT OF ENTRY WITHIN SAID 500 FEET, AS RESERVED BY ERNEST A. BRYANT, JR., AND
JUDITH TILT BRYANT, HUSBAND AND WIFE, IN THE DEED RECORDED SEPTEMBER 24, 1963 IN BOOK
6729, PAGE 443 OF OFFICIAL RECORDS.

ALSO EXCEPTING ALL WATER RIGHTS OR INTERESTS IN WATER RIGHTS THAT MAY BE WITHIN, UNDER
OR ON THE PROPERTY, WHETHER SUCH WATER RIGHTS ARE RIPARIAN, OVERLYING, APPROPRIATIVE,
PERCOLATING, PRESCRIPTIVE OR CONTRACTUAL; PROVIDED, HOWEVER, THAT THE RESERVATION MADE
HEREIN SHALL NOT RESERVE TO OR FOR THE BENEFIT OF GRANTOR ANY RIGHT TO ENTER UPON THE
SURFACE OF THE PROPERTY IN THE EXERCISE OF SUCH RIGHTS, TOGETHER WITH THE RIGHT AND
POWER TO USE OR UTILIZE ON ANY OTHER PROPERTY OWNED OR LEASED BY GRANTOR ANY AND ALL
WATER RIGHTS OR INTERESTS IN WATER RIGHTS NO MATTER HOW ACQUIRED BY GRANTOR, AS
RESERVED IN THE DEED FROM COTO DE CAZA LTD., RECORDED NOVEMBER 9, 1995 AS INSTRUMENT
NO. 19950500138 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL WATER AND WATER RIGHTS, IF ANY, INCLUDED WITHIN SAID TRACT
AS DEDICATED TO THE SANTA MARGARITA WATER DISTRICT ON THE MAP OF SAID TRACT.

RESERVING THEREFROM, FOR THE BENEFIT OF GRANTOR AND OTHERS, NON-EXCLUSIVE EASEMENTS FOR
ACCESS, INGRESS, EGRESS, ENCROACHMENT, MAINTENANCE, REPAIR, DRAINAGE AND SUPPORT, AS
DESCRIBED IN THE RECORDED SUBDIVISION MAP FOR TRACT 15161 AND IN THE MASTER DECLARATION
AND THE SUPPLEMENTAL DECLARATION DEFINED BELOW.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, REPAIR, DRAINAGE,
ENCROACHMENT AND SUPPORT, ALL AS DESCRIBED IN THE MASTER DECLARATION OF COVENANTS,
CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR COTO DE CAZA ("MASTER
DECLARATION"), RECORDED MARCH 5, 1984 AS INSTRUMENT NO. 84-092424, AND THE NOTICE OF
ADDITION OF TERRITORY AND SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS,
RESTRICTIONS AND RESERVATION OF EASEMENTS FOR COTO DE CAZA ("SUPPLEMENTAL DECLARATION")
RECORDED MAY 7, 1996 AS INSTRUMENT NO. 19960229147 AND RE-RECORDED MAY 14, 1996 AS
INSTRUMENT NO. 19960242101 AND RE-RECORDED NOVEMBER 13, 1996 AS INSTRUMENT NO.
19960574009, ALL IN OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

* * * * * * * * * * * * * *



002397            EXHIBIT 42, PAGE 1575

I hereby certify the foregoing instrument consisting of 4 page(s)
is a true and correct copy of the original on file in this court.

**MAR 1 6 2022**

ATTEST: (DATE)
DAVID H. YAMASAKI, EXECUTIVE OFFICER AND CLERK OF THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

BY_____ DEPUTY

BERENICE FUENTES

002398          EXHIBIT 42, PAGE 1576

**EXHIBIT 3**

002399                    EXHIBIT 42, PAGE 1577

Electronically Filed by Superior Court of California, County of Orange, 05/12/2021 08:55:00 AM.
30-2017-00915711-PR-LA-CJC - ROA # 143 - DAVID H. YAMASAKI, Clerk of the Court By e Clerk, Deputy Clerk.

RECORDING REQUESTED BY

Jamie Lynn Gallian
16222 Monterey Ln. #376
Huntington Beach, CA 92649

THIS SPACE FOR RECORDERS USE ONLY

## AFFIDAVIT, DEATH OF GRANTOR OF INTERFAMILY TRANSFER GRANT DEED

JAMIE LYNN GALLIAN, BEING OF LEGAL AGE, BEING FIRST SWORN, DEPOSES AND SAYS:

THAT THE DECEDENT, CHARLES JAMES BRADLEY, JR. DIED ON 6-18-2000.  THAT THE DECEDENT, CHARLES

JAMES BRADLEY, JR. IS THE SAME PERSON AS CHARLES J. BRADLEY, AND CHARLES J. BRADLEY, JR.,

MENTIONED IN THE ATTACHED CERTIFIED COPY OF CERTIFICATE OF DEATH, MONTANA, STATE FILE NO. 8446.

**THAT CHARLES JAMES BRADLEY JR., IS THE SAME PERSON AS CHARLES J. BRADLEY IN THAT
RECORDED GRANT DEED DATED 11/21/1996  CHARLES J BRADLEY AND SANDRA L BRADLEY, HUSBAND AND
WIFE AS COMMUNITY PROPERTY, EXECUTED BY POLYGON GLENEAGLES LIMITED PARTNERSHIP, BY
POLYGON COMMUNITIES, INC., IT'S GENERAL PARTNERS R. LAWRENCE OLIN AND GREG R. PETERSON,
RECORDED IN THE COUNTY OF ORANGE, CALIFORNIA, OFFICIAL RECORDS OF THE CLERK RECORDER ON
02/07/1997, AS INSTRUMENT NO. 19970061523. ATTACHED HERETO, EXHIBIT "A" AND MADE A PART
HEREIN.**

THAT CHARLES JAMES BRADLEY, JR. IS THE SAME PERSON AS CHARLES BRADLEY JR., GRANTOR, THAT
CERTAIN UNRECORDED <u>INTERFAMILY TRANSFER GRANT DEED DATED JUNE 9, 1999,</u>
EXECUTED BY CHARLES BRADLEY JR.(GRANTOR) HEREIN GRANTS TO JAMIE LYNN GALLIAN (GRANTEE), ONE-
HALF OF THE COMMUNITY PROPERTY INTEREST, IN THAT CERTAIN GRANT DEED, RECORDED 02/07/1997, AS
INSTRUMENT NO. 19970061523. ATTACHED HERETO, EXHIBIT "B" AND MADE A PART THERETO.

State of California, County of Orange.

On _____, before me _____, a Notary Public in and for the State of
California, personally appeared, JAMIE LYNN GALLIAN, personally known to me or proved to me on the
basis of satisfactory evidence to the person whose  name is subscribed to the within instrument and
acknowledged to me that she executed the same in her authorized capacity, and that by her signature
on the instrument the person or the entity upon behalf of which the person acted, executed the
instrument.

Witness my hand and official seal

*Jamie Lynn Gallian*
JAMIE LYNN Gallian

Dated this 25th day of February
2021

Signature _____
Notary Public in and for the State of California

See Attached Ack nonledgment

EXHIBIT 42, PAGE 1578

## ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California
County of _____Orange_____ )

On _2/25/21_____ before me, _Greg Buysman, Notary Public____
                                         (insert name and title of the officer)

personally appeared _Jamie Lynn Gallian_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

GREG BUYSMAN
COMM # 2341449
ORANGE County
California Notary Public
Comm Exp Feb. 5, 2025

Signature_____     (Seal)

002401        EXHIBIT 42, PAGE 1579

FORM V.S. 3 (1988 revision)

**34**

Local File Number

MONTANA
CERTIFICATE OF DEATH

**8446**

State File Number

| DECEDENT'S NAME (First) Charles | (Middle) James | (Last) Bradley Jr. | SEX Male | DATE OF DEATH (Month, Day, Year) June 18, 2000 |
|---|---|---|---|---|

| RACE—American Indian, Black, White, etc. (Specify) White | AGE—Last Birthday (Years) 64 | UNDER 1 YEAR Months Days | UNDER 1 DAY Hours Min. | DATE OF BIRTH (Month, Day, Year) September 13, 1935 | COUNTY OF DEATH Beaverhead |
|---|---|---|---|---|---|

**DECEDENT**

7b. PLACE OF DEATH (Check only one)

HOSPITAL: ☐ Inpatient   ☐ ER/Outpatient   ☐ DOA   OTHER: ☐ Nursing Home   ☐ Residence   ☒ Other (Specify)

| FACILITY NAME (If not institution, give street and number) Hwy #278 | CITY, TOWN, OR LOCATION OF DEATH Near Jackson |
|---|---|

| BIRTHPLACE (City and State or Foreign Country) Worthington, Minn. | MARITAL STATUS ☐ Never Married ☐ Widowed ☒ Married ☐ Divorced | SURVIVING SPOUSE (If wife, give maiden surname) Sandra L. Smith |
|---|---|---|

| SOCIAL SECURITY NUMBER 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 | DECEDENT'S USUAL OCCUPATION (Give kind of work done during most of working life. Do not use retired.) Management | KIND OF BUSINESS/INDUSTRY Construction engineering | WAS DECEDENT EVER IN U.S. ARMED FORCES? (Yes or no) No |
|---|---|---|---|

| RESIDENCE—STATE California | COUNTY Orange | CITY, TOWN, OR LOCATION Coto de Caza | STREET NUMBER 9 Rae's Creek Lane |
|---|---|---|---|

| INSIDE CITY LIMITS? (Yes or no) Yes | ZIP CODE 92679 | ANCESTRY—Mexican, Puerto Rican, Cuban, African, English, Irish-German, Hmong, etc. (Specify) English | 16. DECEDENT'S EDUCATION (Specify only highest grade completed) Elementary/Secondary (0-12)   College (1-4 or 5+) College |
|---|---|---|---|

**PARENTS**

| FATHER'S NAME (First, Middle, Last) Charles James Bradley | MOTHER'S NAME (First, Middle, Maiden Surname) Bernice Stone |
|---|---|

**INFORMANT**

| INFORMANT'S NAME (Type/Print) Sandra L. Bradley | MAILING ADDRESS (Street and Number or Rural Route Number, City or Town, State, Zip Code) 9 Rae's Creek Lane - Coto de Caza, CA 92679 |
|---|---|

**DISPOSITION**

METHOD OF DISPOSITION  ☐ Burial   ☒ Cremation   ☐ Removal from State   ☐ Other (Specify)

| PLACE OF DISPOSITION (Name of cemetery, crematory, or other place) Butte Crematory Inc | LOCATION—City or Town, State Butte, Montana |
|---|---|

| SIGNATURE OF FUNERAL SERVICE LICENSEE OR OTHER PERSON IN CHARGE OF DISPOSITION | MONTANA LICENSE NUMBER (of Licensee) #381 | NAME AND ADDRESS OF FACILITY Brundage Funeral Home Inc. 300 South Atlantic Dillon, Montana 59725 |
|---|---|---|

**CAUSE OF DEATH**

23. PART I. Enter the disease, injury, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line. (See instructions on other side)

| | | Approximate Interval Between Onset and Death. |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) a. crushing injuries to the head & thoracic | | sudden |
| DUE TO (OR AS A CONSEQUENCE OF) | | |
| Sequentially list conditions if any, leading to immediate cause above. Enter Underlying Cause (Disease or injury that initiated events resulting in death) Last b. | | |
| DUE TO (OR AS A CONSEQUENCE OF) c. | | |
| DUE TO (OR AS A CONSEQUENCE OF) d. | | |

| PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. not wearing seat belt | WAS AN AUTOPSY PERFORMED? (Yes or no) no | 24b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? (Yes or no) |
|---|---|---|
| | WAS CASE REFERRED TO CORONER? (Yes or no) yes | |

| 26 MANNER OF DEATH ☐ Natural ☐ Pending Investigation ☒ Accident ☐ Could not be Determined ☐ Suicide ☐ Homicide | DATE OF INJURY (Month, Day, Year) 6/18/00 | TIME OF INJURY 8PP. 8:30 a.m. | INJURY AT WORK? (Yes or no) no | DESCRIBE HOW INJURY OCCURRED thrown from auto |
|---|---|---|---|---|
| | PLACE OF INJURY—At home, farm, street, factory, office building, etc. (Specify) Hwy | | | LOCATION (Street and Number or Rural Route Number, City or Town, State) #278 near Jackson |

**CERTIFIER**

| 28a. TO BE COMPLETED BY CERTIFYING PHYSICIAN ONLY. To the best of my knowledge, death occurred at the time, date and place and due to the cause(s) stated | 29a. TO BE COMPLETED BY CORONER ONLY. On the basis of examination and/or investigation in my opinion death occurred at the time, date and place and due to the cause(s) and manner as stated |
|---|---|
| (Signature and Title) | (Signature and Title) Coroner |
| DATE SIGNED (Month, Day, Year) | HOUR OF DEATH | DATE SIGNED (Month, Day, Year) June 20, 2000 | HOUR OF DEATH app 8:30a |
| NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print) | DATE PRONOUNCED DEAD (Month, Day, Year) June 18, 2000 | PRONOUNCED DEAD (Hour) app 10:00a |
| NAME AND ADDRESS OF CERTIFIER (PHYSICIAN OR CORONER) (Type or Print) Kenneth W. Brunkhorst - 300 South Atlantic - Dillon, Montana 59725 | | |

**REGISTRAR**

| LOCAL REGISTRAR'S SIGNATURE | DATE FILED (Month, Day, Year) June 26, 2000 |
|---|---|

EXHIBIT 42, PAGE 1580

# EXHIBIT A

# EXHIBIT A

Order No. 9645696 -BH
Escrow No. 1949-JM
RECORDING REQUESTED BY
FIRST AMERICAN TITLE INS.
WHEN RECORDED MAIL TO:

Sandra L. Bradley
9 Rae's Creek Lane
Coto de Caza Ca 92679

Recorded in the County of Orange, California
Gary L. Granville, Clerk/Recorder
‖‖‖‖‖‖‖‖‖‖ 16.00
19970061523 04:30PM 02/07/97
004 17002363 17 17
002 4 55 539.00 7.00 0.00 0.00 0.00 0.00 0.00
0.00 0.00

THE UNDERSIGNED DECLARES:
DOCUMENTARY TRANSFER TAX $ 539.-
XX Computed on the consideration or value of property conveyed;OR
__ Computed on the consideration or value less liens or encumbrances remaining at time of sale.

G R A N T   D E E D

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**POLYGON GLENEAGLES LIMITED PARTNERSHIP, A WASHINGTON LIMITED PARTNERSHIP**

hereby GRANTS to: CHARLES J. BRADLEY AND SANDRA L. BRADLEY, HUSBAND AND WIFE AS COMMUNITY
PROPERTY

the real property in the   City of   (UNINCORPORATED AREA), County of    ORANGE,
State of California, described as follows:

(DESCRIPTION)          LOT  17  OF TRACT 15161, AS MORE PARTICULARLY DESCRIBED IN EXHIBIT "A"
ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE.

SUBJECT TO:

1. TAXES/ASSESSMENTS. NONDELINQUENT REAL PROPERTY TAXES AND ALL NONDELINQUENT UNPAID
GENERAL AND SPECIAL ASSESSMENTS;

2. RECORD/SURVEY MATTERS. COVENANTS, CONDITIONS, RESTRICTIONS, EASEMENTS, RESERVATIONS,
DEDICATIONS, RIGHTS AND RIGHTS-OF-WAY OF RECORD, INCLUDING WITHOUT LIMITATION, THE
MASTER DECLARATION, AND THE SUPPLEMENTAL DECLARATION.

3. GRANTEE ACKNOWLEDGMENT. GRANTEE, BY ACCEPTANCE AND RECORDATION OF THIS DEED,
EXPRESSLY ACCEPTS, COVENANTS, AND AGREES TO BE BOUND BY AND ASSUME PERFORMANCE OF ALL
APPLICABLE PROVISIONS SET FORTH HEREIN AND IN THE MASTER DECLARATION AND THE
SUPPLEMENTAL DECLARATION, WHICH PROVISIONS ARE ACKNOWLEDGED TO BE REASONABLE; AND
THIS GRANT IS EXPRESSLY SUBJECT TO THE PERFORMANCE OF SUCH PROVISIONS TO BE PERFORMED
BY GRANTEE THEREUNDER. RESTRICTIONS ON GRANTEE'S USE OF THE PROPERTY ARE SET FORTH IN
THIS DEED, THE MASTER DECLARATION, THE SUPPLEMENTAL DECLARATION AND THE RECORDED
SUBDIVISION MAP(S) FOR THE PROPERTY TO WHICH THIS CONVEYANCE IS SPECIFICALLY AND
EXPRESSLY MADE SUBJECT.

MAIL TAX STATEMENTS TO:     Sandra L. Bradley
9 Rae's Creek Lane
Coto de Caza Ca 92679

EXHIBIT 42, PAGE 1582

DATED   _11-21-96_

POLYGON GLENEAGLES LIMITED PARTNERSHIP,
A WASHINGTON LIMITED PARTNERSHIP

BY:   POLYGON COMMUNITIES, INC., A WASHINGTON
CORPORATION, ITS GENERAL PARTNER

BY:       R. Lawrence Olin
ITS:      President

BY:       Greg R. Petersen
ITS:      Vice President

STATE OF CALIFORNIA          )
                             )ss.
COUNTY OF ORANGE             )

On _____, before me, the undersigned, a Notary Public in and for said State, personally

appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

STATE OF CALIFORNIA        } SS.
COUNTY OF ORANGE       }

On  November 21, 1996  , before me, **Charlotte L. Baxter** personally appeared R. Lawrence Olin and Greg R. Petersen
, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

(This area for official notarial seal)

CHARLOTTE L. BAXTER
COMM. # 1058533
Notary Public — California
ORANGE COUNTY
My Comm. Expires MAY 10, 1999

002406        EXHIBIT 42, PAGE 1584

LOTS 9-20 TRACT 15161

EXHIBIT "A"

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ORANGE, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 17 OF TRACT NO. 15161, AS SHOWN ON A MAP RECORDED IN BOOK 732, PAGES 45 TO 49 INCLUSIVE, OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

EXCEPTING THEREFROM ONE-HALF (1/2) OF ALL RIGHTS TO OIL, GAS, PETROLEUM, HYDROCARBON SUBSTANCES AND OTHER MINERALS AND GASES BELOW A DEPTH OF 500 FEET MEASURED VERTICALLY FROM THE PRESENT SURFACE OF SAID LAND, WITHOUT THE RIGHT OF SURFACE ENTRY AND WITHOUT THE RIGHT OF ENTRY WITHIN SAID 500 FEET, AS RESERVED BY ERNEST A. BRYANT, JR., AND JUDITH TILT BRYANT, HUSBAND AND WIFE, IN THE DEED RECORDED SEPTEMBER 24, 1963 IN BOOK 6729, PAGE 443 OF OFFICIAL RECORDS.

ALSO EXCEPTING ALL WATER RIGHTS OR INTERESTS IN WATER RIGHTS THAT MAY BE WITHIN, UNDER OR ON THE PROPERTY, WHETHER SUCH WATER RIGHTS ARE RIPARIAN, OVERLYING, APPROPRIATIVE, PERCOLATING, PRESCRIPTIVE OR CONTRACTUAL; PROVIDED, HOWEVER, THAT THE RESERVATION MADE HEREIN SHALL NOT RESERVE TO OR FOR THE BENEFIT OF GRANTOR ANY RIGHT TO ENTER UPON THE SURFACE OF THE PROPERTY IN THE EXERCISE OF SUCH RIGHTS, TOGETHER WITH THE RIGHT AND POWER TO USE OR UTILIZE ON ANY OTHER PROPERTY OWNED OR LEASED BY GRANTOR ANY AND ALL WATER RIGHTS OR INTERESTS IN WATER RIGHTS NO MATTER HOW ACQUIRED BY GRANTOR, AS RESERVED IN THE DEED FROM COTO DE CAZA LTD., RECORDED NOVEMBER 9, 1995 AS INSTRUMENT NO. 19950500138 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL WATER AND WATER RIGHTS, IF ANY, INCLUDED WITHIN SAID TRACT AS DEDICATED TO THE SANTA MARGARITA WATER DISTRICT ON THE MAP OF SAID TRACT.

RESERVING THEREFROM, FOR THE BENEFIT OF GRANTOR AND OTHERS, NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, ENCROACHMENT, MAINTENANCE, REPAIR, DRAINAGE AND SUPPORT, AS DESCRIBED IN THE RECORDED SUBDIVISION MAP FOR TRACT 15161 AND IN THE MASTER DECLARATION AND THE SUPPLEMENTAL DECLARATION DEFINED BELOW.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, REPAIR, DRAINAGE, ENCROACHMENT AND SUPPORT, ALL AS DESCRIBED IN THE MASTER DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR COTO DE CAZA ("MASTER DECLARATION"), RECORDED MARCH 5, 1984 AS INSTRUMENT NO. 84-092424, AND THE NOTICE OF ADDITION OF TERRITORY AND SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR COTO DE CAZA ("SUPPLEMENTAL DECLARATION") RECORDED MAY 7, 1996 AS INSTRUMENT NO. 19960229147 AND RE-RECORDED MAY 14, 1996 AS INSTRUMENT NO. 19960242101 AND RE-RECORDED NOVEMBER 13, 1996 AS INSTRUMENT NO. 19960574009, ALL IN OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

RECORDING REQUESTED BY
Mr. C.J. Bradley, Jr.
3333 Michelson Drive 10th
Floor
Irvine, CA 92612


When recorded mail to

Ms.J. Gallian
837 So. Danbrook Drive
Anaheim, CA 92804

APN: 778-201-17                    SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

## INTRA-FAMILY TRANSFER GRANT DEED

GRANTOR declares Documentary transfer tax is NONE
[  ]    Computed on full value of property conveyed, or
[  ]    Computed on full value less value of liens and encumbrances remaining at time of sale.
This transfer is exempt from documentary transfer tax under the provisions of R&T 11911 for the following reason;
This transfer is a bona fide gift between family members.  The GRANTOR received nothing in return Rev & T C §§63.1 (a)
(1 ).  63.1 (a)(2).

        FOR NO CONSIDERATION, CHARLES BRADLEY JR. ("the GRANTOR") with an address of
9 Rae's Creek Road, Coto de Caza, California 92679, hereby grants and conveys GRANTORS UNDIVIDED ONE-HALF
INTEREST, separate property, by Intra Family Gift Grant Deed to:

     JAMIE LYNN GALLIAN, (the "GRANTEE") a Single Woman, as her sole and separate property

        with an address of 837 So. Danbrook Drive, Anaheim, California 92804, an undivided one-half interest in the
Grantor's Separate Community Property in that Certain Grant Deed dated 11/21/1996, executed by R. Lawrence Olin and
Greg R. Peterson, recorded on 02/07/1997, in Official Records of the Clerk Recorder of said County as Instrument No.
19970061523, attached hereto and made a part herein, described as follows:

        Lot 17 of Tract No. 15161, in the City of Coto de Caza, an unincorporated area of Orange County, California, as
per map recorded in Miscellaneous Maps, Book 732, Page(s) 45-49, inclusive, in the office of the County Recorder of said
County. Legal Description Exhibit "A" is made a part herein and is attached hereto.

