# United States District Court

## CENTRAL DISTRICT OF CALIFORNIA

In re: JAMIE LYNN GALLIAN,

Debtor

_____

JAMIE LYNN GALLIAN,

Appellant

v.

HOUSER BROS. CO., DBA
RANCHO DEL REY MOBILE
HOME ESTATES,

Appellee.

District Court Case Number
8:23-cv-00961-WLH

Bankruptcy Court Case Number
8:21-bk-11710-SC

Bankruptcy Court Adversary Number
8:21-ap-01097-SC

Chapter 7

---

## APPELLEE'S RESPONSIVE BRIEF

D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, California 92620
Telephone: (949) 333-7777; Facsimile: (949) 333-7778

Attorneys for Appellee,
HOUSER BROS. CO.

---

APPELLEE'S RESPONSIVE BRIEF

TABLE OF CONTENTS

1.   Summary of Argument ....................................................................................1

2.   Factual Background .......................................................................................4

     A.   Bankruptcy Case...................................................................................4

     B.   Adversary Proceeding ..........................................................................8

3.   Legal Argument ............................................................................................11

     A.   Standard of Review ............................................................................11

     B.   The Bankruptcy Court properly denied Debtor's discharge
          pursuant to 11 U.S.C. § 727(a)(2)(A). ................................................13

          i.    Transfer of Title to the Property to J-Sandcastle, LLC ...............14

          ii.   Promissory note payable to J-Pad ............................................18

          iii.  Concealment of $225,000 payable to Debtor...............................19

          iv.   August 2020 liens to Steven and Brian Gallian.........................20

          v.    Transfers of interests in J-Pad...............................................20

     C.   The Bankruptcy Court properly denied Debtor's discharge
          pursuant to 11 U.S.C. § 727(a)(4)(A). ................................................21

     1)   The debtor made a false oath in connection with the case;................21

     2)   The oath related to a material fact;....................................................21

     3)   The oath was made knowingly; and...................................................21

     4)   The oath was made fraudulently. .....................................................21

APPELLEE'S RESPONSIVE BRIEF

A debtor acts "knowingly" if he or she acts "deliberately and consciously." *In re Retz*, 606 F.3d at 1198. ........................................22

A demonstration of fraudulent intent requires a showing that: .....................22

1)   The debtor made the representations (*e.g.*, a false statement or omission in the schedules); .................................................................22

2)   At the time the debtor knew they were false; and ...............................22

3)   The debtor made them with intention and purpose of deceiving the creditors. .......................................................................................22

   i.   Debtor scheduled varying interests in J-Pad .................................23

   ii.   Debtor never disclosed the $225,000 promissory note payable to her and only first admitted to it during trial under cross-examination ....................................................................24

   iii.   Debtor scheduled the value of J-Pad as $0 ....................................25

   iv.   Debtor did not disclose in her case commencement documents that she had granted her sons a lien against the Property in August 2020 ..............................................................25

   v.   Payment of rent ................................................................................27

   vi.   Debtor did not disclose gifts in her case commencement documents .......................................................................................28

   vii.   Unexpired ground lease ...................................................................28

   viii.   Greg Buysman notarization ............................................................29

APPELLEE'S RESPONSIVE BRIEF

   ix. Debtor undervalued the Property in her schedules ......................31

   x. Debtor filed 10 sets of schedules with varying information, showing, at a minimum, reckless disregard for the truth ...........................................................................32

  D. The Bankruptcy Court properly denied Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5). .......................................33

  E. Houser Bros. had standing to prosecute the AP. .................35

  F. Debtor's remaining arguments lack merit. ..........................36

4. Conclusion .................................................................................37

Statement of Related Cases ..........................................................2

Form 6. ........... Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements ...................................................3

APPELLEE'S RESPONSIVE BRIEF

# TABLE OF AUTHORITIES

**Cases**

*Davis v. Choy (In re Choy)*,

    569 B.R. 169, 184 (Bankr. N.D. Cal. 2017) ............................................................ 37

*Faith v. Miller (In re Miller)*,

    2015 Bankr.LEXIS 1929, at *6 (Bankr. C.D. Cal. June 12, 2015)......................... 15

*Hamilton v. State Farm Fire & Cas. Co.*,

    270 F.3d 778, 785 (9th Cir. 2001) ........................................................................... 35

*Houser Bros. Co. v. Jamie Lynn Gallian (In re Jamie Lynn Gallian)*,

    Adversary Proceeding No. 8:21-ap-01097-SC ("AP")............................................... 8

*In re Ellison*,

    2016 Bankr.LEXIS 3475, at *25................................................................................ 16

*In re Jamie Lynn Gallian*,

    Case No. 8:21-bk-11710-SC ....................................................................................... 5

*In re Lawson*,

    122 F.3d 1237 (9th Cir. 1997) ........................................................................... 19, 21

*In re Nevett*, 2021 Bankr.LEXIS 1781, at *17 (B.A.P. 9th Cir. July 1, 2021) ............................ 13

*In re Retz*,

    606 F.3d at 1196 ................................................................................... 13, 14, 24

*In re Retz*,

    606 F.3d at 1200; *In re Miller*, 2015 Bankr.LEXIS 1929, at *6............................... 15

*In re Retz*, 606 F.3d at 1198 ................................................................................... 25

*In re Roberts*,

    331 B.R. at 883 ................................................................................... 25

iv

*JP Morgan Chase Bank, N.A. v. Ellison (In re Ellison),*

    2016 Bankr.LEXIS 3475, at \*24 (Bankr. C.D. Cal. Sept. 23, 2016) ...................................... 16

*Lamar, Archer & Cofrin, LLP v. Appling,*

    138 S.Ct. 1752, 1758 (2018) ................................................................................. 1

*Miller v. Wylie (In re Wylie),*

    21-04012-tjt, ECF No. 124 at 8 (Bankr. E.D. Mich. Apr. 17, 2023 ........................................... 1

*Miller v. Wylie (In re Wylie),*

    21-04012-tjt, ECF No. 124 at 8 (Bankr. E.D. Mich. Apr. 17, 2023) ...................................... 16

*Ravasia v. U.S. Tr. (In re Ravasia),*

    2021 Bankr.LEXIS 1033, at \*18 (B.A.P. 9th Cir. Apr. 16, 2021) ........................................... 26

*Retz v. Samson (In re Retz),*

    606 F.3d 1189, 1196 (9th Cir. 2010) ................................................................... 12, 24

*Retz v. Samson (In re Retz),*

    606 F.3d 1189, 1199 (9th Cir. 2010) ........................................................................ 35

*Roberts v. Erhard (In re Roberts),*

    331 B.R. 876, 882 (B.A.P. 9th Cir. 2005) ............................................................... 24, 34

*Roberts v. Erhard (In re Roberts),*

    331 B.R. 876, 883 (B.A.P. 9th Cir. 2005) ............................................................... 24, 34

*Schoenmann v. Chen (In re Chen),*

    2009 Bankr.LEXIS 3636, at \*14 (Bankr. N.D. Cal. Nov. 9, 2009) ........................................... 1

*Spaich v. Smith (In re Spaich),*

    2005 Bankr. LEXIS 3431, at \*3 (B.A.P. 9th Cir. 2005) ...................................................... 39

*U.S. Bank N.A. v. Vill. at Lakeridge, LLC,*

    138 S.Ct. 960, 967 (2018) ................................................................................. 13

v

APPELLEE'S RESPONSIVE BRIEF

*Whatley v. Stijakovich-Santilli (In re Stijakovich-Santilli)*, 542 B.R. 245, 253-54 (B.A.P. 9th Cir. 2015) ................................................................................................................................ 12

## Statutes

§ 727(a)(4)(A) ........................................................................................................................ 2, 21

§ 727(a)(5) ................................................................................................................................ 33

**11 U.S.C.  § 727(a)(2)(A)** ..................................................................................................... 13