Dated June 7, 1999

STATE OF CALIFORNIA
COUNTY OF _Orange_                           SS

On _June 9, 1999_____ before me
_Tiffany Diane Koebrick_
a Notary Public in and for said County and State,
personally appeared
_Charles Bradley Jr._____
personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies) and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted executed the instrument

WITNESS my hand and official seal

Signature _Tiffany Diane Koebrick_

_Charles Bradley Jr._
CHARLES BRADLEY, JR

(This                    TIFFANY DIANE KOEBRICK
                         COMM. #1214684
                         NOTARY PUBLIC CALIFORNIA
                         ORANGE COUNTY
                         My Term Exp April 1 2003

CERTIFICATE OF LIVE BIRTH
STATE OF CALIFORNIA - DEPARTMENT OF PUBLIC HEALTH

State California
LOCAL NUMBER 7058
060458

NAME OF CHILD: Jamie Lynn Peters

SEX: Female   Single   DATE OF BIRTH: November 16, 1962   HOUR: 8:26P

PLACE OF BIRTH: St. Francis Hospital   3630 Imperial Highway   Los Angeles

MOTHER OF CHILD: Peters   Patricia   Mary   Rowe   White
AGE OF MOTHER: 21   BIRTHPLACE: Waukegan, Illinois

USUAL RESIDENCE OF MOTHER: 5108 Clara   Cudahy   Los Angeles   California

FATHER OF CHILD: Charles   James   Bradley Jr   White
AGE OF FATHER: 27   BIRTHPLACE: Worthington, Minnesota   Office Support Staff   Constr. Engineering

INFORMANT'S CERTIFICATION: Patricia M. Peters
Charles J. Bradley

REGISTRAR'S CERTIFICATION: November 29, 1962

Bell, California

Filed DEC 21 1962 RAY E. LEE, COUNTY RECORDER

EXHIBIT 42, PAGE 1587

LOTS 9-20 TRACT 15161

EXHIBIT "A"

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ORANGE, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 17 OF TRACT NO. 15161, AS SHOWN ON A MAP RECORDED IN BOOK 732, PAGES 45 TO 49
INCLUSIVE, OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

EXCEPTING THEREFROM ONE-HALF (1/2) OF ALL RIGHTS TO OIL, GAS, PETROLEUM, HYDROCARBON
SUBSTANCES AND OTHER MINERALS AND GASES BELOW A DEPTH OF 500 FEET MEASURED VERTICALLY
FROM THE PRESENT SURFACE OF SAID LAND, WITHOUT THE RIGHT OF SURFACE ENTRY AND WITHOUT
THE RIGHT OF ENTRY WITHIN SAID 500 FEET, AS RESERVED BY ERNEST A. BRYANT, JR., AND
JUDITH TILT BRYANT, HUSBAND AND WIFE, IN THE DEED RECORDED SEPTEMBER 24, 1963 IN BOOK
6729, PAGE 443 OF OFFICIAL RECORDS.

ALSO EXCEPTING ALL WATER RIGHTS OR INTERESTS IN WATER RIGHTS THAT MAY BE WITHIN, UNDER
OR ON THE PROPERTY, WHETHER SUCH WATER RIGHTS ARE RIPARIAN, OVERLYING, APPROPRIATIVE,
PERCOLATING, PRESCRIPTIVE OR CONTRACTUAL; PROVIDED, HOWEVER, THAT THE RESERVATION MADE
HEREIN SHALL NOT RESERVE TO OR FOR THE BENEFIT OF GRANTOR ANY RIGHT TO ENTER UPON THE
SURFACE OF THE PROPERTY IN THE EXERCISE OF SUCH RIGHTS, TOGETHER WITH THE RIGHT AND
POWER TO USE OR UTILIZE ON ANY OTHER PROPERTY OWNED OR LEASED BY GRANTOR ANY AND ALL
WATER RIGHTS OR INTERESTS IN WATER RIGHTS NO MATTER HOW ACQUIRED BY GRANTOR, AS
RESERVED IN THE DEED FROM COTO DE CAZA LTD., RECORDED NOVEMBER 9, 1995 AS INSTRUMENT
NO. 19950500138 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM ALL WATER AND WATER RIGHTS, IF ANY, INCLUDED WITHIN SAID TRACT
AS DEDICATED TO THE SANTA MARGARITA WATER DISTRICT ON THE MAP OF SAID TRACT.

RESERVING THEREFROM, FOR THE BENEFIT OF GRANTOR AND OTHERS, NON-EXCLUSIVE EASEMENTS FOR
ACCESS, INGRESS, EGRESS, ENCROACHMENT, MAINTENANCE, REPAIR, DRAINAGE AND SUPPORT, AS
DESCRIBED IN THE RECORDED SUBDIVISION MAP FOR TRACT 15161 AND IN THE MASTER DECLARATION
AND THE SUPPLEMENTAL DECLARATION DEFINED BELOW.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, MAINTENANCE, REPAIR, DRAINAGE,
ENCROACHMENT AND SUPPORT, ALL AS DESCRIBED IN THE MASTER DECLARATION OF COVENANTS,
CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR COTO DE CAZA ("MASTER
DECLARATION"), RECORDED MARCH 5, 1984 AS INSTRUMENT NO. 84-092424, AND THE NOTICE OF
ADDITION OF TERRITORY AND SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS,
RESTRICTIONS AND RESERVATION OF EASEMENTS FOR COTO DE CAZA ("SUPPLEMENTAL DECLARATION")
RECORDED MAY 7, 1996 AS INSTRUMENT NO. 19960229147 AND RE-RECORDED MAY 14, 1996 AS
INSTRUMENT NO. 19960242101 AND RE-RECORDED NOVEMBER 13, 1996 AS INSTRUMENT NO.
19960574009, ALL IN OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

*  *  *  *  *  *  *  *  *  *  *  *  *  *

    EXHIBIT 42, PAGE 1588

POS-050/EFS-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY:   STATE BAR NO: | FOR COURT USE ONLY |
|---|---|
| NAME: JAMIE LYNN GALLIAN | |

FIRM NAME:
STREET ADDRESS: 16222 MONTEREY LANE #376
CITY: HUNTINGTN BEACH    STATE: CA    ZIP CODE: 92649
TELEPHONE NO.: 714-321-3449    FAX NO.:
E-MAIL ADDRESS: JAMIEGALLIAN@GMAIL.COM
ATTORNEY FOR (name): IN PRO PER

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORNAGE
STREET ADDRESS: 700 CIVIC CENTER DRIVE
MAILING ADDRESS:
CITY AND ZIP CODE:    SANTA ANA, CA 92701
BRANCH NAME:   CENTRAL JUSTICE CENTER

PLAINTIFF/PETITIONER: JAMIE LYNN GALLIAN

DEFENDANT/RESPONDENT:    IN THE ESTATE OF CHARLES BRADLEY

| PROOF OF ELECTRONIC SERVICE | CASE NUMBER:<br>30-2017-00915711 |
|---|---|
| | JUDICIAL OFFICER: |
| | DEPARTMENT:<br>C08 |

1. I am at least 18 years old.

   a. My residence or business address is (specify):
     5801 SKYLAB HUNTINGTON BEACH, CA 92647

   b. My electronic service address is (specify):
     BOBWENTFLYING@YAHOO.COM

2. I electronically served the following documents (exact titles):
PETITION FOR HEIRSHIP AND DECLARATION OF JAMIE LYNN GALLIAN
*Affidavit of Death Inter family Grant Deed.*

   ☐ The documents served are listed in an attachment. (Form POS-050(D)/EFS-050(D) may be used for this purpose.)

3. I electronically served the documents listed in 2 as follows:
   a. Name of person served: GIANNA GRUENWALD

   On behalf of (name or names of parties represented, if person served is an attorney):
   SANDRA L. BRADLEY, ADMINISTRATOR

   b. Electronic service address of person served :
   GIANNA@ROSSLLP.COM

   c. On (date):

   ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment.
   (Form POS-050(P)/EFS-050(P) may be used for this purpose.)

Date: 5-12-2021

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

ROBERT MCLELLAND                                      *Robert Mclelland*
  (TYPE OR PRINT NAME OF DECLARANT)                    (SIGNATURE OF DECLARANT)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
POS-050/EFS-050 [Rev. February 1, 2017]

**PROOF OF ELECTRONIC SERVICE**
(Proof of Service/Electronic Filing and Service)

Cal. Rules of Court, rule 2.251
www.courts.ca.gov

I hereby certify the foregoing instrument consisting of 12 page(s)
is a true and correct copy of the original on file in this court.

ATTEST: (DATE)        MAR 16 2022

DAVID H. YAMASAKI, EXECUTIVE OFFICER AND CLERK OF THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

BY _____ , DEPUTY

BERENICE FUENTES

002412                    EXHIBIT 42, PAGE 1590

**EXHIBIT 4**

002413                    EXHIBIT 42, PAGE 1591



DTN:                          12313525

Decal:                        LBM1081

Unit ID:                      252606085

Trans Type:                   R/O Transfer - No Sale

Trans Date:                   07/14/2021

Trade Name:                   CUSTOM VILLA

Serial #:                     AC7V710394GA, AC7V710394GB

Insignia #                    PFS1130281, PFS1130282

Status Date:      08/02/2021      User Name:      SHAH, KIRAN

EXHIBIT 42, PAGE 1593

**STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
**CERTIFICATE OF TITLE**

Manufactured Home                                    **Decal:   LBM1081**

| Manufacturer ID/Name | | Trade Name | Model | | DOM | DFS | RY |
|---|---|---|---|---|---|---|---|
| 90002    SKYLINE HOMES INC | | CUSTOM VILLA | | | 05/29/2014 | 07/28/2014 | |
| Serial Number | Label/Insignia Number | | Weight | Length | Width | | Issued |
| AC7V710394GB | PFS1130281 | | 22,383 | 56' | 15' 2" | | Feb 24, 2021 |
| AC7V710394GA | PFS1130282 | | 25,068 | 60' | 15' 2" | | |

**Addressee**

RONALD J PIERPONT
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649

JUL 14 2021

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Legal Owner(s)**

RONALD J PIERPONT
JPAD LLC
Tenants in Common Or
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

Lien Perfected On:        08/20/20 11:58:00

**IMPORTANT**
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN:  12153896                                                                    02242021 - 2

**SECTION A - SMOKE DETECTOR AND WATER HEATER SEISMIC BRACING CERTIFICATION**

California Health and Safety Code (HSC) Sections 18029.6 and 18031.7 require that on the date of transfer of title all used manufactured homes, used mobilehomes, and used multifamily manufactured homes: 1) be equipped with an operable smoke detector in each room designed for sleeping, and 2) all fuel-gas-burning water heater appliances be seismically braced, anchored, or strapped pursuant to existing codes. A declaration may be signed within 45 days prior to the date of transfer of title stating that these requirements have been met.

I/We further agree to indemnify and save harmless the Director of the State of California, Department of Housing and Community Development, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the unit in California or from issuance of a California Certificate of Title covering the same. I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _2/25/2021_ at _Huntington Beach California_
_____ State

_Signature_      _J. Sandcastle Co LLC_
Signature                Printed Name

**SECTION B - RELEASING SIGNATURES**

1a. _J Sandcastle Co LLC_ _____ Date of Release _2/25/2021_
Releasing Signature of Registered Owner

1b. _____ Date of Release _____
Releasing Signature of Registered Owner

2. _____ ☒ Release ☐ Retain * ☐ Assign Interest
Legal Owner of Record (if any) sign and check appropriate box     (* If Assign Interest is checked - Complete New Legal Owner Below)

**SECTION C - NEW OWNER INFORMATION**

**NEW REGISTERED OWNER - Please Print or Type Clearly**

3a. _Janie Lynn Gallian_     3c. _J Sandcastle Co LLC_
New Registered Owners Name        New Registered Owners Name

3b. _J Sandcastle Co LLC_     3d. _____
New Registered Owners Name        New Registered Owners Name
If more than one New Owner going onto title, please check the appropriate Co-owner term box.

☐ Joint Tenants with Right of Survivorship ☐ Tenants In Common OR *☐ Trust/Trustee(s)
(* If this box is checked-Complete HCD 476.6B)

☒ Tenants In Common AND ☐ Community Property ☐ Community Property with Right of Survivorship

4. _16222 Monterey Ln #376_    _Huntington Beach, CA_   _92649_
Mailing Address of New Registered Owner    City/State    Zip Code

5. _16222 Monterey Ln #376_    _Huntington Beach, CA_   _92649_
Actual Location Address of Unit    City/State    Zip Code

6. _0_      _2/25/2021_
Purchase Price or check box if Gift ☒   Purchase Date or Transfer Date

7a. _Janie Lynn Gallian_    7c. _J Sandcastle Co LLC_
Signature of New Registered Owners    Signature of New Registered Owners

7b. _J Sandcastle Co LLC_    _____
Signature of New Registered Owner    Signature of New Registered Owners

**NEW LEGAL OWNER - Please Print or Type Clearly**

8a. _J Pad, LLC_     8b. _____
New Legal Owners Name        New Legal Owners Name
If more than one New Lender going onto title, please check the appropriate Co-owner term box below.

☐ Joint Tenants with Right of Survivorship ☐ Tenants In Common OR *☐ Trust/Trustee(s)
(* If this box is checked-Complete HCD 476.6B)

☐ Tenants In Common AND ☐ Community Property ☐ Community Property with Right of Survivorship

9. _16222 Monterey Ln #376_    _Huntington Beach, CA_   _92649_
Mailing Address of New Legal Owner    City/State    Zip Code

**NEW JUNIOR LIENHOLDER - Please Print or Type Clearly**

10a. _____ 10b. _____
New Junior Lienholder Name        New Junior Lienholder Name

11. _____
Mailing Address of New Junior Lienholder    City/State    Zip Code

**SECTION D - RELEASE OF DEALERS**

12. _____
Signature of Selling Dealer        Print Dealers Name and Dealer Number

OSP 20 149325

002417         EXHIBIT 42, PAGE 1595

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Orange _____ )

On _2/25/21_ before me, _Greg Buysman, Notary Public_
(insert name and title of the officer)