11 U.S.C. § 101(10) ................................................................................................................. 34

11 U.S.C. § 101(5) ................................................................................................................... 35

11 U.S.C. § 523 ................................................................................................................... 8, 10

11 U.S.C. § 727(a) ..................................................................................................................... 1

11 U.S.C. § 727(a)(4)(A) ........................................................................................................ 21

11 U.S.C. § 727(a)(5) .......................................................................................................... 2, 33

11 U.S.C. §§ 523(a)(2)(A) ........................................................................................................ 8

11 U.S.C. §§ 727(a)(2)(A) ................................................................................................... 8, 10

11 U.S.C. §523 ......................................................................................................................... 11

## Rules

Fed. R. Bankr. P. 4004(a) ........................................................................................................ 36

Fed. R. Bankr. P. 9006 ............................................................................................................. 36

Federal Rule of Bankruptcy Procedure 4004(a) ...................................................................... 36

APPELLEE'S RESPONSIVE BRIEF

4854-7883-0429,v.2

Case Name: Houser Bros. Co., et al., vs. Jamie Lynn Gallian
USDC Case No.  8:23-cv-00961-WLH
USBC Case No.: 8:21-bk-11710-SC

## Corporate Disclosure Statement

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellee

makes the following disclosures:

None.

DATED: September 15, 2023          MARSHACK HAYS WOOD LLP


By: _/s/ D. Edward Hays_
  D. EDWARD HAYS
  LAILA MASUD
  BRADFORD N. BARNHARDT
  Attorneys for Appellee,
  HOUSER BROS. CO. dba RANCHO DEL
  REY MOBILE HOME ESTATES

TO THE HONORABLE WESLEY L. HSU, UNITED STATES DISTRICT

JUDGE, APPELLANT, AND ALL INTERESTED PARTIES

Appellee, Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates

("Houser Bros."), files this Responsive Brief, and respectfully submits as follows:

## 1.    Summary of Argument

The privilege of discharge is reserved for the "honest but unfortunate

debtor."[1] When a debtor is not honest, the Bankruptcy Code provides certain

grounds upon which a discharge should be denied. The very purpose of 11 U.S.C.

§ 727(a) is to ensure that those who seek the shelter of the Bankruptcy Code do not

play "fast and loose" with their assets or with the reality of their affairs.[2]

In this case, the Bankruptcy Court conducted a lengthy one-day trial. The

evidence admitted at trial proved that the Appellant-Debtor was anything but

honest and that she had played very fast and loose with her creditors. Specifically,

the Bankruptcy Court entered judgment denying Debtor's discharge under three

---

**1.**    [1] *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752, 1758 (2018)
("One of the main purposes of the federal bankruptcy system is to aid the
unfortunate debtor by giving him a fresh start in life, free from debts, except of a
certain character… This exception is in keeping with the **basic** policy animating
the Code of affording relief only to an honest but unfortunate debtor.") (cleaned
up); *Schoenmann v. Chen (In re Chen)*, 2009 Bankr.LEXIS 3636, at *14 (Bankr.
N.D. Cal. Nov. 9, 2009).

[2] *Miller v. Wylie (In re Wylie)*, 21-04012-tjt, ECF No. 124 at 8 (Bankr. E.D. Mich.
Apr. 17, 2023).

APPELLEE'S RESPONSIVE BRIEF

separate claims for relief: (1) that Debtor had made fraudulent dispositions of assets in violation of 11 U.S.C. § 727(a)(2); (2) that Debtor had knowingly and fraudulently made multiple material false oaths in violation of 11 U.S.C. § 727(a)(4)(A); and (3) that Debtor had failed to satisfactorily explain her disposition of assets in violation of 11 U.S.C. § 727(a)(5). On this last issue, the Bankruptcy Court even granted Debtor the extraordinary opportunity to provide supplemental post-trial evidence as to her disposition of assets. In its memorandum decision denying discharge, the Bankruptcy Court found Debtor's post-trial declaration insufficient to explain her loss of assets.

Fraudulent Transfer of Assets - 727(a)(2). As the Bankruptcy Court found, at a time when the state court was beginning to enter money judgments against Debtor in multiple pending lawsuits, she took title to a manufactured home which served as her primary residence (defined below as the "Property") in the name of her single-member LLC. She then fraudulently transferred a series of sham liens against the Property. Debtor further admitted during trial that one loan secured by of such lien was in fact payable to her (***but failed she failed to disclose this note receivable in any of her original or ten amended sets of schedules and statements***). And, after the petition date, Debtor continued fraudulently gifting liens against the Property to friends and family. The Bankruptcy Court found no plausible explanation for Debtor's games with title and sham liens other than that she made such transfers with actual intent to hinder, delay, or defraud creditors.

2

APPELLEE'S RESPONSIVE BRIEF

And, in fact, since the Bankruptcy Court's issuance of its memorandum decision to deny Debtor's discharge, the bankruptcy trustee has commenced an adversary proceeding to avoid, recover, and preserve Debtor's fraudulent transfers. Based on the evidence, the Bankruptcy Court correctly denied Debtor's discharge.

<u>False Oaths – 727(a)(4)</u>. Debtor also filed an original and 10 sets of amended schedules and statements of financial affairs in her bankruptcy case. Each of these 11 documents were signed under penalty of perjury and contained conflicting representations of assets, obfuscated her financial affairs, and defeated the purpose of filing schedules at all. And, despite amending her schedules ten times, Debtor failed to disclose the $225,000 note receivable she admitted during trial was her asset. Moreover, Debtor admitted at trial that she had previously lied under oath when she insisted during her deposition that she had paid rent to her single-member LLC for the Property, as if she were "a stranger off the street." Given that Debtor gave this previous testimony during her bankruptcy case in connection with a dispute over whether she had a sufficient interest in the Property upon which to base her claimed homestead exemption, the previous false oath was material and made with fraudulent intent. Debtor likewise falsely represented under penalty of perjury in a filing with the Bankruptcy Court that certain release of title documents had been notarized before submission to the California

Department of Housing and Community Development ("HCD")[3] when this was not true. In fact, during trial, the notary testified that he never notarized the document to which Debtor attached his notarization. Debtor made this false oath to give credence to her homestead exemption argument that she acquired title prior to bankruptcy (when in fact the HCD did not receive documents until post-petition).

Conclusion. In summary, the Bankruptcy Court properly found that Debtor acted with clear intent to defraud her creditors both before and during her bankruptcy case. Houser Bros. therefore respectfully requests that this Court affirm the Bankruptcy Court's decision denying Debtor's discharge.

## 2.    Factual Background

### A.    Bankruptcy Case

On July 9, 2021 ("Petition Date"), Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. The filing of the petition commenced *In re Jamie Lynn Gallian*, Case No. 8:21-bk-11710-SC ("Bankruptcy Case").

In the Bankruptcy Case, Debtor has filed an original and ***10 sets of amended schedules***. *See* Appellant's Excerpts of Record ("ER") ER 001307- 001657. Although the schedules were often inconsistent from one set to another, one thing remained consistent - Debtor alleges an interest in a manufactured home at 16222

---

[3] The HCD issues certificates of title for manufactured homes.

Monterey Lane, Space #376, Huntington Beach, CA 92649 ("Property").

Moreover, Debtor claimed a $600,000 exemption in the Property pursuant to §

704.730 of the California Code of Civil Procedure ("CCP") even though she placed

title in the name of her LLC at a time when she was starting to have a series of

money judgments entered against her. ER 001590. As such, Debtor admitted to

owning the Property but concealing such interest from her creditors.

On May 12, 2022, as Docket No. 95, Houser Bros. filed a "Motion

Objecting to Debtor's Claimed Homestead Exemption" ("Homestead Motion").