personally appeared _Jamie Lynn Gallian_ _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
GREG BUYSMAN
COMM # 2341449
ORANGE County
California Notary Public
Comm Exp Feb. 5, 2025
```

Signature _____   (Seal)

GREG GUYSMAN
COMM # 2241149
ORANGE County
California Notary Public
My Comm. Exp. Feb. 5, 2125

002419        EXHIBIT 42, PAGE 1597

## STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
### REGISTRATION CARD

Manufactured Home

**Decal: LBM1081**

| Manufacturer ID/Name | Trade Name | Model | DOM | DFS | RY | Exp. Date |
|---|---|---|---|---|---|---|
| 90002    SKYLINE HOMES INC | CUSTOM VILLA | | 05/29/2014 | 07/28/2014 | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued |
|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Feb 24, 2021 |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | |



**Addressee**

RONALD J PIERPONT
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Legal Owner(s)**

RONALD J PIERPONT
JPAD LLC
Tenants in Common Or
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

Lien Perfected On:    08/20/20 11:58:00

**LEGAL OWNER COPY
INFORMATION ONLY**

**IMPORTANT**
**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**

DTN:  12153896

02242021 - 1

EXHIBIT 42, PAGE 1599

## STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
### REGISTRATION CARD
Manufactured Home

**Decal: LBM1081**

| Manufacturer ID/Name | Trade Name | Model | DOM | DFS | RY | Exp. Date |
|---|---|---|---|---|---|---|
| 90002     SKYLINE HOMES INC | CUSTOM VILLA | | 05/29/2014 | 07/28/2014 | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued |
|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Feb 24, 2021 |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | |



**Addressee**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA  92649


**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649


**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649


**Legal Owner(s)**

RONALD J PIERPONT
JPAD LLC
Tenants in Common Or
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

Lien Perfected On:    08/20/20 11:58:00

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**ATTENTION OWNER:**

**THIS IS THE REGISTRATION CARD FOR THE
UNIT DESCRIBED ABOVE.  PLEASE KEEP THIS
CARD IN A SAFE PLACE WITHIN THE UNIT.**

**INSTRUCTIONS FOR RENEWAL:**

**REGISTRATION FOR THIS UNIT EXPIRES ON THE
DATE INDICATED ABOVE IN THE BOX LABELED
"Exp. Date".  THERE ARE SUBSTANTIAL
PENALTIES FOR DELINQUENCY.  IF YOU DO NOT
RECEIVE A RENEWAL NOTICE WITHIN 10 DAYS
PRIOR TO THE EXPIRATION DATE, CONTACT
H.C.D. FOR RENEWAL INSTRUCTIONS.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IMPORTANT**
**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**

DTN:  12153896

02242021 - 1

EXHIBIT 42, PAGE 1601

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## LIEN SATISFIED

---

**SECTION I.        DESCRIPTION OF UNIT**

This unit is a:

☑ Manufactured Home/Mobilehome  ☐ Commercial Modular  ☐ Floating Home  ☐ Truck Camper

The Decal (License) No.(s) of the unit is: LBM1081

The Trade Name of the unit is: CUSTOM VILLA

The Serial No.(s) of the unit is: AC7V710394GB/AC7V710394GA

---

**SECTION II.         DEBTOR(S) NAME(S)**

Name of Debtor(s): J-SANDCASTLE CO, LLC

---

**SECTION III.         LIENHOLDER'S CERTIFICATION**

This is to certify that our/my lien in the name(s) of the debtor(s) shown above against the described unit has been fully satisfied and has not been assigned to any other party.

I/We certify under penalty of perjury that the foregoing is true and correct.

Print or Type Name of Legal Owner or Jr. Lienholder (Lender):

J-PAD LLC or RONALD J. PIERPONT

Signature of Legal Owner, Jr. Lienholder (Lender) or their Authorized Agent:

*Ronald J Pierpont*                                    Date 7/9/2021

Address        16222 MONTEREY LN. #376        HUNTINGTON BEACH,       CA       92649
                    Street Address or P.O. Box                        City                     State          Zip

HCD RT 475.3 (Rev. 07/16)

002424                        EXHIBIT 42, PAGE 1602

EXHIBIT 42, PAGE 1603

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## STATEMENT OF FACTS

This unit is a: ☑ Manufactured Home / Mobilehome   ☐ Commercial Modular   ☐ Floating Home   ☐ Truck Camper

| Decal (License) No.(s): | Trade Name: | Serial No.(s): |
|---|---|---|
| LBM 1081 | Skyline Custom Villa | AC7V710394GB/GA |

I/We, the undersigned, hereby state:

Jamie Lynn Gallian is the sole registered owner of 2014 home.  J-Pad LLC or Robert McLelland is the Legal Owner.

I/We further agree to indemnify and save harmless the Director of the Department of Housing and Community Development, State of California, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the above-described unit in California, or from issuance of a California Certificate of Title covering the same.

I/We certify under penalty of perjury that the foregoing is true and correct.

Executed on ___25th of Feb. 2021___ at ___Huntington Beach,___, ___CA 92649___
          *Date*                     *City*              *State*

Signature(s): *[signature: Jamie Lynn Gallian]*

Printed name(s):
Jamie Lynn Gallian

Address ___21742 Anza Avenue___

City ___Torrance___    State ___CA 90503___

HCD RT 476.6 (Rev. 07/16)

002426    EXHIBIT 42, PAGE 1604

002427          EXHIBIT 42, PAGE 1605

## ACKNOWLEDGMENT

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California
County of ___Orange_____ )

On _2/25/21_____ before me, _Greg Buysman Notary Public_____
(insert name and title of the officer)

personally appeared _Jamie Lynn Gallian_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____     (Seal)

**GREG BUYSMAN**
COMM # 2341449
ORANGE County
California Notary Public
Comm Exp Feb. 5, 2025

002429          EXHIBIT 42, PAGE 1607

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## STATEMENT OF FACTS

This unit is a: ☑ Manufactured Home / Mobilehome   ☐ Commercial Modular   ☐ Floating Home   ☐ Truck Camper

| Decal (License) No.(s): | Trade Name: | Serial No.(s): |
|---|---|---|
| LBM 1081 | | |

I/We, the undersigned, hereby state:

*I spoke with Jamie Gallian and she states the unit should be registered as Jamie Gallian as sole registered owner. The lien has been satisfied and there is no legal owner at this time. Jamie advised the county and was told there was no need to revise the Tax Clearance certificate.*

I/We further agree to indemnify and save harmless the Director of the Department of Housing and Community Development, State of California, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the above-described unit in California, or from issuance of a California Certificate of Title covering the same.

I/We certify under penalty of perjury that the foregoing is true and correct.

Executed on __7/28/21__ at ____Sacramento____, __CA__
              Date                        City              State

Signature(s):                          Printed name(s):
*Rebecca M. O'Loughlin*                *Rebecca M O'Loughlin, Program Tech II*

Address _____

City _____   State _____

HCD RT 476.6 (Rev. 07/16)

EXHIBIT 42, PAGE 1609

**State of California**
**Department of Housing and Community Development**
**Division of Codes and Standards**
**Registration and Titling Program**
P.O. Box 277820, Sacramento, CA 95827-7820
**(800) 952-8356**
**www.hcd.ca.gov**



## MULTI-PURPOSE TRANSFER FORM

### PLEASE COMPLETE ONLY THE SECTIONS THAT APPLY AND SIGN BOTTOM OF FORM

#### UNIT DESCRIPTION

Decal (License) No.(s): LBM1081                Serial No.(s): AC7V710394GA; AV7V710394GA

#### SMOKE DETECTOR AND CARBON MONOXIDE CERTIFICATION

I/We, the undersigned, hereby state that the manufactured home, mobilehome, or multifamily manufactured home described above is equipped with a properly working, operable smoke detector in accordance with California Health and Safety Code Section 18029.6 and a carbon monoxide detector in accordance to California Residential Code Section R315.

☑ YES   ☐ NO

#### PARK PURCHASE FEE EXEMPTION

The registered owner of the above-described manufactured home/mobilehome that is located on private property owned by the registered owner is exempt from payment of the $5 Park Purchase Fund (PPF) fee (Health and Safety Code Section 18114.1). If you feel you qualify for the exemption, complete the following questions:

• Do you (the registered owner) own your manufactured home/mobilehome?   ☑ YES   ☐ NO
• Do you (the registered owner) own the land your manufactured home/mobilehome is located on?   ☐ YES   ☑ NO

#### DESIGNATION OF CO-OWNER TERM

We request the Department of Housing and Community Development to register our ownership interest in the unit described above with the following co-owner term:   **(READ CAREFULLY AND CHECK ONE BOX.)**

☐   **JTRS (Joint Tenants with Right of Survivorship):** Upon the death of a joint tenant, the interest of the deceased party passes to the surviving joint tenant. The signature of each joint tenant is required to transfer or encumber the title.

☑   **TENCOM AND (Tenants in Common with the names joined by the word AND):** Each tenant in common may transfer his or her individual interest without the signature of the other tenant(s) in common. The signature of each tenant in common is required to transfer full interest in the unit to a new registered owner or to encumber the title.

☐   **TENCOM OR (Tenants in Common with the names joined by the word OR):** Any one of the tenants in common may transfer full ownership interest in the unit to a new registered owner without the signature of the other tenant(s) in common. The signature of each tenant in common is required to encumber the title.

☐   **COMPRO (Community Property):** A unit may be registered as community property in the names of a husband and wife. The signature of each spouse is required to transfer full interest in the unit or encumber the title.

☐   **COMPRORS (Community Property with Right of Survivorship):** A unit may be registered as community property in the names of a husband and wife. At the death of one spouse, the decedent's community property interest passes to the surviving spouse without administration. The signature of each spouse is required to transfer full interest in the unit or encumber the title.

I/We further agree to indemnify and save harmless the Director of the State of California, Department of Housing and Community Development, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the above described unit in California, or from, issuance of a California Certificate of Title covering the same.

I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 02/25/2021        at        HUNTINGTON BEACH,   CALIFORNIA        COUNTY OF ORANGE
                  *Date*                        *City*                *State*

_Signature_ (signed)                              _Signature_ (signed)
J-SANDCASTLE CO LLC, JAMIE LYNN GALLIAN,   **IT'S MEMBER**

_Signature_                                       _Signature_

PHONE #: (714) 321-3449                           E-MAIL ADDRESS: jamiegalian@gmail.com

HCD RT 476.6G Side 1 (Rev. 08/20)

002432        EXHIBIT 42, PAGE 1610

EXHIBIT 42, PAGE 1611

Decal (License) No.(s): LBM1081 _____  Serial No.(s): AC7V710394GA; AC7V710394GA _____

## DECLARATION OF INSTALLATION OF WATER HEATER SEISMIC BRACING

I/We the undersigned hereby state that all fuel gas-burning water heater appliances in the manufactured home, mobilehome, or multifamily manufactured housing described above are seismically braced, anchored, or strapped in accordance with Health and Safety Code Section 18031.7 and Part 5 of Title 24 of the California Code of Regulations.

☑ YES   ☐ NO   ☐ Electric water heater is installed per manufacturer's instructions.

### SIGNATURE ON FRONT SIDE IS CERTIFICATION FOR THIS SECTION

## REASON FOR USE TAX AND/OR MOBILEHOME RECOVERY FUND FEE EXEMPTION

Check appropriate box(es):

☑ The above-described unit was a gift.  All rights and interest of ownership were transferred without exchange or money or other valuable consideration.

☑ The above-described unit has been acquired from:  J-SANDCASTLECO LLC, JAMIE LYNN GALLIAN, ITS MEMBER
*parents, spouse, grandparent(s), grandchild, child, brother(s)\*, sister(s)\**

☑ The name of a CO-OWNER _____ is being ☑ ADDED   ☐ DELETED   to the record.
*show relationship*

☐ The above-described unit was received as the result of an inheritance.

☐ Transfer of the above-described unit is being made pursuant to a court order.

☐ The transfer of the unit is being made to a revocable trust which (1) the seller has an unrestricted power to revoke the trust, (2) the transfer does not result in any change in the beneficial ownership of the property, (3) the trust provides that upon revocation of the trust the property will revert wholly to the seller, and (4) the only consideration for the transfer is the assumption by the trust of an existing loan for which the tangible personal property being transferred is the sole collateral for the assumed loan.

**\*NOTE:  A sale between brother(s) or sister(s) is subject to use tax unless both are minors.  If minors, check here:** ☐

### SIGNATURE ON FRONT SIDE IS CERTIFICATION FOR THIS SECTION

## DESIGNATION OF TRUST

I/We, the undersigned trustee(s), hereby state that the unit described above has been placed into a trust.  This Declaration of Trust is dated _____

In compliance with Section 18080.1(b) of the California Health and Safety Code, I/we as trustee(s) hereby request the unit described above be registered as shown below.  I/We acknowledge that the Department's permanent title record and the titling documents for the unit will reflect the information as shown below.

_____
*Print Name of the Trust.  This is how the name of the Trust will appear on title.*

I/We as trustee(s) agree(s) to notify and make application with the Department of Housing and Community Development to appropriately amend the permanent registration and titling record immediately upon any change to the original trust agreement described herein by submitting this form along with all appropriate documents, fees or any other needed items to the Department.

I/We as trustee(s) further agree(s) to indemnify and save harmless the Director of the Department of Housing and Community Development, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the above described unit in California and from issuance of a California Certificate of Title covering the same.

I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____ at _____
               *Date*                              *City*                                    *State*

Trustee Signature(s):
_____          _____

_____
*Street Address or P.O. Box*                    *City*                              *State*

HCD RT 476.6G Side 2 (Rev. 08/20)

EXHIBIT 42, PAGE 1613



## TAX CLEARANCE CERTIFICATE

☒ Mobile Home          ☐ Floating Home

### COUNTY OF ORANGE

| SERIAL NUMBER/HULL NUMBER | DECAL NUMBER/CF NUMBER |
|---|---|
| AC7V710394GA, AC7V710394GB | LBM1081 |

| LOCATION OF HOME | ASSESSOR'S PARCEL NUMBER |
|---|---|
| 16222 MONTEREY LN 376 HUNTINGTON BEACH | 891-569-62 |

| CURRENT REGISTERED OWNER | APPLICANT |
|---|---|
| J-SANDCASTLE CO LLC<br>16222 MONTEREY LN<br>SPC 376<br>HUNTINGTON BEACH CA 92649 | J-SANDCASTLE CO LLC & JAMIE L GALLIAN<br>16222 MONTEREY LN #376<br>HUNTINGTON BEACH CA 92649 |

I hereby certify that the following has been paid:

☐ Delinquent license fees

☐ Property taxes applicable to the home identified above through the fiscal year

☒ A security deposit for payment of the property taxes for the fiscal year 2021-2022

☒ No taxes due or payable at this time.

There may be a supplemental assessment not covered by this "Tax Clearance Certificate" which may create an additional bill.

**THIS CERTIFICATE IS VOID ON AND AFTER SEPTEMBER 7, 2021.**

Executed on July 9, 2021 at Santa Ana.
Treasurer-Tax Collector for Orange County, State of California.

Issued on July 9, 2021 _____ 
(Signature)

§2189.8, 5832 R & T Code

TDL 10-01 (7-87)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **DECLARATION OF GREG BUYSMAN RE: MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 7, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**: On **_____**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 7, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

PURSUANT TO THE COURTROOM POLICIES AND PROCEDURES OF THE HONORABLE ERITHE A. SMITH, COURTROOM 5A, §VIII. JUDGES' OR COURTESY COPIES, EXCEPT FOR DOCUMENTS 200 PAGES OR OVER, INCLUDING EXHIBITS, JUDGE SMITH **DOES NOT** REQUIRE JUDGES' COPIES.

**DEBTOR – VIA OVERNIGHT DELIVERY**
JAMIE LYNN GALLIAN
16222 MONTEREY LN UNIT 376
HUNTINGTON BEACH, CA 92649

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 7, 2022 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                            **F 9013-3.1.PROOF.SERVICE**

EXHIBIT 42, PAGE 1616

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR and PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **ATTORNEY FOR PLAINTIFF HOUSER BROS. CO.:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

002439            EXHIBIT 42, PAGE 1617

EXHIBIT 43

1 │ Jeffrey I. Golden, State Bar No. 133040
  │ jgolden@wgllp.com
2 │ P.O. Box 2470
  │ Costa Mesa, California 92628-2470
3 │ Telephone: (714) 966-1000
  │ Facsimile:  (714) 966-1002
4 │
  │ Chapter 7 Trustee
5 │

6

7

8 **UNITED STATES BANKRUPTCY COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

10 │ In re │ Case No. 8:21-bk-11710-ES

11 │ JAMIE LYNN GALLIAN, │ Chapter 7

12 │         Debtor. │ **APPLICATION OF THE CHAPTER 7
                      │ TRUSTEE TO EMPLOY REAL ESTATE
13 │                  │ BROKER COLDWELL BANKER REALTY
                      │ AND AGENTS WILLIAM FRIEDMAN AND
14 │                  │ GREG BINGHAM PURSUANT TO
                      │ 11 U.S.C. §§ 327 AND 328;
15 │                  │ MEMORANDUM OF POINTS AND
                      │ AUTHORITIES; AND DECLARATIONS OF
16 │                  │ WILLIAM FRIEDMAN AND GREG
                      │ BINGHAM IN SUPPORT**
17 │
18 │                  │ **[16222 Monterey Lane, Space #376,
                      │ Huntington Beach, CA 92649]**
19 │                  │ Hearing information:
                      │ **DATE:      August 18, 2022**
20 │                  │ **TIME:      10:30 a.m.**
                      │ **CTRM:      5A, Via ZoomGov**
21 │
22 │

23

24

25

26

27

28

*Weiland Golden Goodrich LLP*
*650 Town Center Drive, Suite 600*
*Costa Mesa, California 92626*
*Tel (714) 966-1000  Fax (714) 966-1002*

1373973.1                    1                    EMPLOYMENT APPLICATION

002441                    EXHIBIT 43, PAGE 1618

1  **TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE;**

2  **THE OFFICE OF THE UNITED STATES TRUSTEE; DEBTOR AND DEBTOR'S**

3  **COUNSEL; AND PARTIES IN INTEREST:**

4       Jeffrey I. Golden, the Chapter 7 trustee ("Trustee") for the bankruptcy estate

5  ("Estate") of Jamie Lynn Gallian ("Debtor"), files this *Application of the Chapter 7 Trustee*

6  *to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and*

7  *Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328* ("Application").  In support of the

8  Application, the Trustee submits the following memorandum of points and authorities and

9  the attached declarations of William Friedman ("Friedman Declaration") and Greg

10  Bingham ("Bingham Declaration").

11

12  **I.       STATEMENT OF FACTS**

13       On July 9, 2021 ("Petition Date"), the Debtor filed a voluntary petition under

14  Chapter 7 of the Bankruptcy Code, including her bankruptcy schedules ("Schedules").

15  Jeffrey I. Golden was appointed the Chapter 7 trustee.  Since filing her original Schedules,

16  the Debtor has filed at least nine sets of amended schedules.

17       On the Petition Date, the registered title owner of the manufactured home located

18  at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 ("Property"),

19  which is Debtor's residence, was J-Sandcastle Co, LLC.  According to the Debtor's

20  Schedules, she was the 100% owner of J-Sandcastle Co, LLC.

21       The Debtor claimed a homestead exemption in the Property in the amount of

22  $600,000.  On May 12, 2022, Houser Bros. Co., dba Rancho Del Rey Mobile Home

23  Estates, filed its Motion Objecting to Debtor's Claimed Homestead Exemption (Dkt. 95,

24  "Motion").  The hearing on the Motion was held on June 2, 2022 and continued to July 21,

25  2022.  At the continued hearing, the Court granted the Motion and disallowed any claim of

26  exemption by the Debtor in the Property.

27       The Trustee intends to administer the equity in the Property upon further court

28  order to pay claims of creditors and expenses of administration.

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000   Fax (714) 966-1002

1373973.1

2

EMPLOYMENT APPLICATION

**II.    PROPOSED EMPLOYMENT OF BROKER AND AGENTS**

The Trustee has solicited the assistance of Coldwell Banker Realty, a licensed California real estate broker ("Broker"), and William Friedman and Greg Bingham (together, "Agents"), agents of the Broker, in determining the value of the Property.  Mr. Bingham has advised the Trustee that the fair market value of the Property is at or near $300,000.  *See* Bingham Declaration.

To facilitate the sale of the Property, the Trustee seeks to employ an experienced and reputable real estate broker and proposes to employ the Broker and the Agents pursuant to 11 U.S.C. §§ 327(a) and 328.  The Broker has agreed to advertise the Property, to market and show the Property, to represent the Estate in connection with the sale of the Property, and to advise the Trustee with respect to obtaining the best offer for the sale of the Property.

The terms of employment agreed to by the Trustee, subject to approval of the Court, as set forth in the residential listing agreement, manufactured home listing addendum, and addendum to exclusive authorization and right to sale (together, "Listing Agreement") attached as **Exhibit 1**, are as follows:

1.    The Broker will have an exclusive listing on the Property, and the listing price will be $300,000.  The Listing Agreement, including the listing price, may be modified by the Trustee in his discretion.  The listing and sale of the Property is subject to Bankruptcy Court approval, and any sale of the Property will be "as is," without any representations, guarantees or warranties of any kind, whether expressed or implied, by the Trustee.  Upon the presentation of an acceptable purchase offer for the Property, the Trustee will file a motion seeking court authority to sell the Property and pay the total broker's commission of six percent (6%) from the sale proceeds through escrow.  A commission shall be paid only if the Property is sold by the Trustee.  The Trustee's motion will contain an overbid procedure.

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000 · Fax (714) 966-1002

2.      The Agents are informed and understand that no sale may be consummated until after notice and a hearing.  Further, the Agents are aware of the provisions of 11 U.S.C. § 328(a) and understand and accept that, notwithstanding the terms and conditions of employment and compensation provided in the Listing Agreement, the Court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

The Agents are well qualified to represent the Trustee and the Estate in connection with the marketing and sale of the Property.  Their profiles are attached as **Exhibit 2**.

## III.      MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to 11 U.S.C. § 327(a), a trustee may employ attorneys and other professional persons who do not hold or represent an interest adverse to the estate, and who are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties.

The Trustee has previously employed the Broker and the Agents in cases that are unrelated to the Debtor's case.  David M. Goodrich, a partner in the Trustee's firm, has employed the Broker and William Friedman in other cases not involving the Debtor.  In addition, Danning, Gill, Israel & Krasnoff, LLP, the Trustee's general counsel, and attorney-trustees at that firm, have worked with the Broker and Agents in other cases not involving the Debtor.

Except as provided above, to the best of the Trustee's knowledge, and based upon the attached Friedman and Bingham Declarations, the Broker and the Agents:

1.      have no connection with the Debtor, the Debtor's principals, insiders, creditors, the Trustee, or any other party in interest, or their respective attorneys

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000   Fax (714) 966-1002

1    and accountants, or any person employed in the Office of the United States

2    Trustee;

3          2.     are not creditors, equity security holders or insiders of the Debtor;

4          3.     are not and were not, within two years before the date of the filing of

5    the petitions, directors, officers, or employees of the Debtor;

6          4.     do not represent an individual or entity with an interest adverse to the

7    Estate;

8          5.     are not related to the United States Trustee or to the Bankruptcy

9    Judge assigned to this case;

10         6.     are disinterested within the meaning of 11 U.S.C. §§ 327(a) and

11   101(14);

12         7.     do not have any fee sharing arrangement, understanding or

13   compensation sharing arrangement with any other entity, except for the customary

14   division of the commission from the sale of a property between the listing broker

15   and the selling broker, as provided for in the Listing Agreement; and

16         8.     will not receive a retainer in this case.

17

18   **IV.    <u>CONCLUSION</u>**

19         The Trustee believes the employment of the Broker and the Agents on the terms

20   and conditions provided herein is in the best interest of the Trustee and the Estate.

21   //

22   //

23   //

24

25

26

27

28

002445          EXHIBIT 43, PAGE 1622

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000 · Fax (714) 966-1002

1     **WHEREFORE,** the Trustee prays that the Application be approved and he be

2 authorized to employ the Broker and the Agents, as an expense of the Estate, to market

3 and sell the Property upon the terms and conditions set forth herein and in the Listing

4 Agreement, and that he be authorized to execute the Listing Agreement attached hereto

5 and any and all other ancillary documents necessary to list the Property for sale.

6                           Respectfully submitted,

7

8 Dated:  July 28, 2022             */s/ Jeffrey I. Golden*

                                   JEFFREY I. GOLDEN

9                                  Chapter 7 Trustee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Weiland Golden Goodrich LLP**
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000   Fax (714) 966-1002

1373973.1                         6                   EMPLOYMENT APPLICATION

## DECLARATION OF WILLIAM FRIEDMAN

I, William Friedman, declare:

1. I am a real estate agent licensed in the State of California.  I know each of the following facts to be true of my own personal knowledge or information and belief and, if called as a witness, I could and would competently testify with respect thereto.  I am an agent of Coldwell Banker, located at 1608 Montana Avenue, Santa Monica, California 90403.  I am submitting this Declaration in support of the *Application of the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328* ("Application").  Any capitalized terms not expressly defined herein shall have the meanings provided in the Application.