ER 001658-001917. In the Homestead Motion, Houser Bros. sought an order:

1) Sustaining the objection to Debtor's claimed homestead exemption under
   CCP § 704.730, and disallowing any claim of exemption by Debtor in the
   Property pursuant to CCP § 704.730; and

2) Alternatively, finding that any allowed exemption be capped at $170,350
   pursuant to 11 U.S.C. § 522(p).

Houser Bros. asserted that as of the Petition Date, Debtor's single-member

LLC, J-Sandcastle Co., LLC ("J-Sandcastle"), held title to the Property. As such,

Debtor could not claim a homestead exemption because her only interest was that

of a renter. ER 001658-001917.

On June 1, 2022, Debtor filed a "Reply Opposition, and Memorandum of

Points and Authorities to Houser Bros. Co. DBA Rancho Del Rey Mobile Home

APPELLEE'S RESPONSIVE BRIEF

Estates' Motion Objecting to Debtor's Claimed Homestead Exemption . . ."

("Homestead Opposition"). ER 001918-.

On July 7, 2022, Houser Bros. filed a "Reply to Debtor's Opposition to Motion Objecting to Claimed Homestead Exemption" ("Homestead Reply"). ER 002280-002376. In the Homestead Reply, Houser Bros. argued, *inter alia*, that Debtor's only interest in the Property was that of a month-to-month tenant of J-Sandcastle which was the owner of the Property. *Id.* at 1477. Unless Chapter 7 Trustee Jeffrey I. Golden ("Trustee") sold Debtor's tenancy rights, no exemption should attach to the proceeds of sale if Trustee could otherwise recover and administer the Property. *Id.*

On July 20, 2022, Houser Bros. filed a "Notice of Lodgment of Excerpts of Certified Transcript in Support of Reply to Debtor's Opposition to Motion Objecting to Claimed Homestead Exemption." *See* Appellee's Supplemental Excerpts of Records ("SER"), SER 0514.

On July 21, 2022, at 10:30 a.m., the Bankruptcy Court held a continued hearing on the Homestead Motion. During the hearing, the Bankruptcy Court orally granted the Homestead Motion for the reasons stated in its tentative ruling. The Bankruptcy Court entered its order granting the Homestead Motion on August 5, 2022. ER 002466-002478.

On July 26, 2022, Debtor filed a "Motion for Reconsideration of 7.21.22 Order Sustaining Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estates

APPELLEE'S RESPONSIVE BRIEF

Objection to Debtor's Claimed Homestead Exemption and Joinder Parties

Huntington Beach Gables HOA; Janine Jasso" ("Reconsideration Motion"). SER

0512. Houser Bros. opposed the motion, and Debtor filed a reply. SER 0511 and

SER 0509.

On September 22, 2022, the Bankruptcy Court held a hearing on the

Reconsideration Motion. At the end of the hearing, the Bankruptcy Court took the

Reconsideration Motion under advisement.

About a week after the September 22, 2022, hearing, Houser Bros. filed a

"Notice of Recent Decision Re: Debtor's Motion for Reconsideration of 7.21.22

Order Sustaining Objection to Debtor's Claimed Homestead Exemption" ("NRD").

SER 0504.

Almost three months later, on December 19, 2022, the Bankruptcy Court

entered: (1) "Memorandum of Decision Regarding Debtor's Motion for

Reconsideration of the Court's August 5, 2022 Order Sustaining Objection to

Debtor's Homestead Exemption," SER 0501; and (2) "Order Granting Debtor's

Motion for Reconsideration of the Court's August 5, 2022 Order Sustaining

Objection to Debtor's Homestead Exemption," SER 0501.

On December 29, 2022, Houser Bros. filed a "Notice of Appeal and

Statement of Election." Docket No. 280. The appeal is currently pending as

District Court Case No. 8:23-cv-00001-DSF ("Homestead Appeal").

APPELLEE'S RESPONSIVE BRIEF

## B.    Adversary Proceeding

On October 18, 2021, Houser Bros. filed a "Complaint to (1) Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6); (2) Deny Discharge Pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5)." The filing of the complaint commenced *Houser Bros. Co. v. Jamie Lynn Gallian (In re Jamie Lynn Gallian)*, Adversary Proceeding No. 8:21-ap-01097-SC ("AP"). On October 22, 2021, as AP Docket No. 3, Houser Bros. filed an amended complaint ("Complaint"). ER 002470-002504.

On September 13, 2022, Houser Bros. filed a "Joint Pretrial Stipulation" ("PTS"). SER 0536.

On October 5, 2022, the Bankruptcy Court entered an "Order Approving Joint Pretrial Stipulation, and Scheduling Order." SER 0536.

On February 1, 2023, Houser Bros. filed a "Motion in Limine to Exclude Debtor's Trial Exhibits." SER 05356.

On February 15, 2023, as Docket No. 58, the Bankruptcy Court entered an "Order Granting Motion in Limine to Exclude Debtor's Trial Exhibits; Bifurcating Claims for Trial and Setting Status Conference on Remaining Claims," which, among other things, provided that the 11 U.S.C. § 727 claims would proceed to trial on February 23, 2023, at 9:30 a.m., and the 11 U.S.C. § 523 claims would be bifurcated and tried at a later date. SER 0534.

On February 21, 2023, Houser Bros. filed a "Request to Continue February 23, 2023, Trial to April 26-27, 2023," which requested a continuance of the trial due to illness of lead counsel. SER 0534.

On February 22, 2023, the Bankruptcy Court entered an "Order Continuing Trial to April 26-27, 2023." SER 0534.

On April 26, 2023, the Bankruptcy Court held a bifurcated trial on Houser Bros.'s 11 U.S.C. § 727 claims. D. Edward Hays, Esq., and Bradford N. Barnhardt, Esq., appeared on behalf of Houser Bros. Debtor appeared *pro se*. At the conclusion of the trial, the Bankruptcy Court ordered post-trial briefing. SER 0962-0963. The Bankruptcy Court further gave Debtor until April 28, 2023, at 5:00 p.m. to file and serve a post-trial declaration providing a complete accounting regarding the proceeds from the sale of her previous residence for purposes of the 11 U.S.C. § 727(a)(5) claim. SER 0943-0944.

On May 8, 2023, as AP Docket No. 73, Debtor filed a "Declaration of Jamie Lynn Gallian as Requested by the Honorable Scott C. Clarkson, United States Bankruptcy Judge, in Support Debtors Reduction in Sale Proceeds from Debtors Previous Homestead Sold 10/31/2018, Located at 4476 Alderport Dr. Huntington Beach, CA 92649 [sic throughout]" ("Alderport Proceeds Declaration").

On May 10, 2023, as AP Docket No. 74, Houser Bros. filed "Plaintiff's Post-Trial Closing Brief." Concurrently with the post-trial brief, Houser Bros. filed a "Motion to Amend Complaint," AP Docket No. 76, to add a claim under 11

9

APPELLEE'S RESPONSIVE BRIEF

U.S.C. § 727(a)(2)(B) to conform with the evidence presented during trial. Specifically, Debtor admitted during trial to making post-petition transfers that defrauded creditors.

On May 10, 2023, as AP Docket No. 77, Debtor filed "Debtor's Post Trial Brief in Support of Debtor Receiving a Chapter 7 Discharge."

On May 17, 2023, as AP Docket No. 79, Debtor filed an "Opposition to Houser Bros Co Motion to Amend First Complaint Filed October 6, 2021."

On May 23, 2023, as AP Docket No. 81, the Bankruptcy Court entered: "(1) Order Denying Motion to Amend and Vacating Hearing; (2) Memorandum Decision After Trial Regarding § 727 Claims; and (3) Setting Status Conference on Remaining § 523 Claims" ("MOD").

On May 29, 2023, as AP Docket No. 83, Debtor filed a "Notice of Appeal and Statement of Election" regarding the MOD, which commenced this appeal ("Appeal").