2. The Broker and I are qualified to represent the Trustee and the Estate in connection with the marketing and sale of the Property.  A true and correct copy of the Listing Agreement is attached as **Exhibit 1**.  A true and correct copy of my profile is attached as **Exhibit 2**.

3. On behalf of the Broker, I have agreed to accept employment on the terms and conditions set forth in the Application.

4. The Broker and I have been employed by the Trustee in other unrelated matters.  The Broker and I also have been employed by David M. Goodrich, a partner in the Trustee's firm, in other cases not involving the Debtor.  In addition, Danning, Gill, Israel & Krasnoff, LLP, the Trustee's general counsel, and attorney-trustees at that firm, have worked with the Broker and me in other cases not involving the Debtor.

5. To the best of my knowledge, except as provided above, the Broker and I:

 a. have no connection with the Debtor, the Debtor's principals, insiders, creditors, the Trustee, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the Office of the United States Trustee;

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000 · Fax (714) 966-1002

b.      are not creditors, equity security holders or insiders of the Debtor;

c.      are not and were not, within two (2) years before the date of the filing of the petition herein, directors, officers or employees of the Debtor;

d.      do not represent an individual or entity which holds an interest adverse to the Estate;

e.      are not related to the United States Trustee or to the Bankruptcy Judge assigned to this case;

f.      are disinterested within the meaning of 11 U.S.C. §§ 327(a) 101(14);

g.      have no fee sharing arrangement, understanding or compensation sharing arrangement with any other entity, except for the customary division of the commission from the sale of a property between the listing broker and the selling broker, as provided for in the Listing Agreement; and

h.      will not receive a retainer in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __28__ day of July, 2022, at Los Angeles, California.

William Friedman

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000  Fax (714) 966-1002

002448      EXHIBIT 43, PAGE 1625

1

## **DECLARATION OF GREG BINGHAM**

2

3        I, Greg Bingham, declare:

4        1.        I am a real estate agent licensed in the State of California.  I know each of

5   the following facts to be true of my own personal knowledge or information and belief and,

6   if called as a witness, I could and would competently testify with respect thereto.  I am an

7   agent of Coldwell Banker, located at 840 Newport Center Drive, Suite 100, Newport

8   Beach, California 92660.  I am submitting this Declaration in support of the *Application of*

9   *the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents*

10  *William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328*

11  ("Application").  Any capitalized terms not expressly defined herein shall have the

12  meanings provided in the Application.

13        2.        I have advised the Trustee that the current market value of the Property is at

14  or near $300,000.

15        3.        The Broker and I are qualified to represent the Trustee and the Estate in

16  connection with the marketing and sale of the Property.  A true and correct copy of the

17  Listing Agreement is attached as **Exhibit 1**.  A true and correct copy of my profile is

18  attached as **Exhibit 2**.

19        4.        On behalf of the Broker, I have agreed to accept employment on the terms

20  and conditions set forth in the Application.

21        5.        The Broker and I are employed by the Trustee in other unrelated matters.  In

22  addition, Danning, Gill, Israel & Krasnoff, LLP, the Trustee's general counsel, and

23  attorney-trustees at that firm, have worked with the Broker and me in other cases not

24  involving the Debtor.

25        6.        To the best of my knowledge, except as provided above, the Broker and I:

26             a.        have no connection with the Debtor, the Debtor's principals, insiders,

27        creditors, the Trustee, any other party or parties in interest, their respective

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000  Fax (714) 966-1002

1373973.1                              9                              EMPLOYMENT APPLICATION

DocuSign Envelope ID: 674AA91A-DD6D-4B21-A5D8-63J9B468294A

1  attorneys and accountants, or any person employed in the Office of the United

2  States Trustee;

3        b.    are not creditors, equity security holders or insiders of the Debtor;

4        c.    are not and were not, within two (2) years before the date of the filing

5  of the petition herein, directors, officers or employees of the Debtor;

6        d.    do not represent an individual or entity which holds an interest

7  adverse to the Estate;

8        e.    are not related to the United States Trustee or to the Bankruptcy

9  Judge assigned to this case;

10        f.    are disinterested within the meaning of 11 U.S.C. §§ 327(a) 101(14);

11        g.    have no fee sharing arrangement, understanding or compensation

12  sharing arrangement with any other entity, except for the customary division of the

13  commission from the sale of a property between the listing broker and the selling

14  broker, as provided for in the Listing Agreement; and

15        h.    will not receive a retainer in this case.

16  I declare under penalty of perjury that the foregoing is true and correct.

17  Executed on this __28__ day of July, 2022, at Newport Beach, California.

18

19      DocuSigned by:

    _Greg Bingham_

20      159D7DC42672E1B

                Greg Bingham

21

22

23

24

25

26

27

28

Weiland Golden Goodrich LLP
650 Town Center Drive, Suite 600
Costa Mesa, California 92626
Tel (714) 966-1000  Fax (714) 966-1002

1373973.1

EMPLOYMENT APPLICATION

EXHIBIT 43, PAGE 1627

# EXHIBIT 1



**COLDWELL BANKER** [B]

RESIDENTIAL BROKERAGE

**William Friedman**

2444 WILSHIRE BLVD. #102
SANTA MONICA, CA 90403
BUS. (310) 829-3939
FAX (310) 829-7010

William Friedman is a licensed real estate agent engaged in real estate sales transactions for over 40 years. Mr. Friedman is a top producer for Coldwell Banker. He was previously appointed Designated Area Real Estate Salesperson with Federal Home Loan Mortgage Corporation.

In addition to directly assisting individual homeowners and buyers, he has represented major lending institutions, receivers and bankruptcy trustees, including:

Trustees:
Peter Mastan
Elissa D. Miller
David Seror
Bradley D. Sharp
Rosendo Gonzalez
Diane Weil
Richard M. Pachulski
Steve Schwaber
Byron Z. Moldo
James I. Stang
Dennis McGoldrich
David L. Ray
Peter Mastan
Alfred H. Siegel
James Leonard Brown
Lawrence Diamant
Samuel R. Biggs
Carolyn A. Dye
Nancy Knupfer
Edward M. Wolkowitz
F. Wayne Elggren
Richard K. Diamond
R. Todd Neilson
David A. Gill
Helen Ryan Frazer
Heide Kurtz
Howard Ehrenberg
Alberta Stahl
David K. Gottlieb
Brad D. Krasnoff
Michael Kogan
Amy L. Goldman
Jeffrey I. Golden
Ronald L. Durkin
Jeffrey Coyne
Linda Chu
Christopher Barclay
Sam Leslie
Jason Rund
Barry Schwartz
David L. Hahn
Jeremy Faith
Thomas P. Jeremiassen
Thomas Casey

Lenders:
Countrywide Home Loans
Federal Home Loan Mortgage Corp
Lincoln Service Corporation
Bank of America
Cal-Fed Enterprises
Union Federal Savings
California Federal Bank
Southern California Savings
Union Federal Bank
Residential Funding Corporation/GMAC
Coast Federal Bank

Receivers:
Adrian Stern
Samuel R. Biggs
David L. Ray

Operated by a subsidiary of NRT LLC.

002452          EXHIBIT 43, PAGE 1629



### Greg Bingham
### Coldwell Banker Realty

Since 2001, Greg Bingham has worked as a real estate agent in the Los Angeles and Orange County areas. In 2003, upon selling his interest in his Sports Management Agency, he joined Coldwell Banker Residential Brokerage. In 2006, Greg took over management of the 84 agent, award winning office. In 2008, with the acquisition of his office, he joined his profitable practice with the expanding Coldwell Banker Previews International Orange County and Los Angeles companies with 54 offices in Southern California and returned to working directly with his clients. In 2015, he became manager and partner of The Smith Group at Coldwell Banker Residential Brokerage, currently the number one sales team in Southern California.

Awards and Recognition

President's Elite – Top ¼ of 1% of Agents in the United States (2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021)
President's Circle – Top 1% of Agents in the United States (2011, 2012, 2013)

Annually since 2006, he has personally sold over $50,000,000 in real estate on behalf of his clients. Clients include a private client group of athletes and entertainers, institutional clients Chase Bank, EMC, Saxon and a legal clientele of bankruptcy trustees and attorneys. He has worked on behalf of more than 20 Bankruptcy Court Trustees in the sale of real estate in Orange and Los Angeles Counties.

Training and Certification

Greg has completed the required course work and practical experience for Certified Distressed Property Specialist, Certified Negotiator and Short Sales and Foreclosure Resource.

Bingham has many years of experience in marketing and promotion. As the CEO of Special Olympics, he has devoted innumerable hours to youth sports and children and adults with disabilities. He has served on local, statewide, national and international boards for sports and education.



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# RESIDENTIAL LISTING AGREEMENT
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/22)

**Date Prepared:** 07/25/2022

1. **EXCLUSIVE RIGHT TO SELL:** _____ *Jeffrey Golden, Ch 7 Trustee* ("Seller")
hereby employs and grants _____ *Coldwell Banker Residential* ("Broker")
beginning (date) __*July 25, 2022*__ and ending at 11:59 P.M. on (date) __*January 31, 2023*__ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as *16222 Monterey Lane, Spc 376*
_____, situated in *Huntington Beach* (City),
__*Orange*__ (County), California, *92649* (Zip Code), Assessor's Parcel No. _____ ("Property").
☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional terms.
☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See for Probate Listing Addendum and Advisory (C.A.R. Form PLA) for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: *Three Hundred Thousand*
   _____ Dollars ($ *300,000.00* ).
   B. Listing Terms: *Manufactured and Mobile Home Listing Addendum included; Subject to Bankruptcy Court Approval;
   Addendum attached.*

3. **COMPENSATION TO BROKER:**
   Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☐ *6.000* percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____ , as follows:
   AND
   (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
   (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in paragraph 3A, either ☐ _____ percent of the purchase price, or ☐ $ _____
   (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____
   (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
   (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2022, California Association of REALTORS®, Inc.

**RLA REVISED 6/22 (PAGE 1 OF 5)**

Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Coldwell Banker Residential, 840 Newport Center Dr., Suite 100 Newport Beach CA 92660 Phone: 5623350145 Fax: 5624152614 Monterey Lane
Greg Bingham Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Property Address: _16222 Monterey Lane, Spc 376, Huntington Beach,  92649_                    Date: _07/25/2022_

**4. A.   ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
**ADDITIONAL ITEMS EXCLUDED:** _____
**ADDITIONAL ITEMS INCLUDED:** _____

Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.   (1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
☐ Solar power system   ☐ Alarm system   ☐ Propane tank   ☐ Water Softener
☐ Other

**(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system   ☐ Windows or doors   ☐ Heating/Ventilation/Air conditioning system
☐ Other

Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5.   MULTIPLE LISTING SERVICE:**
**A.   WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
**B.   WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
**C.   WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to _____ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by **paragraph 7** or by the MLS, Property will be listed with the MLS(s) specified above.

**6.   BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
**A.   EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
**B.   IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (i) Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; (ii) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (iii) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; and (iv) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
**C.   REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
**D.   NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

| Seller's Initials _____ / _____ | Broker's/Agent's Initials _____ / _____ |
|---|---|

**7.   PUBLIC MARKETING OF PROPERTY:**
**A.   CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see paragraph 7F) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
**B.   PUBLIC MARKETING WITHIN CLEAR COOPERATION:** (i) **Public marketing** includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. (ii) Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
**C.   "COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.
**D.   Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)
(1) Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this Agreement or ☐ _____ (date).

RLA REVISED 6/22 (PAGE 2 OF 5)                    Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          Monterey Lane

002455            EXHIBIT 43, PAGE 1632

Property Address: 16222 Monterey Lane, Spc 376, Huntington Beach,  92649

OR (2) ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

E. **Whether paragraph 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

F. ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY: Paragraphs 7A** (other than the language in the parenthetical), 7B, 7D and 7E do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

8. **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

A. **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

B. **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands that (i) these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.

☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

9. ~~SELLER REPRESENTATIONS:~~ Seller represents that, unless otherwise specified in writing, Seller is unaware of (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

10. **BROKER'S AND SELLER'S DUTIES:**

A. **Broker Responsibility, Authority and Limitations:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 10E as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

B. **Presentation of Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker instructions to the contrary.

C. **Buyer Supplemental Offer Letters (Buyer Letters):**

(1) **Paragraph 8** of the Fair Housing and Discrimination Advisory (C.A.R. Form FHDA) attached to this Agreement informs Seller of the practice of many buyers and their agents of including a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's or seller's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters.

(2) (A) ☐ **Seller instructs Broker not to present Buyer Letters,** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

OR (B) ☐ **Seller instructs Broker to present Buyer Letters.** Broker advises seller that: (i) Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and (ii) if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

D. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 3F,** referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

E. **Investigations and Reports:** Seller agrees, within 5 (or _____ ) Days of the beginning date of this Agreement, to order and, when required by the service provider, pay for a Natural Hazard Disclosure report and the following reports:
☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☐ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☐ Other
If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

F. ~~Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.~~

11. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

RLA REVISED 6/22 (PAGE 3 OF 5)                                                    Seller's Initials _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        Monterey Lane

Property Address: 16222 Monterey Lane, Spc 376, Huntington Beach,  92649

**12. AGENCY RELATIONSHIPS:**

A. **DISCLOSURE:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

B. **SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 3F.**

C. **POSSIBLE DUAL AGENCY WITH BUYER:** Depending on the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

D. **CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

E. **POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

F. **TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

**13. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**14. PHOTOGRAPHS AND INTERNET ADVERTISING:**

A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.

B. Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take Images who do not have access to or have not read any limiting instruction in the MLS or who take Images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**15. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

A. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox.

B. **TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**16. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**17. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**18. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs, except as otherwise specified in **paragraph 22.**

**19. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA)

☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

**20. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days After** its execution.

**21. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**22. DISPUTE RESOLUTION:**

RLA REVISED 6/22 (PAGE 4 OF 5)                           Seller's Initials _____ / _____

RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          Monterey Lane



002457            EXHIBIT 43, PAGE 1634

Property Address: *16222 Monterey Lane, Spc 376, Huntington Beach,  92649*

  A. **MEDIATION:** (1) Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. (2) Mediation fees, if any, shall be divided equally among the parties involved. (3) If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then if the non-mediating party is the losing party in any such action, the prevailing party in such action shall be entitled to recover attorney fees from the non-mediating party, notwithstanding the terms in **paragraph 18.** (4) Exclusions from this mediation agreement are specified in **paragraph 22B.**

  B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

  C. **ARBITRATION ADVISORY: If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).**

23. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

24. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

25. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall deliver to Broker, within 3 Days after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

  ☐ **ENTITY SELLERS:** (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)
  (1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, other entity or holds a power of attorney.
  (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 25** for additional terms.
  (3) The name(s) of the Legally Authorized Signer(s) is: _____, _____.
  (4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**SELLER SIGNATURE(S):**

(Signature) By, _____   Date: _____
Printed name of SELLER: *Jeffrey Golden. Ch 7 Trustee*
☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable. _____

(Signature) By, _____   Date: _____
Printed name of SELLER: _____
☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable, _____
☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *Coldwell Banker Residential*   DRE Lic. # *00616212*
Address *840 Newport Center Dr., Suite 100*   City *Newport Beach*   State *CA*   Zip *92660*
By _____ Tel. *(562)335-0145*   E-mail *greg.bingham@camoves.com* DRE Lic.#*01369137*  Date *7/25/22*
   *Greg Bingham*
By *BM Twoe*   Tel. *213 206-2 500*   E-mail *bill.FRIEDa@EARTHLINK.NE* DRE Lic.#*00672-015* Date *7/25/22*

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2022 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**RLA REVISED 6/22 (PAGE 5 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com      *Monterey Lane*



CALIFORNIA
ASSOCIATION
OF REALTORS®

## MANUFACTURED HOME LISTING
## ADDENDUM
(C.A.R. Form MHLA, Revised 6/22)

The following terms and conditions are hereby incorporated in and made a part of the: Residential Listing Agreement, ☐ Other
_____ ("Agreement"),
dated _____ *July 25, 2022* _____, on property known as *16222 Monterey Lane, Spc 376, Huntington Beach,   92649*

in which _____ *Jeffrey Golden, Ch 7 Trustee* _____ is referred to as ("Seller")
and _____ *Coldwell Banker Realty* _____ is referred to as ("Broker").

1. **TYPE OF MANUFACTURED HOME:** (Check the applicable box below: **paragraphs A1, A2 or B.**) (Check ONLY one box.)
   A. **PERSONAL PROPERTY MANUFACTURED HOME**
      (1) ☐ **A Manufactured Home On Leased Or Rented Land** (complete paragraph 2).
      Space Number ____ 376 ____ Park Name _____ *Rancho Del Rey*
      Park Address _____ *16222 Monterey Lane*
      City ____ *Huntington Beach* ____ County _____ *Orange* _____ CA, Zip Code ____ *92649*
      OR (2) ☐ **A Manufactured Home To Be Sold With Real Property** (complete paragraph 2).
      Real Property Situated in _____
      City _____ County _____ CA, Zip Code _____
      Assessor's Parcel No. _____
      **PURCHASE PRICE ALLOCATED AS FOLLOWS:**
      Manufactured Home $ _____
      Real Property $ _____
   OR B.   ☐ **A REAL PROPERTY MANUFACTURED HOME** situated in (also complete applicable parts of **paragraph 2**):
      City _____ County _____ CA, Zip Code _____
      Assessor's Parcel No. _____
      A real property manufactured home is one that meets the following requirements: **(i)** a building permit is obtained from
      local authorities pursuant to Health and Safety Code § 18551; **(ii)** the manufactured home is affixed to a foundation
      pursuant to Health and Safety Code § 18551; **(iii)** a certificate of occupancy is issued by local authorities; and **(iv)** there is
      recordation with the local authorities of a form pursuant to Health and Safety Code § 18551.
2. **ADDITIONAL DESCRIPTION:**
   Manufacturer's Name ____ *Skyline Homes, Inc* ____ Model _____ *Custom Villa*
   Date of manufacture ____ *05/29/2014* ____ Date of first sale ____ *07/28/2014*
   Property is: ☐ On Local Property Tax Roll or ☒ Annual Registration and in Lieu of Tax, (sale/use tax may apply). Property shall be
   registered with the Department of Housing and Community Development ("HCD"), which must be notified upon sale, unless **(i)**
   Property has been converted to real property and title and registration surrendered to HCD or **(ii)** otherwise specified in writing.
   Approximate Width ____ *30'4"* ____ Approximate Length ____ *60'* ____ (without hitch) Expando Size _____
   HCD/HUD License/Decal Number *PFS1130281 and PFS1130282*
   Serial Numbers:         1. *AC7V710394GB*       2. *AC7V710394GA*       3. _____
   HCD/HUD Label/Insignia:  1. *PFS1130281*       2. *PFS1130282*       3. _____
3. **ITEMS INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the
   Property are included, and personal property items are excluded, from the purchase price.
4. Paragraph 3D(2) of the Agreement is modified as follows: Provided the Property is or includes a personal property manufactured
   home, Broker is authorized to cooperate and compensate HCD licensed dealers per Broker's policy.
5. A. Seller agrees that on close of escrow Property shall be free of liens and encumbrances, recorded, filed, registered or known to
      Seller.
   B. Seller agrees that evidence of title to the manufactured home, if personal property, shall be in the form of a duly endorsed, dated
      and delivered Certificate of Ownership; and Seller shall deliver the current Registration Certificate of Title as required by law.
   C. Seller agrees, if applicable, to deliver as soon as possible to Broker, for submission to buyer, a copy of Seller's lease or rental
      agreement and all current park and/or Homeowners' Association rules and regulations, and to inform Broker of any changes to
      either during the Listing Period.
   D. Seller represents that Property, if personal property, is either: **(i)** Located within an established mobilehome park as defined in
      California Health and Safety Code § 18214, and that advertising or offering it for sale is not contrary to any provision of any
      contract between Seller and mobilehome park ownership; OR **(ii)** that Property is located pursuant to a local zoning ordinance
      or permit on a lot where its presence has been authorized or its continued presence and such use would be authorized for a
      total an uninterrupted period of at least one year.
   E. Seller has not assigned or sublet the Property.

© 2022, California Association of REALTORS®, Inc.

**MHLA REVISED 6/22 (PAGE 1 OF 2)**     Buyer's Initials _____ / _____     Seller's Initials _____ / _____

**MANUFACTURED HOME LISTING ADDENDUM (MHLA PAGE 1 OF 2)**

Coldwell Banker Residential, 840 Newport Center Dr., Suite 100   Newport Beach CA 92660                Phone: 5623350145              Fax: 5624152614       Monterey Lane
Greg Blagham                                     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

     EXHIBIT 43, PAGE 1636

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Manufactured Home Listing Addendum.

Seller _____ Date _____
    *Jeffrey Golden, Ch 7 Trustee*

Seller _____ Date _____

Real Estate Broker (Listing Firm) *Coldwell Banker Residential* _____ DRE Lic. # *00616212*

By _____ DRE Lic. # *01309137* Date *7/25/22*
    *Greg Bingham*

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

MHLA REVISED 6/22 (PAGE 2 OF 2)

**MANUFACTURED HOME LISTING ADDENDUM (MHLA PAGE 2 OF 2)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St. Suite 2200, Dallas, TX 75201 www.lwolf.com     Monterey Lane

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

Jeffrey I. Golden, solely in the capacity as the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Jamie Lynn Gallian, ("Debtor") in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California, agrees to grant Coldwell Banker("Broker") the exclusive right to negotiate a sale of the mobile home commonly described as 16222 Monterey Lane, Spc 376, Huntington Beach, California ("Property") upon the terms and conditions of the Exclusive Authorization and Right to Sell Property ("Exclusive Authorization"), as amended by the following terms and conditions:

1.  <u>Addendum</u>.  This Addendum applies to the Exclusive Authorization. Notwithstanding any contrary terms and conditions in the Exclusive Authorization, this Addendum shall apply.

2.  <u>No Liability</u>.  The Trustee is listing the Property for sale with the Broker in the capacity as Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of such listing.