On July 7, 2023, the Bankruptcy Court entered:

1) "Judgment Denying Debtor's Discharge Pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5)" ("Judgment"), SER 0530; and

2) "Order After Status Conference Re: 11 U.S.C. § 523 Claims," SER 0530, in which the Bankruptcy Court held that pending the Judgment becoming

APPELLEE'S RESPONSIVE BRIEF

final and no longer subject to appeal, Houser Bros.'s remaining claims

under 11 U.S.C. §523 would be held in abeyance.[4]

3.    **Legal Argument**

A.    **Standard of Review**

In an appeal from a decision to deny a debtor's discharge, the appellate court

reviews the bankruptcy court decision using the following standards:

(1) the [bankruptcy] court's determinations of the historical facts are

reviewed for clear error; (2) the selection of the applicable legal rules

under § 727 is reviewed de novo; and (3) the application of the facts to

those rules requiring the exercise of judgments about values animating

the rules is reviewed de novo.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

A bankruptcy court's conclusions of law are reviewed *de novo. Whatley v.*

*Stijakovich-Santilli (In re Stijakovich-Santilli)*, 542 B.R. 245, 253-54 (B.A.P. 9th

Cir. 2015). *De novo* review requires that the court consider a matter "anew, as if it

had not been heard before, and as if no decision had been rendered below." *Id.* at

254.

---

[4] To the extent Debtor's Opening Brief contains argument regarding Houser Bros.'s § 523 claims, such argument is irrelevant to this Appeal from the Judgment on Houser Bros.'s § 727 claims. The arguments pertaining to Houser Bros.'s § 523 claims include any contentions based on the California Mobilehome Residency Law and the merits of the forcible entry/detainer action pending in Orange County Superior Court.

APPELLEE'S RESPONSIVE BRIEF
4854-7883-0429,v.2

A factual finding is clearly erroneous only if the appellate court has a "definite and firm conviction that a mistake has been committed." *Id.*; *see also In re Retz*, 606 F.3d at 1196 (stating that a court's factual determination is clearly erroneous if it is "illogical, implausible, or without support in the record").

Further, there are two distinct categories of mixed question cases: those where the legal issues predominate and those where factual issues predominate. *In re Nevett*, 2021 Bankr.LEXIS 1781, at *17 (B.A.P. 9th Cir. July 1, 2021). When the mixed question principally requires the court to "expound on the law, particularly by amplifying or elaborating on a broad legal standard," the legal issue predominates and the appellate court applies *de novo* review. *Id.* But, when the mixed question primarily requires the court to make a "case-specific inquiry based on a group of facts already established," or to make an additional factual inference from those facts, the resolution of the question is "inherently factual in nature" and the appellate court applies the clearly erroneous standard of review. *Id.*; *accord U.S. Bank N.A. v. Vill. at Lakeridge, LLC*, 138 S.Ct. 960, 967 (2018) (discussing the standard of review applied in mixed question cases). In this case, the factual issues predominate: specifically, the issue is whether Debtor's misconduct warrants the denial of her discharge under the established legal standards.

Finally, when factual findings are based on determinations regarding the credibility of witnesses, appellate courts give "great deference to the bankruptcy court's findings," because the bankruptcy court, as the trier of fact, had the

opportunity to note "variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *In re Retz*, 606 F.3d at 1196.

## B.   The Bankruptcy Court properly denied Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

Section 727(a)(2)(A) provides:

The court shall grant the debtor a discharge, unless—the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—property of the debtor, within one year before the date of the filing of the petition.

A party seeking denial of discharge under § 727(a)(2)(A) must prove:

1) A disposition of property, such as a transfer or concealment;

2) A subjective intent on the debtor's part to "hinder, delay or defraud a creditor through the act [of] disposing of the property;" and

3) It must occur within one year before filing bankruptcy.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010); *Faith v. Miller (In re Miller)*, 2015 Bankr.LEXIS 1929, at *6 (Bankr. C.D. Cal. June 12, 2015).

A debtor's intent need not be identical to the fraudulent intent under a common-law tort standard to meet the requirements of § 727(a)(2)(A). *Retz v.*

13

APPELLEE'S RESPONSIVE BRIEF

*Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010). It suffices if the debtor's intent is to "hinder or delay a creditor." *Id.*; *see also Faith v. Miller (In re Miller)*, 2015 Bankr.LEXIS 1929, at *6 (Bankr. C.D. Cal. June 12, 2015) (same). Lack of injury to creditors is irrelevant regarding denying a discharge in bankruptcy. *In re Retz*, 606 F.3d at 1200; *In re Miller*, 2015 Bankr.LEXIS 1929, at *6; *see also Miller v. Wylie (In re Wylie)*, 21-04012-tjt, ECF No. 124 at 8 (Bankr. E.D. Mich. Apr. 17, 2023) (noting that proof of harm is not a required element of a cause of action under § 727; rather, so long as there is an intent to hinder, delay, or defraud, in combination with an act such as a transfer, then a debtor should be denied the privilege of discharge). The intent to hinder or delay is a factual question that requires the trier of fact to "delve into the mind of the debtor" and may be inferred from surrounding circumstances. *JP Morgan Chase Bank, N.A. v. Ellison (In re Ellison)*, 2016 Bankr.LEXIS 3475, at *24 (Bankr. C.D. Cal. Sept. 23, 2016).  A "course of conduct" may also be "probative" regarding intent. *In re Ellison*, 2016 Bankr.LEXIS 3475, at *25.

The evidence during trial showed that Debtor made several transfers of property with actual intent to hinder, delay, or defraud a creditor, within one year before filing bankruptcy (or postpetition).

### i. Transfer of Title to the Property to J-Sandcastle, LLC

Debtor testified, and Houser Bros.'s trial exhibits proved, that before occupying the Property, she lived at 4476 Alderport Drive, Unit 53, Huntington

Beach, CA 92649 ("Alderport Property"). She received her interest in the Alderport Property as a gift in 2017 from her stepmother, Sandra Bradley ("Ms. Bradley"). TS at 20. Debtor always held the Alderport Property in her own name. TS at 20. On October 31, 2018, Debtor sold the Alderport Property to Randall Nickell for $379,000, which he paid in two cashier's checks payable to Debtor individually. TS at 20-21. Debtor deposited the funds into a newly opened Chase Bank account in her name. TS at 21. Debtor then used $185,000 of the proceeds to purchase the subjet Property from Lisa Ryan ("Ms. Ryan"). TS at 22. Debtor paid the first $10,000 on November 1, 2018, and the balance on November 17, 2018. TS at 22-23.

Even though Debtor paid for the Property with proceeds of her Alderport Property deposited into a bank account in her name, she placed title to the Property in the name of J-Sandcastle, LLC. ER 000824-000825; SER 0584. On November 1, 2018, Ms. Ryan executed a "Notice of Sale or Transfer" for the Property with Debtor, "Jamie Lynn Gallian," identified as the "Purchaser/New Owner." ER 000826-000828; SER 0579. On November 15, 2018, however, Ms. Ryan whited-out Debtor's name and replaced it with "J-Sandcastle Co, LLC Its Manager Jamie L. Gallian," pursuant to a discussion Debtor and Ms. Ryan had on that day. ER 000826-000828; SER 0579-0583. J-Sandcastle neither paid any consideration to Debtor in connection with receiving title to the Property, nor did J-Sandcastle have any business other than holding title to the Property. SER 0605, 0762.