3.  <u>Termination</u>.  The Trustee may terminate the Exclusive Authorization at the Trustee's option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in the capacity as Trustee, as a result of any such termination.

4.  <u>Abandonment</u>.  The Trustee reserves the right, in the Trustee's sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of the Trustee's intention to abandon the Property upon the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest.  In the event of any such abandonment, the Exclusive Authorization and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Trustee, either personally or the capacity as Trustee, as a result of any such abandonment and termination.

5.  <u>Conditions of Sale</u>.  The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

124805.1   9937176A

EXHIBIT 43, PAGE 1638

a.   The Trustee is selling the Property in the capacity as the Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of any sale.

b.   If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.   The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding if the property is subdividable.

d.   The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.   The sale is subject to overbids.

f.   The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property. The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

g.   The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

h.   All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

i.   The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law. The Trustee is not required to deliver

124805.1   9937176A                      2

to the purchaser a written statement of compliance with any applicable state and local law.

      j.    The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

      k.    If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

      l.    Any sale is subject to the following conditions being satisfied before the close of escrow:

      (1)  the Trustee must prevail with respect to any objections to the proposed sale; and

      (2)  the Trustee reserves the right to reject any and all offers which in his/her judgment are insufficient.

      m.    The Property is being sold subject to:

      (1)  All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

      (2)  Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property. Title, however, is to be transferred free of secured claims of record.

    6.    <u>Payment of Commission</u>. The commission to be paid to the Broker shall only be paid from the proceeds of the sale of the Property. The payment of the commission is subject to prior approval of the Bankruptcy Court.

    7.    <u>Reduction of Listing Price and Extension of Term of Listing Agreement</u>. The Trustee may, in the Trustee's sole discretion and business judgment and without further Court order, modify the Exclusive Authorization by reducing the listing price and/or extending the term of the Exclusive Authorization.

124805.1   9937176A           3

8.    <u>Entire Agreement</u>. This Addendum and the Exclusive
Authorization, to the extent that such Exclusive Authorization
is not contrary to the terms and conditions herein, constitute
the entire contract between the parties.  All prior agreements
between the parties are incorporated into this agreement.  Its
terms are intended by the parties as a final expression of their
agreement with respect to such terms as are included herein, and
may not be contradicted by evidence of any prior agreement or
contemporaneous oral agreement.  The parties further intend that
this Addendum and the Exclusive Authorization constitute the
complete, final and exclusive statement of the terms of the
agreement and that no extrinsic evidence whatsoever may be
introduced in any judicial or arbitration proceeding, if any,
involving this Addendum and the Exclusive Authorization.

9.    <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court,
sitting without a jury which is expressly waived, shall have
exclusive jurisdiction to resolve any and all disputes relating
to this Addendum and the Exclusive Authorization.  This Addendum
and the Exclusive Authorization and any disputes related thereto
shall be governed by California law.

124805.1    9937176A                          4

002464          EXHIBIT 43, PAGE 1641

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 600**
**Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*): Application Of The Chapter 7 Trustee To Employ Real Estate Broker Coldwell Banker Realty And Agents William Friedman And Greg Bingham Pursuant To 11 U.S.C. §§ 327 And 328; Memorandum Of Points And Authorities; And Declarations Of William Friedman And Greg Bingham In Support will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 28, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Aaron E DE Leest    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
Jeffrey I Golden (TR)    lwerner@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com
D Edward Hays    ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays;cmendoza@ecf.courtdrive.com
Brandon J Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
Eric P Israel    eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
Laila Masud    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
Mark A Mellor    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
Valerie Smith    claims@recoverycorp.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) July 28, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Jamie Lynn Gallian                          William Friedman
16222 Monterey Ln Unit 376              1608 Montana Avenue
Huntington Beach, CA 92649             Santa Monica, California 90403
**Debtor**

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) July 28, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/28/2022 | Gloria Estrada | *Gloria Estrada* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

EXHIBIT 43, PAGE 1642

EXHIBIT 44

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  LAILA MASUD, #311731
   lmasud@marshackhays.com
3  BRADFORD N. BARNHARDT, #328705
   bbarnhardt@marshackhays.com
4  MARSHACK HAYS LLP
   870 Roosevelt
5  Irvine, CA 92620
   Telephone: (949) 333-7777
6  Facsimile: (949) 333-7778

7  Attorneys for Movant and Creditor,
   HOUSER BROS. CO. dba RANCHO DEL
8  REY MOBILE HOME ESTATES

FILED & ENTERED

AUG 05 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jle           DEPUTY CLERK

9              UNITED STATES BANKRUPTCY COURT

10        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

11  | In re | Case No. 8:21-bk-11710-ES |
12  | JAMIE LYNN GALLIAN, | Chapter 7 |
13  | Debtor. | ORDER GRANTING HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES'S MOTION OBJECTING TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION IN 16222 MONTEREY LANE, SPACE #376, HUNTINGTON BEACH, CA 92649, DOCKET NO. 95 |

14

15

16

17                                    HEARING DATE
18                                    Date:   July 21, 2022
                                      Time:   10:30 a.m.
19                                    Ctrm:   5A
                                      Location: 411 W. Fourth Street, Santa Ana, CA
20                                    92701

21

22         On May 12, 2022, Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates

23  ("Houser Bros.") filed a "Motion Objecting to Debtor's Claimed Homestead Exemption"

24  ("Motion"). Docket No. 95. The Motion was set for hearing on June 2, 2022, at 10:30 a.m.

25  Docket No. 99.

26         On May 13, 2022, The Huntington Beach Gables Homeowners Association ("HOA")

27  filed a "Joinder to Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates' Motion

28  Objecting to Debtor's Claimed Homestead Exemption" ("HOA Joinder"). Docket No. 98.

1

1      On May 16, 2022, Janine Jasso ("Ms. Jasso," and together with the HOA, the "Joining

2  Parties") filed a "Joinder to Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates'

3  Motion Objecting to Debtor's Claimed Homestead Exemption" ("Jasso Joinder"). Docket No.

4  100.

5      On June 1, 2022, Jamie Lynn Gallian ("Debtor") filed "Debtors Reply Opposition,

6  Memorandum of Points and Authorities to Houser Bros. Co. dba Rancho Del Rey Mobile Home

7  Estates' Motion Objecting to Debtor's Claimed Homestead Exemption and Joinder Parties

8  Huntington Beach Gables HOA; Janine Jasso" ("Opposition"). Docket No. 105.

9      On June 2, 2022, at 10:30 a.m., the Court conducted a hearing on the Motion. All

10  appearances were as noted on the record. Before the hearing, the Court published a tentative

11  ruling to continue the hearing on the Motion to July 21, 2022, at 10:30 a.m. to allow Houser

12  Bros. and the Joining Parties to file a reply to Debtor's late Opposition. The Court's tentative

13  ruling cautioned that "[n]o other pleadings may be filed," and that "in the future, the court will

14  not consider any pleadings filed by Debtor after the day they are due."

15      On June 23, 2022, the Court entered an "Order Continuing Hearing on Motion Objecting

16  to Debtor's Claimed Homestead Exemption" ("June 23, 2022, Order"), which attached a copy

17  of the Court's tentative ruling for the June 2, 2022, hearing. Docket No. 124. The June 23, 2022,

18  Order, provided as follows:

19      1)    The hearing on the Motion is continued to July 21, 2022, at 10:30 a.m. to allow

20           Houser Bros. and/or the Joining Parties to file a reply/replies to Debtor's late

21           opposition filed on June 1, 2022;

22      2)    Any replies by Houser Bros. or the Joining Parties must be filed by July 7, 2022;

23           and

24      3)    No other pleadings may be filed regarding the Motion. Docket No. 124.

25      On June 30, 2022, Chapter 7 Trustee Jeffrey I. Golden filed "Trustee's Joinder in Houser

26  Bros. Co. dba Rancho Del Rey Mobile Home Estates' Motion Objecting to Debtor's Claimed

27  Homestead Exemption" ("Trustee Joinder"). Docket No. 128.

28

002468      EXHIBIT 44, PAGE 1643

1    On July 7, 2022, the HOA filed a "Reply to Debtor's Opposition to Motion Objecting to
2  Debtor's Claimed Homestead Exemption" ("HOA Reply"). Docket No. 129.

3    That same day, Houser Bros. filed:

4    1)    "Reply to Debtor's Opposition to Motion Objecting to Claimed Homestead
5          Exemption" ("Houser Bros. Reply"), Docket No. 130;

6    2)    "Declaration of Vivienne J. Alston Re: Motion Objecting to Debtor's Claimed
7          Homestead Exemption" ("Alston Declaration"), Docket No. 131;

8    3)    "Declaration of Greg Buysman Re: Motion Objecting to Debtor's Claimed
9          Homestead Exemption" ("Buysman Declaration"), Docket No. 132; and

10   4)    "Declaration of Chris Houser Re: Motion Objecting to Debtor's Claimed
11         Homestead Exemption" ("Houser Declaration"), Docket No. 133.

12    On July 8, 2022, Debtor filed an unauthorized "Reply to Greg Buysman, CA Notary
13  Public Commission Number 2341449; Owner & Operator the UPS Store, Edinger/Springdale."
14  Docket No. 134.[1]

15    Before the July 21, 2022, hearing, the Court published a tentative ruling to grant the
16  Motion. A true and correct copy of the Court's tentative ruling for the July 21, 2022, hearing is
17  attached as **Exhibit 1**.

18    On July 21, 2022, at 10:30 a.m., the Court held a continued hearing on the Motion.
19  Appearances were as noted on the record. During the hearing, all parties were given an
20  opportunity to be heard. The Court, having read and considered the Motion, the HOA Joinder,
21  the Jasso Joinder, the Opposition, the Trustee Joinder, the HOA Reply, the Houser Bros. Reply,
22  the Alston Declaration, the Buysman Declaration, and the Houser Declaration, and all other
23  pleadings and papers filed in this case, and having heard the arguments made on the record
24  during the July 21, 2022, hearing, for the set forth in the motion and reply papers, the attached
25  tentative ruling, and on the record during the hearing, the Court enters its order as follows:

26

27  [1] The Court did not formally consider this pleading because Debtor filed it in violation of the June
    23, 2022, Order's requirement that no other pleadings were to be filed other than replies by Houser
28  Bros. and the Joining Parties. Even if the Court were to consider this improper pleading, the
    evidence presented therein would have been insufficient to alter or change the Court's ruling.

3

1    IT IS ORDERED that the Motion is granted and Houser Bros.'s objection in the Motion

2   to Debtor's claimed homestead exemption in 16222 Monterey Lane, Space #376, Huntington

3   Beach, CA 92649 pursuant to § 704.730 of the California Code of Civil Procedure is sustained.

4   Any claim of exemption by Debtor in the Property is disallowed.

5                                              # # #

Date: August 5, 2022

Erithe Smith
United States Bankruptcy Judge

4

EXHIBIT 44, PAGE 1645

EXHIBIT  1

EXHIBIT 44, PAGE 1646

## United States Bankruptcy Court
## Central District of California
### Santa Ana
### Erithe Smith, Presiding
### Courtroom 5A Calendar

---

**Thursday, July 21, 2022**                                  **Hearing Room      5A**

<u>10:30 AM</u>
**8:21-11710     Jamie Lynn Gallian**                                  **Chapter 7**

 **#32.00** CON'TD Hearing RE: Creditor Houser Bros. Co. dba Rancho Del Rey Mobile
    Home Estates Motion Objecting to Debtor's Claimed Homestead Exemption

    FR: 6-2-22

        Docket  95

**Courtroom Deputy:**

 - NONE LISTED -

**Tentative Ruling:**


**June 2, 2022**

Continue hearing to July 21, 2022 at 10:30 a.m. to allow Movant/Joining
Parties to file a reply to Debtor's late opposition filed on June 1, 2022, which
reply(ies) must be filed by July 7, 2022.  No other pleadings may be filed.

<u>Basis for Tentative Ruling</u>:

1.  Because Debtor filed her opposition one day prior to the hearing, the court
has not had an opportunity to review it and the Movant was not afforded the
opportunity to file a reply to the opposition. Under the Local Bankruptcy
Rules, the court may exclude late-filed pleadings and not consider them at all.
On this one occassion, the court will make an exception and allow the
opposition.  <u>However</u>, in the future, the court will not consider any pleadings
filed by Debtor after the day they are due.

2.  Based solely on the timely filed Motion and joinders, the court would be
inclined to grant the Motion.
--------------------------------------------------------------------------------

**July 21, 2022**

Grant the Motion objecting to Debtor's homestead exemption claim.

---

002472

EXHIBIT 1, PAGE 5
EXHIBIT 44, PAGE 1647

**United States Bankruptcy Court**
**Central District of California**
Santa Ana
Erithe Smith, Presiding
Courtroom 5A Calendar

---

**Thursday, July 21, 2022**                                    **Hearing Room      5A**

---

10:30 AM
**CONT...      Jamie Lynn Gallian**                                    **Chapter 7**

Preliminary Comments re the Tentative Ruling:

This hearing was continued from June 2, 2022 solely because Debtor filed a late opposition *one day* prior to the hearing on June 1, 2022. The continuance was to allow the Movant and Joining Parties to file a reply to the June 1 opposition by July 7, 2022. The court expressly ruled that *no other pleadings were to be filed*. Notwithstanding that ruling, Debtor filed an additional pleading on July 8, 2022 [dkt. 134] without obtaining leave from the court (with notice to the Movant and Joining Parties) to do so. Accordingly, the pleading will not be formally considered by the court. The court notes parenthetically that even if it were to consider the improper pleading, the evidence presented therein would be insufficient to alter or change the court's ruling.

Basis for Tentative Ruling:

    A. <u>The Motion is Timely</u>

       The court must first determine whether the objection was timely. *In re Smith*, 235 F.3d 472, 475 (9th Cir. 2000) (stating that before reaching the merits of debtor's purported exemption, the court must determine whether the Creditors' objections were timely). An objection to an exemption must be filed within 30 days after the conclusion of a debtor's meeting of creditors or the filing of any exemption amendment. Fed. R. Bankr. P. 4003(b)(1). Here, the Motion was timely filed on May 12, 2022, as the Debtor's meeting of creditors concluded on May 3, 2022.

    B. <u>Movant has provided evidence sufficient to grant the Motion</u>

       At the time a petition for bankruptcy is filed, "all legal or equitable interests of the debtor in property" become available to satisfy creditors' claims and costs of the proceedings unless the assets are '"exempted' from use in satisfying claims of creditors and other authorized charges." *In re Sewell*, 180 F.3d 707, 710 (5th Cir. 1999); FRBP § 541(a)(1). The applicable state law determines bankruptcy exemptions on the date of the filing of the

---

EXHIBIT 1, PAGE 6
EXHIBIT 44, PAGE 1648

## United States Bankruptcy Court
## Central District of California
### Santa Ana
### Erithe Smith, Presiding
### Courtroom 5A Calendar

**Thursday, July 21, 2022**                                        **Hearing Room      5A**

<u>10:30 AM</u>
CONT...     **Jamie Lynn Gallian**                                          **Chapter 7**

original bankruptcy petition. *In re Bassin*, 637 F.2d 668, 670 (9th Cir. 1980). California has, per FRBP § 522(b)(1), has "opted out" of the federal exemption scheme and therefore California debtors may claim only those exemptions allowable under California law.

###### 1. <u>Houser Bros has standing to bring the Motion</u>

FRBP 4003(b) provides that a party in interest may filed an objection to the list of property claimed by debtor as exempt. Fed. R. Bankr. P. 4003(b). Here, Houser Bros is certainly a party in interest. First, Houser Bros is a creditor. In her Amended Schedules [dkt. 75], Debtor listed Houser Bros. as a creditor, with a contingent, unliquidated, disputed claim against the Property of unknown amount. Second, On January 2, 2019, Houser Bros. filed a "Complaint for Forcible Entry/Detainer (Mobilehome Park)" ("OCSC Complaint") against Debtor in Orange County Superior Court, Case No. 30-2019-01041423-CL-UD-CJC ("OCSC Action"). Hays Declaration, Ex. 3. Debtor's claimed homestead exemption, if allowed, will bind Houser Bros. Reply, 7.

###### 2. <u>There is no applicable recorded homestead</u>

Generally, claimed exemptions are "presumptively valid" and the objecting party thus bears the burden of proving that the exemption is improper. *In re Carter*, 182 F.3d 1027, 1029 n. 3 (9th Cir.1999); FRBP § 4003(c). However, the Supreme Court in *Raleigh v. Illinois Dept of Revenue*, 530 US 15, 20-21 (2000) held that because proof is substantive, in the absence of a federal interest requiring a different result, the state law allocation of the burden should apply in bankruptcy objection to claims. The Ninth Circuit Bankruptcy Appellate Panel concluded that, where a state law exemption statute specifically allocates the burden of proof to the debtor, FRBP § 4003(c) does not change that allocation. *In re Diaz,* 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016). *In re Diaz* is persuasive given the U.S. Supreme Court's holding in *Raleigh*. California has placed the ultimate burden of proof on the party claiming the exemption. CCP §§ 703.580(b), 704.780(a). Although the burden of proof lies with the party claiming the exemption, exemption statutes are generally construed in favor of the debtor. *Kono v. Meeker K,* 196 Cal. App. 4th 81, 86 (2011).

EXHIBIT 1, PAGE 7
EXHIBIT 44, PAGE 1649

002474

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Erithe Smith, Presiding**
**Courtroom 5A Calendar**

---

**Thursday, July 21, 2022**                                      **Hearing Room      5A**

---

<u>10:30 AM</u>
**CONT...      Jamie Lynn Gallian**                                              **Chapter 7**

      Pursuant to Cal. Civ. Proc. Code § 704.780(a), the burden to show a debtor's entitlement to a homestead exemption rests with the debtor, unless a declared homestead has been recorded. Cal. Civ. Proc. Code § 704.780(a). The objecting party need only provide evidence sufficient to meet the "preponderance of the evidence" standard.   *In re Kelley,* 300 B.R. 11, 16 (9th Cir. B.A.P. 2003). If the objecting party produces evidence to rebut the claimed exemption, the burden of production then shifts to the debtor to demonstrate the exemption is proper. Fed. R. Evid. R. 301. The debtor's standard of proof is also "preponderance of the evidence." *United States ex rel. Farmers Home Admin. v. Arnold & Baker Farms,*  177 B.R. 648, 654 (9th Cir. BAP 1994).

      Here, Debtor bears the burden of proof to show entitlement to the homestead exemption because the Orange County Treasurer-Tax Collector records do not indicate that there is a "current homeowner's exemption or disabled veteran's exemption" for the Property. A copy of the 2021-22 tax bill for the Property is attached to the Hays Declaration as Exhibit 24.

      Although Debtor claims to have recorded a Homestead Declaration, she did so with the Orange County Clerk-Recorder, not the Orange County Treasurer-Tax Collector. Declared homesteads are not applicable to sales by a bankruptcy trustee. *See In re Sain,* 584 B.R. 325, 329 (Bankr. S.D. Cal. 2018) (indicating that only the automatic homestead was available to a debtor who held a recorded declaration of homestead, because the debtor had not elected a declared homestead exemption in his schedules, and declared homesteads are not applicable to sales by bankruptcy trustees); *see also See Kelley v. Locke (In re Kelley),* 300 B.R. 11, 21 (B.A.P. 9th Cir. 2003) (noting that in the bankruptcy context, a debtor's declaration of homestead "helps him not at all, as the additional benefits conferred in Article 5 [Sections 704.910-704.995] would benefit him only in the situation of a voluntary sale"). Therefore, Debtor bears the burden of proof for the homestead exemption.

        3.   <u>Debtor failed to meet her burden that the Property is</u>
           <u>subject to exemption</u>

      In *In re Shaefers,* the Ninth Circuit BAP found that a  Chapter 7 debtor

---

002475                      EXHIBIT 1, PAGE 8
                                        EXHIBIT 44, PAGE 1650

## United States Bankruptcy Court
### Central District of California
#### Santa Ana
#### Erithe Smith, Presiding
#### Courtroom 5A Calendar

---

**Thursday, July 21, 2022**                                    **Hearing Room        5A**

---

<u>10:30 AM</u>
**CONT...      Jamie Lynn Gallian**                                    **Chapter 7**

cannot claim homestead exemption in limited liability company (LLC) that he
owned, which owned real property at which debtor resided; debtor did not
identify any beneficial or equitable interest in the property, and LLC members
such as debtor had no interest in the company's assets, rather, debtor's
interest in LLC was a personal property interest outside the statutory
definition of a homestead. 623 B.R. 777 (B.A.P. 9th Cir. 2020).

Here, Debtor has failed to meet her burden that the Property is subject
to exemption. First, the HCD records show that J-Sandcastle LLC, not Debtor,
was the Property's owner of record on the Petition Date. As of June 7, 2021—
about a month before the Petition Date—the Property's registered owner was
J-Sandcastle LLC, and the legal owners were Pierpont and J-Pad LLC. Hays
Decl., Ex. 17 at 142. The HCD webpage indicates that "documents and fees"
must be submitted to the HCD to transfer ownership of a manufactured home
or manufactured home. The June 7, 2021, Title Search did not note any
pending applications for title or registration change that might have added
Debtor as the registered or legal owner of the Property before the Petition
Date. And, Debtor paid no fees to the HCD between June 7, 2021, and the
Petition Date that could have effectuated a title change. *See* Hays Decl., Ex.
26.

Moreover, the July 2021 HCD Transaction had a transaction date of
July 14, 2021—five days after the Petition Date—and included a certificate of
title showing J-Sandcastle LLC as the Property's registered owner and
Pierpont and J-Pad LLC as the Property's legal owners. Hays Decl., Ex. 21 at
171. Included in this post-petition transaction was a document to add Debtor
as the Property's "New Registered Owner." *Id.* at 172. Also attached was a
County of Orange "Tax Clearance Certificate" issued and executed on the
Petition Date, which gave the Property's "Current Registered Owner" as J-
Sandcastle LLC. *Id.* at 191. The August 2021 HCD Transaction did include a
certificate of title showing Debtor as the Property's registered owner, but
according to the certificate, title was issued on August 3, 2021, nearly a
month after the Petition Date. Hays Decl., Ex. 22 at 195.

Second, between February 1, 2021, and the Petition Date, all
payments that Debtor submitted to Houser Bros. listed J-Sandcastle LLC as
the payor/were on behalf of J-Sandcastle LLC. Only after the Petition Date

---

EXHIBIT 1, PAGE 9
EXHIBIT 44, PAGE 1651

002476

## United States Bankruptcy Court
## Central District of California
### Santa Ana
### Erithe Smith, Presiding
### Courtroom 5A Calendar

---

**Thursday, July 21, 2022**                                          **Hearing Room      5A**

---

<u>10:30 AM</u>
**CONT...      Jamie Lynn Gallian**                                                      **Chapter 7**

did Debtor submit a payment on her own behalf. *See* Hays Decl. Ex. 23 at 203-222.

Third, Debtor provides no credible evidence that she acquired an interest from the LLC on February 25, 2021. In Debtor's Original Schedules, filed on the Petition Date (July 9, 2021), Debtor provided, under penalty of perjury, that "Registered Title with HCD Debtor's single member LLC, J-Sandcastle Co, LLC." Motion at 33 (Exhibit 2). In addition, Debtor, in the Opposition, asserts J-Sandcastle LLC's executed a notarized release of title document, claiming: "On the petition date July 9, 2021, the registered title owner of the manufactured home located at 16222 Monterey Lane, Unit #376, Huntington Beach, CA 92649 ('Property') was Jamie Lynn Gallian as of February 25, 2021, the date J-Sandcastle Co LLC signed and dated to release the Certificate of Title to Jamie Lynn Gallian, notarized the same date." Opp'n., 29. However, Mr. Buysman did not actually notarize these documents. Instead, Mr. Buysman's notary book shows that on February 25, 2021, he notarized for Debtor an "Affidavit of Death" and a "Transfer Grant Deed." Buysman Decl., ¶7-11. Mr. Buysman did not notarize the July 2021 HCD Submission either. *Id*.  Debtor's improperly filed July 8 response, even if considered by the court, would be insufficient to counter the statements and documentary evidence set forth in the Buysman Declaration.

Fourth, any alleged unrecorded transfer of title to Debtor personally was ineffective. *See In re Farokhirad*, Case No. 8:21-bk-10026-MW, ECF No. 98 (Bankr. C.D. Cal. Apr. 29, 2021) (sustaining a trustee's objection to an individual debtor's claimed homestead exemption in property held by a wholly owned LLC, and indicating that a provision of the LLC agreement purporting to transfer an interest in the property to the debtor prepetition was ineffective because an unrecorded deed could not bind the trustee). In California, unperfected (i.e. unrecorded) liens against real property are unenforceable against a bona fide purchaser for value, and Trustee is "clothed with the status of a hypothetical bona fide purchaser of real property under Section 544(a)(3). *In re Tleel*, 79 B.R. 883, 887 (B.A.P. 9th Cir. 1987); Cal.Civ.Code §§ 1214, 1217. Section 544, however, must be applied "without regard to any knowledge of the trustee or of any creditor." 11 U.S.C. § 544(a). Therefore, actual notice cannot overcome the Trustee's bona fide purchaser status. *In re Tleel*, 876 F.2d 769, 772 (9th Cir. 1989). Pursuant to Section 544, the trustee