APPELLEE'S RESPONSIVE BRIEF

The decision to place title to the Property in the name of J-Sandcastle on November 15, 2018, shows Debtor's intent to hinder, delay, or defraud, based on the timing of state-court judgments against her. In 2017, the Huntington Beach Gables Homeowners Association ("HOA"), which was responsible for the property where the Alderport Property was located, filed a lawsuit against Debtor and Ms. Bradley. SER 0588. On or around August 7, 2018, the HOA filed a motion for attorney's fees, which was continued to November 1, 2018, and again to November 8, 2018, on which date the state court granted the motion. SER 0590-0594. The state court then entered an order reflecting its ruling granting the motion on December 4, 2018. In this order, the Court awarded the HOA $46,138 of attorney's fees against Debtor, plus 10% interest. SER0594-0595; SER 0306-0326; SER 0479-0488. In the same lawsuit, the HOA later obtained judgment against Debtor in excess of $315,000 on May 6, 2019. SER 0600.

The HOA likewise filed a lawsuit against Debtor in 2017 with Case No. 00962999. SER 0600-0601. In On March 21, 2019, the HOA obtained a money judgment against Debtor for $9,265. SER 0601-0602; SER 0306. And, $3,070 of sanctions were imposed against Debtor on September 27, 2018. SER 0603-0604; SER 0306-0326. To date, Debtor has only paid $1,295 on account of all these judgments. SER 0604.

The evidence thus showed that at the time Debtor directed that title to the Property be placed in the name of J-Sandcastle, she was a party to multiple

lawsuits, with substantial judgments beginning to be entered against her. In fact, during Debtor's narrative summary testimony during trial, she acknowledged that she deposited $175,000 into J-Sandcastle's account on November 7, 2018, and decided to create a promissory note and security agreement on November 16, 2018, "after the hearing with Judge Crandall."  SER 0867.

Moreover, at the time Debtor placed title to the Property in the name of J-Sandcastle, the California homestead exemption was only $75,000, which would have left her with non-exempt equity. *See* 2020 Cal AB 1885 (redlined amendment to Cal. Code Civ. P. § 704.730, Chaptered, Sept. 18, 2020). And, while Debtor suggests that it only would have been fraudulent for her to place title in the name of a "third party or a different entity," Opening Brief at 18, as the Bankruptcy Court found, her placement of title in the name of J-Sandcastle is "rife with multiple badges of fraud." SER 0061.

Finally, because the concealment continued into the one-year period before bankruptcy, it satisfies the timing requirements of § 727(a)(2)(A). *See In re Lawson*, 122 F.3d 1237 (9th Cir. 1997) (adopting the "continuing concealment" doctrine and holding that defendant's transfer, made more than a year before her petition, provided evidence of defendant's active concealment of property in which she continued to retain a secret interest).

### ii.    Promissory note payable to J-Pad

Immediately after leaving the court in connection with the proceedings that resulted in judgments against her, Debtor further concealed her equity in the Property by granting a lien for $225,000 in favor of J-Pad LLC ("J-Pad") on November 16, 2018.  SER 0606-0608; ER 000896-000911. (At the time, Debtor was one of two members of J-Pad, which had no business other than being the named lienholder in documents filed in various places. SER 0613, SER 0762. Debtor testified that she only advanced $175,000, and the balance of the advances came much later. SER 0608-0609. At the time Debtor signed the promissory note and security agreement, therefore, the note and lien were for a fraudulent amount.

Debtor further acknowledged that J-Pad neither loaned any money to J-Sandcastle, nor did J-Sandcastle ever pay $225,000 to J-Pad. SER 0610, SER 0613. She later admitted that despite two notes—one payable to her and one payable to J-Pad—the money was really owed to her. SER0729-SER 0743. In essence, Debtor admitted that she was holding a lien to her own Property and that her bankruptcy schedules failed to disclose this note and lien payable to her. There is no plausible explanation for doing so other than to conceal her interest in the Property from her creditors and the bankruptcy trustee.

Although no consideration was given for the J-Pad lien and the money was owed to Debtor, J-Pad remained a legal owner of record within one-year prepetition. *See* ER 001274. (HCD Certificate of Title for the Property, issued

February 24, 2021, identifying Ronald J. Pierpont and J-Pad as Legal Owners as Tenants in Common). Debtor's concealment of her equity therefore satisfies the one-year requirement. *See In re Lawson*, 122 F.3d 1237 (9th Cir. 1997).

### iii. Concealment of $225,000 payable to Debtor

Debtor concealed that the promissory note for $225,000 was in fact payable to her when the note and security agreement and lien filings all reflected that J-Pad held the lien. SER 0729-0743 (Debtor's testimony that J-Sandcastle was the borrower and promised to pay Debtor $225,000, and Debtor had a $225,000 asset in the form of a note payable to her); ER 002032 (secured promissory note between J-Sandcastle and Debtor). In none of Debtor's schedules and statements, however, did she disclose that she had a $225,000 asset in the form of a note payable to her individually. SER 0742-0743; *see also* ER 001308-001657. (Debtor's original and amended schedules).

And, during Debtor's August 18, 2021, meeting of creditors, she falsely testified to the bankruptcy Trustee that she had listed all her assets. SER 0883. By scheduling J-Pad as the secured party rather than herself, Debtor sought to conceal the fact that the lien was in fact a sham to prevent administration of the Property (plus she used the alleged existence of this lien to seek to avoid judgment liens as impairing her claimed exemption in two motions filed in January 2023).

### iv.     August 2020 liens to Steven and Brian Gallian

In August 2020 (less than one year before the Petition Date), Debtor granted liens to her sons, Steven and Brian Gallian. SER 0615; ER 000971-000981. The UCCs were filed on December 4, 2020. SER 0615. Steven and Brian Gallian paid no consideration to be added as secured parties. SER 0616. In other words, Debtor gave liens against the Property to Steven and Brian Gallian as gifts, and these gifts were reflected in J-Pad's minutes. SER 0624-0627 (excerpts from Debtor's deposition transcript). Debtor further signed statements to encumber that were submitted to HCD to have her children added as lienholders on the certificate of title. ER 001265. Debtor's intent, in gifting liens against the Property to two of her sons, was clear: she sought to make the Property appear worthless to her creditors (including her judgment creditors).

Although Debtor transferred liens against the Property to Steven and Brian Gallian less than one year before the Petition Date and filed ten sets of amended schedules under oath, she never disclosed these transfers which were required.  ER 001308-001657 (Debtor's original and amended schedules). Debtor's intent with this concealment is likewise clear: she sought to avoid scrutiny against herself and her sons for these fraudulent transfers.

### v.     Transfers of interests in J-Pad

During Debtor's deposition, she indicated that she had gifted her sons, Brian and Steven Gallian, $15,000 per year for three years in the form of J-Pad interests.

APPELLEE'S RESPONSIVE BRIEF

SER 0626-0627. Based on Debtor acquiring the Property from Lisa Ryan in November 2018, three years would include at a minimum 2020. Yet, Debtor did not disclose these gifts in her schedules and statements. *See* ER 001308-001657 (Debtor's original and amended schedules and statements). By not disclosing that Brian and Steven Gallian's interests in J-Pad were gifts, Debtor sought to hide that the J-Pad lien was a sham to defraud her creditors.

## C.   The Bankruptcy Court properly denied Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

Section 727(a)(4)(A) provides: "The court shall grant the debtor a discharge, unless—the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." To prevail on a § 727(a)(4)(A) claim, a plaintiff must show, by a preponderance of the evidence, that:

1) The debtor made a false oath in connection with the case;

2) The oath related to a material fact;

3) The oath was made knowingly; and

4) The oath was made fraudulently.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010); *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005). The "fundamental purpose" of § 727(a)(4)(A) is to ensure that the trustee and creditors have "accurate information without having to conduct costly investigations." *In re Retz*, 606 F.3d at 1196.

A "false statement or an omission" in the debtor's petition, schedules, or statement of financial affairs can constitute a "false oath." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010); *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005).

"Materiality" is broadly defined. *In re Roberts*, 331 B.R. at 883. A fact is "material" if it "bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *In re Retz*, 606 F.3d at 1198. An omission or misstatement that "detrimentally affects administration of the estate" is material. *Id.* A false statement or omission may be material even without "direct financial prejudice to creditors." *In re Roberts*, 331 B.R. at 883.