---

002477                        EXHIBIT 1, PAGE 10
                              EXHIBIT 44, PAGE 1652

## United States Bankruptcy Court
## Central District of California
### Santa Ana
### Erithe Smith, Presiding
### Courtroom 5A Calendar

**Thursday, July 21, 2022**                                       **Hearing Room      5A**

10:30 AM

**CONT...      Jamie Lynn Gallian**                                              **Chapter 7**

is treated as a lien creditor and/or bona fide purchaser as of the date of the
commencement of the case. *In re Tleel*, 79 B.R. 883, 886 (B.A.P. 9th Cir.
1987).

While Debtor asserts the Property was actually transferred from J-
Sandcastle LLC to Debtor on February 25, 2021, the transfer was not
recorded until after the Petition Date. Hays Decl., Ex. 19 at 145. As such,
Trustee would be treated as a bona fide purchaser as of the Petition Date.

In conclusion, Debtor failed to carry her burden because, on the
Petition Date, the Property's registered owner was J-Sandcastle LLC, and the
legal owners were Pierpont and J-Pad, LLC. As a result, the Property was not
part of the estate and not eligible for an exemption.  The court, therefore,
need not address Movant's alternative argument re 11 U.S.C. 522(p) except
to say that had Debtor provided sufficient evidence of a transfer on February
25, 2021, the limitations of 522(p) would have applied.

| Party Information |
|---|

**Debtor(s):**

Jamie Lynn Gallian                      Pro Se

**Trustee(s):**

Jeffrey I Golden (TR)                   Represented By
                                        Aaron E DE Leest
                                        Eric P Israel

002478

EXHIBIT 1, PAGE 11
EXHIBIT 44, PAGE 1653

EXHIBIT 45

1   D. EDWARD HAYS, #162507
    ehays@marshackhays.com
2   LAILA MASUD, #311731
    lmasud@marshackhays.com
3   MARSHACK HAYS LLP
    870 Roosevelt
4   Irvine, CA 92620
    Telephone: (949) 333-7777
5   Facsimile: (949) 333-7778

6   Attorneys for Plaintiff,
    HOUSER BROS. CO. dba RANCHO DEL REY
7   MOBILE HOME ESTATES

8                   UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11  | In re | Case No. 8:21-bk-11710-ES |
12  | JAMIE LYNN GALLIAN, | Chapter 7 |
13  | Debtor. | Adv. No. 8:21-ap-01097-ES |
14  |  | FIRST AMENDED COMPLAINT TO |
15  | HOUSER BROS. CO. dba RANCHO DEL REY MOBILE HOME ESTATES, | (1) DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523 (a)(2)(A) and (a)(6); |
16  | Plaintiff, |  |
17  | v. | (2) DENY DISCHARGE PURSUANT TO 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5) |
18  | JAMIE LYNN GALLIAN, |  |
19  | Defendant. | Status Conference |
20  |  | Hearing: January 6, 2022 Time: 9:30 a.m. |
21  |  | Ctrm: 5A Location: 411 W. Fourth St., Santa Ana, CA |
22  |  | 92701 |

23  TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE,

24  DEFENDANT AND HER ATTORNEY OF RECORD, AND TO ALL INTERESTED PARTIES:

25          Plaintiff, HOUSER BROS. CO., a California limited partnership dba RANCHO DEL REY

26  MOBILE HOME ESTATES ("Houser Bros." or "Plaintiff"), files this First Amended Complaint

27  against Debtor, Jaime Lynn Gallian ("Defendant" or "Debtor"), and alleges as follows:

28

                                1
                    FIRST AMENDED COMPLAINT
    4842-2871-2959,v.1

## Statement of Jurisdiction and Venue

1.      The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *Jaime Lynn Gallian*, Case Number 8:21-bk-11710-ES on the docket of the Court.

2.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (dischargeability of particular debts) and 28 U.S.C. § 157(b)(2)(J) (objections to discharge). To the extent any claim for relief contained in this proceeding is determined to be non-core or involve a *Stern*-claim, Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Court.

3.      Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United State Code as provided in 28 U.S.C. § 1409.

## Parties

4.      Plaintiff is a California limited partnership doing business in the County of Orange, State of California, under the fictitious name of Rancho Del Rey Mobile Home Estates.

5.      Plaintiff is informed and believes, and thereon alleges that Defendant is an individual residing in Huntington Beach, California.

## General Allegations

## The Parties and Their Background

6.      Houser Bros. Co. owns several acres of real property in Huntington Beach California. The real property has been improved with both (a) a senior mobilehome park known as Rancho Del Re Mobile Home Estates (hereinafter referred to as "The Park" or "Plaintiff") and (b) an 80-unit condominium complex known as The Huntington Beach Gables ("The Gables").[1]

---

[1] Defendant was involved in hotly-contested litigation with the Gables concerning property located at 4476 Alderport Drive, Unit 53, Huntington Beach, California 92649 ("4476 Alderport"). The litigation spawned a judgment of over $316,583.59 ("Gables Judgment") in favor of the Gables which was formally entered on May 6, 2019. To that end, the Gables has separately filed an adversary action against Defendant seeking to except the Gables Judgment from discharge as well as to deny Debtor a discharge. *See*, Dk. No. 57 in Case No., 8:21-bk-11710-ES ("Gables Adversary Complaint"). By this reference, Plaintiff incorporates all allegations in the Gables Adversary Complaint as if specifically set forth herein.

2

FIRST AMENDED COMPLAINT

1  The Park is operated by Plaintiff and the condominium community sub-leases the real property and

2  is operated by an independent Homeowners Association ("Association"). Both The Park and the

3  Gables are enclosed in a six-foot perimeter wall and traffic to both communities is controlled by the

4  same gate with a manned gatehouse. Once a person is past the gatehouse, they have complete and

5  unfettered access to both communities.

6       7.    In February 2018, Defendant came to The Park's leasing office to inquire whether

7  there were any mobilehomes for sale. At this meeting, Defendant neither requested an application

8  packet nor any information as to The Park's requirements for tenancy and its application

9  procedures.

10       8.    Separately, on August 21, 2018, Plaintiff filed a complaint ("Ryan Complaint")

11  against an individual by the name of Lisa Ryan in Orange County Superior Court for failure to pay

12  rent stemming from Ms. Ryan's tenancy at the Park – namely 16222 Monterey Lane, Space 376,

13  Huntington Beach, CA 92649 ("Space 376" or "Premises").[2] Subsequently, Ms. Ryan and The Park

14  entered into a stipulated judgment ("Stipulated Judgment") resolving the Ryan Complaint and

15  providing for turnover of Space 376. Specifically:

16      (a)    No later than November 3, 2018, Ms. Ryan was to vacate Space 376;

17      (b)    The Park was entitled to a Writ of Possession provided no lock-out could occur prior

18            to November 4, 2018;

19      (c)    Ms. Ryan had 120 days to market and sell her mobilehome located at Space 376 or

20            the mobilehome would be subject to a warehouse lien auction;

21      (d)    The Park was to review any prospective buyers in accordance with Mobilehome

22            Residency Law ("MRL");

23      (e)    The sale of the mobilehome was to proceed via escrow; and

24      (f)    Ms. Ryan was to pay a money judgment of not less than $8,437.07 plus judicial

25            interest.

26

27
_____

28  [2] *See*, Case No. 30-2018-01013582-CL-UD-CJC ("Ryan State Court Action"). On March 6, 2019, in
the Ryan State Court Action the Court granted Plaintiff's motion for reconsideration to intervene and
TRO to stay writ of possession.

FIRST AMENDED COMPLAINT

4842-2871-2959,v.1

EXHIBIT 45, PAGE 1656

9.      On November 19, 2018, Defendant emailed an outdated application ("Application") to the management office for The Park. At this time, the minimum requirements for tenancy at The Park were as follows:

(a)      At least 55 years of age;

(b)      Credit worthiness including a credit score of not less than 650;

(c)      Three times the subject rent in monthly income; and

(d)      Investigation of prior tenancies (lack of prior holdovers, unlawful detainers etc.).

10.      The Park reviewed the Application and found Defendant (a) did not meet the minimum financial requirements for tenancy; (b) had a credit score of 523; and (c) had numerous collections and charge offs as bad debts.

11.      Accordingly, on November 20, 2018, the Park (a) mailed a letter informing Defendant of the denial of her Application ("Denial Letter"); and (b) verbally informed Defendant's real estate agent of the Denial Letter. On the same day, Defendant called the The Park office to discuss the Denial Letter.

12.      On November 21, 2018, Defendant physically came to The Park office and tendered a cashier's check in the amount of $8,743.07 ("Cashier's Check"). The Cashier's Check (a) was in the name of J-Sandcastle Co, LLC; (b) made payable to RDR Mobile Home Estates; (c) contained no indication of the intended purpose. Subsequently, a game of "hot potato" with the Cashier's Check occurred between The Park and Defendant, where The Park finally returned to Defendant the Cashier's Check by certified mail.

13.      In December 2018, The Park found a second cashier's check from Defendant ("2nd Cashier's Check"). Again, the 2nd Cashier's Check was also returned by The Park to Defendant by certified mail.

14.      Subsequently, The Park learned Defendant lied on the Application. Specifically, when Defendant was asked "[h]ave you been asked to terminate your residency elsewhere or have you ever been evicted?" she answered in the negative. Yet, in October 2018 - *one month prior to*

4

FIRST AMENDED COMPLAINT

002483                    EXHIBIT 45, PAGE 1657

1    *turning in the Application* - Defendant was sued by The BS Investors LP for unlawful detainer.[3]

2           15.     From what The Park could ascertain, on or around November 1, 2018, Ms. Ryan

3    allegedly transferred her interest in her mobilehome located at the Premises to an LLC owned by

4    Defendant called J-Sandcastle Co., LLC ("JSC"). But the transfer was not done pursuant to any

5    written purchase agreement.

6           16.     Rather, Defendant asserts there (a) exists a security agreement between JSC and

7    Defendant where Defendant allegedly lent JSC $225,000 in exchange for a security interest in the

8    Premises; (b) accompanying the agreement is a secured promissory note ("Note") for $225,000,[4]

9    dated November 16, 2018, between JSC and J-Pad LLC ("JP") – which LLC Debtor also holds

10   some vague ownership interest in.

11          17.     Importantly, Defendant was never approved by the Park to be a tenant for Space

12   376.[5]

13          18.     In December 2018, The Park caused to be served on Defendant a Five-Day Notice of

14   Quit Premises.

15          19.     On January 2, 2019, The Park filed a complaint ("Complaint") against Defendant for

16   forcible entry/detainer (mobilehome park).[6]

17          20.     On January 14, 2019, the Defendant filed a UCC Financing Statement against J-

18   Sandcastle Co LLC, Document No. 76027030002.

19          21.     On January 14, 2019, the Defendant filed a UCC Financing Statement against J-

20   Sandcastle Co LLC, Document No. 76027940002.

21   / / /

22

23   _____

24   [3] *See*, Case No. 30-2018-01024401.
     [4] Shortly after execution of the Note, on January 14, 2019, JP filed a UCC Financing Statement in
     favor of itself with the Debtor listed as the JSC and Defendant with the collateral being the Premises.
25   In sum, in January 2019, the JSC was the registered owner and JP was the legal owner-holder of the
     Note.
26   [55] Reasonable daily rental value of the Premises is at least $36.20 or $1,086 monthly. This is the
     amount Ms. Ryan was charged in 2018. Since then the amount has increased with move in rates for
27   The Park as follows: (a) 2019 $1372; (b) 2020 $1420; and (c) 2021 $1460.
     [6] *See*, Case No. 30-2019-01041423-CL-UD-CJC ("State Court Action"). A true and correct copy of
28   the State Court Action is attached as **Exhibit 1**. Plaintiff incorporates by reference the allegations in
     the State Court Action into this Complaint.

                                                    5
                                      FIRST AMENDED COMPLAINT

1      22.     On January 14, 2019, the Defendant filed a UCC Financing Statement against J-

2  Sandcastle Co LLC, Document No. 76027940003.

3      23.     On January 14, 2019, the Defendant filed a UCC Financing Statement against Craig

4  Houser and Kathryn Curtiss, Document No. 7602794004.

5      24.     On February 22, 2019, Defendant filed her answer-to the Complaint.

6      25.     In August 2020, title to the mobilehome located on the Premises was transferred to

7  Ron Pierpont. Subsequently, title to the Premises was also transferred to Defendant's children.

8      26.     Subsequently, the title certificate for the mobilehome on the Premises was further

9  changed to show Defendant as the registered owner.

10                             **The Bankruptcy Filing**

11      27.     On July 9, 2021, Defendant filed a voluntary petition for relief under Chapter 7 of

12  Title 11 of the United States Bankruptcy Code ("Petition Date") commencing Case No. 8:21-bk-

13  11710-ES.

14      28.     On September 7, 2021, as Dk. No. 15, Defendant filed amended schedules:

15  Amended Schedule A/B Individual: Property, Amended Schedule C: The Property You Claimed as

16  Exempt, Schedule G Individual: Executory Contracts and Unexpired Leases, Schedule H

17  Individual: Your Codebtors, Amended Schedule I Individual: Your Income, Statement of Financial

18  Affairs for Individual Filing for Bankruptcy, Statement of Intention for Individuals Filing Under

19  Chapter 7, Chapter 7 Statement of Your Current Monthly Income.

20      29.     On September 22, 2021, as Dk. No. 16, Defendant filed First Amended Schedule C:

21  The Property You Claimed as Exempt, Amended Schedule I Individual: Your Income, Amended

22  Schedule G Individual: Executory Contracts and Unexpired Leases, Amended Statement of

23  Financial Affairs for Individual Filing for Bankruptcy, Amended Statement of Intention for

24  Individuals Filing Under Chapter 7, Amended Statement of Related Cases, and Amended Chapter 7

25  Statement of Your Current Monthly Income.

26      30.     On the same day, as Dk. No. 17, Defendant filed Amended Schedules (D) and (E/F),

27  Amended List of Creditors (Master Mailing List of Creditors), and Amended Verification of Master

28  Mailing List of Creditors.

4842-2871-2959,v.1

31.     On October 14, 2021, as Dk. No. 22, Defendant filed Amended Schedule A/B Individual: Property, Amended Schedule C: The Property You Claimed as Exempt, Amended Schedules (D) (E/F), Schedule G Individual: Executory Contracts and Unexpired Leases, Schedule H Individual: Your Codebtors, and Statement of Intention for Individuals Filing Under Chapter 7.

### First Claim for Relief

### (11 U.S.C. § 523(a)(2)(A))

32.     Plaintiff incorporates by reference, paragraphs 1 through 27 and realleges these paragraphs as though set forth in full.

33.     Defendant trespassed and took possession of the subject Premises without the consent of Plaintiff. No rental agreement has been entered into between Plaintiff and Defendant. Defendant's Application was denied due to her poor financial condition. Defendant also made a material falsehood on her Application.

34.     Due to the failure of Defendant to execute a rental agreement prior to taking possession of the Premises, Defendant has no right of tenancy and is an unlawful occupant within the meaning of 11 Civil Code §798.75.

35.     Defendant remains in possession of the subject Premises as of this date, and said possession is without Plaintiff's consent.

36.     Defendant continues in willful, malicious, obstinate and/or intentional possession of said Premises without Plaintiff's consent and refuse to surrender possession of same to Plaintiff.

37.     The reasonable rental value of the Premises is at least Thirty-Six Dollars and Twenty Cents ($36.20) per day or $1,086 monthly[7], and damages caused by Defendants' forcible detention will accrue at said rates long as Defendants' mobilehome remains in possession of said Premises.

38.     The reasonable value of utilities consumed is the amount evidenced by the meter installed on the Premises, and damages caused by Defendant's forcible detention will accrue at said rates so long as Defendant's mobilehome remains in possession of said Premises.

/ / /

---

[7] *Supra*, Fn. 5

4842-2871-2959,v.1

002486          EXHIBIT 45, PAGE 1660

39. The reasonable value for trash removal and sewage charges are the amounts charged by the suppliers for these services, and damages caused by Defendant's forcible detention will accrue a said rate so long as Defendants, or any of them, remain in possession of said premises.

40. As a direct and proximate result of Defendant's false pretenses, false representations, or actual fraud, Plaintiff has suffered damages in an amount that exceeds $50,000.

41. In short, Defendant trespassed, refuses to leave and this has caused Damage to Plaintiff.

42. Defendant further fraudulently represents that she has a right to be at the Premises that is false and fraudulent resulting in her willfully and maliciously causing damage to Plaintiff.

43. By reason of the foregoing, all amounts due to Plaintiff under the Judgment must be excepted from any discharge received by the Debtor pursuant to 11 U.S.C. § 523(a)(2)(A).

**Second Claim for Relief**

(11 U.S.C. §523(a)(6))

44. Plaintiff incorporates by reference paragraphs 1 through 39 and realleges these paragraphs as though set forth in full.

45. Defendant knowingly, willfully, and/or intentionally converted Plaintiff's property, namely the Premises, for her own use while depriving Plaintiff of its right to the Premises.

46. Defendant's actions were malicious.

47. Defendant knew that the Premises were not her property and that she had no permission or right to be there.

48. Defendant failed to return the Premises to Plaintiff despite demand. Defendant's conversion was willful and malicious and not innocent or technical.

49. As a result of Debtor's willful and malicious actions, Plaintiff incurred damages in the amount of at least $50,000, exclusive of interest, costs, and attorney's fees.

50. By reason of the foregoing, all amounts due to Plaintiff under the Judgment must be excepted from any discharge to be received by Debtor pursuant to 11 U.S.C. § 523(a)(6).

/ / /

8

FIRST AMENDED COMPLAINT

4842-2871-2959,v.1

EXHIBIT 45, PAGE 1661

**Third Claim for Relief**

**Debtor Took Actions to Hinder, Delay, and Defraud Creditors**

**[11 U.S.C. § 727(a)(2)(A)]**

51.     Plaintiff incorporates by reference all allegations of Paragraphs 1 through 46, inclusive, of this complaint as though fully set forth herein.

52.     Pursuant to 11 U.S.C. § 727(a)(2)(A), a debtor shall not receive a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—property of the debtor, within one year before the date of the filing of the petition." *See, e.g., In re Lawson*, 122 F.3d 1237, 1240 (9th Cir. 1997).

53.     Within one year of the Petition Date, Debtor transferred or disposed of the Premises ("Transfer").

54.     When making the Transfer, Debtor subjectively intended to hinder, delay, or defraud creditors through the act of the Transfer.

55.     Specifically, Debtor engaged in the Transfer at a time when creditors were attempting collection and unlawful detainer efforts, such that collection efforts by Debtor's creditors were hindered, delayed, or frustrated.

56.     Additionally, certain badges of fraud accompanied the Transfer, including that (a) there was a close relationship between JPS, JP and Debtor, as Debtor hold some ownership interest in both LLCs; (b) the Transfer, and subsequent transfers, were made in response to a pending lawsuit filed by Defendant and other creditors; (c) prior to the Transfer or as a result of the Transfer, Debtor was or was rendered insolvent; (d) substantially all of Debtor's property was transferred as a result of the transfers of the Premises; (e) Plaintiff is informed and believes that Debtor received no consideration for the Transfer, or any subsequent transfers. *See Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010).

57.     Additionally, Debtor concealed her interest in the Premises by paying for the purchase of the Premises but placing title in the name of one or more LLCs and/or other individuals.

58. Defendant's concealed interest in the Property continued into the one year period prior to bankruptcy.

59. Accordingly, Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2).

## Fourth Claim for Relief

## False Oaths

## [11 U.S.C. § 727(a)(4)]

60. Plaintiff incorporates by reference all allegations of Paragraph 1 through 55, inclusive, of this complaint as though fully set forth herein.

61. Pursuant to 11 U.S.C. § 727(a)(4)(A), a debtor shall not receive a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." *See Retz*, 606 F.3d at 1196-99 (9th Cir. 2010).

62. Debtor signed her Chapter 7 Petition, Bankruptcy Schedules, Statements of Financial Affairs and other documents filed with the Court under penalty of perjury, acknowledging that the information provided therein was true and correct, even though she knew some of the information provided was not true or correct.

63. At her initial 341(a) meeting of creditors, under penalty of perjury, Debtor answered in the affirmative that she signed, read and was personally familiar with the petition, schedules, statement of financial affairs and related documents, and that there were no errors or omissions. Debtor nevertheless made several material omissions and false oaths.

64. First, on Debtor's Schedule A/B, she stated that originally that she held a 1/3 interest in JP. Subsequently, Debtor stated that she held a 1/7 interest in JP. Now, Debtor claims a 70% ownership interest without accounting for the change in interest/value.

65. Second, Debtor transferred title to the Premises in and out of her name including transferring it to an JSC to conceal her alleged interest at a time when she was facing an adverse judgment in favor of the Gables. This omission is a false oath and is material because it is relevant to Debtor's financial affairs and business dealings, which Trustee must assess in order to properly administer the estate.

4842-2871-2959,v.1

002489        EXHIBIT 45, PAGE 1663

66.     Third, on Debtor's statement of financial affairs, she stated that she had not sold, traded, or otherwise transferred any property to anyone outside the ordinary course of business within the past two years prior to bankruptcy. This is contrary to the fact Debtor engaged in a series of transfers, through the Petition Date, involving the Premises. All transfers were outside the ordinary course of business. As stated above, this omission and false oath is material because it conceals a fraudulent transfer of estate property worth approximately $300,000. Without knowledge of this transfer, Trustee would be unable to pursue a fraudulent transfer action to recover up to $300,000 for the benefit of the estate and its creditors.

67.     Fourth, Defendant states in the schedules that she has an unexpired ground lease with Defendant when one does not exist.[8]

68.     Fifth, at her 341(a) meeting of creditors, Defendant stated that JSC and Defendant are the same and not legally distinct entities. Yet, Debtor provided alleged loan documents between herself, JSC and JP as if all were distinct legal entities. Moreover, the date on the public notary page has been removed and there are no dates or signatures on these documents.[9]

69.     Debtor made the foregoing omissions and false oaths knowingly by acting deliberately and consciously. Debtor deliberately and consciously signed the schedules and statement of financial affairs knowing that the information provided was not completely true and correct. Thereafter, at her 11 U.S.C. § 341(a) meeting of creditors, Debtor testified under penalty of perjury that there were no inaccuracies in her schedules or statement of financial affairs. This supports a finding that Debtor acted knowingly in making the omissions and false oaths.

70.     Accordingly, Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(4).

/ / /

---

[8] Allegedly involving Tract 10542, Unit 4, Lot 376 16222 Monterey Lane. There is no ground lease on the MHP. There is a ground lease between BS Investors and Defendant for the condominium complex known as the HB Gables Tract 10542.
[9] Interestingly, the notary page references "Anthony Calderon" which Plaintiff believes was Defendant's ex-husband's boss who transferred JP to Defendant in 2018. Further Plaintiff believes that the signature appears to be a "copy paste" from a Secretary of State Filing.

11
FIRST AMENDED COMPLAINT

## Fifth Claim for Relief

## Objection to Debtor's Discharge

## [11 U.S.C. § 727(a)(5)]

71.     Plaintiff realleges and incorporates herein by this reference, the allegations contained in Paragraphs 1 through 66 inclusive, as though fully set forth herein.

72.     Defendant has failed to explain satisfactorily the purchase and series of transfers involving the Premises, including but not limited to the circumstances surrounding the alleged loan of $225,000 between JP, JSC, and Defendant for the purchase of the mobilehome located on the Premises.

73.     Defendant has failed to explain satisfactorily, namely produce any documentation, evidencing that there exists any lease agreement – ground or otherwise - between Defendant and Plaintiff.

74.     Defendant has been unable to explain how much she sold 4476 Alderport for and where the proceeds went, including any agreements between herself and the subsequent purchaser.

75.     As a result of her failure to explain satisfactorily material issues related to the Premises, any lease or purchase agreements, Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(5).

**ON THE FIRST CLAIM FOR RELIEF**

1.     For a determination that all amounts owed to Plaintiff under the Judgment be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A);

**ON THE SECOND CLAIM FOR RELIEF**

2.     For a determination that all amounts owed to Plaintiff under the Judgment be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6);

**ON THE THIRD CLAIM FOR RELIEF**

3.     For a determination that Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2);

12

**FIRST AMENDED COMPLAINT**

4842-2871-2959,v.1

EXHIBIT 45, PAGE 1665

1      **ON THE FOURTH CLAIM FOR RELIEF**

2      4.    For a determination that Debtor should be denied a discharge pursuant to 11 U.S.C.

3 § 727(a)(4);

4      **ON THE FIFTH CLAIM FOR RELIEF**

5      5.    For a determination that Debtor should be denied a discharge pursuant to 11 U.S.C.

6 § 727(a)(5);

7      **ON ALL CLAIMS FOR RELIEF**

8      6.    For costs of suit incurred, including attorneys' fees as provided by applicable case

9 law, statute, and/or agreement of the parties; and