A debtor acts "knowingly" if he or she acts "deliberately and consciously." *In re Retz*, 606 F.3d at 1198.

A demonstration of fraudulent intent requires a showing that:

1) The debtor made the representations (*e.g.*, a false statement or omission in the schedules);

2) At the time the debtor knew they were false; and

3) The debtor made them with intention and purpose of deceiving the creditors.

*In re Retz*, 606 F.3d at 1198-99. Intent is usually proven by circumstantial evidence or inferences drawn from the debtor's conduct. *Id.* at 1199. "Reckless

indifference or disregard for the truth" may be circumstantial evidence of intent. *Id.* The existence of "more than one falsehood, together with a debtor's failure to take advantage of the opportunity to clear up all inconsistencies and omissions, such as when filing amended schedules, can be found to constitute reckless indifference to the truth satisfying the requisite finding of intent to deceive." *Ravasia v. U.S. Tr. (In re Ravasia)*, 2021 Bankr.LEXIS 1033, at \*18 (B.A.P. 9th Cir. Apr. 16, 2021).

Here, the evidence at trial showed countless material false oaths and omissions that Debtor knowingly made with the requisite intent.

### i. Debtor scheduled varying interests in J-Pad

In Debtor's original and 10 sets of amended schedules, she disclosed varying interests in J-Pad, including 1/7 ownership, 33.33% ownership, 70% ownership, and 100% ownership. *See* ER 001308-001657 (Debtor's original and amended schedules); *see also* ER 001684-001694 (Homestead Motion, attaching as Exhibit 1 a table summarizing Debtor's schedules regarding J-Pad). Debtor signed her schedules and statements under penalty of perjury, confirming that she had examined the documents, and that they were "true and correct." *See, e.g.*, ER 001248-001355 (Debtor's original schedules and statements).

During trial, however, Debtor admitted that she owned at least 90% of J-Pad, despite what she had previously represented in her schedules. SER 0695. She further testified that she became the 100% owner of J-Pad starting on October 30,

APPELLEE'S RESPONSIVE BRIEF

2018. SER0697. Debtor therefore knew that her schedules were false regarding her interest in J-Pad. Morever, by falsely scheduling her interest in J-Pad, Debtor hid the fact that she really held and controlled the sham liens against the Property. She therefore knowingly made material, false oaths with fraudulent intent, and the Bankruptcy Court properly denied her discharge.

### ii. Debtor never disclosed the $225,000 promissory note payable to her and only first admitted to it during trial under cross-examination

As discussed above, Debtor testified at trial that she was beneficiary of a $225,000 promissory note secured by an interest against the Property. But, in none of her original or 10 sets of amended schedules and statements did she list this note as an asset. SER 0729-0743; ER 002032 (secured promissory note between J-Sandcastle and Debtor).

Further, during Debtor's August 18, 2021, meeting of creditors, she falsely advised the Trustee that she had listed all her assets. SER 0883. By scheduling J-Pad as the secured party rather than herself when she knew the money was owed to her, Debtor sought to conceal the fact that the lien was in fact a sham to prevent Trustee's administration of the Property. The unscheduled $225,000 note thus provided a basis for denial of discharge.

### iii.     Debtor scheduled the value of J-Pad as $0

Throughout her various sets of schedules, Debtor affirmatively misrepresented that J-Pad had no value. *See* ER 001307- 001657 (Debtor's original and amended schedules). J-Pad, however, purported to hold a note and lien against the Property, which was otherwise unencumbered. Debtor's representations, that J-Pad had no value when Debtor knew otherwise, were fraudulently designed to prevent the Trustee from scrutinizing J-Pad and discovering the sham nature of its lien and Debtor's true equity in the property.

### iv.     Debtor did not disclose in her case commencement documents that she had granted her sons a lien against the Property in August 2020

As discussed above, in August 2020 (less than one year before the Petition Date), Debtor granted liens to her sons, Steven and Brian Gallian, by adding them to UCCs. SER 0615; 000971-000981. Debtor gave liens against the Property to Steven and Brian Gallian as gifts, and these gifts were reflected in J-Pad's minutes. SER 0624-SER 0627. Debtor further signed statements to encumber that were submitted to HCD to have her children added as lienholders on the certificate of title. ER 001265.

In Debtor's original and 10 sets of schedules and statements, however, Debtor did not disclose these transfers/gifts. ER 001307- 001657 (Debtor's original and amended schedules). These transfers are material because the Trustee has

"strong-arm powers" to avoid and recover certain transfers of property by a debtor. These transfers to Debtor's sons within a year before the Petition Date would arguably be preferential or fraudulent transfers that the Trustee could avoid, recover, and preserve, allowing him to step into the shoes of Debtor's sons and receive the money or property otherwise payable to them. And, in fact, on June 30, 2023, Trustee filed a "Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment" ("Trustee Complaint") against J-Sandcastle, J-Pad, Brian J. Gallian, Justin Barclay, Ronald J. Pierpont, Robert J. McLelland, and E.J. Gallian, commencing Adversary Proceeding No. 8:23-ap-01064-SC ("Trustee Action"). The allegations in the Trustee Action pertain in part to the August 2020 additions of Steven and Brian Gallian as legal owners (*i.e.*, lienholders) on the certificate of title for the Property. A true and correct copy of the Trustee Complaint is attached to the Request for Judicial Notice as **Exhibit 1**.

Debtor's intent with this concealment is clear: she sought to avoid scrutiny against herself and her sons for these fraudulent transfers. It has further proven beneficial and material for Trustee to know about these lien transfers as a possible fraudulent transfer to avoid, recover, and preserve. But, because Debtor did not disclose the existence of the transfers, and by otherwise encumbering and concealing the amount of money and equity in the Property, Trustee was until

APPELLEE'S RESPONSIVE BRIEF

recently prevented from being able to pursue claims.

Further, even if Debtor is allowed a homestead exemption in the Property, if the Trustee successfully avoids, recovers, and preserves these lien transfers, he will inherit the lien rights, and Debtor will not be able claim an exemption in the recovered funds. *See*, 11 U.S.C. § 522(g). These funds may be the only money in this Bankruptcy Case that any creditor ever sees. But, because Debtor omitted the transfers from her schedules, she sought to prevent the Trustee Action altogether.

### v.    Payment of rent

During Debtor's deposition, she clearly and emphatically testified under oath that she "was paying rent to J-Sandcastle . . . just as if [she were] a stranger off the street." SER 0672. But, according to Debtor's trial testimony, this statement she made during her deposition was admittedly false. SER 0674. Debtor further acknowledged at trial that it was not a true statement when she indicated during her deposition that she was renting from J-Sandcastle. SER 0674. The knowledge element is satisfied because Debtor, of course, knew she was not paying rent despite testifying otherwise during her deposition. And, Debtor's false statement was material because at the time of the deposition, Houser Bros.'s exemption objection was still pending before the Bankruptcy Court, with status of Debtor's interest in the Property as a key issue (i.e. did she have an ownership interest or was she simply a renter upon which no exemption could be based). *See* ER 001636-001657 (Exemption Motion). Houser Bros. also filed an appellate brief

arguing that the property that became property of the estate was Debtor's interest in J-Sandcastle and her tenancy rights. *See* Homestead Appeal, Docket No. 11. The only possible purpose for Debtor's false statement regarding paying rent was to defraud Houser Bros. in its efforts to deny her claimed homestead exemption.

### vi.   Debtor did not disclose gifts in her case commencement documents

In addition to the liens granted to Steven and Brian Gallian, Debtor granted liens to her oldest son, granddaughter, former spouse, and roommate in September 2021 (postpetition). SER 0632; ER 000971-000981. But, Debtor did not amend her schedules and statements to disclose these gifts. ER 001307- 001657. Certainly, gifting a postpetition lien against property of the Estate is material. And, the lien (and nondisclosure of the gifts) could have only served the purpose of defrauding Trustee and the creditors by preventing administration of the Property. In fact, in the Trustee Action, Trustee asserts claims based on these liens.