10      7.    For such other relief as the Court deems just and proper.

11

12 DATED: October 22, 2021          MARSHACK HAYS LLP

13

14          By: */s/ Laila Masud*

15             D. EDWARD HAYS
            LAILA MASUD

16             Attorneys for Plaintiff,
            HOUSER BROS. CO. dba RANCHO DEL REY

17             MOBILE HOME ESTATES

18

19

20

21

22

23

24

25

26

27

28

13
FIRST AMENDED COMPLAINT

4842-2871-2959,v.1

002492

EXHIBIT 45, PAGE 1666

**EXHIBIT 1**

EXHIBIT 45, PAGE 1667

1    ELAINE B. ALSTON, Bar No. 134139,
2    VIVIENNE J. ALSTON, Bar No. 170746
     Members of
3    **ALSTON, ALSTON & DIEBOLD**
     Attorneys at Law
4    27201 Puerta Real, Suite 300
     Mission Viejo, California 92691
5    (714) 556-9400 – FAX (714) 556-9500

6    Attorney for Plaintiff

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/02/2019** at 08:00:00 AM
Clerk of the Superior Court
By Diana Cuevas, Deputy Clerk

7

8             SUPERIOR COURT, STATE OF CALIFORNIA

9                COUNTY OF ORANGE,

10

11    HOUSER BROS. CO., a California limited
     partnership dba RANCHO DEL REY MOBILE
12    HOME ESTATES

13            Plaintiff,

14      vs.

15    JAMIE GALLIAN AND ALL OTHER
     OCCUPANTS AND PERSONS IN POSSESSION
16    WITHOUT A SIGNED LEASE AGREEMENT,
     and DOES 1 to 10, inclusive,

17            Defendant

Case No.:  30-2019-01041423-CL-UD-CJC

COMPLAINT FOR FORCIBLE ENTRY/
DETAINER (MOBILEHOME PARK)

[CIVIL CODE §798.75 AND CODE OF
CIVIL PROCEDURE §§1159, et seq.]

**DOES NOT EXCEED $10,000.00**

18

19    COMES NOW, the Plaintiff herein, and alleges as follows:

20       1.     Plaintiff, HOUSER BROS. CO., a California limited partnership doing business in the

21    County of Orange State of California, under the fictitious name of RANCHO DEL REY MOBILE

22    HOME ESTATES. Plaintiff has filed the statements and published the notices required by §§17900, et

23    seq., of the Business and Professions Code.

24       2.     Defendants, JAMIE GALLIAN AND ALL OTHER OCCUPANTS AND PERSONS

25    IN POSSESSION WITHOUT A SIGNED LEASE AGREEMENT, are individuals residing in the City

26    of Huntington Beach, County of Orange State of California

27       3.     The true names and capacities of Defendants sued herein as DOES 1 through 10,

28    inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who

1

**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

1   therefore sues said Defendants by said fictitious names.  Plaintiff will amend this Complaint to insert

2   said Defendants' true names and capacities when the same have been ascertained.

3       4.      The premises which are the subject of this action are located in the judicial district in

4   which this action is brought.  Said premises are situated at 16222 Monterey Lane. Space 376,

5   Huntington Beach, California 92647  (the "Premises").

6       5.      Plaintiff is the owner of said Premises and has a superior right to possession thereof.

7       6.      Defendants entered into possession of the subject Premises without the consent of

8   Plaintiff.  No rental agreement has been entered into between Plaintiff and Defendants. Defendant's

9   application was denied due to her poor financial condition.  Defendant also made a material falsehood

10  on her application, and her prior conduct indicates she will not comply with the Rules and Regulations

11  governing the mobilehome park.

12      7.      Due to the failure of Defendants to execute a rental agreement prior to taking possession

13  of the Premises, Defendants have no right of tenancy and are unlawful occupants within the meaning of

14  Civil Code §798.75.

15      8.      On or about December 11, 2018 Plaintiff caused to be served on Defendants a Five (5)

16  Day Notice to Quit Premises.  A copy of said Notice is attached hereto as Exhibit "1" and incorporated

17  herein by this reference.

18      9.      Defendants remain in possession of the subject Premises as of this date, and said

19  possession is without Plaintiff's consent.

20      10.     Defendants continue in willful, malicious, obstinate and/or intentional possession of said

21  Premises without Plaintiff's consent and refuse to surrender possession of same to Plaintiff.

22      11.     The reasonable rental value of the Premises is at least Thirty-Six Dollars and Twenty

23  Cents ($36.20) per day, and damages caused by Defendants' forcible detention will accrue at said rate so

24  long as Defendants' mobilehome remains in possession of said Premises.

25      12.     The reasonable value of utilities consumed is the amount evidenced by the meters

26  installed on the Premises, and damages caused by Defendants' forcible detention will accrue at said

27  rates so long as Defendants' mobilehome remains in possession of the said Premises.

28

2

**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

13.    The reasonable value for trash removal and sewage charges are the amounts charged by the suppliers for these services, and damages caused by Defendants' forcible detention will accrue at said rate so long as Defendants, or any of them, remain in possession of said premises.

14.    California Civil Code §798.85 states as follows:

> "In any action arising out of the provisions of this chapter the prevailing party shall be entitled to reasonable attorneys' fees and costs."

15.    Plaintiff has been compelled to commence this action for recovery of possession of said Premises and for default in payment of rent and utilities, and Plaintiff has thereby incurred and been required to expend money for attorneys' fees.

16.    Plaintiff has been compelled to commence this action for recovery of possession of said Premises and for default in payment of rent, utilities and other charges, and to otherwise enforce Plaintiff's rights under Exhibit "1," and Plaintiff has thereby incurred and been required to expend money for attorneys' fees.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

(1)    For restitution of said Premises;

(2)    For damages at the rate of Thirty-Six Dollars and Twenty Cents ($36.20) per day as a reasonable rental value of the Premises from and after the date Defendants went into possession according to proof, and until judgment and for so long as Defendants, or any of them, continue to occupy said Premises;

(3)    For actual consumption of utilities commencing from and after the date Defendants went into possession according to proof, and until judgment and for so long as Defendants, or any of them, continue in possession of said Premises;

(4)    For treble the amount above;

(5)    For attorneys' fees incurred herein;

(6)    For costs of suit incurred herein;

(7)    For interest at the legal rate on judgment; and

3

**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

(8)     For such other and further relief as the Court may deem just and proper, except that

Plaintiff remits all damages in excess of the jurisdiction of this Court.

DATED: December ___18___, 2018          By: _____
                                            Vivienne J. Alston
                                            Attorney for Plaintiff

4

**COMPLAINT FOR FORCIBLE ENTRY/DETAINER**

**EXHIBIT 1**

ELAINE B. ALSTON
VIVIENNE J. ALSTON
DONALD A. DIEBOLD

**ALSTON, ALSTON & DIEBOLD**

TELEPHONE (714) 556-9400
FACSIMILE (714) 556-9500

27201 PUERTA REAL
SUITE 300
MISSION VIEJO, CALIFORNIA 92691

OUR FILE NO:   1510.

December 10, 2018

**FIVE (5) DAY DEMAND**
**FOR SURRENDER OF POSSESSION OF SITE**

To:   **Jamie Gallian and All Unlawful Occupants and Persons in Possession Without a Signed Rental Agreement ("Occupants"):**

**NOTICE IS HEREBY GIVEN** that management of the mobilehome park commonly known as:

Rancho Del Rey
16222 Monterey Lane
Huntington Beach, CA 92649
(referred to as "Park" herein)

HEREBY DEMANDS that the Occupants named above, and each of them, quit the premises in the Park and surrender possession thereof commonly described as:

Space 376
(referred to as "site" herein)

WITHIN FIVE (5) DAYS FROM AND AFTER SERVICE OF THIS NOTICE, and that said surrender of the mobilehome site be made to the park manager(s), who is authorized to receive the same on behalf of the management.

Civil Code Section 798.75 authorizes forcible detainer proceedings against any occupant of a mobilehome park who does not have rights of tenancy and is not otherwise entitled to occupy the premises, upon failure of the occupants to quit the premises within five (5) days after service of a demand for surrender of the site.

This notice is served with reference to the following facts, inter alia, upon which said demand is now hereby made:

That you have actual and physical possession of the site, without permission from park management, and without right or authority under a rental agreement or otherwise. Based upon the foregoing facts, management is authorized to pursue its legal remedies to obtain possession of the site from all such Occupants having no right of tenancy or possession.

002499          EXHIBIT 45, PAGE 1673

J Gallian
and All Unlawful Occupants
December 10, 2018
Page 2

**THIS NOTICE IS INTENDED AS A FIVE (5) DAY DEMAND TO SURRENDER POSSESSION AND NOTICE TO QUIT AS PER <u>CIVIL CODE</u> SECTION 798.75.  SHOULD YOU FAIL TO QUIT AND SURRENDER POSSESSION AS HEREBY DEMANDED, LEGAL PROCEEDINGS SHALL BE INSTITUTED FOR RESTITUTION OF POSSESSION OF THE PREMISES, REASONABLE RENTAL VALUE, DAMAGES INCIDENTAL TO OCCUPANTS WRONGFUL UNLAWFUL OCCUPATION OF THE SITE, AND ATTORNEYS' FEES AND COSTS, AND STATUTORY DAMAGES.**

ALSTON, ALSTON & DIEBOLD

Dated:  December 10, 2018

By: _____
VIVIENNE J. ALSTON
Authorized Agent for Owner

cc:    Client
       Park Manager

002500                    EXHIBIT 45, PAGE 1674

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address) | TELEPHONE NUMBER | FOR COURT USE ONLY |
|---|---|---|
| Vivienne J. Alston SBN 170746<br>ALSTON, ALSTON & DIEBOLD<br>27201 Puerta Real ste 300<br>Mission Viejo, CA 92691<br>ATTORNEY FOR  Plaintiff | (714) 556-9400 | |

| SHORT TITLE OF CASE:<br>Rancho Del Rey v. Gallian, Jamie | | |
|---|---|---|
| DATE:               TIME:               DEP./DIV. | | CASE NUMBER:<br>Not Applicable |
| **Declaration of Service of Notice to Tenant** | | Ref. No. or File No:<br>1510 |

I, the undersigned, declare that I served the tenant with the: **Five (5) Day Demand for Surrender of Possessin of site.;**

Constructive Service

After unsuccessfully attempting to personally serve said Notice(s) on each of the named parties on **12/11/2018** at **05:39 PM**, I completed service by serving said notice(s) as authorized by C.C.P. Section 1162 (2,3). In the manner set forth below.

To: **Jamie Gallian**

On: **12/11/2018**          At: **05:39 PM**

**By posting** a copy for each tenant in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at the property where situated, **and mailing** a copy to said tenant(s) by depositing said copies in the United States Mail in a sealed envelope with postage fully prepaid, addressed to the tenant  on **12/11/2018** from **Garden Grove** at the address where served: **16222 Monterey Lane 376  Huntington Beach, CA 92649**

Person Who served papers:
  a. Name: **Cesar Gonzalez**
  b. Address: **840 N. Birch St, Santa Ana, CA 92701**
  c. Telephone number: **714-953-9451**
  d. **The fee** for this service was: **129.50**
  e. I am:
  (3) [X] a registered California process server:
     (i) [X] Independent Contractor
     (ii) Registration No.: **2729**
     (iii) County: **Orange**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.



Cesar Gonzalez          Date: **12/12/2018**

Declaration of Service of Notice to Tenant                    Invoice #: 2305520-01

002501                    EXHIBIT 45, PAGE 1675

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address) | TELEPHONE NUMBER | FOR COURT USE ONLY |
|---|---|---|
| Vivienne J. Alston SBN 170746<br>ALSTON, ALSTON & DIEBOLD<br>27201 Puerta Real ste 300<br>Mission Viejo, CA 92691<br>ATTORNEY FOR  Plaintiff | (714) 556-9400 | |

| SHORT TITLE OF CASE:<br>Rancho Del Rey v. Gallian, Jamie | |
|---|---|
| DATE:          TIME:          DEP./DIV. | CASE NUMBER:<br>Not Applicable |
| **Declaration of Service of Notice to Tenant** | Ref. No. or File No:<br>1510 |

I, the undersigned, declare that I served the tenant with the: **Five (5) Day Demand for Surrender of Possessin of site.;**

Constructive Service

After unsuccessfully attempting to personally serve said Notice(s) on each of the named parties on **12/11/2018** at **05:39 PM**, I completed service by serving said notice(s) as authorized by C.C.P. Section 1162 (2,3). In the manner set forth below.

To: **All Other Occupants**

On: **12/11/2018**          At: **05:39 PM**

**By posting** a copy for each tenant in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at the property where situated, **and mailing** a copy to said tenant(s) by depositing said copies in the United States Mail in a sealed envelope with postage fully prepaid, addressed to the tenant  on **12/11/2018** from **Garden Grove** at the address where served: **16222 Monterey Lane 376  Huntington Beach, CA 92649**

Person Who served papers:
  a. Name: **Cesar Gonzalez**
  b. Address: **840 N. Birch St, Santa Ana, CA 92701**
  c. Telephone number: **714-953-9451**
  d. **The fee** for this service was: **39.50**
  e. I am:
  (3) [X] a registered California process server:
     (i) [X] Independent Contractor
     (ii) Registration No.: **2729**
     (iii) County: **Orange**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.



Cesar Gonzalez          Date: **12/12/2018**

Declaration of Service of Notice to Tenant                    Invoice #: 2305520-02

## VERIFICATION

**STATE OF CALIFORNIA, COUNTY OF** ORANGE
    I have read the foregoing COMPLAINT
_____ and know its contents.

☐ **CHECK APPLICABLE PARAGRAPHS**

☐ I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒ I am ☐ an Officer ☒ a partner _____ ☐ a _____ of HOUSER BROS CO.

a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. ☐ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true. ☒ The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for _____
a party to this action.  Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on December 19 , 2018 , at HUNTINGTON BEACH , California.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_Christopher C. Houser_
        Type or Print Name                              _____
                                                                            Signature

### PROOF OF SERVICE
1013a (3) CCP Revised 5/1/88

**STATE OF CALIFORNIA, COUNTY OF**
    I am employed in the county of _____ , State of California.
I am over the age of 18 and not a party to the within action; my business address is: _____

On. _____ I served the foregoing document described as _____
_____

_____ on _____ in this action

☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:
☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

☐ **BY MAIL**
    ☐ *I deposited such envelope in the mail at _____ , California.
    The envelope was mailed with postage thereon fully prepaid.
    ☐ As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at _____ California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on _____ , at _____ , California.
☐ **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.
Executed on _____ , at _____ , California.
☐ (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
☐ (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____          _____
        Type or Print Name                                          Signature
                                        *(BY MAIL SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN
                                          MAIL SLOT, BOX, OR BAG)
                                        **(FOR PERSONAL SERVICE SIGNATURE MUST BE THAT OF MESSENGER)

                                                        Legal
                                                        Solutions        Rev. 7/99
                                                        ☆ Plus

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): FIRST AMENDED COMPLAINT TO
(1) DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523 (a)(2)(A) and (a)(6);
(2) DENY DISCHARGE PURSUANT TO 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5) will be served or was served **(a)** on
the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**October 22, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

- **Jeffrey I Golden (TR)**   lwerner@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com
- **D Edward Hays**   ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.court
  drive.com
- **Laila Masud**   lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **October 22, 2021**, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
Honorable Erithe A. Smith
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040
Santa Ana, CA 92701-4593                       ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| October 22, 2021   Layla Buchanan | | /s/ Layla Buchanan |
| *Date*   *Printed Name* | | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                   **F 9013-3.1.PROOF.SERVICE**

EXHIBIT 45, PAGE 1678

EXHIBIT 46



1    JAMIE LYNN GALLIAN

2    16222 MONTEREY LN. #376

3    HUNTINGTON BEACH, CA 92649

4    (714) 321-3449
5    jamiegallian@gmail.com

6

7

8            **UNITED STATES BANKRUPTCY COURT**
             **CENTRAL DISTRICT OF CALIFORNIA-**
9                    **SANTA ANA DIVISION**

10   In re    JAMIE LYNN GALLIAN          )   BK No. :      8:21-bk-11710-ES

11            Debtor(s)                   )   ADV. No.:    8:21-ap-01097-ES

12                                        )
                                          )   Chapter 7
13   =============================        )   ANSWER TO COMPLAINT/ DEFENDANT JAMIE
14                                        )   LYNN GALLIAN,  AFFIRMATIVE DEFENSES TO
                                          )   COMPLAINT TO DETERMINE DISCHARGEABILITY
15                                        )   OF DEBT;
     HOUSER BROS CO, dba RANCHO DEL       )
16   REY MOBILEHOME ESTATES               )   STATUS CONFERENCE:
17            Plaintiff(s),               )
                                          )   DATE:   JANUARY 6, 2022
18   v.                                   )
                                          )   TIME:   9:30A.M.
19                                        )
20   JAMIE LYNN GALLIAN                   )   PLACE:  United States Bankruptcy Court
                                          )
21            Defendant(s).               )           411 W. Fourth St. Crtrm 5A,
22                                        )
                                          )           Santa Ana, CA 92701
23

24        COMES NOW Defendant, JAMIE LYNN GALLIAN and for no other party and by way of answer to the Complaint on

25   file herein, and by virtue of the provisions of section 431.30( d) of the California Code of Civil Procedure, this answering

26   Defendant denies both generally and specifically each, every and all of the allegations contained in said Complaint, and the

27   whole thereof, and further deny that Complainant(s) sustained damages in the sum or sums alleged, or in any other sum or sums,

     or at all. Further answering the Complaint on file herein, and the whole thereof, this answering Defendant denies that

28   Complainant sustained any injury, damage or loss, if any, by reason of any act or omission on the part of this answering

     Defendant, or any agents,servants or employees of this answering Defendant.

                                          1

| **CHECK ONE** | ADMIT | DENY | I DO NOT HAVE ENOUGH INFORMATION TO ANSWER AND THEREFORE DENY |
|---|---|---|---|
| Paragraph 4 | X | | |
| Paragraph 5 | X | | |
| Paragraph 6 | | | X |
| Paragraph 7 | | X | |
| Paragraph 8 | | | X |
| Paragraph 9 | | | X |
| Paragraph 10 | | | X |
| Paragraph 11 | X | | |
| Paragraph 12 | | X | |
| Paragraph 13 | | | X |
| Paragraph 14 | | X | |
| Paragraph 15 | X | | |
| Paragraph 16 | X | | |
| Paragraph 17 | | X | |
| Paragraph 18 | X | | |
| Paragraph 19 | | | X |
| Paragraph 20 | | X | |
| Paragraph 21 | X | | |
| Paragraph 22 | X | | |
| Paragraph 23 | X | | |
| Paragraph 24 | X | | |
| Paragraph 25 | | | X |

002507    EXHIBIT 46, PAGE 1680

| **CHECK ONE** | **ADMIT** | **DENY** | I DO NOT HAVE ENOUGH INFORMATION TO ANSWER AND THEREFORE DENY |
|---|---|---|---|
| Paragraph 26 | X | | |
| Paragraph 27 | X | | |
| Paragraph 28 | X | | |
| Paragraph 29 | X | | |
| Paragraph 30 | X | | |
| Paragraph 31 | X | | |
| Paragraph 32 | | | X |
| Paragraph 33 | | X | |
| Paragraph 34 | | X | |
| Paragraph 35 | | X | |
| Paragraph 36 | | X | |
| Paragraph 37 | | X | |
| Paragraph 38 | | X | |
| Paragraph 39 | | X | |
| Paragraph 40 | | X | |
| Paragraph 41 | | X | |
| Paragraph 42 | | X | |
| Paragraph 43 | | X | |
| Paragraph 44 | | | X |
| Paragraph 45 | | X | |
| Paragraph 46 | | X | |
| Paragraph 46 | | | |

3

EXHIBIT 46, PAGE 1681

| | **CHECK ONE** | ADMIT | DENY | I DO NOT HAVE ENOUGH INFORMATION TO ANSWER AND THEREFORE DENY |
|---|---|---|---|---|
| Paragraph 47 | | | X | |
| Paragraph 48 | | | X | |
| Paragraph 49 | | | X | |
| Paragraph 50 | | | X | |
| Paragraph 51 | | | | X |
| Paragraph 52 | | | | X |
| Paragraph 53 | | | X | |
| Paragraph 54 | | | X | |
| Paragraph 55 | | | X | |
| Paragraph 56 | | | X | |
| Paragraph 57 | | | X | |
| Paragraph 58 | | | X | |
| Paragraph 59 | | | X | |
| Paragraph 60 | | | | X |
| Paragraph 61 | | | | X |
| Paragraph 62 | | | X | |
| Paragraph 63 | | | X | |
| Paragraph 64 | | X | | |
| Paragraph 65 | | | X | |
| Paragraph 66 | | | X | |
| Paragraph 67 | | | X | |

4

EXHIBIT 46, PAGE 1682

| **CHECK ONE** | ADMIT | **DENY** | I DO NOT HAVE ENOUGH INFORMATION TO ANSWER AND THEREFORE DENY |
|---|---|---|---|

Paragraph 68 _____ X

Paragraph 69 _____ X

Paragraph 70 _____ X

Paragraph 71 _____ X

~~Paragraph 71~~

Paragraph 72 _____ X

Paragraph 73 _____ X

Paragraph 74 _____ X

Paragraph 75 _____ X

~~Paragraph 76~~

~~Paragraph 77~~

WHEREFORE, Defendant prays as follows:

1.      That Plaintiff take nothing by reason of its complaint and that judgment be rendered in favor of Defendant;

2.      That Defendant be awarded costs of suit, including attorneys' fees, incurred in the defense of this action pursuant to 11 U.S.C. § 523(d); and

3.      For such other and further relief as the court deems just and proper.

DATED: 10/28/2021

_____
Signature

5

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
5801 SKYLAB DRIVE HUNTINGTON BEACH, CA 92649

A true and correct copy of the foregoing document entitled (*specify*)**: ANSWER TO COMPLAINT; DEFENDANT JAMIE
LYNN GALLIAN, AFFIRMATIVE DEFENSES TO COMPLAINT TO DETERMINE DISCHARGEABILITY** will be served or
was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner
stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**October 28, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary
proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage
prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be
completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **October 28, 2021**,  I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
Honorable Erithe A. Smith
United States Bankruptcy Court
411 West Fourth Street, Suite 5040
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/28/2021 | ROBERT MCLELLAND | *Robert McLelland* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

002511   EXHIBIT 46, PAGE 1684

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Cont.

- **Jeffrey I Golden (TR)** lwerner@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com
- **D Edward Hays** ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.court
  drive.com
- **Laila Masud** lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Mark A Mellor** mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- **Valerie Smith** claims@recoverycorp.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

7

002512       EXHIBIT 46, PAGE 1685



1   JAMIE LYNN GALLIAN

2   16222 MONTEREY LN. #376

3   HUNTINGTON BEACH, CA 92649

4   (714) 321-3449
5   jamiegallian@gmail.com

6

7               **UNITED STATES BANKRUPTCY COURT**
8               **CENTRAL DISTRICT OF CALIFORNIA-**
9                   **SANTA ANA DIVISION**

10  In re   JAMIE LYNN GALLIAN        )   BK No. :      8:21-bk-11710-ES
11              Debtor(s)              )
                                       )   ADV. No.:     8:21-ap-01097- ES
12                                     )
13                                     )   Chapter 7
    ===========================        )
14                                     )   ANSWER; **DEFENDANT JAMIE LYNN  GALLIAN,**
15                                     )   **AFFIRMATIVE DEFENSES TO COMPLAINT TO**
                                       )   DETERMINE DISCHARGEABILITY.
16  HOUSER BROS CO DBA RANCHO          )
    DEL REY MOBILEHOME ESTATES         )       **STATUS CONFERENCE:**
17                                     )
18              Plaintiff(s),          )   DATE:    JANUARY 6, 2022
                                       )
19  v.                                 )   TIME:    9 :30A.M.
                                       )
20  JAMIE LYNN GALLIAN, an individual, )   PLACE:  United States Bankruptcy Court
    and DOES 1 through 100, inclusive  )
21              Defendant(s).          )            411 W. Fourth St. Crtrm 5A,
22                                     )
                                       )            Santa Ana, CA 92701
23
24          COMES NOW Defendant, JAMIE LYNN GALLIAN and for no other party and by way of answer

25  to the  Complaint on file herein, and by virtue of the provisions of section 431.30( d) of the California

    Code of Civil Procedure, this answering Defendant denies both generally and specifically each, every and

26  all of the allegations contained in said Complaint, and the whole thereof, and further deny that

27  Complainant(s) sustained damages in the sum or sums alleged, or in any other sum or sums, or at all.

28  Further answering the Complaint on file herein, and the whole thereof, this answering Defendant denies

    that Complainant sustained any injury, damage or loss, if any, by reason of any act or omission on the part

    of this answering Defendant, or any agents,servants or employees of this answering Defendant.


                                          1

## FIRST AFFIRMATIVE DEFENSE

### [Action in Bad Faith]

This answering Defendant is informed and believes, and on such information and belief alleges, that the Complaint was brought without reasonable cause and without good faith belief that there was a justifiable controversy under the facts of the law which warranted the filing of the Complaint against this answering Defendant. Complainant should, therefore, be responsible for all Defendant's necessary and reasonable defense costs, as more particularly set forth in *California Code of Civil Procedure* section 1038.

## SECOND AFFIRMATIVE DEFENSE

### [Active Negligence of Complainant]

This answering Defendant is informed and believes, and on such information and belief alleges, that Complainant's conduct, was such that all liability based thereon was active and primary in nature, to preclude any recovery sought in the Complaint.

## THIRD AFFIRMATIVE DEFENSE

### [Active Versus Passive Conduct]

This answering Defendant is informed and believes, and on such information and belief alleges, that the negligence of Complainant was active and primary and proximately caused any alleged damages or injuries alleged in the Complaint, whereas the conduct and participation, if any, of this answering Defendant, in the events alleged in Complainant's Complaint on file herein were passive, derivative and secondary in nature only.