### vii.   Unexpired ground lease

In Debtor's original Schedule G, as well as the several amendments thereto, she consistently scheduled an unexpired ground lease for Space 376 at Houser Bros.'s mobilehome park.[5] ER 001307- 001657. But, no ground lease actually

---

[5] In Debtor's original Schedule G, she checked the box to indicate that she did not have any executory contracts or unexpired leases, but she then scheduled multiple executory contracts or unexpired leases. ER 001342. In subsequent amendments to

APPELLEE'S RESPONSIVE BRIEF

existed. SER 0910 (Debtor's acknowledgment that there was no ground lease in her name with Houser Bros.); *see also* SER 0825-0826 SER 0832-0833 (testimony of Chris Houser that Houser Bros. had never approved J-Sandcastle, J-Pad, or Debtor to the residence in the mobilehome park, and as far as he is concerned, Debtor has no legal ability to be on the premises).

These knowingly made false statements are material and fraudulent because Debtor represented to the Trustee and her creditors that there was a lease for the Trustee to investigate and decide whether to assume, assign, or sell. Debtor's false oath wasted the Trustee's and creditors' time regarding administration of the Estate. Further, Debtor's right to occupy the premises is currently an issue being litigated in a forcible entry/detainer action in Orange County Superior Court filed prepetition. *See* SER 0494 ("Order Granting Motion for Relief from Stay Under 11 U.S.C. § 362 (Unlawful Detainer)").

### viii.    Greg Buysman notarization

In Debtor's Homestead Opposition, she represented under penalty of perjury that J-Sandcastle released title to the Property to her on February 25, 2021, with a notarization of Debtor's signature for this transfer reflected in the evidence supporting the Homestead Motion. ER 001923, 01947, 001952 (Debtor's

---

Schedule G, the box was checked "yes." *See, e.g.*, ER 001593 (amended Schedule G).

Homestead Opposition);[6] *see also* SER 0804-0824 (explanation of the falsity of the oath). Among the attachments to the Homestead Motion were two notary pages by Greg Buysman ("Mr. Buysman") regarding a February 25, 2021, release of title, that Houser Bros. received from Debtor during discovery. *See* ER 001854-001855, ER 001863-001865. Yet, the purported notary, Mr. Buysman, appeared and testified at trial that his records for February 25, 2021, only showed that he notarized an affiant certificate of death and a transfer grant deed for Debtor. SER 0788. Mr. Buysman further confirmed that these documents were those beginning on pages 1562 and 1578 of Trial Exhibit 42 ER 002378-002439, and that according to his records, he notarized no other documents for Debtor on February 25, 2021. SER 0789.

When Debtor filed her Homestead Opposition, Houser Bros.'s theory in objecting to her homestead exemption was that title to the Property as of the Petition Date was held by J-Sandcastle as opposed to the Debtor personally, and Debtor could therefore not claim an exemption (because her only interest in the Property was that of a renter). *See generally* ER 001659-001917 (Homestead Motion). By citing as evidence a fraudulent notary page dated February 25, 2021 (prepetition), Debtor sought to give credence to the alleged date of release. In fact, Debtor acknowledged that the title document submitted to the HCD did not even

---

[6] Debtor confirmed that she had represented under penalty of perjury that everything in her Homestead Opposition was true and correct. SER 0821.

have to be notarized, SER 0823, meaning that the notary page could have served

no other purpose than to defraud creditors by reflecting an earlier release date.

With a February 25, 2021, date of release, Debtor could then support her claim that

she was the Property's owner of record as of the Petition Date, even if the owner of

record was really J-Sandcastle (and she was continuing to pay it rent). Debtor

knew that Mr. Buysman had not notarized her HCD submissions providing the

February 25, 2021, release date; Mr. Buysman testified that he never notarized

these documents at all. Thus, Debtor committed yet another fraudulent false oath.

As a final note, even if title as of the Petition Date is legally irrelevant to

Debtor's claim of a homestead exemption, a false statement or omission may be

material even without "direct financial prejudice to creditors." *Roberts v. Erhard*

*(In re Roberts)*, 331 B.R. 876, 883 (B.A.P. 9th Cir. 2005). Rather, a fact is

"material" if it "bears a relationship to the debtor's business transactions or estate,

or concerns the discovery of assets, business dealings, or the existence and

disposition of the debtor's property." *Retz v. Samson (In re Retz)*, 606 F.3d 1189,

1198 (9th Cir. 2010).

### ix.    Debtor undervalued the Property in her schedules

In Debtor's schedules, she valued the Property at $235,000. ER 001307-

001657. But, Debtor knows the value to be substantially higher, given that Debtor

advised during settlement negotiations that she would sell the Property for

$600,000. SER 0565-0567. Debtor's intentionally low valuation of the Property

would have affected Trustee's decision of whether to avoid, recover, and preserve the $225,000 lien against the Property and step into J-Pad's shoes. Further, were Trustee to sell the Property for $235,000, there is no doubt that Debtor would object to the price as being insufficient.

### x.   Debtor filed 10 sets of schedules with varying information, showing, at a minimum, reckless disregard for the truth

Finally, Debtor has filed her original and 10 sets of amended schedules and statements, all signed under penalty of perjury, with all sorts of varying information, as described above. As the Ninth Circuit has noted, it is "very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information upon which all creditors rely." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) (citation omitted). At the very least, Debtor's 10 sets of conflicting schedules and statements show reckless indifference or disregard for the truth, establishing her fraudulent intent for purposes of denial of discharge.  See *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1199 (9th Cir. 2010) (indicating that reckless indifference or disregard for the truth may be circumstantial evidence of intent); *Ravasia v. U.S. Tr. (In re Ravasia)*, 2021 Bankr.LEXIS 1033, at *18 (B.A.P. 9th Cir. Apr. 16, 2021) (noting that the existence of "more than one falsehood, together with a debtor's failure to take advantage of the opportunity to clear up all inconsistencies and omissions, such as when filing amended schedules, can be found to constitute

reckless indifference to the truth satisfying the requisite finding of intent to deceive).

### D.     The Bankruptcy Court properly denied Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5).

Title 11 U.S.C. § 727(a)(5) provides: "The court shall grant the debtor a discharge, unless— **(5)** the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

Under § 727(a)(5), the objecting party bears the initial burden of proof and must demonstrate:

1)     Debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets;

2)     On the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and

3)     The bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1205 (9th Cir. 2010). Once the creditor has made a *prima facie* case, the debtor must offer "credible evidence" regarding the disposition of the missing assets. *Id.* Whether a debtor has satisfactorily explained a loss of assets is a question of fact for the bankruptcy court. *Id.* Ninth Circuit precedent limits § 727(a)(5) to a debtor's inexplicable, pre-petition loss of

assets. *Davis v. Choy (In re Choy)*, 569 B.R. 169, 184 (Bankr. N.D. Cal. 2017) (citation omitted).

Here, on October 31, 2018, Debtor sold the Alderport Property to Randall Nickel for $379,000 ("Alderport Proceeds"). SER 0536. She deposited the proceeds with Chase Bank, in an account in her name. SER 0536. Although Debtor paid $185,000 from the proceeds to purchase the Property, SER 0569, she never adequately explained the disposition of the remaining money.