## FOURTH AFFIRMATIVE DEFENSE

### [Additional Defenses]

This answering Defendant alleges that it presently has insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated affirmative defenses. This answering Defendant reserves herein the right to assert

2

1 additional affirmative defenses in the event discovery indicates that additional affirmative
2 defeuses are appropriate.

### FIFTH AFFIRMATIVE DEFENSE

#### [Apportionment of Fault]

5 This answering Defendant alleges that this answering Defendant is not legally
6 responsible in any fashion with respect to damages and injuries claimed by Complainant in their
7 Complaint. However, if this answering Defendant is found to be legally responsible, then this
8 answering Defendant provisionally alleges that its legal responsibility is not the sole and
9 proximate cause of the injuries alleged by Complainant,
10 and that the damages awarded to Complainant, if any, are to be apportioned according to
11 the respective fault and legal responsibility of all parties, persons and entities or the agents,
12 servants and employees who contributed to and/or caused said injury, according to proof at trial.

### SIXTH AFFIRMATIVE DEFENSE

#### [Assumption of the Risk]

15 This answering Defendant alleges that Complainant expressly, voluntarily, and
16 knowingly assumed all risks about which it complains in its Complaint and, therefore, is barred
17 either totally or to the extent of said assumption fr      any damages.

### SEVENTH AFFIRMATIVE DEFENSE

#### [Attorney's Fees]

20 This answering Defendant is informed and believes, and on such information and
21 belief alleges, that pursuant to the CC&R's, Davis-Sterling Act, and *Civil Code* sections 5650(b),
22 5740, 5650(a), 5705(a), 5715(a), 5720(a), 5685, 5658, and 5975, between Complainant
23 and this answering Defendant, an award of attorney's fees will be paid to the party justly
24 entitled to same in the event either party becomes involved in litigation arising out of said
25 CC&R's, Davis-Sterling Act, and *Civil Code* or the performance thereof (which provision is
26 reciprocal pursuant to the provisions of *California Civil Code* section 1717). It has been
27 necessary for this answering Defendant to retain an attorney to defend the within action and to
28 otherwise protect his rights, and this answering Defendant demands her attorney's

3

  EXHIBIT 46, PAGE 1688

1  fees both under the CC&R's, Davis-Sterling Act, and *Civil Code* and pursuant to the applicable

2  law of indemnification.

### EIGHTH AFFIRMATIVE DEFENSE

**[Balancing of Conveniences]**

This answering Defendant alleges that Complainant is not entitled to the

relief requested in the Complaint because such relief would work a substantial hardship on

the Defendant relative to the benefit Complainant would gain by such relief.

### NINTH AFFIRMATIVE DEFENSE

**[Breach of Conditions Precedent]**

This answering Defendant is informed and believes, and on such information and

belief alleges, that the improper conduct of Complainant constituted a breach of conditions
which are precedent to any right or theory of recovery against this answering

defendant.  or complainant might otherwise be permitted to advance.

### TENTH AFFIRMATIVE DEFENSE

**[Breach of Contract]**

This answering Defendant is informed and believes and thereon alleges that

actions and omissions by Complainant constituted a breach of contract by

Complainant, and such breach excuses any non-performance by this answering Defendant.

### ELEVENTH AFFIRMATIVE DEFENSE

**[Comparative Fault of Third Parties]**

This answering Defendant is informed and believes and upon such information and

belief alleges that the accident and the injuries, if any, allegedly suffered by Complainant were

proximately caused and contributed to by the negligence of third parties with the Complainant

and not this answering Defendant) and that said third parties failed to exercise reasonable care at

and prior to the time of said damages, and by reason thereof any recovery by Complainant

against this answering Defendant must be reduced by an amount equal to the proportionate fault

of said third parties.

4

   EXHIBIT 46, PAGE 1689

## TWELFTH AFFIRMATIVE DEFENSE

### [Comparative Negligence]

This answering Defendant is informed and believes, and on such information and belief alleges, that if it should be found that this Defendant is in any manner legally responsible for injury or damages, if any, sustained by Complainant, which supposition is not admitted but merely stated for the purpose of this affirmative defense, any injuries or damages found to have been incurred or suffered by Complainant in this action were proximately caused or contributed to by the other parties in this case, whether served or not served, and/or by other persons or entities not parties to this action, and it is necessary that the proportionate degree of negligence or fault or unreasonable conduct of each of said persons or entities, whether parties to this action or not, be determined and prorated and any judgment that might be rendered against this answering Defendant be reduced not only by the degree of comparative negligence found to exist as to Complainant but also as to the total of that degree of negligence, fault and/or unreasonable conduct found to exist as to said other persons or entities.

## THIRTEENTH AFFIRMATIVE DEFENSE,

### [Comparative Negligence of Complainant]

Complainant, its agents, servants, employees, and independent contractors, acted negligently at the time and place alleged in the Complaint. These negligent acts were the legal cause of their injuries and damages, if any.

## FOURTEENTH AFFIRMATIVE DEFENSE

### [Complete Performance]

This answering Defendant has appropriately, completely and fully performed and discharged any and all obligations and legal duties arising out of the matters alleged in the Complaint.

/ /

/ / /

5

   EXHIBIT 46, PAGE 1690

## FIFTEENTH AFFIRMATIVE DEFENSE

### [Conduct of Defendant Not a Substantial Factor]

This answering Defendant is informed and believes, and on such information and belief alleges, that the tortuous misconduct alleged in the Complaint as against this Defendant, if any, was not a substantial factor in bringing about the alleged injuries to Complainant. Therefore, any such alleged misconduct was not a contributing cause, but was superseded by tortuous misconduct by one or more third parties, including that of Complainant; whose misconduct was an independent, intervening, sole and proximate cause of any alleged injuries or damages suffered.

## SIXTEENTH AFFIRMATIVE DEFENSE,

### [Conduct was Justified]

The conduct of this answering Defendant in regard to the matters alleged in the Complaint was justified, and by reason of the foregoing,         Complainant is barred from any recovery against Defendant herein.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### [Consent]

This answering Defendant is informed and believes, and on such information and belief alleges, that Complainant had full knowledge at the time of events thereon alleged and with full knowledge, Complainant consented to said acts and voluntarily invited and assumed same. Complainant is therefore barred from any recovery thereon.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### [Contribution]

This answering Defendant alleges that the damages suffered by Complainant, if any, were the direct and proximate result of the negligence of parties, persons, corporations and/or entities other than this answering Defendant, and that the liability of this answering Defendant, if any, is limited in direct proportion to the percentage of fault attributable to this answering Defendant.

6

## NINETEENTH AFFIRMATIVE DEFENSE

### [Contributory Negligence]

This answering Defendant is informed and believes and thereon alleges that at all times mentioned herein, Complainant was negligent, careless, reckless, and unlawfully conducted itself so as to directly and proximately contribute to the happening of the incident and the occurrence of the alleged damages, all of which said negligence bars either completely or partially the recovery sought by Complainant.

## TWENTIETH AFFIRMATIVE DEFENSE

### [Costs]

This answering Defendant is informed and believes and thereon alleges that the Complaint was brought without reasonable cause and without a good faith belief that there was a justifiable controversy under the facts or the law which warranted the filing of the Complaint against this answering Defendant. Complainant should therefore be responsible for all of Defendant's necessary and reasonable defense costs, as more particularly set forth in California *Code of Civil Procedure* section 1038.

## TWENTY-FIRST AFFIRMATIVE DEFENSE,

### [Equities Favor Defendant]

This answering Defendant is informed and believes, and on such information and belief alleges, that between this answering Defendant and Complainant, the equities do not preponderate in favor of Complainant to allow recovery based upon equitable indemnity as against this answering Defendant.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### [Estoppel]

This answering Defendant is informed and believes and thereon alleges that Complainant engaged in conduct and activities with respect to the subject of this litigation, contracts and incidents which are the subject of this Complaint, and by reason of said activities and conduct is estopped from asserting any claims for damages or seeking any other relief against this answering Defendant.

7

002519   EXHIBIT 46, PAGE 1692

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### [Failure to Perform]

At all times mentioned herein, Complainant failed to perform all duties and obligations required on its part under the terms of the CC&R's agreement and such acts or omissions bars recovery by Complainant herein.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### [Failure to Mitigate]

Complainant, though under a duty to do so, has failed and neglected to mitigate its alleged damages, and, therefore, cannot recover against this answering Defeendant, whether as alleged or otherwise.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### [Failure to State a Claim]

The Complaint, and each and every purported count thereof, fails to state a claim for which relief can be granted against this answering Defeendant.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### [Failure to State a Cause of Action]

This answering Defeendant alleges that neither Complainant's Complaint, nor any cause of action asserted therein, state facts sufficient to constitute a cause of action against this answering Defendant.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### [Financial Abuse]

This answering Defeendant is informed and believes and thereon alleges that Complainant, along with others, engaged in conduct constituting financial abuse against this answering Defendant. As such, Complainant's claims against this answering Defendant are violated. See, *Welf. & Inst. Code* §15657 et seq.

/ / /

/ / /

/ / /

8

002520   EXHIBIT 46, PAGE 1693

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### [Frivolous Action]

This answering Defendant is informed and believes, and on such information and belief alleges, that the Complaint, and each purported cause of action contained therein, was brought without reasonable cause and without good faith belief that there was a justifiable controversy under the facts and the law the filing of said Complaint against this answering Defendant. The Complainant is therefore responsible for all necessary and reasonable defense costs, including attorney's fees, incurred by this answering Defendant, as more particularly set forth in California *Code of Civil Procedure* section 128.5.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### [Intentional Conduct]

This answering Defendant is informed and believes, and on such information and belief alleges, that the Complaint, and each cause of action alleged therein, is barred by Complainant's intentional conduct.

## THIRTIETH AFFIRMATIVE DEFENSE

### [Inspection and Approval]

This answering Defendant is informed and believes, and on such information and belief alleges, that following the performance and services by Defendant, the Complainant and other parties, their agents or employees, inspected and approved the conditions of the subject property and work performed by this Defendant as satisfactory, thereby waiving any claim for damages, negligence, indemnity, breach of warranty and/or breach of contract as alleged in the Complaint.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### [Intervening Superseding Causes]

This answering Defendant is informed and believes and thereon alleges that the injuries and damages of which Complainant complains were proximately caused by or contributed to by the acts of other Defendants, persons and/or other entities and that said acts were an intervening and superseding cause of the injuries and damages, if any, of which

9

Complainant complains, thus barring Complainant from any recovery against this answering Defendant.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

#### [Justification]

This answering Defendant alleges that Complainant engaged in conduct and activities with respect to the subject of this litigation, and by reason of the foregoing incidents, the conduct of this answering Defendant was justified, Complainant is barred from any recovery against this answering Defendant.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

#### [Laches]

Complainant waited an unreasonable period of time before asserting its claims, if any, against this answering Defendant, and is barred from asserting such claims under the doctrine of laches.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

#### [Lack of Equity]

As between this answering Defendant and Complainant, the equities do not preponderate in favor of Complainant to allow recovery.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

#### [Limitation of Non-Economic Damages]

This answering Defendant is informed and believes, and on such information and belief alleges, that pursuant to *California Civil Code* section 1431.2, the right of Complainant to recovery herein, if any right exists, is reduced and limited to the percentage of negligence attributable to this answering Defendant. Additionally, the liability of Defendant is several and not joint, with respect to non-economic damages, and each Defendant is liable only for the amount of non-economic damages, being defined as:

"subjective, non-monetary losses, including but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society, companionship and consortium, injury to reputation and humiliation."

10

Therefore, if liability is found as to this answering Defendant, neither Defendant nor Complainant are entitled to recover from this answering Defendant, any non-economic damages which are allocable to other responsible parties or non-parties, whether served or unserved.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### [Mediation]

This answering Defendant alleges that the CC&R's and Davis-Sterling Act allegedly entered into between  Complainant                     and this answering Defendant provides for mediation of any dispute arising from the transaction.  Pursuant to the mediation clause, because         Complainant brought this action without first attempting to resolve this matter through mediation with proper notice, Complainant is not entitled to a recovery of attorney's fees, should they prevail in their action, as alleged in Complainant's Complaint. *Johnson v. Siegel* (2000) 84 Cal.App.4th 1087, 1100.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### [Misrepresentation of Property]

This answering Defendant is informed and believes, and on such information and belief alleges, that none of the acts attributed to Defendant proximately caused the injuries and/or damages alleged in the Complaint in that any such causation was superseded by an intentional, criminal and fraudulent act of a third party,  Complainant, in misrepresenting the condition of the property, thus barring or diminishing Complainant's recovery herein.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### [Negligence of Others]

This answering Defendant is informed and believes, and on such information and belief alleges, that the incident, injuries, and damages mentioned in the Complaint were proximately caused and/or contributed to by the negligence of the Complainant in that Complainant did not exercise ordinary care in its own behalf at the time and place alleged.

Therefore, said negligence bars recovery by Complainant or, in the alternative, it reduces

11

the right of recovery to Complainant by that amount which said negligence contributed to incident as set forth under the doctrine of comparative negligence.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

#### [No Reliance]

This answering Defendant is informed and believes, and on such information and belief alleges, that this answering Defendant did not make any warranties or guarantees, expressed, implied, or apparent, upon which Complainant may rely.

### FORTIETH AFFIRMATIVE DEFENSE

#### [Offset/Credit]

Complainant has heretofore received compensation for the damages alleged in the Complaint under circumstances entitling this answering Defendant to an offset and credit against any judgment herein.

### FORTY-FIRST AFFIRMATIVE DEFENSE

#### [Ratification]

This answering Defendant is informed and believes, and on such information and belief alleges, that Complainant approved the acts and/or omissions, if any, of this answering Defendant and ratified same; consequently, Complainant is barred from recovery as against this answering Defendant.

### FORTY-SECOND AFFIRMATIVE DEFENSE,

#### [Release]

This answering Defendant is informed and believes, and on such information and belief alleges, that any and all liability, costs, causes of action, obligations and/or claims existing by and between Complainant and Defendant, whether known or unknown, arising out of or in connection with the claims of injuries and/or damages alleged in the Complaint, were released and extinguished as a result of a prior settlement for good and valuable consideration, thereby barring enforcement of the existing obligations and/or claims pursuant to *California Code of Civil Procedure* sections 1541 and 1542.

12

002524   EXHIBIT 46, PAGE 1697

### FORTY-THIRD AFFIRMATIVE DEFENSE

**[Right of Third-Party Defendant]**

This answering Defendant asserts all defenses available against Complainant

pursuant to *California Code of Civil Procedure* section 428.70.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

**[Several Liability]**

This answering Defendant is informed and believes and on that basis alleges that, along with the Complainant, other third parties are responsible for Complainant's economic and non-economic damages, if any, pursuant to *Civil Code* sections 1431, 1431.2, 1431.3, 1431.4 and 1431.5, in that Complainant's recovery against this answering Defendant for any non-economic damages is barred except as to those non-economic damages specifically apportioned to this answering Defendant.

### FORTY-FIFTH AFFIRMATIVE DEFENSE

**[Several Liability for Non-Economic Damages]**

The right of Complainant to recovery herein, if any right exists, is reduced and limited to the percentage of negligence attributable to this answering defendant pursuant to California *Civil Code* section 1431.2.

### FORTY-SIXTH AFFIRMATIVE DEFENSE

**[Standard of Care]**

This answering Defendant is informed and believes, and on that basis alleges, that this answering Defendant alleges Complainant is barred and precluded from any recovery in this action because this answering Defendant at all times complied with the applicable standard of care required of a property purchaser of the type of this answering Defendant, at the time and location where the subject property was purchased while Complainant failed to perfect its claim.

/ / /

/ / /

13

## FORTY-SEVENTH AFFIRMATIVE DEFENSE

### [Statute of Limitations]

This answering Defendant alleges that the causes of action set forth in the

Complaint are barred by the provisions of Sections 337(1), 337.1(a)(1), 337.1(a)(2),

337.1(b), 337.15(a)(2), 337.15(g), 338(a), 338(b), 339(1), 340(1), 340(3), 343 and 359 of the

*Code of Civil Procedure* of the State of California.

## FORTY-EIGHTH AFFIRMATIVE DEFENSE

### [Subrogation]

This answering Defendant is informed and believes and thereon alleges that

Complainant was reimbursed for a portion of the claimed damages by another third party, that

Complainant has subrogated to that third party a portion of the damages claimed herein; and

that by virtue of the subrogation, Complainant has failed to name indispensable parties, thus

barring Complainant's recovery herein.

## FORTY-NINTH AFFIRMATIVE DEFENSE

### [Unclean Hands]

Complainant is barred by the equitable doctrine of unclean hands from obtaining the relief

requested.

## FIFTIETH AFFIRMATIVE DEFENSE

### [Unilateral Mistake of Fact]

The contract set forth in the Complaint is voidable and can be rescinded by this

answering Defendant because a unilateral mistake of material fact existed. The mistake of fact

was not caused by the neglect of a legal duty on the part of this Defendant and was either an

unconscious or forgetfulness of a past or present fact material to the contract, or a belie in the

present existence of such a thing, which has not existed and was, either due to the fault of

other third parties or due to the other paries knowing or having reason to know that a mistake

existed.

/ / /

14

## FIFTY-FIRST AFFIRMATIVE DEFENSE

### [Unreasonable Delay]

This answering Defendant is informed and believes, and on such information and belief alleges, that Complainant has unreasonably delayed in filing its Complaint and in notifying this answering Defendant of the alleged harm and damages, and the basis for the causes of action alleged against it, all of which have unduly and severely prejudiced Defendant in its defense of the action, thereby barring or diminishing Complainant's recovery herein.

## FIFTY-SECOND AFFIRMATIVE DEFENSE

### [Untimely Notice]

This answering Defendant is informed and believes, and on such information and belief alleges, that Complainant's action is barred by its failure to provide Defendant with written notice within a reasonable amount of time of the alleged outstanding amounts owed by Jamie Gallian.

## FIFTY-THIRD AFFIRMATIVE DEFENSE

### [Violation of Due Process]

Complainant waited an unreasonable period before asserting its claims, if any, against this answering Defendant, and thereby has violated this Defendant's right to due process as guaranteed by the California and United States Constitutions and has thereby irreparably prejudiced this Defendant's ability to adequately defend itself against Complainant's claims.

## FIFTY-FOURTH AFFIRMATIVE DEFENSE

### [Waiver]

This answering Defendant is informed and believes and thereon alleges that Complainant has engaged in conduct and activities sufficient to constitute a waiver of any alleged breach of duty, negligence, act, omission, or any other conduct, if any, as set forth in the Complaint. The performance, services, and supplying of materials of this answering Defendant, Complainant, and their agents, inspected and approved the condition of

15

   EXHIBIT 46, PAGE 1700

1  the subject property, and work materials supplied by this answering Defendant, and agreed

2  and approved that the subject property, materials, products, and work was satisfactory, thereby

3  waiving any further claim for damages as alleged in the Cross-Complaint.

4  **FIFTY-FIFTH AFFIRMATIVE DEFENSE**

5  **[Complainant Creditor Not Harmed By Alleged Voidable Transaction]**

6  This answering Defendant is informed and believes, and on that basis alleges, that:

7  1. Complainant was not harmed or injured in any manner by the allegedly voidable

8  transfer because this transfer did not put beyond the Complainant's reach any property that it

9  would have been able to obtain, subject to the payment of its alleged claim against Jamie Gallian.

10  2. The subject property transferred was in fact not available, or subject to the

11  Complainant's claim against Jamie Gallian the property conveyed was exempt from attachment

12  and execution under *Code of Civil Procedure* Sections 704.710–704.850 in that Jamie Gallian

13  actually resided in the dwelling on the subject property and same constituted her principal

14  residence and her equity in the property did not exceed the amount of the exemption to which

15  she was entitled pursuant to *Code of Civil Procedure* section 704.730(a).

16  3. The transfer is not voidable because this answering Defendant conveyed

17  unencumbered title to the subject property in good faith and for a reasonably equivalent value

18  given to Jamie Gallian, pursuant to *Civil Code* section 3439.08(a).

19

20  **WHEREFORE**, Defendant prays for judgment as follows:

21

22  1.   That this Court determines the rights, duties and obligations of the parties to this

23  action;

24  2.   That this answering Defendant be awarded cost of suit incurred herein;

25  3.   Reasonable attorney's fees pursuant to California *Code of Civil Procedure*

26  § 1021.1 and 1021.6;

27  4.   Reasonable attorney's fees pursuant to contract;

28

**16**



1     5.    Investigative costs;

2     6.    Full and complete indemnity;

3     7.    Equitable indemnity on a comparative fault basis;

4     8.    For such other and further relief as the Court deems just and proper; and

5     9.    Demand foor jury trial.

6

7   Dated: October 28, 2021         RESPECTFULLY SUBMITTED,

8

9                         JAMIE LYNN GALLIAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
5801 SKYLAB DRIVE HUNTINGTON BEACH, CA 92649

A true and correct copy of the foregoing document entitled (*specify*)**: ANSWER TO COMPLAINT; DEFENDANT JAMIE
LYNN GALLIAN, AFFIRMATIVE DEFENSES TO COMPLAINT TO DETERMINE DISCHARGEABILITY** will be served or
was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner
stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**October 28, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary
proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage
prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be
completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **October 28, 2021**,  I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
Honorable Erithe A. Smith
United States Bankruptcy Court
411 West Fourth Street, Suite 5040
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | ROBERT MCLELLAND | *Robert McLelland* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

18

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>: Cont.

- **Jeffrey I Golden (TR)**   lwerner@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com
- **D Edward Hays**   ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.court
  drive.com
- **Laila Masud**   lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Mark A Mellor**   mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- **Valerie Smith**   claims@recoverycorp.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

002531   EXHIBIT 46, PAGE 1704