At the conclusion of the trial, the Bankruptcy Court even afforded Debtor the extraordinary opportunity to provide post-trial evidence in the form of a declaration to be filed by April 28, 2023, at 5:00 p.m. to provide a complete accounting regarding the Alderport Proceeds. SER 0942-0944. On May 1, 2023, Debtor filed the Alderport Proceeds Declaration, which the Bankruptcy Court considered despite its untimeliness. Although Debtor's accounting lists expenditures, Debtor provides no documentary evidence to corroborate the line items. Further, the Bankruptcy Court correctly found that that the Alderport Proceeds Declaration is "rudimentary and incomplete" and conflicts with Debtor's testimony at trial. SER 0068. Debtor has not offered credible evidence for the disposition of the Alderport Proceeds, and the Bankruptcy Court properly denied her discharge under 11 U.S.C. § 727(a)(5).

### E.     Houser Bros. had standing to prosecute the AP.

A creditor has standing to object to the granting of a discharge under Section 727(a). *See* 11 U.S.C. § 727(c)(1) ("The trustee, a creditor, or the United States trustee may object to the granting of a discharge . . ."). The Bankruptcy Code defines a creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). A claim is a "right to a payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, *disputed*, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5) (emphasis added).

Houser Bros. is a creditor of Debtor's bankruptcy estate, having filed a proof of claim (Claim #3) on October 23, 2022. Just because Debtor may dispute the facts underlying Houser Bros.'s claim does not suffice to deprive Houser Bros. of standing to bring an action to deny her discharge. *See Spaich v. Smith (In re Spaich)*, 2005 Bankr. LEXIS 3431, at *3 (B.A.P. 9th Cir. 2005) ("[T]here is nothing in the Code or the Rules which suggest that only creditors with proven claims may file such an action, and case law suggests the contrary."). Further, "lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010). The Bankruptcy Court therefore correctly found that Houser Bros. had standing to prosecute the § 727 claims in the AP.

4854-7883-0429,v.2

### F.    Debtor's remaining arguments lack merit.

In her Opening Brief, Debtor raises several "affirmative defenses" to Houser Bros.'s claims. Opening Brief at 20. As an initial note, it is unclear whether Debtor in fact asserts these defenses. *See id.* (listing "[p]ossible" affirmative defenses that Debtor "could include"). To the extent Debtor does assert these defenses, they lack merit.

Debtor's laches argument overlooks the fact that Houser Bros. filed an action to deny her discharge, which was timely under Federal Rule of Bankruptcy Procedure 4004(a). *See* Fed. R. Bankr. P. 4004(a) (providing that in a Chapter 7 case, a complaint objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)); *see also* Bankruptcy Case, Docket No. 5 (setting August 18, 2021, as the first meeting of creditors under § 341(a)); *see generally* Fed. R. Bankr. P. 9006 ("Computing and Extending Time"). Further, Debtor's laches argument appears to pertain to the forcible entry/detainer action, which is relevant to Houser Bros.'s § 523 claims that have not been tried and are therefore not before this Court.

Debtor likewise raises an unclean-hands argument and a damages-mitigation argument that again pertain to Houser Bros.'s § 523 claims. Because none of these alleged defenses were included in the pretrial stipulation (which superseded the pleadings) and Debtor failed to carry her burden to produce law that such alleged defenses can serve as a defense to a Section 727(a) claim to deny discharge and a

APPELLEE'S RESPONSIVE BRIEF

preponderance of evidence at trial to prove such defenses, these arguments all fail.

**4.     Conclusion**

For the reasons stated above, Houser Bros. respectfully requests that the

Court:

1) Affirm the Bankruptcy Court's decision to deny Debtor's discharge

    pursuant to 11 U.S.C. § 727(a)(2)(A);

2) Affirm the Bankruptcy Court's decision to deny Debtor's discharge

    pursuant to 11 U.S.C. § 727(a)(4)(A);

3) Affirm the Bankruptcy Court's decision to deny Debtor's discharge

    pursuant to 11 U.S.C. § 727(a)(5); and

4) Award such other and further relief as the Court deems just and proper.


DATED: September 15, 2023                MARSHACK HAYS WOOD LLP


                                         By:  */s/ D. Edward Hays*
                                              D. EDWARD HAYS
                                              LAILA MASUD
                                              BRADFORD N. BARNHARDT
                                              Attorneys for Appellee,
                                              HOUSER BROS. CO. dba RANCHO DEL
                                              REY MOBILE HOME ESTATES

APPELLEE'S RESPONSIVE BRIEF

Case Name: Houser Bros. Co., et al., vs. Jamie Lynn Gallian
USDC Case No.  8:23-cv-00961-WLH
USBC Case No.: 8:21-bk-11710-SC

# Statement of Related Cases

1.  *Houser Bros. v. Jamie Lynn Gallian*, Orange County Superior Court, Case No. 30-2019-01041423-CL-UD-CJC

2.  *Houser Bros. v. Jamie Lynn Gallian, Orange County Superior Court, Case No. 30-2023-013160578-UD-CJC*

3.  *Houser Bros. v. Jamie Lynn Gallian,* Bankruptcy Adversary Case No. 8:21-ap-01097-SC

4.  *In re Jamie Lynn Gallian*, Bankruptcy Court Case No: 8:21-bk-11710-SC

5.  *In re Jamie Lynn Gallian*, District Court Case No. 8:23-cv-00001-DSF

6.  *Jeffrey I. Golden v. J-Sandcastle Co. LLC, et al.*, Bankruptcy Adversary Case No. 8:23-ap-01064-SC

DATED: September 15, 2023  MARSHACK HAYS WOOD LLP
          By: */s/ D. Edward Hays*
          D. EDWARD HAYS
          LAILA MASUD
          BRADFORD N. BARNHARDT
          Attorneys for Appellee,
          HOUSER BROS. CO. dba RANCHO DEL REY
          MOBILE HOME ESTATES

CERTIFICATE OF COMPLIANCE

Case Name: Houser Bros. Co., et al., vs. Jamie Lynn Gallian
USDC Case No.  8:23-cv-00961-WLH
USBC Case No.: 8:21-bk-11710-SC

Form 6.    Certificate of Compliance with Type-Volume
Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because:

this brief contains 9,454 words, excluding the parts of the brief exempted by

Fed. R. App. P. 32(a)(7)(B)(ii).

2.    This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportionally spaced typeface using

Microsoft Word in 14-pt or larger Times New Roman.

DATED: September 15, 2023        MARSHACK HAYS WOOD LLP

By: */s/ D. Edward Hays*
D. EDWARD HAYS
LAILA MASUD
BRADFORD N. BARNHARDT
Attorneys for Appellee,
HOUSER BROS. CO. dba RANCHO DEL REY
MOBILE HOME ESTATES

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this District Court proceeding. My business address is: 870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **APPELLEE'S RESPONSIVE BRIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by L.R. 5-4 in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and L.R 5-3.3, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 15, 2023**, I checked the CM/ECF docket for this case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **September 15, 2023**, I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 (d)(3) and/or controlling L.R. 5-4, on **September 15, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 15, 2023 | Cynthia Bastida | */s/ Cynthia Bastida* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
   - **ATTORNEY FOR APPELLEE HOUSER BROS. CO.; APPELLEE ERIC HOUSER; AND APPELLEE CRAIG HOUSER:** Bradford Nathan Barnhardt bbarnhardt@marshackhays.com, kfrederick@ecf.courtdrive.com, cbastida@marshackhays.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN:** Eric P. Israel eisrael@danninggill.com, eisrael@ecf.inforuptcy.com, DanningGill@gmail.com

2. **SERVED BY UNITED STATES MAIL**: CONTINUED:

   **APPELLANT**
   Jamie Lynn Gallian
   16222 Monterey Lane Unit 376
   Huntington, CA 92649

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: CONTINUED:

   **VIA PERSONAL DELIVERY:**
   **MANDATORY CHAMBERS COPY**
   HONORABLE WESLEY L. HSU
   FIRST STREET COURTHOUSE
   350 WEST 1ST STREET, COURTROOM 9B
   LOS ANGELES, CA 90012

4866-9137-6512, v. 1

146786v1/9999-403